## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| KELLIE CARDER, individually and on behalf of all others similarly situated,<br><br>           Plaintiff,<br><br>vs.<br><br>GRACO CHILDREN'S PRODUCTS, INC. and NEWELL BRANDS DTC, INC.,<br><br>           Defendants. | Case No.: _____<br><br><br>**CLASS ACTION COMPLAINT**<br><br>**<u>JURY TRIAL DEMANDED</u>** |

Plaintiff Kellie Carder, by and through undersigned counsel, and on behalf of herself and all others similarly situated, alleges as follows against Graco Children's Products, Inc. and Newell Brands DTC, Inc. (collectively, "Defendants" or "Graco"). Plaintiff alleges as follows based upon personal knowledge as to herself and her own acts and experiences and, as to all other matters, upon information and belief, including investigation conducted by their attorneys.

## <u>NATURE OF THE ACTION</u>

1.     This case seeks to put an end to Defendants' improper marketing and sales tactics, whereby they made the conscious decision to prioritize their own

profits and market share to the detriment of the safety of American children.

2.      In the early 2000s, Graco began designing, manufacturing, marketing and selling booster seats as a vehicular safety device for children who had reached the weight limit of Graco's car seats.

3.      Seat belts are designed to fit and secure adults, and they cannot provide the same restraint and safety for younger, smaller children. Booster seats are therefore designed to elevate children in order for the seat belt to be correctly positioned over their smaller bodies. The market for booster seats is highly competitive.

4.      Graco designs, manufactures, markets, distributes and sells the TurboBooster and Affix booster seats (collectively, the "Booster Seats"), which are virtually identical seats used to elevate children sitting in automobiles so that they can use the vehicle's seat belt system.

**Graco's Affix**                    **Graco's TurboBooster**

     

5.    Graco labels and markets the Booster Seats in the United States as "safe" for children as light as 30 pounds and as young as three years old.

6.    Graco boasts that their Booster Seats provide extra protection to children because "[t]his seat is Graco ProtectPlus Engineered to help protect your child in frontal, side, rear &rollover crashes."[1] Graco even sews tags onto their

---

[1] https://www.gracobaby.com/en-US/safety (last visited May 4, 2020).

Booster Seats, prominently labeling them as "SIDE IMPACT TESTED."



7.      However, Graco has known since at least as early as 2002 that their Booster Seats are *not* safe for children under 40 pounds and under four years old, and that their Booster Seats do *not* appreciably reduce the risk of serious injury or death from side-impact accidents.

8.      Graco's labels and marketing claims deceive parents of young children by making them believe that the Booster Seats provide side-impact protection without revealing that those representations are virtually meaningless.

9.      In reality, Graco designs their own testing, and despite Graco's claims that they perform "rigorous" side-impact testing, they "do[] not publish or share internal crash test results" and admit that Graco has "set [their] own testing protocols."[2]

---

[2] https://www.gracobaby.com/en-US/faqs (last visited May 4, 2020).

10.    Notably, there are no federal or state standards for side-testing of booster seats.  Graco is basically making up their own "test" and then telling the consuming public that their Booster Seats passed when they, in fact, do not pass any test that establishes the safety of the seat for children in a side-impact collision.

11.    Indeed, according to a report from ProPublica, a non-profit investigative journalism organization, during a recent side-impact test performed on a Graco TurboBooster, a child-sized dummy in the booster seat hurtled out of the shoulder belt, careening far outside the boundaries of the booster seat, in a way rendering a child's head, neck and spine vulnerable.

12.    ProPublica shared with Graco the data and video from that test, which was performed in a lab at the Medical College of Wisconsin that also performs tests for federal researchers. Graco did not respond to the inquiry regarding the test.[3]

13.    A similar crash test conducted by experts in a case against Graco brought by a family whose child was permanently injured after suffering a collision while riding in a TurboBooster confirms ProPublica's reporting. In that

---

[3] https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety (last visited May 4, 2020).

crash test, the child-sized test-dummy was violently thrown outside the boundaries of the Graco TurboBooster and, according to the expert who viewed the video, "allowed severe head and torso excursion."



14.     Additionally, Graco has until very recently labeled and marketed their Booster Seats in the United States as "safe" for children as light as 30 pounds and as young as three years old.

15.     However, from as early as 2002, the National Highway Traffic Safety Administration ("NHTSA"), reported to Congress that "booster seats are recommended for use by children weighing from 40 pounds."

16.     And, in 2010, the NHTSA issued a report reiterating that "[f]orward-facing (convertible or combination) child seats are recommended for children age 1 to 4, or until they reach 40 lbs" and finding that "[e]arly graduation from child

restraint seats (CRS) to booster seats may also present safety risks."[4]

17.    According to the NHTSA, by 2009 it was recognized that "[t]he primary reasons for injuries to children restrained at the time of motor vehicle crashes" included "premature graduation from harnessed safety seats to booster seats."[5]

18.    In fact, while Graco aggressively marketed the Booster Seats to U.S. consumers as safe for children who weigh as little as 30 pounds, they simultaneously represented to consumers in Canada that a child weighing less than 40 pounds risked "SERIOUS INJURY or DEATH" using the same Booster Seats.[6]

19.    Graco failed to disclose this material safety information to consumers in the United States. Notably, the Canadian government has not allowed the sale of any make or model of booster seat for children under 40 pounds since 1987.

20.    Graco has faced multiple lawsuits filed by the families of children

---

[4] https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (last visited May 4, 2020).

[5] https://www.nhtsa.gov/sites/nhtsa.dot.gov/files/812121-safe_transportation_of_children.pdf (last visited May 4, 2020)

[6] https://www.gracobaby.ca/html/common/manuals/PD220791E%20Turbo-ooster%20Eng.pdf (last visited May 4, 2020).

severely injured in accidents while using their Booster Seats. Currently, Graco is being sued in the District Court of Shelby County, Texas by the parents of a boy who weighed 32 pounds and suffered a traumatic brain injury in a head-on crash while seated in a Graco TurboBooster. His family alleges that Graco knew their Booster Seat was not safe for children under 40 pounds but sold it anyway.[7]

21.   In another lawsuit, the parents of a four year old boy riding in a Graco TurboBooster – who became a ventilator-dependent quadriplegic after his mother's vehicle was struck from behind – sued Graco in the Eastern District of Texas. The attorneys in that case alleged that, prior to 2007, Graco knew the TurboBooster would not provide effective restraint for children weighing less than 40 pounds. Two other children of similar weight have also sued Graco alleging their Booster Seats failed to protect them in side-impact accidents. One suffered severe and permanent injuries, and the other was fatally injured when he was ejected from the vehicle.

22.   Graco consciously chose to market their Booster Seats in a way that concealed all of this information from consumers.  In fact, Graco actively and aggressively marketed the Booster Seats as a side-impact tested, side-impact

---

[7] https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety (last visited May 4, 2020).

protected booster seat for children in the U.S. who weighed as little as 30 pounds that would "help protect your child in frontal, side, rear & rollover crashes."[8]

23.     Despite knowing that their representations regarding the safety of the Booster Seats are deceptive and misleading, omit material safety information, and constitute a fraud on consumers, Graco continues to manufacture, label, sell, distribute, advertise and market the Booster Seats in a false, misleading, unfair and/or deceptive manner.

24.     Plaintiff purchased a Graco Booster Seat for her child's use.

25.     If Plaintiff and those similarly situated had known the truth of Graco's representations, they would not have purchased or used Defendants' Booster Seats.

26.     Graco made their misrepresentations in an effort to increase their share of the booster seat market and their revenues and profits.

27.     Because Graco actively concealed material safety information from consumers, and made affirmative misrepresentations, parents bought the Booster Seats under the numerous express and implied promises, representations, assurances and/or affirmations from Graco.

28.     Graco has breached the trust of consumers who purchased Booster

---

[8] https://www.gracobaby.com/en-US/safety (last visited May 4, 2020).

Seats. Plaintiff and those similarly situated can no longer trust any of Graco's representations regarding the safety of their Booster Seats.

29.     More importantly, the Booster Seat that Plaintiff and similarly situated consumers have purchased do not provide side-impact protection and are not safe for children under 40 pounds. They leave young children vulnerable to catastrophic injury or even death. As such, the Booster Seat purchased by Plaintiff and the purported class have no value.

30.     Graco continues to sell their Booster Seats and, until only very recently, continued to label them as safe for children weighing as little as 30 pounds.

31.     To this day, Graco allows statements to remain online stating that their Booster Seats are safe for 30-pound children.

32.     Plaintiff, on behalf of herself and those similarly situated, brings claims for consumer fraud, breach of warranty, common law fraud, and unjust enrichment. Plaintiff seeks damages, injunctive and declaratory relief, interest, costs and reasonable attorneys' fees.

## **PARTIES**

33.     Plaintiff Kellie Carder is a citizen of the State of Georgia residing in Gainesville, Georgia, and is a member of the Classes defined herein.

10

34.     Defendant Graco Children's Products, Inc. is a Delaware corporation with its principal place of business at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328. Graco Children's Products is a wholly-owned subsidiary of Defendant Newell Brands DTC, Inc. Graco designs, manufactures, markets, sells, and distributes the Booster Seats throughout the United States.

35.     Defendant Newell Brands DTC, Inc. is a Delaware corporation with its principal place of business at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328. Newell designs, manufactures, markets, sells, and distributes the Booster Seats throughout the United States.

## **JURISDICTION & VENUE**

36.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 (hereinafter, "CAFA"), codified as 28 U.S.C. § 1332(d)(2). Plaintiff alleges that the matter in controversy exceeds $5,000,000.00 in the aggregate, exclusive of interest and costs, and that the number of class members is greater than 100.

37.     The Court has personal jurisdiction over Defendants because Defendants are headquartered in this District, and regularly conduct business in this District and/or under the stream of commerce doctrine cause products to be sold in this District, including the Booster Seat purchased by Plaintiff.

11

38.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this District. Plaintiff purchased a Graco Booster Seat in this District and incurred losses in this District. Defendants maintain headquarters in this District, and caused their Booster Seats to be offered for sale and sold to the public in this District, including to Plaintiff.

## FACTUAL ALLEGATIONS

### I.     Background

39.     Graco was founded in 1942 and first began selling children's products in 1955 when it created the first automatic baby swing.

40.     In 1998, Graco acquired Century, a car seat manufacturer, and introduced the SnugRide infant car seat.

41.     That same year, Graco was acquired by Rubbermaid which, in 2006, became Newell Brands DTC, Inc.

42.     In the early 2000s, many states began passing regulations requiring toddlers who were too small to be protected by regular seat belts to use child safety seats.

43.     In 2002, to address the market of young children who were too large for or preferred something larger than an infant harness car seat, but who were

still too small to properly fit in a seat belt, Graco launched the TurboBooster, a booster seat that elevated children so that the automobile seat belt system fit more securely.

44.     In March 2002, Graco managers requested approval from company executives to begin planning for production of the TurboBooster. Typically, it takes a couple months to get this approval. For the TurboBooster, the first booster seat Graco had ever developed or sold, it took just one day to get approval -- a Graco record for approval. The record approval time was motivated by commitments Graco had made to supply the booster seat to retail stores like Toys R Us and Walmart.

45.     Graco was eager to start generating a whopping 394% profit margin on the TurboBooster as they tried to capture as much as 50% of a $260 million booster seat market.

46.     The TurboBooster became a top-seller for Graco and was marketed and sold at retailers nationwide. Capitalizing on the popularity of the TurboBooster, Graco began production on a second booster seat, the Affix, a booster seat almost identical to the TurboBooster.

47.     Graco's aggressive marketing has helped make their Booster Seats

two of the top- selling booster seats in the United States.[9]

48.     Graco represents to consumers that "[their] number one priority is safety for the children who depend on our products every day" and claims that their Booster Seats will "help to protect your little one in frontal, side, rear & rollover crashes."[10]

49.     But these claims are a lie. Graco knew that kids under 40 pounds were at risk of paralysis and death if they were riding in a Booster Seat during a car crash, and yet still represented that their Booster Seats were safe for young children weighing as little as 30 pounds.

50.     Graco also touted to parents that their Booster Seats were "side-impact tested for occupant retention," when the truth was that Graco's testing demonstrated that their Booster Seats failed to contain the head and torso of child-sized dummies during side impacts.

**II.     Graco Misrepresented Safe Minimum Weight for Booster Seats**

51.     Preventing or minimizing injuries to children should be the primary purpose of a booster seat.

---

[9] https://www.amazon.com/Best-Sellers-Baby-Child-Safety-booster-Car-Seats/zgbs/baby- products/166837011 (last visited May 4, 2020).

[10] https://www.gracobaby.com/en-US/safety (last visited May 4, 2020).

14

52.     There is a wealth of industry data and recommendations, as well as "best practice" industry guidelines regarding the appropriate weight range of children who should use a booster seat.

53.     These materials make very clear that the standard for booster seat use – one that would truly minimize injuries to a child in an accident – sets the minimum weight for a child to use Graco's Booster Seats at above 40 pounds.

54.     In Canada, where Graco also sells their Booster Seats, the sale of booster seats to children under 40 pounds has been prohibited since 1987.

55.     In Canada, Graco acknowledges that it is dangerous for children who weigh less than 40 pounds to use their Booster Seats.

56.     Graco informs Canadian consumers that their Booster Seats—seats identical in every respect to the ones sold in the United States—were specifically designed for use ONLY by children who weigh between 40 and 100 pounds, and that a 30-pound child would be at risk of "DEATH OR SERIOUS INJURY."[11] But Graco made no such warning to American consumers.

57.     Graco was also fully aware that various safety organizations with expertise in child transportation safety had consistently recommended against

---

[11] https://www.gracobaby.ca/html/common/manuals/PD220791E%20-TurboBooster%20Eng.pdf (last visited May 4, 2020).

using booster seats for children who weighed less than 40 pounds and, further, had identified the dangers and risks of using these products, especially for side-impact collisions.

58.    For example, in 1989, the American Academy of Pediatrics (the "AAP") issued the "1989 AAP Car Safety Guidelines." These guidelines recommended keeping a child in a convertible seat "for as long as possible" and that booster seats should only be used for children 40 pounds and over.

59.    These guidelines were but one of dozens of publications and articles which confirmed that children are better protected in harnessed seats for as long as possible, especially in side impacts.

60.    In 2010, the NHTSA issued a report reiterating that "[f]orward-facing (convertible or combination) child seats are recommended for children age 1 to 4, or until they reach 40 lbs" and finding that "[e]arly graduation from child restraint seats (CRS) to booster seats may also present safety risks."[12]

61.    And in 2011, the AAP revised its 1989 Policy Statement regarding booster seat use. In the revised Policy Statement, the AAP issued a "best practice recommendation" that, for children 2 to 8 years of age, children should remain in

---

[12] https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (last visited May 4, 2020).

"convertible" or "combination" child safety seats (using integrated harnesses) so long as their weight was less than the limit for the seats.

62.     In May of 2012, Graco revised the instruction manual for the TurboBooster. However, despite the overwhelming evidence that booster seats were not safe for children under 40 pounds, Graco continued to represent that it was safe for 3 year old children to use their Booster Seats, and did not change the minimum weight of 30 pounds to 40 pounds:[13]

**Weight and Height Limits**

**⚠ WARNING**

FAILURE TO USE booster seat in a manner appropriate for your child's size may increase the risk of serious injury or death.

To use this Graco booster seat, your child MUST meet ALL of the following requirements:

**With back support
  (approximately 3 to 10 years old) :**
- weigh between 30 and 100 lbs.
  (mass between 13.6 and 45 kg), and

63.     In 2015, Graco continued to urge parents to move their children from convertible harness seats into Booster Seats—seats without a secure harness—as

---

[13] https://www.amazon.com/Graco-Highback-Turbobooster-Seat-Green/dp/B00GY8J8GO (last visited May 4, 2020).

soon as children reached as little as 3 years of age and 30 pounds:[14]



64.     Ignoring the nationally-recognized safety guidelines and best practices for booster seats allowed Graco to increase their share of the booming booster seat market.

65.     The 30-pound minimum weight was specifically intended by Graco to convince parents to move their small children out of full, safety harness-restrained child car seats and into the Booster Seats, generating profits for Graco,

---

[14] https://www.walmart.com/ip/Graco-TurboBooster-Highback-Booster-Car-Seat-Mosaic/22846275 (last visited May 4, 2020).

but endangering children.

66.    Graco's complete indifference to the safety of the children they purport to protect was revealed when they changed the minimum age recommendation, but failed to change their representation as to the safe minimum weight of a child riding in their Booster Seats.

67.    The age of a child, of course, has nothing to do with the chances that child will survive a car crash while riding in a Booster Seat, while the weight of that child can determine life or death. This image, taken from a TurboBooster LX produced and sold in 2018, shows the increased age recommendation without an increase in the minimum weight:





68.     Unfortunately, consumers trust and rely on Graco's representations regarding safety and dangerously place children in the Booster Seats who are much too young to ride in them safely, as demonstrated by this review taken from Walmart's website:

★★★★ **Nice**

I bought this for my 2 1/2 year old granddaughter. She loves it (as does her 6 year old brother who sits in it every chance he gets). It was easy to put together. It was easy to move (not heavy or bulky). The only minor reason I didn't give 5☆s is because the back piece felt a little flimsy when I was putting it together. Other than that it was good.

RhondaF, December 21, 2016

✓ Verified purchaser

69.     In the ultimate betrayal of their customers, Graco has continued to sell their Booster Seats to parents with the representation that children who weigh as little as 30 pounds can safely ride in their booster seats.

70.    On BestBuy.com, Graco specifies that the TurboBooster has a minimum weight limit of 30 pounds.[15] In fact, they identify the 30-pound weight limit for the TurboBooster Highback as one of its features:

| Features | Convertible car seat |
|---|---|
| | Features two modes of use: high-back mode for children 30-100 lbs. and backless mode for children 40-100 lbs. |

71.    On Amazon.com, Graco still includes in the Technical Details for one TurboBooster Highback a minimum weight of 30 pounds:[16]

| Technical Details | |
|---|---|
| Item Weight | 9 pounds |
| Product Dimensions | 15.5 x 16.5 x 26.5 inches |
| UPC | 047406124558 |
| Item model number | 1893811 |
| Minimum weight recommendation | 30 Pounds |

---

[15] https://www.bestbuy.com/site/graco-turbobooster-highback-booster-car-seat-glacier/6347577.p?skuId=6347577 (last visited May 4, 2020).

[16] https://www.amazon.com/Graco-Highback-TurboBooster-Seat-Alma/dp/B01N94DDVG?th=1 (last visited May 4, 2020).

72.     On Amazon.com, Graco also recommends that children weighing 30 pounds can safely ride in the Affix Highback booster seat:[17]

### Technical Details

| | |
|---|---|
| Item Weight | 9 pounds |
| Product Dimensions | 15.5 x 16.5 x 26.5 inches |
| UPC | 047406124558 |
| Item model number | 1893811 |
| Minimum weight recommendation | 30 Pounds |

**Age / Weight Recommendations**

- Highback mode from 30 - 100 lbs. and 38 - 57 inches tall.
- Backless mode from 40 - 100 lbs. and 40 - 57 inches tall.

73.     Further, on Amazon.com, under a section entitled "Important Information," Graco recommends that children weighing just 30 pounds are safe to ride in their Affix booster seat: "For children 3 to 10 years old Highback Mode Weight: 30-100 lb."[18]

---

[17] https://www.amazon.com/s?k=graco+affix+highback+booster+car+atomic-&ref=nb_sb_noss (last visited May 4, 2020).

[18] *Id.*

74.     Graco likewise advertises the Affix as safe for 30-pound children on Walmart's website:[19]

| Features | | | |
|---|---|---|---|
| Harnessed Weight Limit | n/a | n/a | n/a |
| High Back Booster Seat Weight Limit | 30 - 100 lb | n/a | 30 - 100 lb |
| No Back Booster Seat Weight Limit | 40 - 100 lb | 40 - 100 lb | 40 - 100 lb |

75.     Even now, Graco is encouraging parents to move their children from the safety of harnessed car seats to what Graco knows are less safe Booster Seats -- all for the sake of sales. Graco manipulates consumers into purchasing a new product, their more dangerous booster seat, by playing on parents' wishes to see their children grow into independence. Underneath the image of a smiling father and daughter, Graco tells parents that their Affix booster seat "safely transports your 'Big Kid' from 30-100 lbs." and that its buckling system makes

---

[19] https://www.walmart.com/ip/Graco-Affix-Highback-Booster-Seat-with-Latch-System-Atomic/22621025 (last visited May 4, 2020)

it "easy for your independent child:"[20]

**Safe Transportation for Your Growing Child**



The Graco AFFIX Highback Booster Seat with LATCH System safely transports your "big kid" from 30- 100 lbs. and 38 to 57 inches tall. The LATCH system secures to your vehicle's seat with a 1-handed, front-adjust system. The open-loop belt guide design makes self-buckling easy for your independent child.

76.    Graco even twists the words of the AAP to manipulate parents into placing their young children into booster seats before it is safe to do so – directly contradicting the AAP's own recommendations. Graco represents that the AAP "recommends that children 4 feet 9 inches tall or under should ride in a belt

---

[20] https://www.amazon.com/dp/B00BR0OMF6/ref=cm_sw_r_sms_c_api_i_-8UdREbWJ7JWBX (last visited May 4, 2020).

positioning booster seat." Graco goes so far as to say that "in support of the AAP's recommendation" their Affix booster seat "keeps your 'Big Kid' riding in high back booster seat mode from 30-100 pounds and from 38-57 inches tall."[21]



**Graco AFFIX Highback Booster Car Seat with Latch System**

Convertible Safety

Graco's AFFIX Highback Booster Car Seat with Latch System, in Atomic, helps keep your growing child safe. The American Academy of Pediatrics (AAP)—one of the most respected resources in child safety—recommends that children 4 feet 9 inches tall or under should ride in a belt positioning booster seat. In support of the AAP recommendation, the AFFIX Highback Booster Seat with Latch keeps your 'big kid' riding in high back booster seat mode from 30 – 100 pounds and from 38 – 57 inches tall. Then, when your child is ready, it converts to backless mode for children 40 – 100 pounds and from 40 – 57 inches tall. It's like having two booster seats in one!

77.     But the AAP specifically warns against early transition to booster seats, stating that although "[p]arents often look forward to transitioning from one stage or milestone to the next[,] [i]n car seats, this is one area where transitions are not 'positive,' and where delaying transitions is best."[22] According to the AAP, "[e]ach transition – from rear-facing to forward-facing, from forward-

---

[21] https://www.amazon.com/s?k=graco+affix+highback+booster+car+atomic-&ref=nb_sb_noss (last visited May 4, 2020).

[22] https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/AAP-Updates-Recommendations-on-Car- Seats-for-Children.aspx (last viewed May 4, 2020).

facing to booster seat, and from booster seat to seat belt alone – reduces the protection to the child."[23]

78.    The AAP **does not** recommend that "children 4 feet 9 inches tall or under should ride in a belt positioning booster seat" or that children that weigh as little as 30 pounds should be "riding in high back booster seat mode." What the AAP actually recommends is that "children should use a forward-facing car safety seat with a harness **for as long as possible, until they reach the height and weight limits for their seats**." As the AAP points out, many forward-facing car safety seats "can accommodate children up to 65 pounds or more."[24]

79.    Graco knows this. They repeat this same standard in marketing it uses to sell its TurboBooster on Walmart.com:

- The American Academy of Pediatrics (AAP) and National Highway Safety Administration (NHTSA) recommend that children should use the built-in harness system for as long as possible until they reach the maximum forward-facing weight or height for their car seat, and after reaching the maximum forward-facing weight or height, that children 4 feet 9 inches tall or under should ride in a belt-positioning booster seat

80.    Graco's representations that 30-pound children should transition to a booster seat is motivated by pure greed. In fact, Graco's own forward-facing car safety seats can accommodate children who weigh as much as 120 pounds.[25]

---

[23] *Id*.

[24] *Id*.

[25] https://www.gracobaby.com/en-US/2074607 (last visited May 4, 2020).

81.     Graco knows that their representations to consumers that children weighing as little as 30 pounds should ride in their Booster Seats is wrong. Very recently, on their own website and in certain advertisements, Graco stated that "[t]o continue to meet industry standards, we have increased the weight minimum from 30 to 40 lbs." for their Booster Seats.[26] While, upon information and belief, Graco only made this change after becoming aware that ProPublica was investigating booster seats, Graco nonetheless has known for more than a decade that industry safety standards mandated a minimum weight for booster seats of 40 pounds. It took Graco more than a decade "to meet industry standards."

82.     However, even knowing that industry standards demand that the minimum weight for children riding in booster seats is 40 pounds, Graco's Booster Seat owner's manuals—the ultimate guide upon which consumers rely— for Booster Seats sold on Amazon.com still recommend that 3 year-old, 30-pound

---

[26] https://www.gracobaby.com/en-US/highback-turbobooster-car-seat-103519?selectedSku=1963975  (last visited May 4, 2020).

children can safely ride in a Graco booster seat:[27]

> To use this Graco booster seat, your child MUST meet ALL of the following requirements:
>
> **With back support**
>   **(approximately 3 to 10 years old) :**
> • weigh between 30 and 100 lbs.
>   (mass between 13.6 and 45 kg), and

## III.   Graco's Misrepresentations and Omissions Regarding the Side-Impact Protection of Their Booster Seats

83.   Not only did Graco misrepresent to consumers that their Booster Seats were safe for children under 40 pounds, Graco also represented to consumers that their Booster Seats were "Graco ProtectPlus Engineered to help protect your child" in side-impact crashes.

84.   However, Graco conceals the fact that side impact tests show that a child riding in their Booster Seats could be severely injured or killed by a side-impact collision.

85.   Graco's Booster Seats headrests are designed with small pieces of material that extend forward from the backrest in an effort to make their seats look like they provide additional protection.

---

[27] https://www.amazon.com/Graco-Highback-Turbobooster-Seat-Green/dp/B00GY8J8GO (last visited May 4, 2020).

86.     Though the Booster Seat headrest gives the impression of increased protection, Graco knew—and did not disclose—that their headrest provides no actual security against side- impacts. However, this has not stopped Graco from making misrepresentations about the protections the Booster Seat headrest purportedly provides:[28]

**Comfortable Ride**

Kids of all ages are happiest when they're comfortable, so as a parent you'll love the comfort features built right into the AFFIX. The headrest was designed with multiple layers to maximize your child's comfort. And, the full coverage back support provides comfort even as your child grows.

**Adjustable Highback Booster Car Seat**

Part of the safety of this seat is the headrest and the protection it offers to your child. So, it's designed to be fully adjustable, so that you can always achieve the proper fit, keeping your child secure on all of your journeys together.

87.     Graco points to the "security" provided by the Booster Seat headrest as a "key feature:"[29]

**Key Features**

- Designed with the style and comfort features that kids love.
- Easily converts to backless booster for years of use.
- EPS, energy absorbing foam for effective impact energy management.
- Fully-adjustable headrest keeps your growing child secure.

---

[28] https://www.medpluspharmacy.com.my/graco-affix-youth-booster-seat-with-latch-system-atomic?limit=50 (last visited May 4, 2020).

[29] https://www.amazon.com/s?k=graco+affix+highback+booster+car+atomic&-ref=nb_sb_noss (last visited May 4, 2020).

88.     And Graco uses these representations regarding their headrests to market their Booster Seats to parents concerned about the safety of their children:[30]

- Fully adjustable headrest keeps your growing child secure on all of your journeys together

89.     Graco also markets the Booster Seats as "Side-impact tested for occupant retention" and that these tests "help[] to protect your child" in side crashes.

90.     Graco even added two patches to the Booster Seats themselves, touting them as "SIDE IMPACT TESTED:"



---

[30]  https://www.walmart.com/search/?query=Graco%20TurboBooster%20-Highback%20Booster%20Car%20 Seat%2C%20Mosaic (last visited May 4, 2020).

91.   Graco represents that the Booster Seats are "engineered and tested and crash tested to meet or exceed U.S. safety standards." They describe their testing as "Graco ProtectPlus Engineered: a combination of the most rigorous crash tests that helps to protect your child in frontal, **side**, rear, and rollover crashes."[31]

92.   Graco presents their tests as tough, going above and beyond what the government requires. Graco states that their tests "meet or exceed criteria outlined in Federal Motor Vehicle Safety Standard 213 ("FVMSS 213") which is NHTSA's standard."[32]

93.   But the federal government has *no side*-impact *testing rules or standards* for child safety seats, making Graco's representations that they surpass a non-existent standard wholly misleading. The fact is, there is currently no government standard for testing car seat performance in side-impact collision scenarios. Currently, the only government-issued standard crash test involves simulated head-on collisions. Graco took advantage of this regulatory gap and seized the opportunity to concoct their own side impact testing, the specifics of

---

[31] https://www.gracobaby.com/en-US/highback-turbobooster-car-seat-103519 (emphasis added) (last visited May 4, 2020).

[32] https://www.gracobaby.com/en-US/faqs (last visited May 4, 2020).

which have never been voluntarily disclosed to consumers.

94.   Graco admits as much on their website, conceding that "there are currently no side impact safety standards in the US:[33]

## SIDE-IMPACT TESTED*

According to the Insurance Institute for Highway Safety, side collisions represent the second most common type of fatal car accident, but there are currently no side impact safety standards in the US. While no side-impact testing is currently required under the US Federal Motor Vehicle Safety Standard 213, Graco® has side-impact tested its car seats for occupant retention with the built-in 5-point harness system and in highback belt-positioning modes.

95.   While a Child Restraint System must be in compliance with FMVSS 213 in order to sell it in the U.S. market, this does not apply to side-impact testing. Even if it did, FMVSS 213 is a *minimum* performance standard and manufacturers—like Graco—self-certify whether they meet this very low standard.

96.   Graco admits that it "does not publish or share internal car seat test results" and that they "self-certify that [they] comply with this (FVMSS 213) standard."[34]

97.   In truth, Graco's side-impact tests were insufficient, with no

---

[33] https://www.gracobaby.com/en-US/safety?storeId=65051&catalogId=65051 (last visited May 4, 2020).

[34] https://www.gracobaby.com/en-US/faqs (last visited May 4, 2020).

reasonable standard whatsoever.

98.    A report authored by an expert in occupant crash protection and restraint systems who has collaborated with the NHTSA and the AAP found that "side impact testing conducted by Graco demonstrates very poor occupant crash protection" and that "[e]ven with the side wings provided by the seat back the TurboBooster fails to contain the head and torso of the child dummy and allowssevere head and torso excursion."[35]



---

[35] https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety (last visited May 4, 2020).

99.     Video stills from the tests show child-sized dummies being flung far outside the booster seat, where a child's head, neck, and spine would be in terrible danger.



100. Dr. Ben Hoffman, an Oregon pediatrician and a lead author of the AAP policy statement on car seats, was shown similar video of a side-impact test conducted on an Evenflo Big Kid booster seat, a seat modeled after Graco's TurboBooster and almost identical in size and design to Graco's Booster Seats. That video showed a child-sized dummy being thrown violently out of its seat in a side-impact test conducted in similar circumstances to the test performed on the TurboBooster. When he viewed the video, Dr. Hoffman said such violent movement of the dummy at high speed in the booster seat could lead to abdominal, brain, and spinal injuries in a real child, including paralysis or death.

101. Graco knew, at least as early as 2011, when the expert report containing the side- impact testing was produced, and surely before, during Graco's own secret and undisclosed testing, that the seat's side structure—while giving the perception to consumers of providing side-impact protection—actually provided no side impact protection whatsoever. Rather, the headrest and the structure of the Booster Seats actually allowed the head, upper torso, and even the abdomen of the child-sized test dummy to be ejected from the confines of the Booster Seat.

IV.   **Graco's Misrepresentations and Omissions Regarding the Safety of Their Booster Seats**

102.   Despite all of the evidence cited and discussed above, Graco continues to make misrepresentations and omissions to consumers regarding their supposed commitment to safety and the safety of their products, including the Booster Seats.

103.   On their website, Graco uses language designed to engender trust from parents so that they will rely on Defendants' misrepresentations about the safety of their products, including the Booster Seats. Graco tells parents that "[o]ur number one priority is safety for the children who depend on our products every day"[36] and that "[c]onsumer safety is our top priority."[37]

104.   Graco makes these representations despite knowing that their Booster Seats are unsafe. The truth is, for Graco, profit is the top priority. Graco claims that they place a priority on safety, but they have falsely represented to consumers that children less than 40 pounds would be safe riding in their Booster Seats, and that the Booster Seats provided side-impact protection proven safe by

---

[36]  https://www.gracobaby.com/en-US/safety?storeId=65051&catalogId=65051 (last visited May 4, 2020).

[37]  https://www.gracobaby.com/en-US/faqs (last visited May 4, 2020).

Graco's side-impact testing.

105.   Graco makes these representations regarding the safety of their products, including the Booster Seats, despite knowing that young children have been paralyzed and killed from a side impact collision while riding in their Booster Seats.

106.   For example, in February 2005, the *Cambra v. Graco Children's Products, Inc.* case was filed in the Eastern District of Texas. The Cambra family alleged that their son, Ethan, was killed in a crash when he slipped out from under the seat belt while riding in a Graco Booster Seat during a crash.

107.   In April 2015, the *Wetick v. Graco* case was filed in the Western District of Tennessee. The Wetick family alleged that their child suffered catastrophic injuries after a collision suffered while riding in a Graco TurboBooster because Graco failed to warn that their child was too young and too small to be riding in Graco's Booster Seat.

108.   In July 2009, the *McCune v. Graco* case was filed in the Eastern District of Texas.  The McCune family alleged that their child was rendered a quadriplegic, surviving on a ventilator during a side-impact collision while riding in a Graco TurboBooster. The complaint alleges that Graco knew the Booster Seat

would not provide effective restraint for children weighing at or near 40 pounds.

109.   For example, Graco represents to parents that the Booster Seat is filled with "EPS" or "energy absorbing foam." Graco touts this as a "key feature" and presents this as one of the reasons their Booster Seats protect children.[38]

110.   But Graco's representations about multi-layered "energy absorbing foam" are also false. Graco uses technical sounding terminology—like "ProtectPlus Engineered" or, in this case, "EPS"—to cover their simple and deficient attempts at appearing to provide safety. But the truth is, the "energy absorbing foam" is actually just Styrofoam:



[38] ttps://www.amazon.com/s?k=graco+affix+highback+booster+car+atomic&ref=nb_sb_noss (last visited May 4, 2020).



111.   Graco's foregoing representations regarding safety, testing, and their supposed surpassing of federal government standards in testing and safety are false and misleading for all of the reasons discussed above, including their failure to acknowledge that the federal government has no side-impact testing rules or standards for child safety seats. Graco's concealment and omission of the inherent dangers in using the Booster Seats with children under 40 pounds, their lack of stability, lack of containment in side impacts, and/or their complete lack of side-impact protection, are also dangerously misleading.

## **PLAINTIFF'S FACTS**

112.   On or around August 29, 2019, Plaintiff purchased a Graco Highback TurboBooster Booster Seat for her child from Amazon.com. She paid approximately $33.22 for the Booster Seat.

113.   Plaintiff purchased the Booster Seat because she believed Graco seats were safer and, in particular, because she believed the seat would be safe for her daughter's age and weight (3 years old and 33 pounds).

114.   Had Plaintiff known about the unsafe nature of Graco's Booster Seats and that it was not safe for her daughter's weight, she would not have purchased the Booster Seat and, instead, would have purchased one of many safer available alternatives.

## **TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS**

115.   Defendants have had actual knowledge for several years that the marketing, packaging, and labeling of their Booster Seats was deceptive and misleading because Defendants' internal and undisclosed side-impact tests confirm that the Booster Seats pose serious safety risks to children, there are no government-issued side-impact safety standards that the Booster Seats could meet or exceed, and Defendants' own side-impact standards and testing are made up

40

and not based on science or safety.

**Discovery Rule Tolling**

116.   During the period of any applicable statutes of limitation, Plaintiff and Class Members could not have discovered, through the exercise of reasonable diligence, that Defendants' Booster Seats are unsafe for children weighing less than 40 pounds or in the event of a side-impact collision.

117.   Plaintiff and Class Members did not discover, and did not have knowledge of, facts that would cause a reasonable person to suspect that Defendants' Booster Seats are unsafe in side- impact collision scenarios, or that Defendants' marketing, packaging, and labeling of the Booster Seats as "side impact tested" was false, deceptive, and/or misleading.

118.   Until recently, only Defendants had knowledge of the fact that their Booster Seats pose a serious safety risk to children. Plaintiff, Class Members, and the public at-large had no way of obtaining knowledge of this important fact until ProPublica published a robust article exposing certain facts regarding the safety of booster seats on February 6, 2020. While some of the information reported by ProPublica may have been disclosed in connection with earlier, individual litigation, it was sealed by the court or only available via a fee-based access system, such as CM/ECF, which the average person typically does not know how

to access or navigate.

119.   Plaintiff and Class Members could not have reasonably discovered the true extent of Defendants' illegal conduct in connection with the safety risks posed by their Booster Seats until ProPublica published the aforementioned article on February 6, 2020.

120.   For the foregoing reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule.

**Fraudulent Concealment Tolling**

121.   All applicable statutes of limitation have also been tolled by way of Defendants' fraudulent concealment of their internal side-impact collision testing through the relevant time period.

122.   Rather than disclose to Plaintiff and Class Members that Defendants' own side- impact collision testing confirmed that children using their Booster Seats are at risk of serious injury or death, Defendants continued to manufacture, market, and sell the Seat without disclosing this information.

**Estoppel**

123.   At all times relevant to this action, Defendants had a duty to disclose to Plaintiff, Class Members, and the public at-large, the serious risks posed to

children by using the Booster Seats. Defendants knowingly, affirmatively, and actively concealed or recklessly disregarded the serious risks posed to children by using the Booster Seats and persisted with the deceptive marketing of the Booster Seats as "side impact tested."

124.   For the foregoing reasons, Defendants are estopped from relying on any statutes of limitations in defense of the allegations raised in this Complaint.

## CLASS ACTION ALLEGATIONS

125.   Plaintiff incorporates by reference all of the preceding paragraphs of this Complaint as if fully set forth herein.

126.   Plaintiff brings this action individually and on behalf of all other persons similarly situated, pursuant to Federal Rule of Civil Procedure 23. The class definition(s) may need to be amended based on the information obtained throughout discovery. Notwithstanding, at this time, Plaintiff brings this action seeking certification of the following Classes:

> **National Damages Class under Fed. R. Civ. P. 23(b)(3):**
> All persons within the United States who purchased Graco's Booster Seats from the beginning of any applicable limitations period through the date of class certification (the "National Damages Class," or together with the National Injunctive Class, the "National Classes").

**National Injunctive Class under Fed. R. Civ. P. 23(b)(2):**
All persons within the United States who purchased Graco's
Booster Seats from the beginning of any applicable
limitations period through the date of class certification (the
"National Injunctive Class", or together with the National
Damages Class, the "National Classes").

**Georgia Sub-Class under Fed. R. Civ. P. 23(b)(2) and
23(b)(3)**: All persons in the state of Georgia who purchased
Graco's Booster Seats from the beginning of any applicable
limitations period through the date of class certification ("the
Georgia Sub-Class").

127.   Excluded from the Classes are Defendants, any entities in which

Defendants have controlling interests, Defendants' agents, employees, and their

legal representatives, any Judge to whom this action is assigned and any member

of such Judge's staff and immediate family, and Plaintiff's counsel, their staff

members, and their immediate family.

128.   Plaintiff reserves the right to amend the Class definitions or add

classes, as needed, if further information or discovery indicates that the Class

definitions should be narrowed, expanded, or otherwise modified.

129.   Certification of Plaintiff's claims for class-wide treatment is

appropriate because Plaintiff can prove the elements of her claims on a class-wide

basis using the same evidence as would be used to prove those elements in

individual actions alleging the same claims, and because Plaintiff otherwise meets the requirements of Federal Rule of Civil Procedure 23, as alleged below.

130. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The Members of the Classes are so numerous that their individual joinder herein is impracticable. On information and belief, Members of the Classes number in the thousands to hundreds of thousands and are geographically disbursed throughout the United States. Moreover, joinder of all potential Class Members is not practicable given their numbers and geographic diversity. The number of Members of the Classes is presently unknown to Plaintiff but may be ascertained from Defendants' books and records and/or from information and records in the possession of Defendants' third-party retailers and distributors. Members of the Classes may be notified of the pendency of this action by mail, email, Internet postings, and/or publication.

131. **Commonality and Predominance – Federal Rules of Civil Procedure 23(a)(2) and 23(b)(3).** Common questions of law and fact exist as to all Members of the Classes and predominate over questions affecting only individual Members of the Classes. Such common questions of law or fact

include, but are not limited to, the following:

a.    Whether the Booster Seats are unsafe for children weighing less than 40 pounds;

b.    Whether Defendants knew or reasonably should have known that the Booster Seats were unsafe for children weighing less than 40 pounds;

c.    Whether Defendants knew or reasonably should have known that the Booster Seats were unsafe for children weighing less than 40 pounds before marketing, distributing, and selling the Booster Seats to Plaintiff and Class Members;

d.    Whether the Booster Seats are unsafe in side-impact collisions;

e.    Whether Defendants knew or reasonably should have known that the Booster Seats were unsafe in side-impact collisions;

f.    Whether Defendants knew or reasonably should have known that the Booster Seats were unsafe in side-impact collisions before marketing, distributing, and selling the Booster Seats to Plaintiff and Class Members;

g.    Whether the marketing, advertising, packaging, labeling, and other promotional materials for Graco's Booster Seats are deceptive;

h.    Whether Defendants made material omissions in their marketing, advertising, packaging, labeling, promotion, and sale of the Booster Seats;

46

i.  Whether Defendants made affirmative misrepresentations in their marketing, advertising, packaging, labeling, promotion, and sale of the Booster Seats;

j.  Whether Defendants concealed from and/or failed to disclose to Plaintiff and Class Members that the Booster Seats were unsafe for children weighing less than 40 pounds;

k.  Whether Defendants concealed from and/or failed to disclose to Plaintiff and Class Members that the Booster Seats were unsafe in side-impact collisions;

l.  Whether Defendants' conduct was knowing and willful;

m.  Whether Defendants' actions violate the state consumer fraud statutes invoked below;

n.  Whether Defendants' actions constitute common law fraud;

o.  Whether Plaintiff and Class Members were damaged by Defendants' conduct;

p.  Whether Defendants were unjustly enriched at the expense of Plaintiff and Class Members;

q.  Whether Defendants should be ordered to disgorge all or part of the ill-gotten profits it received from the sales of the Booster Seats;

r.  Whether Defendants breached express warranties to Plaintiff and Class Members;

s.  Whether Defendants breached implied warranties to Plaintiff and Class Members; and

47

t.   Whether Plaintiff and Class Members are entitled to injunctive relief.

132.   Defendants engaged in a common course of conduct giving rise to the legal rights that Plaintiff seeks to enforce on behalf of herself and the other Members of the Classes. Similar or identical statutory and common law violations, business practices, and injuries are involved. These common questions, and the common answers they will generate, predominate in both quality and quantity over any individual issues that may exist.

133.   **Typicality – Federal Rule of Civil Procedure 23(a)(3)**. Plaintiff's claims are typical of the claims of the other Members of the Classes because, among other things, all Members of the Classes were injured in the same way through Defendants' uniform misconduct, as described above.

134.   **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class Representative because her interests do not conflict with the interests of the other Members of the Classes she seeks to represent; she has retained counsel competent and experienced in complex class action litigation; and she will prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiff.

135.  **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).**  The elements of Rule 23(b)(2) are met here. Defendants will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Booster Seats. Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as requested in the Prayer for Relief below, with respect to the Members of the Classes as a whole.

136.  **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Members of the Classes are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendants, so it would be impracticable for Members of the Classes to individually seek redress for Defendants' wrongful conduct. Even if Members of the Classes could afford individual litigation, the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all

parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### Count I
### Fraudulent Concealment
### (Plaintiff Individually and on Behalf of the National Classes and, in the Alternative, the Georgia Sub-Class)

137.   Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

138.   Plaintiff brings this claim against Graco on behalf of herself, the National Classes, and the Georgia Sub-Class (for purposes of this Count, the "Classes").

139.   Graco has a duty to disclose the truth regarding the safety of their Booster Seats for children weighing less than 40 pounds, and in the event of a side-impact collision because, *inter alia*, the safety of the Booster Seats has a direct impact on the health of the children who use them.

140.   Graco made false statements and omissions of material facts, including:

    a.   Misrepresenting that the Booster Seats are safe for children who weigh as little as 30 pounds even while, in Canada, Graco told consumers that a child less than 40 pounds risked "SERIOUS INJURY or DEATH" using the same Booster Seats, and even while Graco otherwise knew that the Booster Seats were unsafe for children weighing less than 40 pounds;

    b.   Misrepresenting that the Booster Seats are "SIDE IMPACT TESTED" and provided side-impact protection without revealing that their own tests showed a child seated in their Booster Seats could be in grave danger in such a crash;

    c.   Misrepresenting that Graco's Booster Seats are "engineered and tested and crash tested to meet or exceed U.S. safety standards" and subjected to "a combination of the most rigorous crash tests that helps to protect your child in frontal, side, rear, and rollover crashes" when, in fact, Graco's tests were less rigorous than and not comparable to federal government side-impact tests, and they went beyond government standards only because the government does not require particular side-impact testing at all;

    d.   Misrepresenting that the Booster Seats are safe and that the Booster Seats are "Graco ProtectPlus Engineered to help protect your child";

    e.   Misrepresenting that the headrest on the Booster Seats "helps keep your child secure" in a side-

impact collision;

f.   Misrepresenting that the Booster Seats are filled
with "EPS" or "energy absorbing foam" that helps
protect children riding in the Booster Seats;

g.   Omitting and failing to disclose their knowledge that
the Booster Seats were unsafe for children less than
40 pounds; and

h.   Omitting and failing to disclose their knowledge that
the Booster Seats did not protect children from side-
impact collisions, which Graco knew from their
internal testing and otherwise.

141.   Graco's false statements and omissions of material facts were made

to Plaintiff and the Members of the Classes at least each time that Plaintiff and

the Members of the Classes purchased the Booster Seats.

142.   Graco knew or should have known that these statements were false

and that the omissions were material. Alternatively, Graco recklessly made these

false statements and/or omissions without having any reasonable basis to believe

they were true.

143.   Graco intended that their false statements and omissions of material

facts would induce Plaintiff and each of the Members of the Classes to purchase

a Booster Seat.

144.   Plaintiff and the Members of the Classes reasonably relied on the false statements and omissions of material facts regarding the Booster Seats, as described above.

145.   Plaintiff and Members of the Classes would not have purchased a Booster Seat had it been accurately marketed, advertised, packaged, and/or sold.

146.   Graco's false statements and omissions of material facts directly and proximately caused the damages suffered by Plaintiff and Members of the Classes.

147.   As a result of Graco's false statements and omissions of material facts, Plaintiff and each of the other Members of the Classes have sustained damages in an amount to be proven at trial.

148.   In addition, Graco's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

149.   Because Graco's deceptive and unfair conduct is ongoing, injunctive relief is necessary and proper.

**Count II**
**Breach of Express Warranties**
**(Plaintiff Individually and on behalf of the National Classes and, in the**
**Alternative, the Georgia Sub-Class)**

150.   Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

151.   Plaintiff brings this claim against Graco on behalf of herself, the National Classes and, in the alternative, the Georgia Sub-Class.

152.   Plaintiff, the National Class Members, and, alternatively, the Georgia Sub-Class Members, are and were at all relevant times consumers, and bought the Booster Seats at issue for personal, family, and/or household purposes.

153.   Plaintiff, the National Class Members, and, alternatively, the Georgia Sub-Class Members, bought Defendants' Booster Seats either directly from Defendants or through retailers, such as Best Buy, Target, Amazon, and Walmart, among others.

154.   Defendants are and were at all relevant times sellers of the Booster Seats at issue, including under O.C.G.A. 11-2-313, *et seq.*

155.   Graco, as the designer, manufacturer, distributor, and/or seller, made express warranties and representations regarding their Booster Seats when they represented:

54

a.    that the Booster Seats were safe for children who weigh as little as 30 pounds;

b.    that the Booster Seats were safe for children who weigh less than 40 pounds;

c.    that the Booster Seats were "SIDE IMPACT TESTED" and provided side-impact protection;

d.    that Graco's Booster Seats are "engineered and tested and crash tested to meet or exceed U.S. safety standards" and subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes";

e.    that the Booster Seats were safe and "Graco ProtectPlus Engineered to help protect your child";

f.    that the headrest on the Booster Seats "helps keep your child secure" in a side impact collision; and

g.    that the Booster Seats are filled with "EPS" or "energy absorbing foam" that helps protects children riding in the booster seats.

156.    These representations were made directly to consumers and the intended end users of Graco's Booster Seats, constitute express warranties, and became part of the basis of the bargain between the parties and created a collective "express warranty" that the Booster Seats would conform to Graco's affirmations and promises.

157.   All of the Booster Seats have an identical or substantially similar warranty.

158.   Plaintiff, the National Class Members, and alternatively, the Georgia Sub-Class Members have privity of contract with Defendants through their purchases of the Booster Seats, and through the express warranties that Defendants issued to their customers. Defendants' warranties accompanied the Booster Seats and were intended to benefit end-users of the Booster Seats. To the extent that Plaintiff and Class and/or Sub-Class Members purchased the Booster Seats from third-party retailers, privity is not required because Plaintiff and Class and/or Sub-Class Members are intended third-party beneficiaries of the contracts between Defendants and third- party retailers, and because the express warranty is intended to benefit purchasers or owners subsequent to the third-party retailers. In other words, the contracts are intended to benefit the ultimate consumer or user of the Booster Seats.

159.   Plaintiff and the Members of the Classes have complied with all conditions precedent under the express warranties prior to pursuing this claim.

160.   Graco breached each of the aforementioned express warranties regarding the Booster Seats and their qualities because each of Graco's above-listed statements about the Booster Seats was false and the products do not conform

56

to Graco's affirmations and promises, as described above.

161.   Plaintiff and the Members of the Classes would not have purchased the Booster Seats had they known about the misrepresentations described above.

162.   Graco's conduct described in this Complaint constitutes a breach of express warranties under UCC § 2-313, as adopted in whole or in substance by statutes in all 50 states and the District of Columbia, including O.C.G.A. 11-2-313, *et seq.*, and:

> Ala. Code § 7-2-313, *et seq.*; Alaska Stat. § 45.02.313, *et seq.*; Ariz. Rev. Stat. § 47-2313, *et seq.*; Ark. Code § 4-2-313, *et seq.*; Cal. Com. Code § 2313, *et seq.*; Colo. Rev. Stat. § 4-2-313, *et seq.*; Conn. Gen. Stat. § 42a-2-313, *et seq.*; 6 Del. C. § 2-313, *et seq.*; D.C. Code § 28:2-313, *et seq.*; Fla. Code § 672.313, *et seq.*;Haw. Rev. Stat. § 490:2-313, *et seq.*; Idaho Code § 28-2-313, *et seq.*; Ind. Code § 26-1-2-313, *et seq.*; Iowa Code § 554.2313, *et seq.*; Kan. Stat. § 84-2-313, *et seq.*; Ky. Rev. Stat. § 355.2-313, *et seq.*; La. Rev. Stat § 9:2800.53(6) , *et seq.*; 11 M.R.S.A. § 2-313, *et seq.*; Md. Code Ann., Com. Law § 2-313, *et seq.*; Mass. Code 106, § 2-313, *et seq.*; Mich. Comp. Laws 440.2313, *et seq.*; Minn. Stat. § 336.2-313, *et seq.*; Miss. Code § 75-2-313, *et seq.*; Mo. Rev. Stat. § 400.2-313, *et seq.*; Mont. Code § 30-2-313, *et seq.*; Neb. U.C.C. § 2-313, *et seq.*; Nev. Rev. Stat. § 104.2313, *et seq.*; N.H. Rev. Stat. § 382-A:2-313, *et seq.*; N.J. Stat. § 12A:2-313, *et seq.*; N.M. Stat. § 55-2-313, *et seq.*; N.C. Gen. Stat. § 25- 2-313, *et seq.*; N.D. Cent. Code § 41-02-30, *et seq.*; N.Y. § 2-313, *et seq*., Ohio Rev. Code § 1302.26, *et seq.*; Okla. Stat. Tit. 12A, § 2-313, *et seq.*; Or. Rev. Stat. § 72.3130, *et seq.*; 13 Pa. Cons. Stat. § 2313, *et seq.*; R.I. Gen. Laws § 6A-2-313, *et seq.*; S.C. Code § 36-2-313, *et seq.*; S.D. Codified Laws § 57A-2-313, *et seq.*; Tenn. Code § 47-2- 313, *et seq.*; V.T.C.A., Bus. & C. § 2.313, *et seq.*; Utah Code § 70A-2-313, *et seq.*; Vt. Stat. Tit. 9A, § 2-313, *et seq.*; Va. Code § 8.2-313, *et seq.*; Wash. Rev. Code § 62A.2-313, *et*

*seq.*; W. Va. Code § 46-2-313, *et seq.*; Wis. Stat. § 402.313, *et seq.*; and Wyo. Stat. § 34.1-2-313, *et seq.*

163.   The express warranties covering the Booster Seats were a material part of the bargain between Plaintiff and Members of the Classes on the one hand, and Defendants, on the other hand. At the time it made these express warranties, Defendants knew of the purpose for which the Booster Seats were to be used.

164.   Defendants were provided actual and/or constructive notice of the aforementioned breaches of the express warranties through the results of their own internal side-impact testing, as well as through previous lawsuits against Defendants involving serious and permanent injuries sustained by children while using the Booster Seats.

165.   The Booster Seats that Plaintiff and Members of the Classes purchased were uniformly deficient with respect to their ability to protect children weighing less than 40 pounds and in the event of a side-impact collision, which caused each of them damages, including loss of the benefit of their bargain.

166.   As a result of Graco's breach of warranty, Plaintiff and each Member of the Classes have been damaged in an amount equal to the value of the Booster Seat and/or in an amount to be determined at trial, plus any consequential damages resulting from their purchases.

167.   Defendants had actual or constructive notice and knowledge of the defects alleged herein through the results of their internal testing, consumer complaints, and/or prior and pending lawsuits, wherein children sustained injuries and/or died while using Defendants' Booster Seats.

**Count III**
**Breach of Implied Warranties**
**(Plaintiff Individually and on behalf of the National Classes**
**and, in the Alternative, the Georgia Sub-Class)**

168.   Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

169.   Plaintiff brings this claim against Graco on behalf of herself, the National Classes and, in the alternative, the Georgia Sub-Class.

170.   Graco is in the business of designing, manufacturing, supplying, marketing, advertising, warranting, distributing, and selling their Booster Seats. Graco impliedly warranted to Plaintiff and Members of the Classes that the Booster Seats were of a certain quality and were fit for their ordinary and particular purpose.

171.   Graco's implied warranties included, but are not limited to, the warranties that: the Booster Seats are safe for children who weigh as little as 30 pounds; were "SIDE IMPACT TESTED" and provided side-impact protection;

and are generally safe and are "Graco ProtectPlus Engineered to help protect your child";

172.   Graco's Booster Seats are unfit for their ordinary use and are not of merchantable quality and/or do not conform to the promises or affirmations of fact for the reasons described above. Prior to purchase, Plaintiff and the Members of the Classes could not have discovered that the Booster Seats are not fit for their ordinary purpose and do not conform to the quality previously represented.

173.   Similarly, Graco's Booster Seats are unfit for their particular purpose. At the time Plaintiff and Members of the Classes purchased Booster Seats, Graco knew or should have known that Plaintiff and the Members of the Classes would purchase the Booster Seats because they are labeled and advertised as safe, side-impact tested and protected, and appropriate for children who weigh as little as 30 pounds. However, Graco's Booster Seats were not suitable for this purpose at the point-of-sale for all of the reasons stated above.

174.   Graco's Booster Seats were unfit for their ordinary use and were not of merchantable quality and/or did not conform to the promises or affirmations of fact made on the label and were unfit for their particular purpose when they left Graco's control.

175. Plaintiff and Members of the Classes would not have purchased Graco's Booster Seats if they knew about the misrepresentations described above.

176. Accordingly, Plaintiff and the Members of the Classes did not receive the benefit of their bargain in purchasing Graco's Booster Seats.

177. Graco's conduct described in this Complaint constitutes a breach of implied warranties under UCC §§ 2-314 and 2-315, as adopted in whole or in substance by statutes in all 50 states and the District of Columbia, including O.C.G.A. 11-2-313, *et seq.*, and:

Ala. Code § 7-2-314, *et seq.*; Alaska Stat. § 45.02.314, *et seq.*; Ariz. Rev. Stat. § 47-2314, *et seq.*; Ark. Code § 4-2-314, *et seq.*; Cal. Com. Code § 2314, *et seq.*; Colo. Rev. Stat. § 4- 2-314, *et seq.*; Conn. Gen. Stat. § 42a-2-314, *et seq.*; 6 Del. C. § 2-314, *et seq.*; D.C. Code§ 28:2-314, *et seq.*; Fla. Code § 672.314, *et seq.*; Haw. Rev. Stat. § 490:2-314, *et seq.*; Idaho Code § 28-2-314, *et seq.*; Ind. Code § 26-1-2-314, *et seq.*; Iowa Code § 554.2314, *et seq.*; Kan. Stat. § 84-2-314, *et seq.*; Ky. Rev. Stat. § 355.2-314, *et seq.*; La. Rev. Stat § 9:2800.53(6) , *et seq.*; 11 M.R.S.A. § 2-314, *et seq.*; Md. Code Ann., Com. Law § 2-314, *et seq.*; Mass. Code 106, § 2-314, *et seq.*; Mich. Comp. Laws 440.2314, *et seq.*; Minn. Stat. § 336.2-314, *et seq.*; Miss. Code § 75-2-314, *et seq.*; Mo. Rev. Stat. § 400.2-314, *et seq.*; Mont. Code § 30-2-314, *et seq.*; Neb. U.C.C. § 2-314, *et seq.*; Nev. Rev. Stat. § 104.2314, *et seq.*; N.H. Rev. Stat. § 382-A:2-314, *et seq.*; N.J. Stat. § 12A:2-314, *et seq.*; N.M. Stat. § 55-2-314, *et seq.*; N.C. Gen. Stat. § 25-2-314, *et seq.*; N.D. Cent. Code § 41-02-30, *et seq.*; N.Y. § 2-313, *et seq.*; Ohio Rev. Code § 1302.26, *et seq.*; Okla. Stat. Tit. 12A, § 2-314, *et seq.*; Or. Rev. Stat. § 72.3130, *et seq.*; 13 Pa. Cons. Stat. § 2314, *et seq.*; R.I. Gen. Laws § 6A-2-314, *et seq.*; S.C. Code § 36-2-313, *et seq.*; S.D. Codified Laws § 57A-2-313, *et seq.*; Tenn. Code § 47-2- 314, *et seq.*; V.T.C.A., Bus. & C. § 2.314, *et seq.*; Utah Code § 70A-2-314, *et seq.*; Vt. Stat. Tit. 9A, § 2-314, *et seq.*; Va. Code § 8.2- 314, *et seq.*; Wash. Rev. Code

§ 62A.2-314, *et seq.*; W. Va. Code § 46-2-314, *et seq.*; Wis. Stat. § 402.314, *et seq.*; and Wyo. Stat. § 34.1-2-314, *et seq.*

178.   As a result of Graco's breach of warranty, Plaintiff and each Member of the Classes have been damaged in an amount equal to the value of a Booster Seat and/or in an amount to be determined at trial plus any consequential damages resulting from their purchases.

179.   Defendants had actual or constructive notice and knowledge of the defects alleged herein through the results of their internal testing, consumer complaints, and/or prior and pending lawsuits, wherein children sustained injuries and/or died while using Defendants' Booster Seats.

**Count IV**
**Violation of the Georgia Fair Business Practices Act**
**O.C.G.A. §§ 10-1-390, *et seq.***
**(Plaintiff Individually and on behalf of the Georgia Sub-Class)**

180.   Plaintiff hereby realleges and incorporates by reference all allegations raised in the preceding paragraphs as if fully stated herein.

181.   Plaintiff brings this claim against Graco on behalf of herself and the Georgia Sub-Class.

182.   Graco's foregoing acts and practices, including their omissions, were directed at consumers.

183.   Defendants' foregoing deceptive acts and practices, including their omissions, were material, in part, because they concerned an essential part of the Booster Seats' intended use and provision of safety to children. Defendants omitted material facts regarding the safety (or lack thereof) of the Booster Seats by failing to disclose that they were not safe for use by children weighing less than 40 pounds and would not provide adequate protection in the event of a side-impact collision. Rather than disclose this information, Defendants marketed and labeled the Booster Seats as safe for use by children weighing less than 40 pounds and as "side impact tested." They further misrepresented that the Booster Seats meet or exceed all applicable federal safety standards.

184.   The Booster Seats pose an unreasonable risk to the safety of children weighing less than 40 pounds and in the event of a side-impact collision, despite Defendants' representations to the contrary.

185. Defendants did not disclose this information to consumers.

186.   Defendants' foregoing deceptive and unfair acts and practices, including their omissions, were and are deceptive acts or practices in violation of the Georgia Fair Business Practices Act, O.C.G.A §§ 10-1-390, *et seq*., by:

  a.   Misrepresenting that the Booster Seats were safe for children who weigh as little as 30 pounds even while, in Canada, Graco told consumers

that a child less than 40 pounds risked "SERIOUS INJURY or DEATH" using the same Booster Seats, and even while Graco otherwise knew that the Booster Seats were unsafe for children weighing less than 40 pounds;

b.  Misrepresenting that the Booster Seats were "SIDE IMPACT TESTED" and provided side-impact protection without revealing that their own tests showed a child seated in their Booster Seats could be in grave danger in such a crash;

c.  Misrepresenting that the Booster Seats were "engineered and tested and crash tested to meet or exceed U.S. safety standards" and subjected to "a combination of the most rigorous crash tests that helps to protect your child in frontal, side, rear, and rollover crashes" when, in fact, Graco's tests were less rigorous than and not comparable to federal government side-impact tests, and they went beyond government standards only because the government does not require particular side-impact testing at all;

d.  Misrepresenting that the Booster Seats were safe and that the Booster Seats were "Graco ProtectPlus Engineered to help protect your child";

e.  Misrepresenting that the headrest on the Booster Seats "helps keep your child secure" in a side impact collision;

f.  Misrepresenting that the Booster Seats are filled with "EPS" or "energy absorbing foam" that helps protects children riding in the Booster Seats;

g.     Omitting and failing to disclose their knowledge that the Booster Seats were unsafe for children less than 40 pounds; and

h.     Omitting and failing to disclose their knowledge that the Booster Seats did not protect children from side-impact accidents, which Graco knew from their internal testing and otherwise.

187.   These acts and practices, as described above, have deceived Plaintiff and Georgia Sub-Class Members, causing them to lose money by purchasing Graco's Booster Seats or paying more than they otherwise would, as herein alleged, and have deceived and are likely to deceive the consuming public. Accordingly, Graco's business acts and practices, as alleged herein, have caused injury to Plaintiff and Georgia Sub-Class Members.

188.   Plaintiff and Georgia Sub-Class Members suffered damages when they purchased the Booster Seats. Defendants' unconscionable, deceptive and/or unfair practices caused actual damages to Plaintiff and the Georgia Sub-Class Members who were unaware that the Booster Seats were unsafe for children weighing less than 40 pounds, and posed an unreasonable safety risk to children in the event of a side-impact collision, notwithstanding Defendants' representations at the time of purchase.

189.   Defendants' foregoing deceptive acts and practices, including their

omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

190.   Consumers, including Plaintiff and Georgia Sub-Class Members, would not have purchased the Booster Seats had they known about the unreasonable safety risk they pose to children, or the results of Defendants' internal side impact testing.

191.   As a direct and proximate result of Defendants' deceptive acts and practices, including their omissions, Plaintiff and Georgia Sub-Class Members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

192.   In addition, Plaintiff and Georgia Sub-Class Members seek equitable and injunctive relief against Defendants on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

**Count V**
**Unjust Enrichment**
**(Plaintiff Individually and on Behalf of the**
**National Classes and Georgia Sub-Class in the**
**Alternative to Counts II and III)**

193.   Plaintiff hereby realleges and incorporates by reference all

allegations raised in the preceding paragraphs as if fully stated herein.

194.   Plaintiff brings this claim against Defendants individually and on behalf of the National Classes and the Georgia Sub-Class.

195.   Plaintiff and the other Members of the Classes conferred monetary benefits on Defendants by purchasing their Booster Seats.

196.   Defendants received the benefits to the detriment of Plaintiff and the other Members of the Classes because Plaintiff and the other Members of the Classes purchased a mislabeled and deceptively advertised product that is not what they bargained for, and that would unnecessarily put the safety of their children in jeopardy.

197.   Plaintiff and Members of the Classes' detriment and Defendants' enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

198.   Defendants have profited from their unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiff and Members of the Classes under circumstances in which it would be unjust for Defendants to be permitted to retain the benefits. It would be inequitable for Defendants to retain the profits, benefits, and other compensation obtained from their wrongful conduct as

described herein in connection with the deceptive marketing, packaging, labeling, distribution, and sale of the unsafe and mislabeled Booster Seats.

199.   Defendants either knew or should have known that payments rendered by Plaintiff and Members of the Classes were given and received with the expectation that the Booster Seats were safe for children weighing less than 40 pounds and would protect children in the event of a side-impact collision, as represented by Defendants in marketing, on Defendants' websites, and on the Booster Seat labels and packaging. It is inequitable for Defendants to retain the benefit of payments under these circumstances.

200.   Plaintiff and Members of the Classes are entitled to recover from Defendants all amounts wrongfully collected and improperly retained by Defendants.

201.   When required, Plaintiff and Members of the Classes are in privity with Defendants because Defendants' sale of the Booster Seats was either direct or through authorized sellers. Purchase through authorized sellers is sufficient to create such privity because such authorized sellers are Defendants' agents for the purpose of the sale of the Booster Seats.

202.   As a direct and proximate result of Defendants' wrongful conduct

and unjust enrichment, Plaintiff and Members of the Classes are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants for their inequitable and unlawful conduct.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, individually and on behalf of the other Members of the Classes proposed in this Complaint, respectfully requests that this Court:

A.   Certify the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure;

B.   Name Plaintiff as Class Representative, and her undersigned counsel as Class Counsel;

C.   Declare that Defendants' failure to disclose the dangers of the Booster Seats and misrepresentations to the contrary were unfair, deceptive, fraudulent, wrongful, and unlawful;

D.   Grant restitution to Plaintiff and the Classes and require Defendants to disgorge their ill-gotten gains;

E.   Permanently enjoin Defendants from engaging in the wrongful conduct alleged herein;

F.   Issue a permanent injunction requiring Defendants to (i) recall all Booster Seats still in use; (ii) cease selling the Booster Seats as currently designed or stop labeling, marketing, and advertising them as safe for children less

than 40 pounds or otherwise engaging in the deceptive misrepresentations and omissions alleged herein; and (iii) add labeling to all future Booster Seats warning consumers of the dangers associated with their use;

G.    Issue an injunction ordering Graco to engage an independent person, group, or organization to conduct an internal assessment to (1) identify the root causes of the decisions that led Graco to knowingly disregard and conceal the results of its internal testing, to provide different disclosures and warnings to U.S. and Canadian consumers, and to fail to disclose the risks associated with the Big Kid Booster; (2) identify corrective actions and institutional culture changes to address those root causes; and (3) help Graco implement and track those corrective actions to ensure these failures do not happen again;

H.    Order Defendants to pay compensatory damages and/or actual damages and/or consequential or incidental damages and/or exemplary damages and/or restitution and/or statutory damages, as provided by applicable law, to Plaintiff and the other Members of the Classes, multiplied as appropriate pursuant to applicable law;

I.    Order Defendants to pay punitive damages, as allowable by law, to Plaintiff and other Members of the Classes;

J.    Award Plaintiff and the Classes their reasonable litigation expenses and costs of suit, including reasonable attorneys' fees to the extent provided by law;

K.    Award Plaintiff and the Classes pre- and post-judgment interest at the highest legal rate to the extent provided by law; and

L.    Award such further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury, pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, on all claims in this Complaint so triable. Plaintiff also respectfully requests leave to amend this Complaint to conform to the evidence, if such amendment is needed for trial.

DATED:  June 2, 2020

Respectfully submitted,

*/s/ Rachel Soffin*

Rachel Soffin (GA Bar No. 255074
Gregory F. Coleman*
Jonathan B. Cohen*
**GREG COLEMAN LAW PC**
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
T: 865-247-0080
F: 865-522-0049
rachel@gregcolemanlaw.com
greg@gregcolemanlaw.com
jonathan@gregcolemanlaw.com


Daniel K. Bryson*
Martha A. Geer*
Patrick M. Wallace
Harper Segui (GA Bar No. 096540)
**WHITFIELD BRYSON, LLP**
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
F: 919-600-5035

71

dan@whitfieldbryson.com
martha@whitfieldbryson.com
pat@whitfieldbryson.com
harper@whitfieldbryson.com

*Applications *pro hac vice* to be submitted

**Attorneys for Plaintiff and the Class**