# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| KELLIE CARDER et al., on behalf of themselves and all others similarly situated,<br><br>     Plaintiffs,<br><br> vs.<br><br>GRACO CHILDREN'S PRODUCTS, INC.,<br><br><br>     Defendant. | Civil Action File No.: 2:20-cv-00137-LMM<br><br><br>**CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## TABLE OF CONTENTS

I.    NATURE OF THE ACTION ........................................................................1

II.   PARTIES ...................................................................................................9

    A.    Defendant ........................................................................................9

    B.    Plaintiffs .......................................................................................10

         1.    Alabama Plaintiff .............................................................10

              i.    Lakeisha Purter ....................................................10

         2.    California Plaintiffs...........................................................11

              i.    Australia English ..................................................11

              ii.    Emilio Pensado, Jr. ..............................................12

         3.    Florida Plaintiff ................................................................14

              i.    Ashley Grabowski ................................................14

         4.    Georgia Plaintiffs.............................................................15

              i.    Kellie Carder.......................................................15

              ii.    Rejenna Chavez ...................................................17

         5.    Illinois Plaintiffs..............................................................18

              i.    Elizabeth Davis-Berg............................................18

              ii.    Shannon Hager ....................................................19

         6.    Massachusetts Plaintiff .....................................................21

              i.    Lauren Arnold ....................................................21

          7.    New Jersey Plaintiff .........................................................22

              i.    Leticia Rivera .....................................................22

          8.    New York Plaintiff ...........................................................23

              i.    Silvia Tehomilić...................................................23

          9.    North Carolina Plaintiff ....................................................25

              i.    Kimberi Sanford ..................................................25

         10.    Ohio Plaintiffs..................................................................26

              i.    Julie Clarke .......................................................26

              ii.    Jennifer Murphy...................................................27

| | 11. | Oklahoma Plaintiff | 29 |
| | | i. | Lauranda Atnip | 29 |
| | 12. | Oregon Plaintiffs | 30 |
| | | i. | Corallyn Flory | 30 |
| | | ii. | Carl Nelson | 31 |
| | 13. | Pennsylvania Plaintiffs | 33 |
| | | i. | Lisa Francoforte | 33 |
| | | ii. | Cheryl Varlaro | 34 |
| | 14. | Texas Plaintiff | 35 |
| | | i. | Elizabeth Arellano | 35 |
| | 15. | West Virginia Plaintiff | 37 |
| | | i. | Jean Leffingwell | 37 |

III. JURISDICTION AND VENUE ..................................................................38

IV. GENERAL FACTUAL ALLEGATIONS ...................................................39

    A. Background of Graco ........................................................................39

    B. The Development of Car Seats..........................................................40

    C. Graco Introduces the Booster Seats ..................................................45

    D. Despite Conclusive Evidence That Its Products Are Dangerous For Children Within The Weight Range It Specifies, Graco Markets Its Booster Seats As Safe For Children Under 40 Pounds and Side-Impact T...........................................................................................................46

    E. Even After the ProPublica Exposé, Graco Markets Its Booster Seats As Safe For Children Under 40 Pounds...........................................522

    F. Graco Markets Its Booster Seats As "Side Impact Tested" And Safe For Children Under 40 Pounds, Despite Conclusive Contrary Evidence From Side-Impact Testing..................................................59

    G. U.S. House of Representatives' Investigates Misleading Marketing Tactics Used by Booster Seat Manufacturers .....................................65

V. TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS..............68

    A. Continuing Act Tolling .....................................................................69

    B. Fraudulent Concealment Tolling.......................................................70

C.    Discovery Rule Tolling ....................................................71

D.    Estoppel ........................................................................722

VI.  CLASS ACTION ALLEGATIONS.............................................733

VII. CAUSES OF ACTION................................................................800

A.   Nationwide Claims .......................................................800

NATIONWIDE COUNT I VIOLATION OF THE
MAGNUSON-MOSS WARRANTY ACT ............................800

NATIONWIDE COUNT II COMMON LAW FRAUD ..........83

NATIONWIDE COUNT III COMMON LAW FRAUD.......855

NATIONWIDE COUNT IV UNJUST ENRICHMENT .........89

NATIONWIDE COUNT V NEGLIGENT
MISREPRESENTATION.........................................................90

B.   State-Specific Claims ....................................................91

1.   Alabama ..................................................................92

ALABAMA COUNT I BREACH OF EXPRESS
WARRANTY.................................................................92

ALABAMA COUNT II BREACH OF IMPLIED
WARRANTY.................................................................94

ALABAMA COUNT III VIOLATION OF THE ALABAMA
DECEPTIVE TRADE PRACTICES ACT ............................955

2.   California ..............................................................100

CALIFORNIA COUNT I BREACH OF EXPRESS
WARRANTY...............................................................100

CALIFORNIA COUNT II  BREACH OF IMPLIED
WARRANTY OF MERCHANTABILITY............................102

CALIFORNIA COUNT III  FALSE ADVERTISING UNDER
THE  CALIFORNIA FALSE ADVERTISING LAW ..........103

CALIFORNIA COUNT IV  VIOLATION OF THE
CONSUMER LEGAL REMEDIES ACT ..............................106

CALIFORNIA COUNT V  UNLAWFUL, UNFAIR, OR
FRAUDULENT BUSINESS PRACTICES UNDER THE
CALIFORNIA UNFAIR COMPETITION LAW .................110

3.    Florida ...............................................................1111

FLORIDA COUNT I BREACH OF EXPRESS WARRANTY
...............................................................1111

FLORIDA COUNT II BREACH OF IMPLIED WARRANTY
...............................................................113

FLORIDA COUNT III VIOLATION OF THE FLORIDA
UNFAIR & DECEPTIVE TRADE PRACTICES ACT.........115

4.    Georgia...............................................................117

GEORGIA COUNT I BREACH OF EXPRESS WARRANTY
...............................................................117

GEORGIA COUNT II BREACH OF IMPLIED WARRANTY
OF MERCHANTABILITY ....................................119

GEORGIA COUNT III VIOLATION OF THE GEORGIA
FAIR BUSINESS PRACTICES ACT ................................1211

5.    Illinois ...............................................................126

ILLINOIS COUNT I BREACH OF EXPRESS WARRANTIES
...............................................................126

ILLINOIS COUNT II BREACH OF IMPLIED WARRANTY
OF MERCHANTABILITY ....................................128

ILLINOIS COUNT III VIOLATION OF THE ILLINOIS
CONSUMER FRAUD ANDDECEPTIVE BUSINESS
PRACTICES ACT ...............................................129

ILLINOIS COUNT IV VIOLATION OF THE ILLINOIS
UNIFORM DECEPTIVE TRADE PRACTICES ACT .........134

6.    Massachusetts.......................................................137

MASSACHUSETTS COUNT I BREACH OF EXPRESS
WARRANTY.......................................................137

MASSACHUSETTS COUNT II BREACH OF IMPLIED
WARRANTY.......................................................139

MASSACHUSETTS COUNT III VIOLATION OF THE
MASSACHUSETTS CONSUMER PROTECTION LAW ...141

7.    New Jersey .........................................................147

NEW JERSEY COUNT I BREACH OF EXPRESS
WARRENTIES .................................................................147

NEW JERSEY COUNT II BREACH OF IMPLIED
WARRANTY OF MERCHANTABILITY ...........................148

NEW JERSEY COUNT III VIOLATION OF NEW JERSEY
CONSUMER FRAUD ACT ................................................150

8.    New York .......................................................................153

NEW YORK COUNT I BREACH OF EXPRESS
WARRANTY ....................................................................153

NEW YORK COUNT II BREACH OF IMPLIED
WARRANTY OF MERCHANTABILITY ...........................154

NEW YORK COUNT III VIOLATION OF NEW YORK
GENERAL BUSINESS LAW § 349 .....................................156

9.    North Carolina .............................................................159

NORTH CAROLINA COUNT I BREACH OF EXPRESS
WARRANTY ....................................................................159

NORTH CAROLINA COUNT II BREACH OF IMPLIED
WARRANTY ....................................................................161

NORTH CAROLINA COUNT III VIOLATION OF THE
NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE
PRACTICES ACT ..............................................................163

10.   Ohio ..............................................................................166

OHIO COUNT I BREACH OF EXPRESS WARRANTY ....166

OHIO COUNT II BREACH OF IMPLIED WARRANTY ...168

OHIO COUNT III VIOLATION OF THE OHIO CONSUMER
SALES PRACTICES ACT ...................................................170

OHIO COUNT IV VIOLATION OF THE OHIO DECEPTIVE
TRADE PRACTICES ACT ..................................................173

11.   Oklahoma ......................................................................176

OKLAHOMA COUNT I BREACH OF EXPRESS
WARRANTY ....................................................................176

OKLAHOMA COUNT II BREACH OF IMPLIED
WARRANTY ....................................................................177

OKLAHOMA COUNT III VIOLATION OF THE
OKLAHOMA DECEPTIVE TRADE PRACTICES ACT ....179

12. Oregon.................................................................................184

OREGON COUNT I BREACH OF EXPRESS WARRANTY
............................................................................................184

OREGON COUNT II BREACH OF IMPLIED WARRANTY
............................................................................................186

OREGON COUNT III VIOLATIONS OF THE OREGON
UNLAWFUL TRADE PRACTICES ACT ..........................188

13. Pennsylvania ......................................................................192

PENNSYLVANIA COUNT I BREACH OF EXPRESS
WARRANTY.....................................................................192

PENNSYLVANIA COUNT II BREACH OF IMPLIED
WARRANTY OF MERCHANTABILITY............................194

PENNSYLVANIA COUNT III VIOLATION OF THE
PENNSYLVANIA UNFAIR TRADE PRACTICES AND
CONSUMER PROTECTION LAW ......................................195

14. Texas ..................................................................................199

TEXAS COUNT I BREACH OF EXPRESS WARRANTY.199

TEXAS COUNT II BREACH OF IMPLIED WARRANTY 200

TEXAS COUNT III VIOLATION OF THE TEXAS
DECEPTIVE TRADE PRACTICES AND CONSUMER
PROTECTION ACT..............................................................202

15. West Virginia .....................................................................206

WEST VIRGINIA COUNT I BREACH OF EXPRESS
WARRANTY.....................................................................206

WEST VIRGINIA COUNT II BREACH OF IMPLIED
WARRANTY.....................................................................208

WEST VIRGINIA COUNT III VIOLATION OF THE WEST
VIRGINIA CONSUMER CREDIT AND PROTECTION ACT
............................................................................................210

VIII. PRAYER FOR RELIEF ...........................................................213

IX. JURY TRIAL DEMANDED.....................................................214

Plaintiffs Elizabeth Arellano, Lauren Arnold, Lauranda Atnip, Kellie Carder, Rejenna Chavez, Julie Clarke, Elizabeth Davis-Berg, Australia English, Corallyn Flory, Lisa Francoforte, Ashley Grabowski, Shannon Hager, Jean Leffingwell, Jennifer Murphy, Carl Nelson, Emilio Pensado, Jr., Lakeisha Purter, Leticia Rivera, Kimberi Sanford, Silvia Tehomilić, and Cheryl Varlaro ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this action against Graco Children's Products, Inc. ("Defendant" or "Graco") for its misleading marketing and sale of defective booster seats to the Plaintiffs and other consumers resulting in violation of state consumer statutes and common law.

Plaintiffs' allegations are based upon personal knowledge as to themselves and their own actions, and upon information and belief as to all other matters.

## I.  <u>NATURE OF THE ACTION</u>

1.      Graco manufactures and markets children's products, including infant car seats and booster seats.  In the early 2000s, Graco introduced its "TurboBooster Highback Booster" Seat and "AFFIX Highback Booster Seat" for "big kids" who had reached the 30 pound weight limit of its infant car seats.

2.      Graco's TurboBooster Highback Booster and AFFIX Highback Booster Seat (together, the "Booster Seats"), are virtually identical child car seats designed to raise children up to the proper height for the seatbelt. The Booster Seats

are not equipped with five-point harness restraints.

Graco's AFFIX                    Graco's TurboBooster



3.      Although Graco labeled and marketed the Booster Seats in the United States as (1) "side impact tested" and (2) safe for children as small as 30 pounds and as young as three-years-old, Graco has known since it first started selling the Booster Seats in 2002 that these statements are false and misleading.  The Booster Seats do *not* appreciably reduce the risk of serious injury or death from side-impact accidents, Graco's testing does *not* show that the Booster Seats are safe in a side-impact collision, and the Booster Seats are *not* safe for children under 40 pounds or under four-years-old.

4.      Graco omitted and concealed material facts about the Booster Seats

from its marketing including: (1) Graco's side-impact testing did not comply with federal standards because no such standards exist; (2) the testing did not show that the Booster Seats were safe in a side-impact collision; (3) the Booster Seats in fact would not provide any appreciable safety to their child occupants in the event of a side-impact crash; and (4) the Booster Seats were not suitable for children under 40 pounds.

5.    Since 1987, Canada has prohibited the use of booster seats for children under 40 pounds; instead, those children must be placed in car seats with a five-point harness.[1] Thus, while Graco aggressively marketed the Booster Seats to U.S. consumers as safe for children who weigh as little as 30 pounds, Graco simultaneously represented to Canadian consumers that a child weighing less than 40 pounds using the same Booster Seats risked "serious injury and death."[2]

_____

[1] *See* Daniela Porat, Patricia Callahan, *Evenflo, Maker of the "Big Kid" Booster Seat, Put Profits Over Child Safety*, PROPUBLICA (Feb. 6, 2020), available at https://www.propublica.org/article/evenflo-maker-of-the-big-kid-booster-seat-put-profits-over-child-safety (hereinafter, "ProPublica") (last visited  Oct. 15, 2020).

[2]*See* Graco Booster Seat Owner's Manual, available at https://www.gracobaby.ca/html/common/manuals/PD220791E%20TurboBooster%20Eng.pdf (last visited  Oct. 15, 2020) at 16 ("FAILURE TO USE booster seat in a manner appropriate to your child's size may increase the risk of serious injury and death. To use this Graco booster seat, your child MUST meet ALL of the following requirements: … weigh between 18 and 45 kg (mass between 40 and 100 lbs) (last visited  Nov. 5, 2020).

6.      In the United States, the National Highway Traffic Safety Administration ("NHTSA") warns against using any booster seat for any child weighing less than 40 pounds, noting that such use can endanger those children. Instead, NHTSA cautions that parents should continue to use seats that have an internal five-point harness until the child reaches 40 pounds.[3] A 2009 NHTSA study recognized that "[t]he primary reasons for injuries to children restrained at the time of motor vehicle crashes" include "premature graduation from harnessed safety seats to booster seats."[4] In 2010, NHTSA issued a report reiterating, "[f]orward-facing (convertible or combination) child seats are recommended for children age 1 to 4, or until they reach 40 lbs," and finding that, "[e]arly graduation from child restraint seats (CRS) to booster seats may also present safety risks."[5] Numerous U.S. safety organizations advise parents to continue to put their children in forward-facing child

---

[3] *See*, NHTSA, "Booster Seat Effectiveness Estimates Based on CDS and State Data," https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (July 2010) (last visited  Nov. 16, 2020).

[4] *See* K.E. Will, et al., "Effectiveness of Child Passenger Safety Information For the Safe Transportation of Children," (NHTSA 2015) at 1, available at https://www.nhtsa.dot.gov/sites/nhtsa.dot.gov/files/812121-safe_transportation_of_children.pdf  (citing Arbogast et al., "Effectiveness of belt positioning booster seats: An updated assessment" (2009) (last visited  Nov. 1, 2020)).

[5] *See* NHTSA, "Booster Seat Effectiveness Estimates Based on CDS and State Data," https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (July 2010) (last visited  Nov. 1, 2020).

seats until they reach 40 pounds.

7.      Nevertheless, Graco, in fierce competition with its main rival, sought to increase its sales and market share by falsely claiming that parents can safely transition their children from child restraint seats to Booster Seats once they reach 30 pounds, even though scientific and crash test evidence proves that to be extremely risky and unsafe.

8.      On its website and in its marketing materials, Graco claims that the Booster Seats provide substantial side-impact safety as supported by "rigorous" side-impact testing.[6]   Graco presents its tests as tough, exceeding government requirements, and meeting or exceeding child restraint criteria under Federal Motor Vehicle Safety Standard 213 ("FVMSS 213").

9.      However, there are no federal standards for side-testing of booster seats. In reality, Graco designs its own tests. Despite claiming that it performs "rigorous" side-impact testing, Graco "does not publish or share internal crash test results," and admits that it has "set our own testing protocols."[7]

10.     Independent tests performed at the Medical College of Wisconsin, a

---

[6] *See* "Car Seat Safety Standards & Testing," https://www.gracobaby.com/en-US/safety (last visited Nov. 1, 2020).
[7] *See* FAQs, https://www.gracobaby.com/support/gracofaqs (last visited Nov. 1, 2020).

lab that also performs tests for federal researchers, reveal that when a Graco Booster Seat is side-impact tested using the typical force of a side-impact collision, the child-sized crash dummies properly positioned in the Graco Booster Seats are thrown far outside the boundaries of the Booster Seats.[8]

11.      Graco knows the dangers posed by side-impact crashes to children seated in the Booster Seats and the proper side-impact testing of its Booster Seats demonstrates those dangers rather than showing that the Booster Seats are safe. For example, in a side impact test conducted by experts in a case against Graco brought by a family whose child was permanently injured after suffering a collision while riding in a TurboBooster, the child-sized test-dummy was violently thrown outside



the boundaries of the TurboBooster. According to the expert who viewed the video, the seat allowed "severe head and torso excursion."[9]

---

[8] *See* ProPublica, *infra* n.1.
[9] Restraint System Analysis Report at 33, *McCune v. Graco Children's Products Inc.*, No 5:2009cv00107 (E.D. Tex. June 6, 2011), ECF. No. 97-5.

12.    Yet despite knowledge of these dangers, Graco, continued to market its Booster Seats as safe for children weighing less than 40 pounds, and continued to market its Booster Seats as "SIDE IMPACT TESTED," going so far as to stitch "side impact tested" into its seats' backs:



13.    Given the Booster Seats' lack of crashworthiness, it is no surprise that Graco has faced multiple personal injury lawsuits filed by the families of children severely injured in accidents while using Graco's Booster Seats.

14.    Had Graco truthfully disclosed and reported that the safe weight range of its Booster Seats was above 40 pounds, no parent would have purchased the Booster Seats for a child weighing less than 40 pounds. Similarly, no parent would have purchased the Booster Seats if Graco had truthfully disclosed and reported that the side-impact testing it conducted did not actually establish the safety of its Booster Seats in a side-impact collision, that the testing did not comply with federal standards because no such standards exist, and that the Booster Seats would not provide any

appreciable safety to its child occupants in the event of a side-impact crash. Instead, Graco failed to disclose the proper weight range and insufficient and ineffective side-impact testing. Graco further embarked on a disinformation campaign aimed at convincing millions of consumers that its Booster Seats are safe for children as light as 30 pounds and that they provide appreciable safety to occupants in side-impact collisions.

15.     On December 10, 2020, the United States House of Representatives' Subcommittee on Economic and Consumer Policy issued a staff report entitled *Booster Seat Manufacturers Give Parents Dangerous Advice: Misleading Claims, Misleading Safety Testing, and Unsafe Recommendations to Parents About When They Can Transition Their Children from Car Seats to Booster Seats*. The report details the Subcommittee's findings concerning the safety of child booster seats marketed in the United States. The Subcommittee focused its investigation on seven of the nation's largest booster seat manufacturers, including Graco.[10]

---

[10] U.S. House. Committee on Oversight and Reform. Subcommittee on Economic and Consumer Policy. *Booster Seat Manufacturers Give Parents Dangerous Advice: Misleading Claims, Misleading Safety Testing, and Unsafe Recommendations to Parents About When They Can Transition Their Children from Car Seats to Booster Seats*. (116th Congress). Text from: https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-12-10%20Subcommittee%20on%20Economic%20and%20Consumer%20Policy%20Staff%20Report%20on%20Booster%20Seat%20Investigation.pdf. Accessed: 12/10/20.

16.    The report concludes that Graco and other manufacturers of booster seats, "have endangered the lives of millions of American children and misled consumers about the safety of booster seats by failing to conduct appropriate side-impact testing, deceiving consumers with false and misleading statements and material omissions about their side-impact testing protocols, and unsafely recommending that children under 40 pounds and as light as 30 pounds can use booster seats."[11]

17.    Plaintiffs bring this proposed class action for damages and injunctive relief on behalf of themselves and all other persons and entities nationwide who purchased a Booster Seat.  Plaintiffs bring this class action for violations of relevant state consumer protection statutes, consumer fraud, breach of warranty, common law fraud, and unjust enrichment. Plaintiffs seek injunctive and declaratory relief, damages, interest, costs and reasonable attorneys' fees.

## II. PARTIES

**A.    Defendant**

18.    Defendant Graco Children's Products, Inc. is a Delaware corporation with its principal place of business at 6655 Peachtree Dunwoody Road, Atlanta, Georgia 30328. Graco is a wholly-owned subsidiary of Newell Brands DTC, Inc.

---

[11] *Id.*

Graco designs, manufactures, markets, sells, and distributes the Booster Seats throughout the United States.

**B.    Plaintiffs**

      **1.    Alabama Plaintiff**

      **i.  Lakeisha Purter**

19.    Plaintiff Lakeisha Purter is a citizen of the State of Alabama, residing in Tallassee, Alabama.

20.    On or about 2019, Plaintiff Purter bought a Graco TurboBooster Seat from Burlington in Montgomery, Alabama for her grandson who weighed under 40 pounds at the time of purchase. Plaintiff Purter decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Purter chose the Booster Seat. At the time of purchase, Plaintiff Purter did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Purter aware that there are no federal standards for side-impact testing of booster seats.

21.    Indeed, Plaintiff Purter would not have purchased the Booster Seat, or

would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Puter has stopped using the Booster Seat. Plaintiff Purter has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### 2.   California Plaintiffs

#### i.   Australia English

22.     Plaintiff Australia English is a citizen of the State of California, residing in Eastvale, California.

23.     In or around 2017, Plaintiff English bought a Graco TurboBooster from a Target store in California for her son who weighed approximately 30 pounds at the time of purchase. Plaintiff English decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would

protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff English chose the Booster Seat. At the time of purchase, Plaintiff English did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff English aware that there are no federal standards for side-impact testing of booster seats.

24.     Indeed, Plaintiff English would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff English  stopped using the Booster Seat. Plaintiff English has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### ii.  Emilio Pensado, Jr.

25.     Plaintiff Emilio Pensado, Jr., is a citizen of the State of California,

residing in Hawthorne, California.

26.     On or about May 6, 2018, Plaintiff Pensado, Jr., bought a Graco TurboBooster LX Highback Booster Seat at a Costco store in Hawthorne, California for his daughter who weighed approximately 35 pounds at the time of purchase. Plaintiff Pensado decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Pensado chose the Booster Seat. At the time of purchase, Plaintiff Pensado did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Pensado aware that there are no federal standards for side-impact testing of booster seats.

27.     Indeed, Plaintiff Pensado would not have purchased the Booster Seat, or would have paid less for it, had he known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Penasado stopped using the Booster Seat. Plaintiff Pensado has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact

testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### 3. Florida Plaintiff

#### i. Ashley Grabowski

28.     Plaintiff Ashley Grabowski is a citizen of the State of Florida, residing in Fort Myers, Florida.

29.     On or about February 29, 2020, Plaintiff Grabowski bought a Graco TurboBooster Seat from Amazon.com for her goddaughter who was approximately 33 pounds at the time of purchase. Plaintiff Grabowski decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Grabowski chose the Booster Seat. At the time of purchase, Plaintiff Grabowski did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Grabowski aware that there are no federal standards for side-impact testing of booster seats.

30.     Indeed, Plaintiff Grabowski would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Grabowski stopped using the Booster Seat. Plaintiff Grabowski has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### 4.     Georgia Plaintiffs

#### i.   Kellie Carder

31.     Plaintiff Kellie Carder is a citizen of the State of Georgia, residing in Gainesville, Georgia.

32.     On or about August 29, 2019, Plaintiff Carder purchased a Graco Highback TurboBooster Booster Seat from Amazon.com for her daughter who weighed approximately 33 pounds at the time of purchase. Plaintiff Carder decided to buy the Booster Seat based in part on Graco's representations that it was "safe"

for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Carder chose the Booster Seat. At the time of purchase, Plaintiff Carder did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Carder aware that there are no federal standards for side-impact testing of booster seats.

33.     Indeed, Plaintiff Carder would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Carder stopped using the Booster Seat. Plaintiff Carder has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### ii. Rejenna Chavez

34.　　Plaintiff Rejenna Chavez is a citizen of the State of Georgia, residing in Stockbridge, Georgia.

35.　　On or about December 12, 2019, Plaintiff Chavez bought a Graco TurboBooster Seat from Amazon.com for her grandson who weighed between 35-38 pounds at the time of purchase. Plaintiff Chavez decided to buy the Booster Seat based in part on Graco's representations that it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Chavez chose the Booster Seat. At the time of purchase, Plaintiff Chavez did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Chavez aware that there are no federal standards for side-impact testing of booster seats.

36.　　Indeed, Plaintiff Chavez would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard. Plaintiff Chavez stopped using the Booster Seat. Plaintiff Chavez has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide

-17-

any appreciable safety to its child occupants in the event of a side-impact crash.

### 5. Illinois Plaintiffs

#### i. Elizabeth Davis-Berg

37.     Plaintiff Elizabeth Davis-Berg is a citizen of the State of Illinois, residing in Illinois.

38.     On or about January 2020, Plaintiff Davis-Berg purchased a Graco TurboBooster LX Seat from a Target in Homewood, Illinois for her son who weighed 34 pounds at the time of purchase. Plaintiff Davis-Berg decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Davis-Berg chose the Booster Seat. At the time of purchase, Plaintiff Davis-Berg did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Davis-Berg aware that there are no federal standards for side-impact testing of booster seats.

39.     Indeed, Plaintiff Davis-Berg would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as

30 pounds and as young as three-years-old. Plaintiff Davis-Berg stopped using the Booster Seat. Plaintiff Davis-Berg has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### ii. Shannon Hager

40.     Plaintiff Shannon Hager is a citizen of the State of Illinois, residing in Villa Park, Illinois.

41.     On or about June 30, 2017, Plaintiff Hager bought two Graco Affix Highback Booster Seats with Latch Systems from TPCooking.com. On or around September 5, 2019, Plaintiff Hager purchased an additional two Graco Affix Highback Booster Seats with Latch Systems. These purchases were made for Plaintiff Hager's daughters who weighed approximately 38 pounds at the time of purchase. Plaintiff Hager decided to buy the Booster Seats based in part on Graco's representations that they were "safe" for children as light as 30 pounds and as young as three-years-old, and they were "SIDE IMPACT TESTED" (i.e., it would protect

the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Hager chose the Booster Seats. At the time of purchase, Plaintiff Hager did not know that the Booster Seats could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Hager aware that there are no federal standards for side-impact testing of booster seats.

42.     Indeed, Plaintiff Hager would not have purchased the Booster Seats, or would have paid less for them, had she known that there was no federal side-impact testing standard or that the Booster Seats were not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Hager stopped using the Booster Seats. Plaintiff Hager has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seats, or would have paid less for them, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### 6.   Massachusetts Plaintiff

#### i.  Lauren Arnold

43.     Plaintiff Lauren Arnold is a citizen of the State of Massachusetts, residing in Westford, Massachusetts.

44.     On or about June 2019, Plaintiff Arnold bought a Graco TurboBooster Seat from a Marshalls store in Massachusetts for her children that weighed under 35 pounds at the time of purchase. Plaintiff Arnold decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Arnold chose the Booster Seat. At the time of purchase, Plaintiff Arnold did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Arnold aware that there are no federal standards for side-impact testing of booster seats.

45.     Indeed, Plaintiff Arnold would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Arnold stopped using the Booster Seat. Plaintiff Arnold has suffered a concrete injury as a direct and proximate result

of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### 7. New Jersey Plaintiff

#### i. Leticia Rivera

46.     Plaintiff Leticia Rivera is a citizen of the State of New Jersey, residing in Montclair, New Jersey.

47.     On or about September 10, 2019, Plaintiff Rivera bought a Graco TurboBooster Highback LX Booster Seat from a Target store in Clifton, New Jersey for her granddaughter who weighed between 30-35 pounds at the time of purchase. Plaintiff Rivera decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Rivera chose the Booster Seat. At the time of purchase, Plaintiff Rivera did not know that the Booster Seat could not perform as

advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Rivera aware that there are no federal standards for side-impact testing of booster seats.

48.     Indeed, Plaintiff Rivera would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Rivera stopped using the Booster Seat. Plaintiff Rivera has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### 8.     New York Plaintiff

#### i.   Silvia Tehomilić

49.     Plaintiff Silvia Tehomilić, a citizen of the State of New York, residing in East Westbury, New York.

50.     On or about July 27, 2019, Plaintiff Tehomilić bought two Graco TurboBooster Highback Booster Seats from BestBuy.com for her sons. Plaintiff

Tehomilić decided to buy the Booster Seat based in part on Graco's representations that it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Tehomilić chose the Booster Seats. At the time of purchase, Plaintiff Tehomilić did not know that the Booster Seats could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Tehomilić aware that there are no federal standards for side-impact testing of booster seats.

51.     Indeed, Plaintiff Tehomilić would not have purchased the Booster Seats, or would have paid less for them, had she known that there was no federal side-impact testing standard. Plaintiff Tehomilic´ stopped using the Booster Seats. Plaintiff Tehomilić has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seats, or would have paid less for them, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash.

### 9.    North Carolina Plaintiff

#### i.   Kimberi Sanford

52.    Plaintiff Kimberi Sanford is a citizen of the State of North Carolina, residing in Fayetteville, North Carolina.

53.    On or about December 14, 2019, Plaintiff Sanford bought a Graco Affix Highback Booster Seat with latch system from Amazon.com for her daughter who weighed between 35-38 pounds at the time of purchase. Plaintiff Sanford decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Sanford chose the Booster Seat. At the time of purchase, Plaintiff Sanford did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Sanford aware that there are no federal standards for side-impact testing of booster seats.

54.    Indeed, Plaintiff Sanford would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Sanford stopped using the Booster Seat.  Plaintiff Sanford has suffered a concrete injury as a direct and proximate result

of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### 10.   Ohio Plaintiffs

#### i.   Julie Clarke

55.     Plaintiff Julie Clarke is a citizen of the State of Ohio, residing in Zanesville, Ohio.

56.     In or around 2019 and 2020, respectfully, Plaintiff Clarke bought a Graco TurboBooster Seat from an Aldi store and another from a Walmart store in Ohio for her son who weighed approximately 35 pounds at the time of purchase. Plaintiff Clarke decided to buy the Booster Seats based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and they were "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Clarke chose the Booster Seats. At the time of purchase, Plaintiff Clarke did not know that the Booster Seats could not perform as

advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Clarke aware that there are no federal standards for side-impact testing of booster seats.

57.     Indeed, Plaintiff Clarke would not have purchased the Booster Seats, or would have paid less for them, had she known that there was no federal side-impact testing standard or that the Booster Seats were not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Clarke stopped using the Booster Seats. Plaintiff Clarke has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seats, or would have paid less for them, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### ii. Jennifer Murphy

58.     Plaintiff Jennifer Murphy is a citizen of Ohio, residing in Morristown, Ohio.

59.     On or about June 2019, Plaintiff Murphy bought a Graco TurboBooster Seat at Walmart in Ohio for her daughter who was 32 pounds at the time of purchase. Plaintiff Murphy decided to buy the Booster Seat based in part on

Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old,  it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Murphy chose the Booster Seat. At the time of purchase, Plaintiff Murphy did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Murphy aware that there are no federal standards for side-impact testing of booster seats.

60.     Indeed, Plaintiff Murphy would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Murphy has stopped using the Booster Seat. Plaintiff Murphy has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### 11.  Oklahoma Plaintiff

#### i.  Lauranda Atnip

61.    Plaintiff Lauranda Atnip is a citizen of the State of Oklahoma, residing in Muldrow, Oklahoma.

62.    On or about March 2020, Plaintiff Atnip bought a Graco TurboBooster Seat from Walmart in Oklahoma for her daughter who weighed 33 pounds at the time of purchase. Plaintiff Atnip decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Atnip chose the Booster Seat. At the time of purchase, Plaintiff Atnip did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Atnip aware that there are no federal standards for side-impact testing of booster seats.

63.    Indeed, Plaintiff Atnip would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Atnip has stopped using the Booster Seat. Plaintiff Atnip has suffered a concrete injury as a direct and proximate

result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### 12.   Oregon Plaintiffs

#### i.   Corallyn Flory

64.     Plaintiff Corallyn Flory is a citizen of the State of Oregon, residing in Pleasant Hill, Oregon.

65.     On or about September 1, 2020, Plaintiff Flory bought a Graco TurboBooster Seat from Gracobaby.com for her son who was 38 pounds at the time of purchase. Plaintiff Flory decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Flory chose the Booster Seat. At the time of purchase, Plaintiff Flory did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Flory

aware that there are no federal standards for side-impact testing of booster seats.

66.     Indeed, Plaintiff Flory would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Flory stopped using the Booster Seat.  Plaintiff Flory has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### ii.  Carl Nelson

67.     Plaintiff Carl Nelson is a citizen of the State of Oregon, residing in Central Point, Oregon.

68.     On or about Sept. 15, 2020, Plaintiff Nelson bought two Graco AFFIX Highback Youth Booster Seats from Amazon.com for his daughter who weighed 34 pounds at the time of purchase. Plaintiff Nelson decided to buy the Booster Seats based in part on Graco's representations that it was "safe" for children as light as 30

pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Nelson chose the Booster Seats. At the time of purchase, Plaintiff Nelson did not know that the Booster Seats could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Nelson aware that there are no federal standards for side-impact testing of booster seats.

69.    Indeed, Plaintiff Nelson would not have purchased the Booster Seats, or would have paid less for them, had he known that there was no federal side-impact testing standard or that the Booster Seats were not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Nelson stopped using the Booster Seats. Plaintiff Nelson has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seats, or would have paid less for them, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### 13.   Pennsylvania Plaintiffs

#### i.   Lisa Francoforte

70.     Plaintiff Lisa Francoforte is a citizen of the Commonwealth of Pennsylvania, residing in Nazareth, Pennsylvania.

71.     On or about December 14, 2019, Plaintiff Francoforte purchased a Graco Affix Highback Booster Seat from Amazon.com for her son who weighed approximately 38 pounds at the time of purchase. Plaintiff Francoforte decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Francoforte chose the Booster Seat. At the time of purchase, Plaintiff Francoforte did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Francoforte aware that there are no federal standards for side-impact testing of booster seats.

72.     Indeed, Plaintiff Francoforte would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Francoforte stopped using the Booster Seat. Plaintiff Francoforte has suffered a concrete injury as a direct and

proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### ii. Cheryl Varlaro

73.     Plaintiff Cheryl Varlaro, a citizen of the Commonwealth of Pennsylvania, residing in Chalfont, Pennsylvania.

74.     On or about June 20, 2019, Plaintiff Varlaro purchased a Graco Highback TurboBooster Seat from Amazon.com for her daughter who weighed approximately 35 pounds at the time of purchase. Plaintiff Varlaro decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Varlaro chose the Booster Seat. At the time of purchase, Plaintiff Varlaro did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Varlaro aware that there are no federal

standards for side-impact testing of booster seats.

75.     Indeed, Plaintiff Varlaro would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Valaro stopped using the Booster Seat. Plaintiff Varlaro has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### 14.   Texas Plaintiff

#### i.   Elizabeth Arellano

76.     Plaintiff Elizabeth Arellano is a citizen of the State of Texas, residing in Brownsville, Texas.

77.     On or about March 10, 2019, Plaintiff Arellano bought a Graco TurboBooster Seat from a Marshalls store in Texas for her daughter who weighed 33 pounds at the time of purchase. Plaintiff Arellano decided to buy the Booster Seat

based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Arellano chose the Booster Seat. At the time of purchase, Plaintiff Arellano did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Arellano aware that there are no federal standards for side-impact testing of booster seats.

78.   Indeed, Plaintiff Arellano would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Arellano stopped using the Booster Seat. Plaintiff Arellano has suffered a concrete injury as a direct and proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

### 15.   West Virginia Plaintiff

#### i.  Jean Leffingwell

79.     Plaintiff Jean Leffingwell is a citizen of the State of West Virginia, residing in Huntington, West Virginia.

80.     On or about February 26, 2020, Plaintiff Leffingwell bought a Graco TurboBooster Seat from Walmart.com for her son who weighed between 32-36 pounds at the time of purchase. Plaintiff Leffingwell decided to buy the Booster Seat based in part on Graco's representations that it was "safe" for children as light as 30 pounds and as young as three-years-old, and it was "SIDE IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes). These representations were among the primary reasons Plaintiff Leffingwell chose the Booster Seat. At the time of purchase, Plaintiff Leffingwell did not know that the Booster Seat could not perform as advertised nor that the side-impact testing was meaningless. Nor was Plaintiff Leffingwell aware that there are no federal standards for side-impact testing of booster seats.

81.     Indeed, Plaintiff Leffingwell would not have purchased the Booster Seat, or would have paid less for it, had she known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds and as young as three-years-old. Plaintiff Leffingwell stopped using the Booster Seat. Plaintiff Leffingwell has suffered a concrete injury as a direct and

-37-

proximate result of Graco's misconduct, and would not have purchased the Booster Seat, or would have paid less for it, had Graco not concealed that its side-impact testing did not comply with federal standards because no such standards exist; that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; and that the Booster Seats were not suitable for children under 40 pounds.

82.     Plaintiffs, on behalf of themselves, and the Class Members, have provided Graco reasonable notice and opportunity to cure its breaches of express warranties, breaches of implied warranties of merchantability, and violations of consumer protection laws by mailing a notice letter to Graco on November 5, 2020. Graco also has been provided notice by the numerous consumer class action complaints filed against it.

83.     To the extent required by law, Plaintiffs will provide notice of this action to the state Attorneys General.

## III.    **JURISDICTION AND VENUE**

84.     This Court has original jurisdiction pursuant to 28 U.S.C. § 1331, as this class action alleges a claim under the Magnuson-Moss Warranty Act, the amount in controversy is equal to or exceeds $50,000, exclusive of interest and costs, there are more than 100 class members, and the amount-in-controversy of any

individual claim exceeds $25.  15 U.S.C. § 2310(d)(3)(B).

85.     This Court also has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members, and at least one class member is a citizen of a state different from Graco.

86.     The Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

87.     The Court has personal jurisdiction over Graco because it is headquartered in this District, has regular and systematic contacts with this District, and places its products into the stream of commerce from this District, including the Booster Seats purchased by Plaintiffs.

88.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Graco maintains its headquarters in this District.

## IV.   <u>GENERAL FACTUAL ALLEGATIONS</u>

### A.   Background of Graco

89.     Graco is one of the leading manufacturers and marketers of infant and juvenile products, including the Booster Seats. Graco sells its products through national retail stores such as Walmart and Target, as well as online via Amazon.com, and direct-to-consumer through its website Gracobaby.com.

**B.     The Development of Car Seats**

90.     The first child restraint systems were introduced in 1968, and the first child passenger safety law was passed in Tennessee ten years later.

91.     In the late 1970s, the U.S. public's increasing awareness of the high rates of morbidity and mortality for child passengers resulted in rapid proliferation of state laws on the issue.

92.     Between 1977 and 1985, all fifty states adopted laws aimed at reducing harm to infants and child passengers by requiring the use of a child restraint device.[12]

93.     In the early 1980s, states started requiring crash testing for car seats.

94.     There is and has been a wealth of industry data, recommendations, and "best practice" guidelines not readily available to consumers about the appropriate weight range for children to use booster seats.

95.     For example, the "1989 AAP Car Safety Guidelines" recommended keeping a child in a convertible seat "for as long as possible" and using booster seats only for children 40 pounds and over.

96.     On information and belief, Graco knew about a NHTSA flier pending approval in 1992 that stated:  "A toddler over one year of age, weighing 20 to 40

---

[12] *See id.*

-40-

pounds, is not big enough for a booster seat in a car. He needs the extra protection for his upper body and head that a harness with hip and shoulder straps can give." This flier was included in a 1996 safety study issued by the National Transportation Safety Board.[13]

97.     Beginning in the 1990s, NHTSA and professional associations like the American Academy of Pediatrics ("AAP") developed child passenger safety standards and guidelines that cover a wider range of child passenger safety issues to better protect children from injuries. Among other things, they emphasized the importance of three types of safety practices to protect children: (1) device-based restraints tailored to the age/size of individual child passengers; (2) rear-facing seats; and (3) seatbelts for children who outgrew child restraint devices.

98.     In the early 2000s, the CDC and many states began passing regulations requiring toddlers who were too small to be protected by regular seat belts to use child safety seats. In 2000, Massachusetts and California implemented laws

---

[13] National Transportation Safety Board, Safety Study, *The Performance And Use Of Child Restraint Systems, Seat Belts And Airbags For Children In Passenger Vehicles, Volume 1: Analysis*. NTSB/SS – 96/01. (1996)
https://books.google.com/books?id=Ufw5AQAAMAAJ&pg=PA125&lpg=PA125
&dq=%22A+toddler+over+one+year+of+age,+weighing+20+to+40+pounds,+is+n
ot+big+enough+for+a+booster+seat%22&source=bl&ots=_CgFFf67VI&sig=ACf
U3U0sxpAZJs_K01GyMYG__-
ivhhjuFA&hl=en&sa=X&ved=2ahUKEwiRicD4moXtAhXBGs0KHfxGDccQ6AE
wAHoECAIQAg#v=onepage&q&f=false.

requiring booster seats for children over 40 pounds.

99.     In 2010, NHTSA issued a report reiterating that "[f]orward-facing (convertible or combination) child seats are recommended for children age 1 to 4, or until they reach 40 lbs" and finding that "[e]arly graduation from child restraint seats (CRS) to booster seats may also present safety risks."[14] These recommended convertible or combination safety seats use integrated harnesses, rather than seatbelts, to keep children in place.

100.    And in 2011, the AAP revised its 1989 Policy Statement, issuing a best practice recommendation that children from 2 to 8 years of age should remain in convertible or combination child safety seats, so long as their weight was less than the limit for the seats.  NHTSA updated its guidelines shortly thereafter to reflect the AAP's recommendations:[15]

---

[14]*See* NHTSA, "Booster Seat Effectiveness Estimates Based on CDS and State Data," https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/811338 (last visited Oct. 25, 2020).
[15] *See* NHTSA, "NHTSA Releases New Child Seat Guidelines" (March 21, 2011), available at https://one.nhtsa.gov/portal/site/NHTSA/menuitem.554fad9f184c9fb0cc7ee21056b67789/?vgnextoid=47818846139ce210VgnVCM10000066ca7898RCRD&vgnextchannel=c9f64dc9e66d5210VgnVCM100000656b7798RCRD&vgnextfmt=default.



101.    According to the AAP, the most recent evidence-based, best practices

for optimizing passenger safety include:

a.    All infants and toddlers should ride in a rear-facing car safety seat as long as possible, until they reach the highest weight or height allowed by their car seat manufacturer. Most convertible seats have limits that will permit children to ride rear-facing for 2 years or more.

b.    All children who have outgrown the rear-facing weight or height limit for their seat should use a forward-facing seat with a harness for as long as possible, up to the highest weight or height allowed by the manufacturer.

c.      All children whose weight or height exceed the forward-facing limit for their car seat should use a belt-positioning booster seat until the vehicle lap and shoulder seat belt fits properly, typically when they have reached 4 feet, 9 inches in height and are between 8 and 12 years of age.[16]

102.    While car seat recommendations have changed, the AAP has long embraced one central principle: parents should not move children from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat. Specifically, since the early 2000s, the AAP has advised that children who weigh 40 pounds or less—at the time, the weight limit of most harnessed seats—are best protected in a seat with its own internal harness. Today, almost all harnessed seats can accommodate children up to 65 pounds and as tall as 4 feet, 1 inch, and some fit children up to 90 pounds.

103.    And even this 40-pound threshold is no longer considered ideal. Since 2011, the AAP has recommended (consistent with the above) that children stay in harnessed seats "as long as possible"—that is, in many cases, until they are 65 pounds (and in some cases up to 90 pounds).

104.    These thresholds are crucial because, according to scientific consensus, booster seats do not adequately protect toddlers. To deliver its full safety

---

[16] *See* Dennis R. Durbin et al., *Child Passenger Safety*, 142(5) PEDIATRICS (2018), available at https://pediatrics.aappublications.org/content/142/5/e20182460.

benefit in a crash, an adult seat belt must remain on the strong parts of a child's body—i.e., across the middle of the shoulder and the upper thighs. Even if young children are tall enough for a belt to reach their shoulders, they rarely sit upright for long and often wriggle out of position.

105.   By contrast, a tightly adjusted five-point harness secures a child's shoulders and hips, and goes between the legs. Harnesses secure children's bodies so that they are less likely to be ejected, and they disperse crash forces over a wider area.

## C.   Graco Introduces the Booster Seats

106.   In 2002, Graco launched its first booster seat, the TurboBooster, to address the market for young children who were too large for a child harness car seat, but who were still too small to properly fit in a seat belt. The TurboBooster elevated children so that the automobile seat belt system fit more securely.

107.   In March 2002, Graco managers requested approval from company executives to begin planning for production of the TurboBooster. Although approval typically takes several months, Graco executives approved the TurboBooster in record time—one single day. Graco pushed through this rapid approval to meet the commitments it had already made to supply the TurboBooster to retail stores like Toys "R" Us and Walmart.

108.   Graco was eager to start generating what proved to be a whopping 394% profit margin on the TurboBooster, as it tried to capture as much as 50% of a $260 million annual booster seat market.

109.   The TurboBooster became a top-seller for Graco and was marketed and sold at retailers nationwide. Capitalizing on the popularity of the TurboBooster, Graco began production on a second booster seat, the AFFIX Highback Booster Seat, a booster seat almost identical to the TurboBooster.

110.   Graco's aggressive marketing has helped make its Booster Seats two of the top-selling booster seats in the United States.

**D.   Despite Conclusive Evidence That Its Products Are Dangerous For Children Within The Weight Range It Specifies, Graco Markets Its Booster Seats As Safe For Children Under 40 Pounds and Side-Impact Tested.**

111.   Graco represented to consumers that its "number one priority is safety for the children who depend on our products every day," and claims that its Booster Seats will "help to protect your little one in frontal, side, rear & rollover crashes."[17]

112.   Graco also touted to parents that its Booster Seats were "side-impact tested for occupant retention."

---

[17] *See* "Car Seat Safety Standards & Testing," https://www.gracobaby.com/en-US/safety (last visited Oct. 25, 2020).

113.    But these claims are false. Graco has long known that children under 40 pounds were at risk of paralysis and death if they were riding in a Booster Seat during a car crash, and yet it still marketed its Booster Seats as safe for children weighing as little as 30 pounds.

114.    Canada has prohibited the use of booster seats for children under 40 pounds since 1987.[18] Graco sells its Booster Seats in Canada but acknowledges there that using the Booster Seats is dangerous for children who weigh less than 40 pounds.[19]

115.    Graco informs Canadian consumers that its Booster Seats—seats identical in every material respect to the ones sold in the United States—were specifically designed for use ONLY by children who weigh between 40 and 100 pounds.[20] Graco also informs Canadian consumers that a child weighing less than 40 pounds would be at risk of "DEATH OR SERIOUS INJURY."[21] The Canadian iteration of the warning provided to consumers is provided below:[22]

---

[18] *See* ProPublica, *Supra* n.1.

[19] *See* https://www.gracobaby.ca/html/common/manuals/PD220791E%20TurboBooster%20Eng.pdf (last visited Oct. 25, 2020).

[20] *Id*.

[21] *See id*.

[22] *Id*.



116.    Graco made no such warning to American consumers; rather it expressly stated that 3-year-old children can safely use the Booster Seats, and listed the minimum weight as 30 pounds:[23]

---

[23] Affix Booster Seat: Owner's Manual, https://download.gracobaby.com/ProductInstructionManuals/PD202326A.pdf. (last visited Nov. 19, 2020).

**Weight and Height Limits**

**⚠ WARNING**

FAILURE TO USE booster seat in a manner appropriate for your child's size may increase the risk of serious injury or death.

To use this Graco booster seat, your child MUST meet ALL of the following requirements:

**With back support**
  **(approximately 3 to 10 years old) :**
· weigh between 30 and 100 lbs.
  (mass between 13.6 and 45 kg), and

117.   By 2016, Graco revised the instruction manual for the TurboBooster by changing the minimum age recommendation, but it did not revise the weight requirement:[24]



**3-A Booster Use**

Booster

*Booster Use With Back:*
*30-100 lb (14-45 kg) 38-57 in.*
*(97-145 cm) at least 4 years old*

118.   The weight of a child can determine whether he or she will survive a

---

[24] Turbobooster: Instruction Manual, https://download.gracobaby.com/ProductInstructionManuals/PD349228B.pdf. (last visited Nov. 19, 2020).

car crash while riding in a Booster Seat. This image, taken from a TurboBooster LX

produced and sold in 2018, shows the increased age recommendation without an

increase in the minimum weight:[25]





119.    In 2015, Graco continued to urge parents to move their children from convertible harness seats into Booster Seats as soon as children reached 3 years of age and 30 pounds:



120.    Ignoring the nationally-recognized safety guidelines and best practices for booster seats available to the industry allowed Graco to increase its share of the booming booster seat market.

121.    By advertising the 30-pound minimum weight, Graco deliberately intended to convince parents to move their small children out of child harness restraint systems and into the Booster Seats, generating enormous profits for Graco while endangering children.

**E.    Even After the ProPublica Exposé, Graco Markets Its Booster Seats As Safe For Children Under 40 Pounds.**

122.    After ProPublica published an exposé on the dangers of child booster seats in February 2020,[26] Graco changed its marketing materials in some places to increase the stated minimum weight requirement for its Booster Seats to 40 pounds. For example, Walmart.com currently sells the TurboBooster, but makes clear that the weight minimum has been increased from 30 to 40 pounds "to meet industry standards."[27]   Graco   also   made   similar   changes   on   Amazon.com[28]   and

---

[26] ProPublica, *supra* n.1.

[27] Graco TurboBooster Highback Booster Car Seat, Mosaic, https://www.walmart.com/ip/Graco-TurboBooster-Highback-Booster-Car-Seat-Mosaic/22846275 (last visited  Nov. 15, 2020); Graco Affix Highback Booster Seat with Latch System, Atomic, https://www.walmart.com/ip/Graco-Affix-Highback-Booster-Seat-with-Latch-System-Atomic/22621025 (last visited  Dec. 4, 2020); Graco TurboBooster LX Highback Booster Seat with Latch System, Matrix, https://www.walmart.com/ip/Graco-TurboBooster-LX-Highback-Booster-Seat-with-Latch-System-Matrix/48629033 (last visited  Dec. 4, 2020).

[28] Graco TurboBooster Highback Booster Seat, Go Green, https://www.amazon.com/Graco-Highback-Turbobooster-Seat-Green/dp/B00GY8J8GO (last visited  Dec. 4, 2020); Graco TurboBooster LX High Back Booster Seat with Latch System, Cutler, https://www.amazon.com/Graco-TurboBooster-Highback-Booster-System/dp/B07N3CH8JK/ref=sr_1_1_sspa?dchild=1&keywords=graco+turboboos ter&qid=1606315122&s=baby-products&sr=1-1-spons&psc=1&spLa=ZW5jcnlwdGVkUXVhbGlmaWVyPUEyUFhFMDlSOFFK UU9FJmVuY3J5cHRlZElkPUEwMzY5MDcwWVdRRTExMU5KS0xCJmVuY3J 5cHRlZEFkSWQ9QTEwMzI4MTQxV0dGRFA4UU9YMjlQJndpZGdldE5hbWU 9c3BfYXRmJmFjdGlvbj1jbGlja1JlZGlyZWN0JmRvTm90TG9nQ2xpY2s9dHJ1Z Q (last visited  Dec. 4, 2020); Graco TurboBooster LX Highback Booster Seat with

---

Flexasi.com.[29]

123.    But Graco has not changed its marketing material for all retail outlets.[30] For example on BestBuy.com, Graco still specifies that the TurboBooster has a  minimum weight limit of 30 pounds, touting the low-weight limit as one of the TurboBooster's features:[31]

Features                   **Convertible car seat**
                           Features two modes of use: high-back mode for children 30-100 lbs. and backless mode for children 40-100 lbs.

124.    Similarly, Graco has not changed its marketing material on

---

Latch System, Matrix, https://www.amazon.com/Graco-TurboBooster-Highback-Booster-Matrix/dp/B01BGVLX5M/ref=sr_1_7?dchild=1&keywords=graco+turbobooster&qid=1606315835&s=baby-products&sr=1-7 (last visited  Dec. 4, 2020); Graco Affix Highback Booster Seat with Latch System, Grapeade, https://www.amazon.com/Graco-Affix-Booster-System-Grapeade/dp/B00BR0OMF6/ref=psdc_166837011_t2_B07N3CH8JK (last visited Dec. 4, 2020).

[29] Graco TurboBooster Highback Booster Car Seat, https://flexasi.com/product/graco-turbobooster-highback-booster-car-seat/ (last visited  Dec. 4, 2020).

[30] Plaintiffs have sent Graco's counsel a letter dated 12/11/20 demanding that Graco immediately take appropriate action to ensure that the websites for all retailers selling Graco's Booster Seats and the NHTSA website consistently reflect Graco's current recommendation that the Booster Seats are, in fact, designed only for children weighing between 40 to 100 pounds.

[31] Graco - TurboBooster Highback Booster Car Seat – Glacier, https://www.bestbuy.com/site/graco-turbobooster-highback-booster-car-seat-glacier/6347577.p?skuId=6347577 (last visited  Dec. 4, 2020); *see also* Graco - AFFIX Youth Booster Car Seat – Atomic, https://www.bestbuy.com/site/graco-affix-youth-booster-car-seat-atomic/6347582.p?skuId=6347582 (last visited  Dec. 4, 2020).

Kohls.com, and continues to tout the 30 pound weight limit:[32]

PRODUCT DETAILS
- 26.5"H x 16.5"W x 15"D
- Ages 3 years & older
- Maximum weight capacity: 30 - 100 lbs.
- Seat pad: machine wash
- Manufacturer's 1-year limited warranty
- For warranty information please click here

125.   On Amazon.com, Graco notes that the weight minimum has been increased from 30 to 40 pounds "to meet industry standards," but it still includes a minimum weight recommendation of 30 pounds in the Technical Details for both Booster Seats:[33]

---

[32] Graco Highback TurboBooster Car Seat, https://www.kohls.com/product/prd-2213912/graco-highback-turbo-booster-car-seat.jsp?color=Glacier&prdPV=6 (last visited  Dec. 4, 2020); *see also* Graco AFFIX Highback Booster Seat with Latch System – Atomic, https://www.kohls.com/product/prd-1288693/graco-affix-highback-booster-seat-with-latch-system-atomic.jsp?prdPV=2 (last visited  Dec. 4, 2020); Graco High Back AFFIX Booster Seat, https://www.kohls.com/product/prd-2206954/graco-high-back-affix-booster-seat.jsp?prdPV=3 (last visited  Dec. 4, 2020).

[33] Graco Affix Highback Booster Seat with Latch System, Atomic, https://www.amazon.com/Graco-Affix-Highback-Booster-Atomic/dp/B00AHVR7ZI/ref=sr_1_1?dchild=1&keywords=graco+affix+highback+booster+car+atomic-&qid=1605475836&sr=8-1 (last visited  Nov. 15, 2020); Graco Highback TurboBooster Height Adjustable Car Seat for 30-100 Pounds, Alma, https://www.amazon.com/Graco-Highback-TurboBooster-Seat-%20%20Alma/dp/B01N94DDVG?th=1 (last visited  Nov. 15, 2020)

| Technical Details | |
| --- | --- |
| Item Weight | 9 pounds |
| Product Dimensions | 15.5 x 16.5 x 26.5 inches |
| UPC | 047406124558 |
| Item model number | 1893811 |
| Minimum weight recommendation | 30 Pounds |

126.    On Amazon.com, Graco continues to tell parents that its Affix booster seat "safely transports your 'Big Kid' from 30-100 lbs.," and that the buckling system makes it easy "for your independent child:"[34]

---

[34] Graco Affix Highback Booster Seat with Latch System, Atomic, https://www.amazon.com/Graco-Affix-Highback-Booster-Atomic/dp/B00AHVR7ZI/ref=sr_1_1?dchild=1&keywords=graco+affix+highback+booster+car+atomic-&qid=1605475836&sr=8-1 (last visited  Nov. 15, 2020).

**Safe Transportation for Your Growing Child**



The Graco AFFIX Highback Booster Seat with LATCH System safely transports your "big kid" from 30- 100 lbs. and 38 to 57 inches tall. The LATCH system secures to your vehicle's seat with a 1-handed, front-adjust system. The open-loop belt guide design makes self-buckling easy for your independent child.

127.    Graco even twists the words of the AAP to manipulate parents into placing their young children into booster seats before it is safe to do so—directly contradicting the AAP's own recommendations. According to Graco, the AAP "recommends that children 4 feet 9 inches tall or under should ride in a belt positioning booster seat." Graco goes so far as to say that "in support of the AAP's recommendation," its Affix booster seat "keeps your 'Big Kid' riding in high back

booster seat mode from 30-100 pounds and from 38-57 inches tall:"[35]



**Graco AFFIX Highback Booster Car Seat with Latch System**

Convertible Safety

Graco's AFFIX Highback Booster Car Seat with Latch System, in Atomic, helps keep your growing child safe. The American Academy of Pediatrics (AAP)—one of the most respected resources in child safety—recommends that children 4 feet 9 inches tall or under should ride in a belt positioning booster seat. In support of the AAP recommendation, the AFFIX Highback Booster Seat with Latch keeps your 'big kid' riding in high back booster seat mode from 30 – 100 pounds and from 38 – 57 inches tall. Then, when your child is ready, it converts to backless mode for children 40 – 100 pounds and from 40 – 57 inches tall. It's like having two booster seats in one!

128.    Contrary to Graco's statements, the AAP specifically warns against early transition to booster seats, and suggests that delaying transitions is best. According to the AAP, "[e]ach transition – from rear-facing to forward-facing, from forward-facing to booster seat, and from booster seat to seat belt alone – reduces the protection to the child."[36]

129.    The AAP **does not** recommend that "children 4 feet 9 inches tall or under should ride in a belt positioning booster seat," or that children that weigh as

---

[35] *Id.*

[36]  AAP Updates Recommendations on Car Seats for Children, https://web.archive.org/web/20200305135335/https://www.aap.org/en-us/about-the-aap/aap-press-room/Pages/AAP-Updates-Recommendations-on-Car-Seats-for-Children.aspx.

little as 30 pounds should be "riding in high back booster seat mode."[37] What the AAP actually recommends is that "children should use a forward-facing car safety seat with a harness **for as long as possible**."[38] As the AAP points out, many forward-facing car safety seats "can accommodate children up to 65 pounds or more."[39]

130.    Not only does Graco know the AAP's actual recommendations, Graco repeats the AAPs' same standard to sell its TurboBooster on Walmart.com:[40]

- The American Academy of Pediatrics (AAP) and National Highway Safety Administration (NHTSA) recommend that children should use the built-in harness system for as long as possible until they reach the maximum forward-facing weight or height for their car seat, and after reaching the maximum forward-facing weight or height, that children 4 feet 9 inches tall or under should ride in a belt-positioning booster seat

131.    In fact, Graco's own forward-facing car safety seats with harnesses can accommodate children who weigh as much as 65 pounds.[41]

---

[37] *See* highlighted image above.

[38] Car Seats: Information for Families, https://www.healthychildren.org/English/safety-prevention/on-the-go/Pages/Car-Safety-Seats-Information-for-Families.aspx (last visited Dec. 9, 2020).

[39] *Id.*

[40] Graco TurboBooster Highback Booster Car Seat, Mosaic, https://www.walmart.com/ip/Graco-TurboBooster-Highback-Booster-Car-Seat-Mosaic/22846275 (last visited Nov. 1, 2020).

[41] 4Ever® DLX 4-in-1 Car Seat, https://www.gracobaby.com/car-seats/all-in-one-car-seats/4ever-dlx-4-in-1-car-seat/SAP_2074900.html (last visited  Nov. 18, 2020).

**F.    Graco Markets Its Booster Seats As "Side Impact Tested" And Safe For Children Under 40 Pounds, Despite Conclusive Contrary Evidence From Side-Impact Testing.**

132.    Graco's "Safety Information & Guidelines" claim:[42]

Our number one priority is safety for the children who depend on our products every day. And, nowhere is safety more important than in the car. While specific and rigid government safety requirements guide the design and production of every car seat we make, we, at Graco, take extra steps to meet or exceed those standards to help protect your little one.

133.    Graco touts its "ProtectPlus Engineered" testing as a "combination of the most rigorous crash tests that help to protect your little one in frontal, side, rear & rollover crashes, and additional testing based on the New Car Assessment Program and for extreme car interior temperatures."[43] Graco further states that its Booster Seats "meet or exceed the US Federal Motor Vehicle Safety Standard 213,"[44] which is NHTSA's standard for child car seats.

134.    However, Graco conceals that side-impact tests show that a child riding in one of its Booster Seats could be severely injured or killed by a side-impact collision.

_____

[42] Safety Information & Guidelines, https://web.archive.org/web/20181116175714/https://www.gracobaby.com/en-US/safety?storeId=65051&catalogId=65051.

[43] "Car Seat Safety Standards & Testing," https://www.gracobaby.com/safety.html (last visited  Nov. 15, 2020).

[44] *Id.*

135.    Even the design of the Booster Seat is intended to deceive the consumer. Graco designed the headrests of its Booster Seats with small pieces of material that extend forward from the backrest to give the illusion of providing additional protection.

136.    Although Graco knew—but did not disclose—that these headrests provide no actual security against side-impacts, Graco continues to misrepresent their safety features. Specifically, Graco falsely assures parents that the "[f]ully adjustable headrest keeps your growing child secure on all of your journeys together."[45]

137.    Graco also markets the Booster Seats as "Side-impact tested for occupant retention."[46]

138.    Graco even added two patches to the Booster Seats, marking the products themselves as "SIDE IMPACT TESTED":

---

[45] Graco Affix Highback Booster Seat with Latch System, Atomic, https://www.amazon.com/Graco-Affix-Highback-Booster-Atomic/dp/B00AHVR7ZI/ref=sr_1_1?-++ref=nb_sb_noss&dchild=1&keywords=graco+affix+highback+booster+car+atomic&qid=1603657315&sr=8-1(last visited  Nov. 15, 2020).

[46] Car Seat Safety Standards & Testing, https://www.gracobaby.com/safety.html (last visited  Nov. 15, 2020).



139.    What Graco did not tell consumers is that ***the federal government has no side-impact testing rules or standards for child safety seats***. As a result, Graco's representations that its Booster Seats surpass a non-existent side-impact testing standard are misleading. Currently, the only government-issued crash test standard simulates head-on collisions. Graco took advantage of this regulatory gap and seized the opportunity to devise its own side-impact testing and concealed its specifics from consumers.

140.    Only after the ProPublica exposé did Graco revise its website to acknowledge that "no side-impact testing is currently required under the FMVSS

213."[47] A Child Restraint System must comply with FMVSS 213 to be sold it in the U.S. market, but that standard does not apply to side-impact testing. Even if it did, FMVSS 213 is a *minimum* performance standard and manufacturers—like Graco— self-certify whether they meet this very low standard.

141.    Graco admits that it only "self-certif[ies]" that its Booster Seats comply with the FVMSS 213 standard, and that it "does not publish or share internal car seat test results."[48]

142.    In truth, Graco's side-impact tests were insufficient, with no reasonable standard whatsoever. Graco conceals the fact that a test showing "occupant retention" does not establish that the Booster Seat adequately protects a child in a side-impact collision.

143.    A report authored by an expert in occupant crash protection and restraint systems who has collaborated with the NHTSA and the AAP found that "side impact testing conducted by Graco demonstrates very poor occupant crash protection," and that, "[e]ven with the side wings provided by the seat back the

---

[47] "Car Seat Safety Standards & Testing," https://www.gracobaby.com/safety.html#:~:text=While%20no%20side%2Dimpact %20testing,in%20highback%20belt%2Dpositioning%20modes (last visited Dec. 9, 2020).

[48] Does Graco Publish car seat test results?, https://www.gracobaby.com/support/gracofaqs (last visited  Nov. 15, 2020).

TurboBooster fails to contain the head and torso of the child dummy and allows severe head and torso excursion."[49]

144.    Video stills from the tests show the upper portion of the body of child-sized dummies being flung far outside the booster seat, where a child's head, neck, and spine would be in terrible danger. Such violent movement of the dummy at high speed in the booster seat could lead to abdominal, brain, and spinal injuries in a real child, including paralysis or death.[50]



145.    Graco has long known from its own secret and undisclosed testing that the seat's side structure provides no side-impact protection. Rather, the headrest and structure of the Booster Seats allowed the head, upper torso, and even the abdomen of the child-sized test dummy to be ejected from the confines of the Booster Seat.

---

[49] Restraint System Analysis Report at 33-34, *McCune v. Graco Children's Products Inc.*, No 5:2009cv00107 (E.D. Tex. June 6, 2011), ECF. No. 97-5.
[50] *Id.*

Even though such a test result would pass a test for "occupant retention" because the test dummy's legs and lower portion of its torso remained in the Booster Seat, the violent movement of the upper portion of a child's torso could result in catastrophic injuries.

146.    Despite all of the evidence cited and discussed above, Graco continues to make misrepresentations and omissions of material fact to consumers regarding the safety of its Booster Seats.

147.    Graco has known for at least 15 years that young children have been paralyzed and killed from side-impact collisions while riding in its Booster Seats, because it has been sued repeatedly in connection with these severe and horrendous injuries. Among other things, these personal injury suits allege that small children suffered catastrophic injuries and/or died following collisions in which they slipped out from under seat belts while riding in Graco Booster Seats, that Graco failed to warn parents that their children were too young and too small to be riding in Graco Booster Seats, and that Graco knew its Booster Seats would not provide effective restraint for children weighing at or near 40 pounds.

148.    Graco's foregoing representations regarding safety, testing, and its supposed surpassing of federal government safety standards are materially false and misleading for all of the reasons discussed above.

149.    Similarly, Graco's concealment and omission of the inherent dangers

in using the Booster Seats with children under 40 pounds, the inadequacy of Graco's side-impact testing, the Booster Seats' lack of stability and containment in side-impacts, and/or the Booster Seats' complete lack of side-impact protection, are materially misleading.

## G.   U.S. House of Representatives' Investigates Misleading Marketing Tactics Used by Booster Seat Manufacturers

150.   On December 10, 2020, the United States House of Representatives' Subcommittee on Economic and Consumer Policy issued a staff report on the marketing tactics used by seven of the nation's largest booster seat Manufacturers, including Graco.[51]

151.   As part of the Subcommittee investigation, staff members analyzed "thousands of pages of previously non-public documents from those seven companies, including internal records detailing side-impact testing protocols; written results of side-impact tests; videotapes of side-impact tests; and internal

_____

[51] U.S. House. Committee on Oversight and Reform. Subcommittee on Economic and Consumer Policy. *Booster Seat Manufacturers Give Parents Dangerous Advice: Misleading Claims, Misleading Safety Testing, and Unsafe Recommendations to Parents About When They Can Transition Their Children from Car Seats to Booster Seats*. (116th Congress). Text from: https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2020-12-10%20Subcommittee%20on%20Economic%20and%20Consumer%20Policy%20Staff%20Report%20on%20Booster%20Seat%20Investigation.pdf. Accessed: 12/10/20.

communications regarding marketing, instructions, and safety labeling."[52]

152.   The Subcommittee concluded that the marketing practices of Defendant Graco and other booster seat manufacturers were misleading with respect to safety.  In particular, the Subcommittee made the following findings concerning Graco:

- ". . . Graco . . . deceptively market[s] their booster seats as 'side-impact tested.' The manufacturers have created their own weak testing conditions, which do not even involve an impact. The tests do not measure occupant safety. Instead, the manufacturers grade their booster seats' performance on a standard that it [is] nearly impossible to fail[.]"[53]

- "Graco's self-designed standard also fails to test for occupant safety. Marketing booster seats as 'side-impact tested,' under these circumstances misleads consumers into believing that the booster seats passed meaningful impact tests, which they did not. It appears from simulations with test dummies that side-impact collisions would result in severe injuries to children."[54]

- Although Graco "advertised [its] booster seats as 'Side-impact tested,' they were not. … [Graco's] tests merely involve a booster seat on a bench moving sideways at 20 miles per hour and then decelerating without impact."[55]

---

[52] *Id.*

[53] *Id.*

[54] *Id.*

[55] *Id.*

- **" . . . GRACO . . . UNSAFELY ADVERTISED BOOSTER SEATS FOR 30-POUND CHILDREN DESPITE WARNINGS OF EXPERTS."**[56]

- **"Graco . . . Dangerously Market[s] Their Booster Seats for Children Under 40 Pounds**."[57]

- "Graco . . . also made the unsafe recommendation of a 30-pound minimum weight for their booster seats at the time the Subcommittee launched this inquiry. Since then, Graco has corrected that practice and adopted a 40-pound recommendation."[58]

- "Since the start of the Subcommittee's investigation, Graco updated its website and user manual to reflect a new 40-pound minimum: 'To continue to meet industry standards, we have increased the weight minimum from 30 to 40 lb.' But until that change, Graco had used the unsafe 30-pound standard."[59]

- " . . . Graco uses different marketing materials and user manuals in the U.S. and Canadian markets for virtually identical booster seats. The 2018 Canadian user manual for its 'TurboBooster' booster seat lists a 40-pound weight minimum and warns consumers that 'FAILURE TO USE booster seat in a manner appropriate for your child's size may increase the risk of serious injury or death.' By contrast, in the United States, Graco issued no such warnings. Instead, Graco advertised a virtually identical product (the 'TurboBooster LX Highback') as safe for children between 30 and 40 pounds on the product's webpage and in its user manual . . . Graco has sold booster seats in the United States with minimum recommended weights of 30 pounds since at least 2006."[60]

---

[56] *Id.*

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Id.*

- " . . . Graco . . . engage[s] in unfair and deceptive practices by claiming that their booster seats are 'side-impact tested.' The Subcommittee's review of the companies' side-impact testing protocols, standards, and results reveals that these claims are meaningless and bear little relation to child safety. These tests are entirely self-designed, are not rigorous, and fail to adequately assess the risk of injury to children."[61]

- "Although . . . Graco . . . advertised their booster seats as 'Side-impact tested,' they were not."[62]

153.    The Subcommittee also observed that consumers reasonably rely on the deceptive marketing practices of Graco and other booster seat manufacturers: "When manufacturers claim that a booster seat is "side-impact tested," a consumer would believe that the booster seat went through a realistic crash simulation that showed that the booster seat meaningfully protected the occupant from injury."[63]

## V. <u>TOLLING AND ESTOPPEL OF STATUTE OF LIMITATIONS</u>

154.    Graco has had actual knowledge for several years that the marketing, packaging, and labeling of its Booster Seats was deceptive and misleading because its internal and undisclosed side-impact tests confirm that the Booster Seats pose serious safety risks to children, there are no government-issued side-impact safety

---

[61] *Id.*
[62] *Id.*
[63] *Id.*

standards that the Booster Seats could meet or exceed, and Graco devised its own side-impact standards without regard to safety.

## A.  Continuing Act Tolling

155.    Beginning in 2002, Graco continuously marketed and sold the Booster Seats to unsuspecting parents and caregivers. Graco continuously represented these Booster Seats as safe for children weighing as little as 30 pounds and as having been tested and found to be safe in a side-impact crash. By continuously repeating these false representations, and failing to disclose that the Booster Seats were unsafe for children weighing less than 40 pounds, were not tested to ensure safety in a side-impact collision, and were in fact inherently unsafe in a side-impact crash (exposing children to great risk of injury and death), Graco engaged in a continuing wrong sufficient to render inapplicable any statute of limitations that Graco might seek to apply.

156.    Graco's knowledge of the true nature of the Booster Seats is evidenced by, among other things: numerous complaints by consumers of injury and death, warnings from the AAP and major consumer groups, and lawsuits against them for children's death and other injuries.

157.    Thus, at all relevant times, Graco knew that it was concealing and misrepresenting material facts and knew of the material dangers posed by the

Booster Seats but continued to tout the safety of these products in its marketing and sales materials. Plaintiffs and other Class members' claims are not time barred.

**B.     Fraudulent Concealment Tolling**

158.     Graco had a duty to disclose to Plaintiffs and the Class members the true quality and nature of the Booster Seats and Graco's side-impact testing, including that the Booster Seats were unsafe, that they are in fact dangerous to children weighing less than 40 pounds or in a side-impact collision, that Graco's side-impact testing did not establish the safety of the Booster Seat, and that proper side-impact testing demonstrated the unsafe nature of the Booster Seats in a side-impact collision.

159.     This duty to disclose arose, among other things, due to Graco's representations that the Booster Seats were safe for children as small as 30 pounds and in side-impact collisions.

160.     Graco knew about these safety risks at all relevant times. Prior to selling the Booster Seats, Graco knew or, but for its extreme recklessness, should have known that the Booster Seats posed a risk to children weighing less than 40 pounds and were not safe in a side-impact collision and that Graco's side-impact testing did not demonstrate that the Booster Seats were safe in a side-impact collision.

161.    Despite its knowledge of the defective design and danger of the products when used as intended, Graco actively concealed this material information from Plaintiffs and other Class members. Graco continued to market the Booster Seats as safe for children weighing under 40 pounds and in side-impact collisions and as having been tested for safety in a side-impact collision, going so far as to mislabel the Booster Seats as "Side Impact Tested" throughout the class period.

162.    Graco actively concealed the dangers of the Booster Seats and the true nature of their testing to continue to profit from their sale and prevent Plaintiffs and other Class members from seeking redress.

163.    Plaintiffs and the other Class members justifiably relied on Graco to disclose the true nature of the products they purchased and the true nature of Graco's testing, because the truth was not discoverable by Plaintiffs and the other Class members through reasonable efforts. Any applicable statute of limitations has been tolled by Graco's knowledge, active concealment, and denial of the facts alleged herein, which behavior is ongoing.

## C.    Discovery Rule Tolling

164.    Plaintiffs and other Class members, through the exercise of reasonable diligence, could not have discovered Graco's wrongdoing. Graco concealed and misrepresented the true nature of the Booster Seats and the safety risks in their use.

165.   Until recently, Graco was able to conceal the fact that it knew its Booster Seats pose a serious safety risk to children, especially those weighing less than 40 pounds, and that their testing in fact did not establish the safety of the Booster Seats in a side-impact collision. Plaintiffs, Class Members, and the public at-large had no way of knowing these material facts until ProPublica published a robust article exposing certain facts regarding the safety of booster seats on February 6, 2020. While some of the information reported by ProPublica may have been disclosed in connection with earlier, individual litigation, it was sealed by the court or only available via a fee-based access system, such as CM/ECF, which the average person typically does not know how to access or navigate.

166.   Plaintiffs and Class Members could not have reasonably discovered the true extent of Graco's illegal conduct until ProPublica published the aforementioned article on February 6, 2020. Nor could Plaintiffs and other Class members have known of facts that would have caused a reasonable person to suspect that Graco knowingly failed to disclose material information about the dangers of the Booster Seats or the inadequacy of its testing to U.S. consumers.

167.   As such, no potentially relevant statute of limitations should be applied.

**D.   Estoppel**

168.    Graco was under a continuous duty to disclose to Plaintiffs and other Class members that the Booster Seats were not safe for children weighing less than 40 pounds, that the Booster Seats were not safe in the event of a side-impact collision, and that Graco's testing did not establish that the Booster Seats were safe in a side-impact collision.

169.    Graco knowingly, affirmatively, and actively concealed the true nature, quality, and character of the Booster Seats and Graco's testing from Plaintiffs and other members of the Class.

170.    Thus, Graco is estopped from relying on any statutes of limitations in defense of this action.

## VI.    CLASS ACTION ALLEGATIONS

171.    Plaintiffs bring this action on behalf of themselves and as a class action pursuant to Rules 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, on behalf of the following class (the "Nationwide Class") and subclasses (the "State Subclasses"):

> **Nationwide Class:** All persons within the United States who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

> **Alabama Subclass:** All persons in the state of Alabama who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**California Subclass:** All persons in the state of California who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**Florida Subclass:** All persons in the state of Florida who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**Georgia Subclass**: All persons in the state of Georgia who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**Illinois Subclass**: All persons in the state of Illinois who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**Massachusetts Subclass**: All persons in the state of Massachusetts who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**New Jersey Subclass**: All persons in the state of New Jersey who purchased a Graco Booster Seats from the beginning of any applicable limitations period through the date of class certification.

**New York Subclass**: All persons in the state of New York who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**North Carolina Subclass**: All persons in the state of North Carolina who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**Ohio Subclass**: All persons in the state of Ohio who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**Oklahoma Subclass**: All persons in the state of Oklahoma who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**Oregon Subclass**: All persons in the state of Oregon who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**Pennsylvania Subclass**: All persons in the state of Pennsylvania who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**Texas Subclass**: All persons in the state of Texas who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

**West Virginia Subclass**: All persons in the state of West Virginia who purchased a Graco Booster Seat from the beginning of any applicable limitations period through the date of class certification.

172.    Excluded from the Classes are Defendant and any entities in which Defendant or its parents, subsidiaries or affiliates have a controlling interest, and Defendant's officers, agents, and employees. Also excluded from the Classes are the judge assigned to this action, members of the judge's staff, and any member of the judge's immediate family.

173.    Plaintiffs reserve the right to amend the Class definitions if discovery and further investigation reveal that the Class should be narrowed, expanded, or otherwise modified.

174.    **Numerosity**. Members of the Class are so numerous and geographically dispersed that joinder of all members is impracticable. During the Class Period, millions of Graco Booster Seats were sold to millions of individual

customers. Class members are readily identifiable from information and records in the possession of Graco and third-party merchants like Amazon, Target, Walmart, Kmart, Costco, and Babies R Us.

175.   **Commonality and Predominance.** Questions of law and fact common to the members of the Class predominate over questions that may affect only individual Class members because Graco acted on grounds generally applicable to the entire Class, thereby making damages with respect to the Class as a whole appropriate. Such generally applicable conduct is inherent in Graco's wrongful actions. Questions of law and fact common to the Class include, but are not limited to:

> a.   Whether Graco's Booster Seats are unsafe for child occupants weighing less than 40 pounds;
>
> b.   Whether Graco owed a duty of care to Plaintiffs and members of the Classes;
>
> c.   Whether Graco was negligent or grossly negligent in representing that the Booster Seats were safe for child occupants weighing less than 40 pounds;
>
> d.   Whether Graco was negligent or grossly negligent in representing the Booster Seats were side-impact tested and safe;

e.      Whether Graco represented through advertising, marketing, and labeling that the Booster Seats were safe for child occupants weighing less than 40 pounds and/or safe in a side-impact crash;

f.      Whether Graco acted to conceal that the Booster Seats are unsafe for children under 40 pounds;

g.      Whether Graco acted to conceal that the Booster Seats are unsafe in side-impact crashes and that its side-impact testing did not show that the Booster Seats were safe in side-impact collisions;

h.      Whether Graco's failure to disclose the safety risks posed by use of the Booster Seats and the inadequacy of its testing was unfair, deceptive, fraudulent, or unconscionable;

i.      Whether Graco's representations and/or omissions in advertising, marketing, and labeling are likely to mislead a reasonable consumer;

j.      Whether Graco knew that its representations and/or omissions in advertising, marketing, and labeling were false, deceptive, or misleading;

k.      Whether Graco engaged in unlawful, fraudulent, or unfair business practices;

l.      Whether Graco violated statutes and/or common law as

described herein;

m.     Whether Graco was unjustly enriched at the expense of Plaintiffs and Class Members;

n.     Whether Graco should be ordered to disgorge all or part of the ill-gotten profits it received from the sales of the Booster Seats;

o.     Whether Graco breached express warranties to Plaintiffs and Class Members;

p.     Whether Plaintiffs and the other Class members are entitled to damages, and in what amount; and

q.     Whether Plaintiffs and the other Class members are entitled to declaratory or injunctive relief.

176.    **Typicality**. Plaintiffs' claims are typical of the claims of the other members of the Class because, among other things, Plaintiffs and the other Class members were injured through the substantially uniform misconduct by Graco. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other Class members, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and of other Class members arise from the same operative facts and are based on the same legal theories.

177.    **Adequacy of Representation.** Plaintiffs are adequate representatives

of the Class because their interests do not conflict with the interests of the other Class members they seeks to represent. Plaintiffs have retained counsel competent and experienced in complex class action litigation and Plaintiffs will prosecute this action vigorously. The Class members' interests will be fairly and adequately protected by Plaintiffs and their counsel.

178.   **Declaratory and Injunctive Relief**. Graco will continue to commit the unlawful practices alleged herein, and Class Members will remain at an unreasonable and serious safety risk as a result of the Booster Seats. Graco has acted or refused to act on grounds generally applicable to Plaintiffs and the other Members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as requested in the Prayer for Relief below, with respect to the Members of the Classes as a whole.

179.   **Superiority.** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiffs and the other members of the Class are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Graco, making it impracticable for Class members to individually seek redress for Graco's wrongful conduct. Even if Class members could afford individual litigation,

the court system could not. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

180.    Further, Graco has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

181.    Likewise, particular issues under Rule 23(c)(4) of the Federal Rules of Civil Procedure are appropriate for certification because such claims present only particular, common issues, the resolution of which would advance the disposition of this matter and the parties' interests therein. Such particular issues include, but are not limited to, those set forth above.

## VII.   CAUSES OF ACTION

**A.    Nationwide Claims**

**NATIONWIDE COUNT I**
**VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT**
**15 U.S.C. § 2301, et seq.**
**(On Behalf of Plaintiffs and the Nationwide Class)**

182.    Plaintiffs bring this count on behalf of themselves and members of the

Nationwide Class.

183.    The sale of the Booster Seats was subject to the provisions and regulations of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.

184.    The Booster Seats are "consumer products" as defined in the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

185.    Plaintiffs and the other Nationwide Class members are "consumers" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

186.    Graco is a "supplier" and "warrantor" as defined by the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

187.    The Booster Seats' implied warranties are covered by the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(7).

188.    Graco breached these warranties, as further described above, by not disclosing the true nature of the Booster Seats, and by providing the Booster Seats not in merchantable condition and not fit for the ordinary purpose for which they are used. They are also not fit for the specific purposes for which Graco sold them and for which Class members purchased and/or owned them.

189.    Privity is not required in this case because Plaintiffs and the other Class members are intended third-party beneficiaries of contracts between Defendant and those who sell its products; specifically, they are the intended beneficiaries of Graco's express and implied warranties. The vendors were not

intended to be the ultimate consumers of the Booster Seats and have no rights under the warranty agreements provided with the Booster Seats; the warranty agreements were designed for and intended to benefit the ultimate consumers only. Finally, privity is also not required because the Booster Seats are dangerous instrumentalities due to the unsafe nature for children weighing under 40 pounds and not safe in side-impact crashes.

190.    Requiring an informal dispute settlement procedure, or affording Graco a reasonable opportunity to cure its breach of written warranties, is unnecessary and futile. Graco knew, should have known, or was reckless in not knowing, of its misrepresentations concerning the Booster Seats, but nonetheless failed to rectify the situation and/or disclose the truth. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement – whether under the Magnuson-Moss Warranty Act or otherwise – that Plaintiffs resort to an informal dispute resolution procedure and/or afford Graco a reasonable opportunity to cure its breach of warranties is excused and thereby deemed satisfied.

191.    Plaintiffs and the other Class members have been damaged as a result of the wrongful conduct complained of herein. Said conduct continues, and the harm or risk of harm is ongoing.

192.    There are more than 100 class members. The amount in controversy

also exceeds the statutory minimums set forth at 15 U.S.C. § 2310(d)(3). Each Class

member's individual claim is equal to or larger than $25 and the cumulative amount

in controversy (excluding interest and costs) exceeds $50,000.

193.    As a result of Graco's violations of the Magnuson-Moss Warranty Act

and warranties with consumers, Plaintiffs and the other members of the Class have

been damaged in an amount to be determined at trial.

**NATIONWIDE COUNT II**
**COMMON LAW FRAUD**
**(On Behalf of Plaintiffs and the Nationwide Class and, in the Alternative, the**
**State Subclasses)**

194.    Plaintiffs assert this claim for common law fraud on an affirmative

misrepresentation theory on behalf of themselves and the Nationwide Class or, in

the alternative, on behalf of the State Subclasses, against Graco.

195.    As detailed above, Graco made false or misleading statements to

Plaintiffs and Class members regarding the safety of the Booster Seats, including

age and weight limits, and the side-impact testing. These misrepresentations include:

     i.     Misrepresenting that the Booster Seats are safe for children who weigh

           as little as 30 pounds;

    ii.     Misrepresenting that the Booster Seats are "SIDE IMPACT TESTED"

           and provide side-impact protection;

iii.    Misrepresenting that Graco's Booster Seats are "engineered and tested and crash tested to meet or exceed U.S. safety standards";

iv.    Misrepresenting that Graco's Booster Seats are subjected to "a combination of the most rigorous crash tests that helps to protect your child in frontal, side, rear, and rollover crashes"; and

v.    Misrepresenting that the headrest on the Booster Seats "helps keep your child secure" in a side-impact collision.

196.    Graco made these statements through, among other things, labels on the Booster Seats and on the packaging that described the equipment and features of the Booster Seats, and in the owners' manuals, warranty booklets, product brochures, advertisements, and other promotional materials for the Booster Seats.

197.    Graco's representations were false and misleading because: (a) the Booster Seats are not safe for use by children under four years or 40 pounds; (b) Graco's own testing showed that use by such children makes them susceptible to serious bodily injury or death in the event of a car crash; (c) the Booster Seats do not meet or exceed federal side-impact safety standards, because no such standards exist; (d) Graco's testing does not show that the Booster Seats would provide any appreciable safety to its child occupants in the event of a side-impact crash; and (e) the headrest on the Booster Seats does not help keep child occupants secure in a side-

impact collision.

198.    Graco knew the representations were false and intended that Plaintiffs and Class members rely on them.

199.    These misrepresentations were material to Plaintiffs' and Class members' decision to acquire the Booster Seats.

200.    Plaintiffs and members of the Nationwide Class and the State Subclasses justifiably relied on Graco's misrepresentations of material facts regarding the Booster Seats, as described above.

201.    Each Plaintiff decided to purchase a Booster Seat based in part on the Graco's representations regarding the safety of the Booster Seats and the specifications.

202.    Graco's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate. Because Graco's deceptive and unfair conduct is ongoing, injunctive relief is necessary and proper.

## NATIONWIDE COUNT III
## COMMON LAW FRAUD
### (On Behalf of Plaintiffs and the Nationwide Class and, in the Alternative, the State Subclasses)

203.    Plaintiffs assert this claim for common law fraud on a concealment theory on behalf of themselves and members of the Nationwide Class and the State Subclasses.

204.    Graco made pervasive and consistent statements regarding the safety of the Booster Seats and the specifications that concealed, suppressed, omitted, and failed to disclose material facts necessary to make those statements not misleading. As detailed above, Graco's statements describing the equipment and features of the Booster Seats in labels, packaging, owners' manuals, warranty booklets, product brochures, advertisements, and other promotional materials for the Booster Seats. These statements represented that the Booster Seats were "safe" for children as light as 30 pounds and as young as three-years-old, were side-impact tested and provided side-impact protection, met or exceeded U.S. safety standards, were subjected to rigorous crash tests, and included a headrest that helps keep child occupants secure in a side-impact collision, such that the Booster Seats would properly protect intended users in a crash.

205.    Graco knowingly, willfully, fraudulently, and/or recklessly concealed and suppressed material facts regarding the Booster Seats, including: (a) the Booster Seats are not safe for use by children under four years or 40 pounds; (b) Graco's own testing showed that use by such children makes them susceptible to serious bodily injury or death in the event of a car crash; (c) the Booster Seats do not meet or exceed federal side-impact safety standards, because no such standards exist; (d) Graco's testing does not show that the Booster Seats would provide any appreciable safety to its child occupants in the event of a side-impact crash; and (e) the headrest on the

Booster Seats does not help keep child occupants secure in a side-impact collision. Thus, Graco knowingly, willfully, fraudulently, and/or recklessly concealed that the Booster Seats would not properly protect an intended user during a crash.

206.   These concealed and suppressed facts were material because a reasonable consumer would have expected that a side-impact tested Booster Seat designed for children as little as 30 pounds would properly protect intended users during a crash and that Graco's testing had demonstrated that fact.

207.   A reasonable consumer would rely on those facts in deciding whether to purchase a Booster Seat. Whether a manufacturer's products are safe and reliable, and whether that manufacturer stands behind its products, are material concerns to a consumer.

208.   Plaintiffs and Class Members did not know that their Booster Seats would not properly protect intended users during a crash nor that the Booster Seats did not meet federal side-impact safety testing. Nor could Plaintiffs and Class Members have discovered these concealed facts through reasonably diligent investigation.

209.   Graco has a duty to disclose the truth regarding the safety of its Booster Seats, because the safety of the Booster Seats has a direct impact on the health and safety of the children who occupy them. This duty arose from the fact that Graco:

    i.   Had exclusive and/or far superior knowledge and access to the material, suppressed facts regarding the Booster Seat testing and lack thereof;

    ii.   Affirmatively and intentionally concealed the material facts from Plaintiffs and Class Members; and

    iii.   Knew that the side-impact testing and 30 pound weight limit were material facts that would affect Plaintiffs' and Class Members' decisions to buy a Booster Seat.

210.    Each Plaintiff decided to buy a Booster Seat based in part on Graco's representations as to the safety, testing, and specifications of the Booster Seats.

211.    The material facts Graco omitted to disclose were made to Plaintiffs and members of the Nationwide Class and the State Subclasses when they purchased the Booster Seats.

212.    Graco intended that its omissions of material fact would deceive or mislead Plaintiffs and members of the Nationwide class and the State Subclasses, and induce them to purchase its Booster Seat.

213.    Plaintiffs and members of the Nationwide Class and the State Subclasses justifiably relied on Graco's omissions of material facts regarding the Booster Seats, as described above.

214.    Graco's omissions of material facts directly and proximately caused the damages suffered by Plaintiffs and members of the Nationwide Class and the State Subclasses. As a result of Graco's omissions of material facts, Plaintiffs and members of the Nationwide Class and the State Subclasses have been damaged in an amount to be proven at trial.

215.    Graco's conduct showed malice, motive, and a reckless disregard of the truth such that an award of punitive damages is appropriate.

216.    Because Graco's deceptive and unfair conduct is ongoing, injunctive relief is necessary and proper.

## NATIONWIDE COUNT IV
## UNJUST ENRICHMENT
### (On Behalf of Plaintiffs and the Nationwide Class and, in the Alternative, the State Subclasses)

217.    Plaintiffs bring this count on behalf of themselves and members of the Nationwide Class and the State Subclasses.

218.    Graco knowingly accepted and enjoyed the benefits of Plaintiffs and Class members purchasing or causing the purchase of Booster Seats.

219.    Graco should not be able to retain the benefit of the funds paid because the members of the Classes rendered payment with the expectation that the Booster Seats would be as represented and warranted—a well-designed product that was thoroughly tested and provided safety in a side-impact car crash.

220.    Graco misrepresented and omitted material facts regarding the actual

dangers posed by the flawed design of the Booster Seat, the meaningless side-impact

testing of the Booster Seats, and the illusory protection provided by the Booster Seats

in a side-impact car crash. Through those misrepresentations and omissions, the

Plaintiffs and members of the Classes purchased the Booster Seats through which

Graco profited.

221.    Equity dictates that Graco's ill-gotten gains be disgorged, and that the

Plaintiffs and members of the Classes are entitled to restitution.

## NATIONWIDE COUNT V
## NEGLIGENT MISREPRESENTATION
**(On Behalf of Plaintiffs and the Nationwide Class and, in the Alternative, the State Subclasses)**

222.    Plaintiffs bring this count on behalf of themselves and members of the

Nationwide Class and the State Subclasses.

223.    During the Class Period, Graco represented to the public in its

websites, marketing materials, and packaging of the Booster Seats that the products

were safe, thoroughly tested, and provided a safety benefit in side-impact car

crashes.

224.    Graco's representations were material to the purchasing decisions of

Plaintiffs and Class members.

225.    Plaintiffs relied on Graco's misrepresentations in purchasing and

using the Booster Seats.

226.    At the time of sale, Graco should have known that these representations about the safety of the Booster Seats were false.

227.    Based on these representations of material fact, Graco had a duty to disclose the truth about the safety characteristics of the Booster Seats and the lack of any federal side-impact testing standards. Despite this duty, Graco failed to exercise reasonable care or competence in communicating information regarding the testing design and safety of the Booster Seats to Plaintiffs and Class members.

228.    These misrepresentations were made uniformly to the consuming public, including the members of the Classes. Plaintiffs and members of the Classes relied on Graco's misrepresentations, and would not have purchased and/or owned a Booster Seat had Graco not made the misrepresentations about its design, safety and testing.

229.    As a result of Graco's negligent misrepresentations concerning the Booster Seat, Plaintiffs and members of the Classes have been damaged.

**B.    State-Specific Claims**

1.     **Alabama**

**ALABAMA COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(Ala. Code § 7-2-313)**

230.    Plaintiff Lakeisha Purter ("Alabama Plaintiff") brings this claim on behalf of herself and the Alabama Subclass against Graco.

231.    Graco is and was at all relevant times a "merchant" under Ala. Code §§ 7-2-104(1).

232.    Alabama Plaintiff and the Alabama Subclass members who purchased the Booster Seats in Alabama are "buyers" within the meaning of Ala. Code § 7-2-103(1)(a).

233.    The Booster Seats are and were at all relevant times "goods" within the meaning of Ala. Code § 7-2-105(1).

234.    In connection with the purchase of all Booster Seats, Graco provided Alabama Plaintiff and the Alabama Subclass members with written express warranties that the Booster Seats were free of defects.

235.    Further, Graco expressly warranted and represented that its Booster Seats:

    a.    Were safe for children who weigh as little as 30 pounds;

    b.    Were safe for children who weigh less than 40 pounds;

    c.   Were "SIDE IMPACT TESTED" and provided side-impact protection;

    d.   Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

    e.   Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

    f.   Included a headrest that "helps keep your child secure" in a side-impact collision.

236.   Graco's express warranties formed the basis of the bargain that was reached when the Alabama Plaintiff and the Alabama Subclass members purchased the Booster Seats.

237.   Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

238.   As a direct and proximate result of Graco's breach of its express warranties, the Alabama Plaintiff and the Alabama Subclass members have been damaged in an amount to be proven at trial.

239.   Accordingly, recovery by Alabama Plaintiff and the Alabama Subclass members is not limited to the contractual remedies provided by Graco's express warranties, and Alabama Plaintiff, individually and on behalf of the Alabama Subclass members, seek all remedies as allowed by law.

## ALABAMA COUNT II
## BREACH OF IMPLIED WARRANTY
### (Ala. Code § 7-2-314)

240.     Plaintiff Lakeisha Purter ("Alabama Plaintiff") brings this claim on behalf of herself and the Alabama Subclass against Graco.

241.     Alabama law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Ala. Code § 7-2-314(1).

242.     Graco is and was at all relevant times a merchant as defined by Ala. Code § 7-2-104(1).

243.     Alabama Plaintiff and members of the Alabama Subclass purchased Booster Seats manufactured and marketed by Graco by and through Graco's authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Graco's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Graco was a merchant, manufacturer, marketer, warrantor, and/or seller of the Booster Seats. Graco knew or had reason to know of the specific use for which the Booster Seats were purchased.

244.     The Booster Seats are and were at all relevant times goods within the meaning of Ala. Code § 7-2-105(1).

245.     Graco  impliedly  warranted  that  the  Booster  Seats  were  in

-94-

merchantable condition and fit. However, when sold, and at all times thereafter, the Booster Seats were not in merchantable condition, were not fit for the ordinary purpose of providing safety and protection for children in the event of a side-impact crash, and were not fit for the ordinary purpose of providing safety and protection for children under four years old or who weighed less than 40 pounds, thus presenting an undisclosed safety risks to children. Thus, Graco breached its implied warranty of merchantability for the ordinary purpose for which the Booster Seats are purchased and used.

246.    Graco cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous booster seats.

247.    As a direct and proximate result of Graco's breach of the implied warranty of merchantability, Alabama Plaintiff and members of the Alabama Subclass have been damaged in an amount to be proven at trial.

248.    Alabama Plaintiff and members of the Alabama Subclass have been excused from performance of any warranty obligations as a result of Graco's conduct described herein.

## ALABAMA COUNT III
## VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT
### (Code of Ala. §§ 8-19-1, *et seq.*)

249.    Plaintiff Lakeisha Purter ("Alabama Plaintiff") brings this claim under

the Alabama Deceptive Trade Practices Act ("ADTPA") on behalf of herself and the Alabama Subclass against Graco.

250.   Graco is a "person" as defined by Ala. Code § 8-19-3(5).

251.   Alabama Plaintiff and Alabama Subclass members are "consumers" as defined by Ala. Code § 8-19-3(2).

252.   Graco is engaged in "trade" or "commerce" as those terms are defined Ala. Code § 8-19-3(8).

253.   Graco advertised and sold the Booster Seats in Alabama and engaged in trade or commerce directly or indirectly affecting the people of Alabama.

254.   The ADTPA declares "deceptive acts or practices in the conduct of any trade or commerce" to be unlawful, Ala. Code § 8-19-5, including but not limited to "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have," "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another," "[a]dvertising goods or services with intent not to sell them as advertised," id. §§ 8-19-5(5), (7), (9).

255.   Graco engaged in deceptive trade practices that violated the ADTPA by knowingly making misleading statements about the safety of its Booster Seats and knowingly failing to disclose the safety risks posed by its Booster Seats, which put children's health and wellbeing at serious risk in side-impact car crashes.

256.    For example, Graco falsely and misleadingly represented that the Booster Seats were "Side Impact Tested" and safe for children less than 40 pounds. Graco also failed to disclose material facts, including but not limited to the following: (a) that Graco's side-impact testing did not comply with federal standards because no such standards exist; (b) that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; (c) that the Booster Seats were not suitable for children under 40 pounds; (d) that children should not be moved from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat; and (e) that no child should use a booster seat until he or she weighs at least 40 pounds.

257.    Graco intentionally and knowingly misrepresented and failed to disclose material facts it had a duty to disclose regarding its Booster Seats with the intent to mislead Alabama Plaintiff and the Alabama Subclass.

258.    Graco knew or should have known that its conduct violated the ADTPA.

259.    Graco owed Alabama Plaintiff and the Alabama Subclass members a duty to disclose material facts about the safety risks posed by the Booster Seats, because Graco:

a.    Possessed exclusive knowledge about its testing of these seats;

b.      Intentionally concealed the foregoing from Alabama Plaintiff and the Alabama Subclass; and/or

c.      Made incomplete and misleading representations that its Booster Seats were "Side Impact Tested," while purposefully withholding material facts from Alabama Plaintiff and the Alabama Subclass that contradicted these representations.

260.   Graco had a duty to disclose the truth about the safety risks posed by its Booster Seats because these seats put children's health and wellbeing at serious risk in side-impact car crashes.

261.   Graco's omissions and/or misrepresentations about the safety of its Booster Seats were material to Alabama Plaintiff and the Alabama Subclass. Alabama Plaintiff and Alabama Class members relied on Graco's material misrepresentations and omissions regarding the safety of Graco's Booster Seats.

262.   Alabama Plaintiff and members of the Alabama Subclass could not have discovered through the exercise of reasonable diligence that Graco's Booster Seats are unsafe in side-impact crash tests. Alabama Plaintiff and Alabama Subclass members acted reasonably in relying on Graco's misrepresentations and omissions, the truth of which they could not have discovered.

263.   Had Graco disclosed to Alabama Plaintiff and Alabama Subclass

members material facts, including but not limited to, the safety risks posed by its Booster Seats, Alabama Plaintiff and the Alabama Subclass members would not have purchased the Booster Seats or would have paid less.

264.   Graco's unfair and deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Alabama Plaintiff and the Alabama Subclass members, about the true safety risks posed by the Booster Seats.

265.   Graco had an ongoing duty to all Graco customers to refrain from unfair and deceptive acts and practices under the ADTPA.

266.   As a direct and proximate result of Graco's unfair and deceptive acts and practices, Alabama Plaintiff and absent Alabama Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, including from not receiving the benefit of their bargain in purchasing the Booster Seats.

267.   Graco's violations present a continuing risk to Alabama Plaintiff, the Alabama Subclass and/or the general public. Graco's unlawful acts and practices complained of herein affect the public interest.

268.   On November 5, 2020, Plaintiff sent Graco pre-suit notice of their claims under the ADTPA §§ 8-19-1, *et seq.* Graco did not respond with a reasonable offer of relief to the Alabama Plaintiff.

269.   Alabama Plaintiff and Alabama Subclass members seek all monetary

and nonmonetary relief allowed by law, including the greater of actual damages or statutory damages of $100 each, treble damages, injunctive relief, reasonable attorney's fees and costs, under Ala. Code §§ 8-19-10 (a)(1), (2), (3), and as permitted under the ADTPA and applicable law.

### 2.   California

**CALIFORNIA COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(Cal. Com. Code § 2313)**

270.   Plaintiffs Australia English and Emilio Pensado, Jr. ("California Plaintiffs") bring this claim on behalf of themselves and the California Subclass against Graco.

271.   Graco is and was at all relevant times a "merchant" with respect to booster seats under Cal. Com. Code § 2104(1), and a "seller" of Booster Seats under § 2103(1)(d).

272.   All California Subclass members who purchased Booster Seats in California are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

273.   The Booster Seats are and were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

274.   In connection with the purchase of all Booster Seats, Graco provided the California Plaintiffs and California Subclass members with written express

warranties that the Booster Seats were free of defects.

275.   Further, Graco expressly warranted and represented that its Booster Seats:

    a.  Were safe for children who weigh as little as 30 pounds;

    b.  Were safe for children who weigh less than 40 pounds;

    c.  Were "SIDE IMPACT TESTED" and provided side-impact protection;

    d.  Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

    e.  Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

276.   Graco's express warranties formed the basis of the bargain that was reached when the California Plaintiffs and California Subclass members purchased the Booster Seats.

277.   Graco breached its express warranties to because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

278.   As a direct and proximate result of the Graco's breach of its express warranties, the California Plaintiffs and California Subclass members have been damaged in an amount to be proven at trial.

## CALIFORNIA COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (Cal. Com. Code § 2314)

279.    Plaintiffs Australia English and Emilio Pensado, Jr. ("California Plaintiffs") bring this claim on behalf of themselves and the California Subclass against Graco.

280.    A warranty that the Booster Seats were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Cal. Com. Code § 2314.

281.    The Booster Seats did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which Booster Seats were used. Specifically, the Booster Seats were not suitable for a child weighing less than 40 pounds and they would not properly protect child occupants during a side-impact crash, thus they are inherently defective and dangerous.

282.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats, Cal. Com. Code § 2104(1), and a "seller" of Booster Seats under § 2103(1)(d).

283.    All California Subclass members who purchased Booster Seats in California are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

284.    The Booster Seats were at all relevant times "goods" within the meaning of Cal. Com. Code § 2105(1).

285.    As a direct and proximate result of Graco's breach of the implied warranty of merchantability, the California Plaintiff and California Subclass members have been damaged in an amount to be proven at trial.

## CALIFORNIA COUNT III
## FALSE ADVERTISING UNDER THE CALIFORNIA FALSE ADVERTISING LAW
## (Cal. Bus. & Prof. Code §§ 17500, *et seq.*)

286.    Plaintiffs Australia English and Emilio Pensado, Jr. ("California Plaintiffs") bring this claim on behalf of themselves and the California Subclass against Graco.

287.    Graco, California Plaintiffs, and California Subclass members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

288.    The California False Advertising Law ("California FAL") prohibits false advertising.  Cal. Bus. & Prof. Code § 17500.

289.    Graco misrepresented, omitted, concealed, and failed to disclose material facts regarding the reliability, safety, and performance of the Booster Seats, as detailed above.

290.    Specifically, by misrepresenting the Booster Seats as being safe for children weighing less than 40 pounds and being side-impacttested, and by failing

to disclose and actively concealing the dangers and risk posed by the Booster Seats, Graco engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500.

291.    Graco made or caused to be made and disseminated throughout California advertising, marketing, and other publications containing statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Graco, to be untrue and misleading to consumers, including the California Plaintiffs and California Subclass members. Examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

292.    Graco's misrepresentations, concealments, omissions, and suppressions of material facts had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the California Plaintiffs and California Subclass members, about the true safety and reliability of Booster Seats, the quality of Graco's brands, and the true value of the Booster Seats.

293.    Graco's scheme and concealment of the true characteristics of the Booster Seats were material to the California Plaintiffs and California Subclass members, as Graco intended.  Had they known the truth, the California Plaintiffs and California Subclass members would not have purchased the Booster Seats, or would

have paid significantly less for them.

294.    The California Plaintiffs and California Subclass members had no way of discerning that those representations were false and misleading, or otherwise learning the facts that Graco had concealed or failed to disclose. The California Plaintiffs and California Subclass members did not, and could not, unravel Graco's deception on their own.

295.    Graco had an ongoing duty to the California Plaintiffs and California Subclass members to refrain from unfair or deceptive practices under the California FAL in the course of its business.  Specifically, Graco owed the California Plaintiffs and California Subclass members a duty to disclose all the material facts concerning the Booster Seats because Graco possessed exclusive knowledge, intentionally concealed the true characteristics of the Booster Seats from the California Plaintiffs and California Subclass members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

296.    The California Plaintiffs and California Subclass members lost money or property as a direct and proximate result of the Graco's violations of the California FAL.

297.    Graco's violations present a continuing risk to the California Plaintiffs and California Subclass members, as well as to the general public. Graco's unlawful acts and practices complained of herein affect the public interest.

298.    The California Plaintiffs and California Subclass members seek an order enjoining Graco's false advertising, any such orders or judgments as may be necessary to restore to the California Plaintiffs and California Subclass members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

### CALIFORNIA COUNT IV
### VIOLATION OF THE CONSUMER LEGAL REMEDIES ACT
### (Cal. Civ. Code §§ 1750, *et seq.*)

299.    Plaintiffs Australia English and Emilio Pensado, Jr. ("California Plaintiffs") bring this claim on behalf of themselves and the California Subclass against Graco.

300.    The Booster Seats are "goods" within the meaning of Cal. Civ. Code § 1761(a).

301.    Graco, California Plaintiffs, and California Subclass members are "persons" within the meaning of Cal. Civ. Code § 1761(c).

302.    The California Plaintiffs and California Subclass members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

303.    The California Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any

person in a transaction intended to result or that results in the sale . . . of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

304.    In the course of its business, Graco, through its agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the reliability, safety, and performance of the Booster Seats, as detailed above.

305.    Specifically, by misrepresenting the Booster Seats as safe for children weighing less than 40 pounds and as being side-impact tested, and by failing to disclose and actively concealing the dangers and risk posed by the Booster Seats, Graco engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

      i.   Representing that the Booster Seats have characteristics, uses, benefits, and qualities which they do not have;

      ii.   Representing that the Booster Seats are of a particular standard, quality, and grade when they are not;

      iii.   Advertising the Booster Seats with the intent not to sell them as advertised; and

      iv.   Representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Cal. Civ. Code §§ 1770(a)(5), (7),  (9), and (16).

306.    Graco's unfair or deceptive acts or practices, including its misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the California Plaintiffs and California Subclass members, about the true safety and reliability of Booster Seats, the quality of the Booster Seats, and the true value of the Booster Seats.

307.    Graco's scheme and concealment of the true characteristics of the Booster Seats were material to the California Plaintiffs and California Subclass members.   Had they known the truth, the California Plaintiffs and California Subclass members would not have purchased the Booster Seats, or would have paid significantly less for them.

308.    The California Plaintiffs and California Subclass members had no way of discerning that Graco's representations were false and misleading, or otherwise learning the facts that Graco had concealed or failed to disclose.   The California Plaintiffs and California Subclass members did not, and could not, unravel Graco's deception on their own.

309.    Graco had an ongoing duty to the California Plaintiffs and California Subclass members to refrain from unfair or deceptive practices under the CLRA in

the course of its business. Specifically, Graco owed the California Plaintiffs and California Subclass members a duty to disclose all the material facts concerning the Booster Seats because it possessed exclusive knowledge, it intentionally concealed the true characteristics of the Booster Seats from California Plaintiffs and the California Subclass members, and/or it made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

310.   The California Plaintiffs and California Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Graco's concealment, misrepresentations, and/or failure to disclose material information.

311.   Graco's violations present a continuing risk to the California Plaintiffs and California Subclass members, as well as to the general public. Graco's unlawful acts and practices complained of herein affect the public interest.

312.   On November 5, 2020, Plaintiffs sent Graco pre-suit notice of their claims under the CLRA, Cal. Civ. Code § 1782, *et seq.*  Graco did not respond with a reasonable offer of relief to the California Plaintiffs.

313.   Pursuant to Cal. Civ. Code § 1780(a), the California Plaintiffs and California Subclass members seek an order enjoining Graco's unfair or deceptive acts or practices and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the CLRA against Graco.

## CALIFORNIA COUNT V
## UNLAWFUL, UNFAIR, OR FRAUDULENT BUSINESS PRACTICES
## UNDER THE CALIFORNIA UNFAIR COMPETITION LAW
### (Cal. Bus. & Prof. Code §§ 17200, *et seq.*)

314.   Plaintiffs Australia English and Emilio Pensado, Jr. ("California Plaintiffs") bring this claim on behalf of themselves and the California Subclass against Graco.

315.   California's Unfair Competition Law ("UCL"), Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business act or practices."

316.   As detailed in the allegations above, Graco knowingly and intentionally designed, developed, tested, manufactured, marketed and sold Booster Seats, while misrepresenting and fraudulently concealing the safety and testing of the Booster Seats from the California Plaintiffs and California Subclass members alike. In doing so, Graco has engaged in at least the following unlawful, fraudulent, and unfair business acts and practices in violation of the UCL:

> i.    Concealing from the California Plaintiff and California Subclass members that the Booster Seats are not suitable for use by children weighing less than 40 pounds nor have the Booster Seats been side-impact tested by any federal standard while obtaining money from the California Plaintiffs and California Subclass members; and

> ii.   Marketing the Booster Seats as being able to properly protect children during side-impact

crashes.

317.    Graco's misrepresentations, omissions, and concealment of the true characteristics of Booster Seats were material to the California Plaintiffs and California Subclass members.  Had they known the truth, the California Plaintiffs and California Subclass members who purchased the Booster Seats would not have purchased them at all, or would have paid significantly less for them.

318.    The California Plaintiffs and California Subclass members lost money or property as a result of Graco's violations of the UCL.

319.    Pursuant to Cal. Bus. & Prof. Code § 17200, the California Plaintiffs and California Subclass members seek an order enjoining Graco's unfair and/or deceptive acts or practices, any such orders or judgments as may be necessary to restore to the California Plaintiff and California Subclass members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in Cal. Bus. & Prof. Code § 17203, and any other just and proper relief available under the California UCL.

### 3.    Florida

### FLORIDA COUNT I
### BREACH OF EXPRESS WARRANTY
### (Fla. Stat. § 672.313)

320.    Plaintiff Ashley Grabowski ("Florida Plaintiff") brings this claim on

behalf of herself and the Florida Subclass against Graco.

321.   Graco is and was at all relevant times a "merchant" with respect to Booster Seats under Fla. Stat. § 672.104(1).

322.   Florida Plaintiff and all Florida Subclass members who purchased the Booster Seats in Florida are "buyers" within the meaning of Fla. Stat. § 672.103(1)(a).

323.   The Booster Seats are and were at all relevant times "goods" within the meaning of Fla. Stat. § 672.105(1).

324.   In connection with the purchase of all Booster Seats, Graco provided Florida Plaintiff and the Florida Subclass members with written express warranties that the Booster Seats were free of defects.

325.   Further, Graco expressly warranted and represented that its Booster Seats:

   a.  Were safe for children who weigh as little as 30 pounds;

   b.  Were safe for children who weigh less than 40 pounds;

   c.  Were "SIDE IMPACT TESTED" and provided side-impact protection;

   d.  Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

   e.  Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover

crashes"; and

    f.   Included a headrest that "helps keep your child secure" in a side-impact collision.

326.   Graco's express warranties formed the basis of the bargain that was reached when the Florida Plaintiff and the Florida Subclass members purchased the Booster Seats.

327.   Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

328.   As a direct and proximate result of the Graco's breach of its express warranties, the Florida Plaintiff and Florida Subclass members have been damaged in an amount to be proven at trial.

## FLORIDA COUNT II
## BREACH OF IMPLIED WARRANTY
### (Fla. Stat. § 672.314)

329.   Plaintiff Ashley Grabowski ("Florida Plaintiff") brings this claim against Graco on behalf of herself and the Florida Subclass.

330.   Florida law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Fla. Stat. § 672.314(1).

331.   Graco is and was at all relevant times a "merchant" as defined by Fla.

Stat. § 672.104(1).

332.   Florida Plaintiff and members of the Florida Subclass purchased Booster Seats manufactured and marketed by Graco by and through its authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Graco's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Graco was a merchant, manufacturer, marketer, warrantor, and/or seller of the Booster Seats. Graco knew or had reason to know of the specific use for which the Booster Seats were purchased.

333.   The Booster Seats are and were at all relevant times goods within the meaning of Fla. Stat. § 672.105(1).

334.   Graco impliedly warranted that the Booster Seats were in merchantable condition and fit. However, when sold, and at all times thereafter, the Booster Seats were not in merchantable condition, were not fit for the ordinary purpose of providing safety and protection for children in the event of a side-impact crash, and were not fit for the ordinary purpose of providing safety and protection for children under four years old or who weighed less than 40 pounds, thus presenting undisclosed safety risks to children. Thus, Graco breached its implied warranty of merchantability for the ordinary purpose for which the Booster Seats are purchased and used.

335.    Graco cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous booster seats.

336.    As a direct and proximate result of Graco's breach of the implied warranty of merchantability, Florida Plaintiff and members of the Florida Subclass have been damaged in an amount to be proven at trial.

337.    Florida Plaintiff and members of the Florida Subclass have been excused from performance of any warranty obligations as a result of Graco's conduct described herein.

## FLORIDA COUNT III
## VIOLATION OF THE FLORIDA UNFAIR & DECEPTIVE TRADE PRACTICES ACT
### (Fla. Stat. §§ 501.201, *et seq.* )

338.    Plaintiff Ashley Grabowski ("Florida Plaintiff") brings this claim against Graco on behalf of herself and the Florida Subclass.

339.    Florida Plaintiff and Florida Subclass members are "consumers" as defined by Fla. Stat. § 501.203.

340.    Graco advertised, offered, or sold goods or services in Florida and engaged in trade or commerce directly affecting the people of Florida.

341.    Graco engaged in unconscionable, unfair, and deceptive acts and practices in the conduct of trade and commerce, in violation of Fla. Stat. § 501.204(1).

342.    Graco's false representations and omissions as alleged herein were material because they were likely to deceive reasonable consumers.

343.    For example, Graco falsely and misleadingly represented that the Booster Seats were "Side-impact Tested" and safe for children less than 40 pounds. Graco also failed to disclose material facts, including but not limited to the following: (a) that Graco's side-impact testing did not comply with federal standards because no such standards exist; (b) that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; (c) that the Booster Seats were not suitable for children under 40 pounds; (d) that children should not be moved from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat; and (e) that no child should use a booster seat until he or she weighs at least 40 pounds.

344.    Florida Plaintiff and Florida Subclass members would not have purchased the Booster Seats or would have paid less. Florida Plaintiff and Florida Subclass members acted reasonably in relying on Graco's misrepresentations and omissions, the truth of which they could not have discovered.

345.    As a direct and proximate result of Graco's deceptive acts and practices, Florida Plaintiff and Florida Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of their bargain

in purchasing the Booster Seats.

346.    Florida Plaintiff and Florida Subclass members seek all monetary and nonmonetary relief allowed by law, including actual or nominal damages under Fla. Stat. § 501.21; declaratory and injunctive relief; reasonable attorneys' fees and costs, under Fla. Stat. § 501.2105(1); and any other relief that is just and proper.

### 4.    Georgia

### GEORGIA COUNT I
### BREACH OF EXPRESS WARRANTY
### (O.C.G.A., § 11-2-313)

347.    Plaintiffs Kellie Carder and Rejenna Chavez ("Georgia Plaintiffs") bring this claim on behalf of themselves and the Georgia Subclass against Graco.

348.    Graco is and was at all relevant times a "merchant" with respect to the Booster Seats under O.C.G.A. § 11-2-104(1), and a "seller" of Booster Seats under § 11-2-103(1)(d).

349.    Georgia Plaintiffs and the Georgia Subclass members who purchased Booster Seats in Georgia are "buyers" within the meaning of O.C.G.A. § 11-2-103(1)(a).

350.    The Booster Seats are and were at all relevant times "goods" within the meaning of O.C.G.A. § 11-2-105(1).

351.    In connection with the purchase of all Booster Seats, Graco provided

the Georgia Plaintiffs and the Georgia Subclass members with written express warranties that the Booster Seats were free of defects.

352.   Further, Graco expressly warranted and represented that its Booster Seats:

    a.   Were safe for children who weigh as little as 30 pounds;

    b.   Were safe for children who weigh less than 40 pounds;

    c.   Were "SIDE IMPACT TESTED" and provided side-impact protection;

    d.   Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

    e.   Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

    f.   Included a headrest that "helps keep your child secure" in a side-impact collision.

353.   Graco's express warranties formed the basis of the bargain that was reached when the Georgia Plaintiffs and the Georgia Subclass members purchased the Booster Seats.

354.   Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

355.   As a direct and proximate result of Graco's breach of its express

warranties, the Georgia Plaintiffs and the Georgia Subclass members have been damaged in an amount to be proven at trial.

## GEORGIA COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (O.C.G.A., § 11-2-314)

356.    Plaintiffs Kellie Carder and Rejenna Chavez ("Georgia Plaintiffs") bring this claim on behalf of themselves and the Georgia Subclass against Graco.

357.    A warranty that the Booster Seats were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to O.C.G.A. § 11-2-314.

358.    The Booster Seats did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which Booster Seats were used. Specifically, the Booster Seats are not suitable for use by children weighing less than 40 pounds, did not provide safety and protection for children in the event of a side-impact crash, and did not satisfy federal side-impact safety standards. Thus the Booster Seats are inherently defective and dangerous and pose a high risk of serious bodily injury or death involved in a crash.

359.    Graco breached the warranty implied because the Booster Seats do not

"pass without objection in the trade under the contract description;" are not "fit for the ordinary purposes for which such goods are used;" and do not "[c]onform to the promises or affirmations of fact made on the container or label." *See* O.C.G.A. § 11-2-314(2)(a), (c), and (f). As a result, Georgia Plaintiffs and Georgia Subclass members did not receive the goods as impliedly represented by Graco to be merchantable.

360.   The Georgia Plaintiffs and the Georgia Subclass members who purchased Booster Seats in Georgia are "buyers" within the meaning of O.C.G.A. § 11-2-103(1)(a).

361.   Graco is and was at all relevant times a "merchant" with respect to Booster Seats O.C.G.A. § 11-2-104(1), and a "seller" of Booster Seats under § 11-2-103(1)(d).

362.   The Booster Seats were at all relevant times "goods" within the meaning of O.C.G.A. § 11-2-105(1).

363.   Graco misled consumers into believing that the Booster Seats were safe for use. Graco took advantage of Plaintiffs' and Class members' trust and confidence in its brand, and deceptively sold the Booster Seats, knowing that it could cause serious injury and even death.

364.   Graco's intended beneficiaries of these implied warranties were ultimately Georgia Plaintiffs and the Georgia Subclass members, not distributors

who sold the Booster Seats. Moreover, Graco exercises substantial control over which outlets can carry and sell the Booster Seats, which are the same place that Georgia Plaintiffs purchased them. In addition, Graco's warranties are in no way designed to apply to the distributors that purchase the Booster Seats in bulk and then sell them on an individual basis to each consumer. Individual consumers are the ones who ultimately review the labels, which Graco knows, prior to making any purchasing decisions. As a result, these warranties are specifically designed to benefit the individual consumer who purchased the Booster Seats.

365.    Georgia Plaintiffs and Georgia Subclass members sustained damages as a direct and proximate result of Graco's breaches in that they would not have purchased the Booster Seats if they knew the truth about the Booster Seats and the product they received was worth substantially less than the product they were promised and expected.

366.    Accordingly, Georgia Plaintiffs are entitled to injunctive relief, attorneys' fees and costs, and any other relief that the Court deems just and equitable.

## GEORGIA COUNT III
## VIOLATION OF THE GEORGIA FAIR BUSINESS PRACTICES ACT
## (O.C.G.A. §§ 10-1-390, *et seq.*)

367.    Plaintiffs Kellie Carder and Rejenna Chavez ("Georgia Plaintiffs") bring this action on behalf of themselves and the Georgia Subclass against Graco.

368.    Graco, Georgia Plaintiffs, and the Georgia Subclass members are "persons" within the meaning of O.C.G.A. § 10-1-392(a)(24).

369.    Georgia Plaintiffs and the Georgia Subclass members are "consumers" within the meaning of O.C.G.A. § 10-1-392(a)(6).

370.    Graco was and is engaged in "trade" and "commerce" within the meaning of O.C.G.A. § 10-1-392(a)(28).

371.    The Georgia Fair Business Practices Act ("Georgia FBPA") prohibits "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce[.]"  O.C.G.A. § 10-1-393(a).

372.    In the course of its business, Graco, through its agents, employees, and/or subsidiaries, violated the Georgia FBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the durability, reliability, safety, and performance of the Booster Seats, as detailed above.

373.    Specifically, Graco made the following misrepresentations and omissions:

     i.    Misrepresenting that the Booster Seats are safe for children who weigh as little as 30 pounds;

    ii.    Misrepresenting that the Booster Seats are "SIDE IMPACT TESTED" and provide side-impact protection;

      iii.     Misrepresenting that Graco's Booster Seats are "engineered and tested and crash tested to meet or exceed U.S. safety standards";

      iv.     Misrepresenting that Graco's Booster Seats are subjected to "a combination of the most rigorous crash tests that helps to protect your child in frontal, side, rear, and rollover crashes"; and

      v.     Misrepresenting that the headrest on the Booster Seats "helps keep your child secure" in a side-impact collision.

374.    Graco's representations were false and misleading because Graco omitted to disclose that: (a) Graco knew that the Booster Seats are not safe for use by children under four years or 40 pounds; (b) Graco's own testing showed that use by such children makes them susceptible to serious bodily injury or death in the event of a car crash; (c) the Booster Seats do not meet or exceed federal side-impact safety standards, because no such standards exist; (d) Graco's testing does not show that the Booster Seats would provide any appreciable safety to its child occupants in the event of a side-impact crash; and (e) Graco knew that the headrest on the Booster Seats does not help keep child occupants secure in a side-impact collision.

375.    Specifically, by misrepresenting the Booster Seats as safe, and by failing to disclose and actively concealing the dangers and risk posed by the Booster Seats, Graco engaged in one or more unfair or deceptive business practices prohibited by the Georgia FBPA, O.C.G.A. § 10-1-393(b)(5), (7), and (9), including:

    i.     Representing that the Booster Seats have characteristics, uses, benefits, and qualities which they do not have; and

    ii.    Representing that the Booster Seats are of a particular standard, quality, and grade when they are not; and

    iii.   Advertising the Booster Seats with the intent not to sell them as advertised.

376. Graco's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Georgia Plaintiffs and the Georgia Subclass members, about the true safety and reliability of Booster Seats, the quality of Graco's brands, and the true value of the Booster Seats.

377. Graco's scheme and concealment of the true characteristics of the Booster Seats were material to the Georgia Plaintiffs and the Georgia Subclass members, as Graco intended. Had they known the truth, Georgia Plaintiffs and the Georgia Subclass members would not have purchased Booster Seats, or would have paid significantly less for them.

378. Georgia Plaintiffs and Georgia Subclass members had no way of discerning that Graco's representations were false and misleading, or otherwise learning the facts that Graco had concealed or failed to disclose. Georgia Plaintiffs

and Georgia Subclass members did not, and could not, unravel Graco's deception on their own.

379.    Graco had an ongoing duty to the Georgia Plaintiffs and the Georgia Subclass members to refrain from unfair or deceptive practices under the Georgia FBPA in the course of its business.  Specifically, Graco owed the Georgia Plaintiffs and Georgia Subclass members a duty to disclose all the material facts concerning the Booster Seats because Graco possessed exclusive knowledge, intentionally concealed the true characteristics of the Booster Seats from the Georgia Plaintiffs and the Georgia Subclass members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

380.    Graco's violations present a continuing risk to the Georgia Plaintiffs and the Georgia Subclass members, as well as to the general public.  Graco's unlawful acts and practices complained of herein affect the public interest.

381.    Georgia Plaintiffs seek all damages and relief to which Georgia Plaintiffs and the Georgia Subclass members are entitled.

382.    On November 5, 2020, Plaintiffs sent Graco pre-suit notice of their claims under the Georgia FBPA, O.C.G.A. §§ 10-1-390, *et seq.*). Graco did not respond with a reasonable offer of relief to the Georgia Plaintiffs. A copy of this complaint was also mailed to the Attorney General of the State of Georgia in accordance with O.C.G.A. § 10-1-399.

383.     Pursuant to O.C.G.A. § 10-1-399, Georgia Plaintiffs and the Georgia Subclass seek an order enjoining Graco's unfair and/or deceptive acts or practices, and awarding any other just and proper relief available under the Georgia FBPA.

### 5.     Illinois

### ILLINOIS COUNT I
### BREACH OF EXPRESS WARRANTIES
### (810 Ill. Comp. Stat. 5/2-313)

384.     Plaintiffs Elizabeth Davis-Berg and Shannon Hager ("Illinois Plaintiffs") bring this claim on behalf of themselves and the Illinois Subclass against Graco.

385.     Graco is and was at all relevant times a "merchant" with respect to Booster Seats under 810 ILCS 5/2-104(1), and a "seller" of Booster Seats under 5/2-103(1)(d).

386.     All Illinois Subclass members who purchased the Booster Seats in Illinois are "buyers" within the meaning of 810 ILCS 5/2-103(1)(a).

387.     The Booster Seats are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105(1).

388.     In connection with the purchase of the Booster Seats, Graco provided the Illinois Plaintiffs and Illinois Subclass members with written express warranties that the Booster Seats were free of defects.

389.    Further, Graco expressly warranted and represented that its Booster Seats:

 a. Were safe for children who weigh as little as 30 pounds;

 b. Were safe for children who weigh less than 40 pounds;

 c. Were "SIDE IMPACT TESTED" and provided side-impact protection;

 d. Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

 e. Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

 f. Included a headrest that "helps keep your child secure" in a side-impact collision.

390.    Graco's express warranties formed the basis of the bargain that was reached when the Illinois Plaintiffs and Illinois Subclass members purchased the Booster Seats. Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

391.    As a direct and proximate result of the Graco's breach of its express warranties, the Illinois Plaintiffs and Illinois Subclass members have been damaged in an amount to be proven at trial.

## ILLINOIS COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
## (810 Ill. Comp. Stat. 5/2-314)

392.    Plaintiffs Elizabeth Davis-Berg and Shannon Hager ("Illinois Plaintiffs") bring this claim on behalf of themselves and the Illinois Subclass against Graco.

393.    A warranty that the Booster Seats were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 810 ILCS 5/2-314.

394.    The Booster Seats did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which Booster Seats were used. Specifically, the Booster Seats are not suitable for use by children weighing less than 40 pounds, did not provide safety and protection for children in the event of a side-impact crash, and did not satisfy federal side-impact safety standards. Thus the Booster Seats are inherently defective and dangerous and pose a high risk of serious bodily injury or death in involved in a crash.

395.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats under 810 ILCS 5/2-104(1), and a "seller" of Booster Seats under 5/2-103(1)(d).

396.    All Illinois Subclass members who purchased the Booster Seats in Illinois are "buyers" within the meaning of 810 ILCS 5/2-103(1)(a).

397.    The Booster Seats are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105(1).

398.    As a direct and proximate result of Graco's breach of the implied warranty of merchantability, the Illinois Plaintiffs and Illinois Subclass members have been damaged in an amount to be proven at trial.

### ILLINOIS COUNT III
### VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT
### (815 Ill. Comp. Stat. 505/1, *et seq*.)

399.    Plaintiffs Elizabeth Davis-Berg and Shannon Hager ("Illinois Plaintiffs") bring this claim on behalf of themselves and the Illinois Subclass against Graco.

400.    Graco, the Illinois Plaintiffs, and the Illinois Subclass members are "persons" within the meaning of 815 ILCS 505/1(c).

401.    The Illinois Plaintiffs and Illinois Subclass members are "consumers" within the meaning of 815 ILCS 505/1(e).

402.    The Booster Seats are "merchandise" within the meaning of 815 ILCS 505/1(b).

403.    Graco was and is engaged in "trade" and "commerce" within the

meaning of 815 ILCS 505/1(f).

404.   The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices[.]"  815 ILCS 505/2.

405.   In the course of its business, Graco, through its agents, employees, and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the reliability, safety, and performance of the Booster Seats, as detailed above.

406.   Specifically, Graco made the following misrepresentations and omissions:

    i.   Misrepresenting that the Booster Seats are safe for children who weigh as little as 30 pounds;

    ii.   Misrepresenting that the Booster Seats are "SIDE IMPACT TESTED" and provide side-impact protection;

    iii.   Misrepresenting that Graco's Booster Seats are "engineered and tested and crash tested to meet or exceed U.S. safety standards";

    iv.   Misrepresenting that Graco's Booster Seats are subjected to "a combination of the most rigorous crash tests that helps to protect your child in frontal, side, rear, and rollover crashes"; and

    v.   Misrepresenting that the headrest on the Booster

Seats "helps keep your child secure" in a side-impact collision.

407.    Graco's representations were false and misleading because Graco omitted to disclose that: (a) Graco knew that the Booster Seats are not safe for use by children under four years or 40 pounds; (b) Graco's own testing showed that use by such children makes them susceptible to serious bodily injury or death in the event of a car crash; (c) the Booster Seats do not meet or exceed federal side-impact safety standards, because no such standards exist; (d) Graco's testing does not show that the Booster Seats would provide any appreciable safety to its child occupants in the event of a side-impact crash; and (e) Graco knew that the headrest on the Booster Seats does not help keep child occupants secure in a side-impact collision.

408.    Specifically, by misrepresenting the Booster Seat's safety and testing, and by failing to disclose and actively concealing the dangers and risk posed by the Booster Seats, Graco engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 505/2 and 510/2:

     i.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Booster Seats;

    ii.    Representing that the Booster Seats have approval, characteristics, uses, or benefits that they do not have;

    iii.    Representing that the Booster Seats are of a particular standard, quality, and grade when they

are not;

iv.   Advertising the Booster Seats with the intent not to sell them as advertised;

v.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

vi.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Booster Seats, whether or not any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2 and 815 ILCS 510/2.

409.   Graco's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Illinois Plaintiffs and Illinois Subclass members, about the true safety and reliability of the Booster Seats, the quality of the Booster Seats, and the true value of the Booster Seats.

410.   Graco's scheme and concealment of the true characteristics of the Booster Seats were material to the Illinois Plaintiffs and Illinois Subclass members, as Graco intended. Had they known the truth, the Illinois Plaintiffs and Illinois

Subclass members would not have purchased Booster Seats, or would have paid significantly less for them.

411.    The Illinois Plaintiffs and Illinois Subclass members had no way of discerning that Graco's representations were false and misleading, or otherwise learning the facts that Graco had concealed or failed to disclose.  The Illinois Plaintiffs and Illinois Subclass members did not, and could not, unravel Graco's deception on their own.

412.    Graco had an ongoing duty to the Illinois Plaintiffs and Illinois Subclass members to refrain from unfair or deceptive practices under the Illinois CFDBPA in the course of its business.  Specifically, Graco owed the Illinois Plaintiffs and Illinois Subclass members a duty to disclose all the material facts concerning the true characteristics of the Booster Seats because Graco possessed exclusive knowledge, intentionally concealed true characteristics of the Booster Seats from the Illinois Plaintiffs and Illinois Subclass members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

413.    The Illinois Plaintiffs and Illinois Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Graco's concealment, misrepresentations, and/or failure to disclose material information.

414.    Graco's violations present a continuing risk to the Illinois Plaintiffs

and Illinois Subclass members, as well as to the general public.  Graco's unlawful acts and practices complained of herein affect the public interest.

415.    A  copy of this complaint was  mailed to the Attorney General of the State of Illinois in accordance with 815 ILCS 505/10a.

416.    Pursuant to   815 ILCS 505/10a, the Illinois Plaintiffs and Illinois Subclass members seek an order enjoining Graco's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Illinois CFDBPA.

**ILLINOIS COUNT IV**
**VIOLATION OF THE ILLINOIS UNIFORM**
**DECEPTIVE TRADE PRACTICES ACT**
**(815 Ill. Comp. Stat. 510/1, *et seq*.)**

417.    Plaintiffs Elizabeth Davis-Berg and Shannon Hager ("Illinois Plaintiffs") bring this claim on behalf of themselves and the Illinois Subclass against Graco.

418.    Graco, the Illinois Plaintiffs, and the Illinois Subclass members are "persons" within the meaning of 815 ILCS 510/1(5).

419.    The Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation.  815 ILCS 510/2(a).

420.    In the course of its business, Graco, through its agents, employees,

and/or subsidiaries, violated the Illinois UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the reliability, safety, and performance of the Booster Seats, as detailed above.

421.   Specifically, by misrepresenting the Booster Seats as safe, and by failing to disclose and actively concealing the dangers and risk posed by the Booster Seats, Graco engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 510/2(a):

    i.    Representing that the Booster Seats have characteristics, uses, benefits, and qualities which they do not have;

    ii.    Representing that the Booster Seats are of a particular standard, quality, and grade when they are not;

    iii.    Advertising the Booster Seats with the intent not to sell them as advertised; and

    iv.    Engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2(a)(5), (7), (9), and (12).

422.   Graco's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the

Illinois Plaintiffs and Illinois Subclass members, about the true safety and reliability of Booster Seats, the quality of the Booster Seats, and the true value of the Booster Seats.

423.   Graco's scheme and concealment of the true characteristics of the Booster Seats were material to the Illinois Plaintiffs and Illinois Subclass members, as Graco intended.  Had they known the truth, the Illinois Plaintiffs and Illinois Subclass members would not have purchased Booster Seats, or would have paid significantly less for them.

424.   The Illinois Plaintiffs and Illinois Subclass members had no way of discerning that Graco's representations were false and misleading, or otherwise learning the facts that Graco had concealed or failed to disclose. The Illinois Plaintiffs and Illinois Subclass members did not, and could not, unravel Graco's deception on their own.

425.   Graco had an ongoing duty to the Illinois Plaintiffs and Illinois Subclass members to refrain from unfair or deceptive practices under the Illinois UDTPA in the course of its business.  Specifically, Graco owed the Illinois Plaintiffs and Illinois Subclass members a duty to disclose all the material facts concerning the Booster Seats because Graco possessed exclusive knowledge, intentionally concealed the true characteristics of the Booster Seats from the Illinois Plaintiffs and Illinois Subclass members, and/or made misrepresentations that were rendered

misleading because they were contradicted by withheld facts.

426.    The Illinois Plaintiffs and Illinois Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Graco's concealment, misrepresentations, and/or failure to disclose material information.

427.    Graco's violations present a continuing risk to the Illinois Plaintiffs and Illinois Subclass members, as well as to the general public.  Graco's unlawful acts and practices complained of herein affect the public interest.

428.    Pursuant to 815 ILCS 510/3, the Illinois Plaintiffs and Illinois Subclass members seek an order enjoining Graco's unfair or deceptive acts or practices and any other just and proper relief available under the Illinois UDTPA.

### 6.    Massachusetts

### MASSACHUSETTS COUNT I
### BREACH OF EXPRESS WARRANTY
### (Mass. Gen. Laws Ch. 106, § 2-313)

429.    Plaintiff Lauren Arnold ("Massachusetts Plaintiff") brings this claim on behalf of herself and the Massachusetts Subclass against Graco.

430.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats under Mass Gen. Laws ch. 106 § 2-104(1) and a "seller" of Booster Seats under Mass. Gen. Laws ch. 106 § 2-103(1)(d).

431.    All Massachusetts Subclass members who purchased Booster Seats in

Massachusetts are "buyers" within the meaning of Mass. Gen. Laws ch. 106 § 2-103(1).

432.    The Booster Seats are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106 § 2-105(1).

433.    In connection with the purchase of all Booster Seats, Graco provided the Massachusetts Plaintiff and Massachusetts Subclass members with written express warranties that the Booster Seats were free of defects.

434.    Further, Graco expressly warranted and represented that its Booster Seats:

   a.  Were safe for children who weigh as little as 30 pounds;

   b.  Were safe for children who weigh less than 40 pounds;

   c.  Were "SIDE IMPACT TESTED" and provided side-impact protection;

   d.  Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

   e.  Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

   f.  Included a headrest that "helps keep your child secure" in a side-impact collision.

435.    Graco's express warranties formed the basis of the bargain that was

reached when the Massachusetts Plaintiff and Massachusetts Subclass members purchased the Booster Seats.

436.   Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

437.   As a direct and proximate result of Graco's breach of its express warranties, the Massachusetts Plaintiff and Massachusetts Subclass members have been damaged in an amount to be proven at trial.

## MASSACHUSETTS COUNT II
## BREACH OF IMPLIED WARRANTY
### (Mass. Gen. Laws Ch. 106, § 2-314)

438.   Plaintiff Lauren Arnold ("Massachusetts Plaintiff") brings this claim on behalf of herself and the Massachusetts Subclass against Graco.

439.   Massachusetts law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Mass. Gen. Laws ch. 106, § 2-314(1).

440.   Graco is and was at all relevant times a "merchant" as defined by Mass. Gen. Laws ch. 106 § 2-104(1).

441.   Massachusetts Plaintiff and members of the Massachusetts Subclass purchased Booster Seats manufactured and marketed by Graco by and through its

authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Graco's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Graco was a merchant, manufacturer, marketer, warrantor, and/or seller of the Booster Seats. Graco knew or had reason to know of the specific use for which the Booster Seats were purchased.

442.   The Booster Seats are and were at all relevant times goods within the meaning of Mass. Gen. Laws ch. 106 § 2-105(1).

443.   Graco impliedly warranted that the Booster Seats were in merchantable condition and fit. However, when sold, and at all times thereafter, the Booster Seats were not in merchantable condition, were not fit for the ordinary purpose of providing safety and protection for children in the event of a side-impact crash, and were not fit for the ordinary purpose of providing safety and protection for children under four years old or who weighed less than 40 pounds, thus presenting undisclosed safety risks to children. Thus, Graco breached its implied warranty of merchantability for the ordinary purpose for which the Booster Seats are purchased and used.

444.   Graco cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous booster seats.

445.   Graco knew of and concealed the safety risks linked to the Booster

Seats.

446.    As a direct and proximate result of Graco's breach of the implied warranty of merchantability, Massachusetts Plaintiff and members of the Massachusetts Subclass have been damaged in an amount to be proven at trial.

**MASSACHUSETTS COUNT III**
**VIOLATION OF THE MASSACHUSETTS**
**CONSUMER PROTECTION LAW**
**(Mass. Gen. Laws Ch. 93a, § 1, *et seq.*)**

447.    Plaintiff Lauren Arnold ("Massachusetts Plaintiff") brings this count against Graco on behalf of herself and the Massachusetts Subclass.

448.    Massachusetts Plaintiff and Massachusetts Subclass members were at all relevant times "persons" as defined in Mass. Gen. Law, Ch. 93A.

449.    Graco was at all relevant times engaged in "trade" or "commerce" through its marketing, advertising, distribution, and sale of the Booster Seats at issue, as defined in Mass. Gen. Law, Ch. 93A.

450.    The Booster Seats at issue constitute tangible property under Mass. Gen. Law, Ch. 93A.

451.    Graco's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were and are committed in its course of trade or commerce, directed at consumers, affect the public interest, and injured Massachusetts Plaintiff and Massachusetts Subclass members.

452.    Graco's foregoing unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were material, in part, because they concerned an essential part of the Booster Seats' intended use and provision of safety to children. Graco omitted material facts regarding the safety (or lack thereof) of the Booster Seats by failing to disclose that the Booster Seats will not adequately protect children in the event of a side-impact collision, or that the Booster Seats are not safe for children weighing less than 40 pounds. Rather than disclose this information, Graco marketed and labeled the Booster Seats as "side-impact tested," misrepresented that the Booster Seats are safe for children as small as 30 pounds, and safe for children as young as three-years-old.

453.    Graco intended Massachusetts Plaintiff and Massachusetts Subclass members to rely upon its misrepresentations regarding the safety of its Booster Seats, including that the Booster Seats are "side-impact tested," that the Booster Seats are safe for children as small as 30 pounds, and safe for children as young as three-years-old.

454.    The Booster Seats pose an unreasonable risk to the safety of children in the event of a side-impact collision, despite Graco's representation that the subject boosters seats are "side-impact tested," and safe for children as small as 30 pounds, and safe for children as young as three-years-old.

455.    Graco did not disclose this information to consumers.

456.     Graco's foregoing unfair methods of competition and unfair or

deceptive acts or practices, including its omissions, were and are violations of the

Massachusetts Consumer Protection Law, Mass. Gen. Laws, Ch. 93A, in that:

a. Graco manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Booster Seats as "side impact tested," when, through its own internal side-impact testing it knew, or should have known, that the Booster Seats posed an unreasonable risk to the safety of children in the event of a side-impact collision;

b. Graco knew that the unreasonable risk to the safety of children and the results of its own internal side-impact testing were unknown to and would not be easily discovered by Massachusetts Plaintiff and Massachusetts Subclass members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Booster Seats;

c. Massachusetts Plaintiff and Massachusetts Subclass members were deceived by Graco's failure to disclose and could not discover the unreasonable risk to the safety of children posed by the Booster Seats in the event of a side-impact collision;

d. Graco manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Booster Seats as safe for children weighing less than 40 pounds, and safe for children as young as three-years-old, when it knew, or should have known, that the Booster Seats posed an unreasonable risk to the safety of children weighing under 40 pounds;

e. Graco knew that the unreasonable risk to the safety of children weighing under 40 pounds was unknown to and would not be easily discovered by Massachusetts Plaintiff and Massachusetts Subclass members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Booster Seats;

     f.   Massachusetts Plaintiff and Massachusetts Subclass members were deceived by Graco's failure to disclose and could not discover the unreasonable risk to the safety of children posed by the Booster Seats in the event the children weighed less than 40 pounds; and

     g.   Defendant's unfair methods of competition and unfair or deceptive acts or practices, including its omissions, injured Massachusetts Plaintiff and Massachusetts Subclass members, and had – and still has – the potential to injure members of the public at-large.

457.    Massachusetts Plaintiff and Massachusetts Subclass members suffered damages when they purchased the Booster Seats Graco's unfair methods of competition and unfair or deceptive acts or practices, including its omissions, caused actual damages to Massachusetts Plaintiff and the Massachusetts Subclass members who were unaware that the Booster Seats posed an unreasonable safety risk to children in the event of a side-impact collision and to children weighing less than 40 pounds, notwithstanding Graco's representations at the time of purchase.

458.    Graco's unfair methods of competition and unfair or deceptive acts or practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

459.    Consumers, including Massachusetts Plaintiff and Massachusetts Subclass members, would not have purchased the Booster Seats had they known about the unreasonable safety risk they pose to children, or the results of Defendant's internal side-impact testing.

460. As a direct and proximate result of Graco's unfair methods of competition and unfair or deceptive acts or practices, including its omissions, Massachusetts Plaintiff and Massachusetts Subclass members have been damaged as alleged herein, and are entitled to recover actual damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

461. Graco had actual and/or constructive notice of its unfair methods of competition and unfair or deceptive acts or practices, including its omissions, through the results of its own internal side-impact testing, as well as through previous lawsuits against Graco involving serious and permanent injuries sustained by children while using the Booster Seats.

462. The violations of Chapter 93A by Graco in connection with its marketing and sale of Booster Seats as described herein was done willfully, knowingly, and in bad faith. As a direct and proximate result of Graco's conduct in connection with the branding, labeling, marketing and selling of Booster Seats in Massachusetts, Massachusetts Plaintiff and the Massachusetts Subclass were harmed.

463. Massachusetts Plaintiff and the other Massachusetts Subclass members have suffered ascertainable losses, which include but are not limited to, the costs they incurred paying for a product which was not the one that had been represented to them, and the fact that the product they received was less valuable

than the product represented to them. Accordingly, Massachusetts Plaintiff and the other members of the Massachusetts Subclass were harmed by, and Graco is liable for, its actions in violation of Chapter 93A.

464.   On November 5, 2020, Plaintiffs sent Graco pre-suit notice of their claims under the Massachusetts Consumer Protection Law, Mass. Gen. Laws Ch. 93A, § 1, *et seq*. Graco did not respond with a reasonable offer of relief to the Massachusetts Plaintiff.

465.   As a result of the conduct described herein, Graco violated Chapter 93A and is liable to Massachusetts Plaintiff and the Massachusetts Subclass for up to three times the damages that Massachusetts Plaintiff and the Massachusetts Subclass incurred, or at the very least the statutory minimum award of $25 for each purchase of a Booster Seats, whichever is greater, together with all related court costs, attorneys' fees, and interest.

466.   In addition, Massachusetts Plaintiff and Massachusetts Subclass members seek equitable and injunctive relief against Graco on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

7.    **New Jersey**

**NEW JERSEY COUNT I**
**BREACH OF EXPRESS WARRANTIES**
**(N.J. Stat. Ann. § 12A:2-313)**

467.    Plaintiff Leticia Rivera ("New Jersey Plaintiff") brings this claim on behalf of herself and the New Jersey Subclass against Graco.

468.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats under N.J. Stat. Ann. § 12A:2-104(1), and a "seller" of Booster Seats under § 12A:2-103(1)(d).

469.    New Jersey Plaintiff and all New Jersey Subclass members who purchased the Booster Seats in New Jersey are "buyers" within the meaning of N.J. Stat. Ann. § 12A:2-103(1)(a).

470.    The Booster Seats are and were at all relevant times "goods" within the meaning of N.J. Stat. Ann. § 12A:2-105(1).

471.    In connection with the purchase of all Booster Seats, Graco provided the New Jersey Plaintiff and New Jersey Subclass members with written express warranties that the Booster Seats were free of defects.

472.    Further, Graco expressly warranted and represented that its Booster Seats:

a.    Were safe for children who weigh as little as 30 pounds;

    b.   Were safe for children who weigh less than 40 pounds;

    c.   Were "SIDE IMPACT TESTED" and provided side-impact protection;

    d.   Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

    e.   Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

    f.   Included a headrest that "helps keep your child secure" in a side-impact collision.

473.   Graco's express warranties formed the basis of the bargain that was reached when the New Jersey Plaintiff and New Jersey Subclass members purchased the Booster Seats. Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

474.   As a direct and proximate result of Graco's breach of its express warranties, the New Jersey Plaintiff and New Jersey Subclass members have been damaged in an amount to be proven at trial.

## NEW JERSEY COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (N.J. Stat. Ann. § 12A:2-314)

475.   Plaintiff Leticia Rivera ("New Jersey Plaintiff") brings this claim on behalf of herself and the New Jersey Subclass against Graco.

476.    A warranty that the Booster Seats were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.J. Stat. Ann. § 12A:2-314.

477.    The Booster Seats did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which Booster Seats were used. Specifically, the Booster Seats are not suitable for use by children weighing less than 40 pounds, did not provide safety and protection for children in the event of a side-impact crash, and did not satisfy federal side-impact safety standards. Thus the Booster Seats are inherently defective and dangerous and pose a high risk of serious bodily injury or death in involved in a crash.

478.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats under N.J. Stat. Ann. §§ 12A:2-104(1), and a "seller" of Booster Seats under § 12A:2-103(1)(d).

479.    All New Jersey Subclass members who purchased the Booster Seats in New Jersey are "buyers" within the meaning of N.J. Stat. Ann. § 12A:2-103(1)(a).

480.    The Booster Seats are and were at all relevant times "goods" within the meaning of N.J. Stat. Ann. § 12A:2-105(1).

481.    As a direct and proximate result of Graco's breach of the implied

warranty of merchantability, the New Jersey Plaintiff and New Jersey Subclass members have been damaged in an amount to be proven at trial.

### NEW JERSEY COUNT III
### VIOLATION OF NEW JERSEY CONSUMER FRAUD ACT
### (N.J. Stat. Ann. §§ 56:8-1, *et seq.*)

482.   Plaintiff Leticia Rivera ("New Jersey Plaintiff") brings this claim on behalf of herself and the New Jersey Subclass against Graco.

483.   Graco, the New Jersey Plaintiff, and the New Jersey Subclass members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

484.   The Booster Seats are "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

485.   The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits unfair trade practices. N.J. Stat. Ann. § 56:8-2.

486.   In the course of its business, Graco, through its agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the reliability, safety, and performance of the Booster Seats, as detailed above.

487.   Specifically, by misrepresenting the Booster Seats as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk

posed by the Booster Seats, Graco engaged in in the following unfair or deceptive acts or practices as prohibited by N.J. Stat. Ann. § 56:8-2: using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the Booster Seats.

488.   Graco's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the New Jersey Plaintiff and New Jersey Subclass members, about the true safety and reliability of Booster Seats, the quality of the Booster Seats, and the true value of the Booster Seats.

489.   Graco's scheme and concealment of the true characteristics of the Booster Seats were material to the New Jersey Plaintiff and New Jersey Subclass members, as Graco intended.  Had they known the truth, the New Jersey Plaintiff and New Jersey Subclass members would not have purchased the Booster Seats, or would have paid significantly less for them.

490.   The New Jersey Plaintiff and New Jersey Subclass members had no way of discerning that Graco's representations were false and misleading, or

otherwise learning the facts that Graco had concealed or failed to disclose. The New Jersey Plaintiff and New Jersey Subclass members did not, and could not, unravel Graco's deception on their own.

491.    Graco had an ongoing duty to the New Jersey Plaintiff and New Jersey Subclass members to refrain from unfair and deceptive practices under the New Jersey CFA in the course of its business.  Specifically, Graco owed the New Jersey Plaintiff and New Jersey Subclass members a duty to disclose all the material facts concerning the Booster Seats because Graco possessed exclusive knowledge, intentionally concealed the true characteristics of the Booster Seats from the New Jersey Plaintiff and New Jersey Subclass members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

492.    The New Jersey Plaintiff and New Jersey Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Graco's concealment, misrepresentations, and/or failure to disclose material information.

493.    A  copy of this complaint was mailed to the Attorney General of the State of New Jersey in accordance with N.J.S.A. 56:8-20.

494.    Pursuant to N.J. Stat. Ann. § 56:8-19, the New Jersey Plaintiff and New Jersey Subclass members seek an order enjoining Graco's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New Jersey CFA.

### 8.    New York

**NEW YORK COUNT I
BREACH OF EXPRESS WARRANTY
(N.Y. U.C.C. Law § 2-313)**

495.    Plaintiff Silvia Tehomilić ("New York Plaintiff") brings this claim on behalf of herself and the New York Subclass against Graco.

496.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats under N.Y. U.C.C. Law § 2-104(1), and a "seller" of Booster Seats under § 2-103(1)(d).

497.    New York Plaintiff and all New York Subclass members who purchased the Booster Seats in New York are "buyers" within the meaning of N.Y. U.C.C. Law § 2-103(1)(a).

498.    The Booster Seats are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. Law § 2-105(1).

499.    In connection with the purchase of all Booster Seats, Graco provided the New York Plaintiff and New York Subclass members with written express warranties that the Booster Seats were free of defects.

500.    Further, Graco expressly warranted and represented that its Booster Seats:

     a.    Were safe for children who weigh as little as 30 pounds;

b.   Were safe for children who weigh less than 40 pounds;

c.   Were "SIDE IMPACT TESTED" and provided side-impact protection;

d.   Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

e.   Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

f.   Included a headrest that "helps keep your child secure" in a side-impact collision.

501.   Graco's express warranties formed the basis of the bargain that was reached when the New York Plaintiff and New York Subclass members purchased the Booster Seats.

502.   Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

503.   As a direct and proximate result of Graco's breach of its express warranties, the New York Plaintiff and New York Subclass members have been damaged in an amount to be proven at trial.

**NEW YORK COUNT II**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(N.Y. U.C.C. Law § 2-314)**

504.   Plaintiff Silvia Tehomilić ("New York Plaintiff") brings this claim on

behalf of herself and the New York Subclass against Graco.

505.    A warranty that the Booster Seats were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.Y. U.C.C. Law § 2-314.

506.    The Booster Seats did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which Booster Seats were used. Specifically, the Booster Seats are not suitable for use by children weighing less than 40 pounds, did not provide safety and protection for children in the event of a side-impact crash, and did not satisfy federal side-impact safety standards. Thus the Booster Seats are inherently defective and dangerous and pose a high risk of serious bodily injury or death in involved in a crash.

507.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats under N.Y. U.C.C. Law §§ 2-104(1), and a "seller" of Booster Seats under § 2-103(1)(d).

508.    All New York Subclass members who purchased the Booster Seats in New York are "buyers" within the meaning of N.Y. U.C.C. Law § 2-103(1)(a).

509.    The Booster Seats are and were at all relevant times "goods" within the meaning of N.Y. U.C.C. Law § 2-105(1).

510.   As a direct and proximate result of Graco's breach of the implied warranty of merchantability, the New York Plaintiff and New York Subclass members have been damaged in an amount to be proven at trial.

**NEW YORK COUNT III**
**VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349**
**(N.Y. Gen. Bus. Law § 349)**

511.   Plaintiff Silvia Tehomilić ("New York Plaintiff") brings this claim on behalf of herself and the New York Subclass against Graco.

512.   New York Plaintiff and New York Subclass members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).  Graco is a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

513.   The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]"  N.Y. Gen. Bus. Law. § 349.

514.   In the course of its business, Graco, through its agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the reliability, safety, and performance of the Booster Seats, as detailed above.

515.   Specifically, by misrepresenting the Booster Seats as safe and/or free

from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Booster Seats, Graco engaged in deceptive acts or practices in the conduct of business, trade or commerce, and/or in the furnishing of any service, as prohibited by N.Y. Gen. Bus. Law § 349.

516.    Graco's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the New York Plaintiff and New York Subclass members, about the true safety and reliability of Booster Seats, the quality of the Booster Seats, and the true value of the Booster Seats.

517.    Graco's scheme and concealment of true characteristics of the Booster Seats were material to the New York Plaintiff and New York Subclass members, as Graco intended.  Had they known the truth, the New York Plaintiff and New York Subclass members would not have purchased the Booster Seats, or would have paid significantly less for them.

518.    The New York Plaintiff and New York Subclass members had no way of discerning that Graco's representations were false and misleading, or otherwise learning the facts that Graco had concealed or failed to disclose.  The New York Plaintiff and New York Subclass members did not, and could not, unravel Graco's

deception on their own.

519.    Graco had an ongoing duty to the New York Plaintiff and New York Subclass members to refrain from unfair and deceptive practices under the New York DAPA in the course of its business.  Specifically, Graco owed the New York Plaintiff and New York Subclass members a duty to disclose all the material facts concerning the Booster Seats because Graco possessed exclusive knowledge, intentionally concealed the true characteristics of the Booster Seats from the New York Plaintiff and New York Subclass members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

520.    The New York Plaintiff and New York Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Graco's concealment, misrepresentations, and/or failure to disclose material information.

521.    Graco's violations present a continuing risk to the New York Plaintiff and New York Subclass members, as well as to the general public.  Graco's unlawful acts and practices complained of herein affect the public interest.

522.    A copy of this complaint was mailed to the Attorney General of the State of New Jersey in accordance with N.J.S.A. 56:8-20.

523.    Pursuant to N.Y. Gen. Bus. Law § 349, the New York Plaintiff and New York Subclass members seek an order enjoining Graco's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available

under the New York DAPA.

     **9.**    **North Carolina**

**NORTH CAROLINA COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(N.C. Gen. Stat. § 25-2-313)**

524.    Plaintiff Kimberi Sanford ("North Carolina Plaintiff") brings this claim on behalf of herself and the North Carolina Subclass against Graco.

525.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats under N.C. Gen. Stat. § 25-2-104(1) and a "seller" of Booster Seats under N.C. Gen. Stat. § 25-2-103(1)(d).

526.    North Carolina Plaintiff and all North Carolina Subclass members who purchased Booster Seats in North Carolina are "buyers" within the meaning of N.C. Gen. Stat. § 25-2-103(1)(a).

527.    The Booster Seats are and were at all relevant times "goods" within the meaning of N.C. Gen. Stat. § 25-2-105(1).

528.    In connection with the purchase of all Booster Seats, Graco provided the North Carolina Plaintiff and North Carolina Subclass members with written express warranties that the Booster Seats were free of defects.

529.    Further, Graco expressly warranted and represented that its Booster Seats:

    a.   Were safe for children who weigh as little as 30 pounds;

    b.   Were safe for children who weigh less than 40 pounds;

    c.   Were "SIDE IMPACT TESTED" and provided side-impact protection;

    d.   Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

    e.   Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

    f.   Included a headrest that "helps keep your child secure" in a side-impact collision.

530.   Graco's express warranties formed the basis of the bargain that was reached when the North Carolina Plaintiff and North Carolina Subclass members purchased the Booster Seats.

531.   Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

532.   As a direct and proximate result of Graco's breach of its express warranties, the North Carolina Plaintiff and North Carolina Subclass members have been damaged in an amount to be proven at trial.

## NORTH CAROLINA COUNT II
## BREACH OF IMPLIED WARRANTY
## (N.C. Gen. Stat. § 25-2-314)

533.     This claim is brought by Plaintiff Kimberi Sanford ("North Carolina Plaintiff") against Graco on behalf of herself and the North Carolina Subclass.

534.     North Carolina law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." N.C. Gen. Stat. § 25-2-314(1).

535.     Graco is and was at all relevant times a "merchant" as defined by N.C. Gen. Stat. § 25-2-104(1).

536.     North Carolina Plaintiff and members of the North Carolina Subclass purchased Booster Seats manufactured and marketed by Graco by and through its authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Graco's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Graco was a merchant, manufacturer, marketer, warrantor, and/or seller of the Booster Seats. Graco knew or had reason to know of the specific use for which the Booster Seats were purchased.

537.     The Booster Seats are and were at all relevant times goods within the meaning of N.C. Gen. Stat. § 25-2-105(1).

538.     Graco   impliedly   warranted   that   the   Booster   Seats   were   in

-161-

merchantable condition and fit. However, when sold, and at all times thereafter, the Booster Seats were not in merchantable condition, were not fit for the ordinary purpose of providing safety and protection for children in the event of a side-impact crash, and were not fit for the ordinary purpose of providing safety and protection for children under four years old or who weighed less than 40 pounds, thus presenting an undisclosed safety risk to children. Thus, Graco breached its implied warranty of merchantability for the ordinary purpose for which the Booster Seats are purchased and used.

539.   Graco cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous booster seats.

540.   Graco was provided notice by the numerous consumer class action complaints filed against it. Affording Graco a reasonable opportunity to cure its breach of implied warranties would be unnecessary and futile here because Graco knew of and concealed the safety risks linked to the Booster Seats.

541.   As a direct and proximate result of Graco's breach of the implied warranty of merchantability, North Carolina Plaintiff and members of the North Carolina Subclass have been damaged in an amount to be proven at trial.

542.   North Carolina Plaintiff and members of the North Carolina Subclass have been excused from performance of any warranty obligations as a result of Graco's conduct described herein.

## NORTH CAROLINA COUNT III
## VIOLATION OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES ACT
### (N.C. Gen. Stat. §§ 75-1.1, *et seq.* )

543.     Plaintiff Kimberi Sanford ("North Carolina Plaintiff") brings this count against Graco on behalf of herself and the North Carolina Subclass.

544.     Graco's foregoing acts and practices, including its omissions in the conduct of trade or commerce, were directed at consumers.

545.     Graco engaged in "commerce" as defined in N.C. Gen. Stat. § 75-1.1(b).

546.     Graco's foregoing deceptive acts and practices, including its omissions, were material, in part, because they concerned an essential part of the Booster Seats' intended use and provision of safety to children. Graco omitted material facts regarding the safety (or lack thereof) of the Booster Seats by failing to disclose the results of its internal side-impact testing, that the Booster Seats will not adequately protect children in the event of a side-impact collision, and that the Seat is not safe for children weighing less than 40 pounds. Rather than disclose this information, Graco marketed and labeled the Booster Seats  as "side-impact tested" and misrepresented that the Booster Seats are safe for children as small as 30 pounds, and safe for children as young as three-years-old.

547.     The Booster Seats pose an unreasonable risk to the safety of children

in the event of a side-impact collision, despite Graco's representation that the Booster Seats are "side-impact tested" and poses an unreasonable risk to the safety of children weighing less than 40 pounds.

548. Graco did not disclose this information to consumers.

549. Graco willfully failed to disclose the safety risks of Graco's Booster Seats.

550. Graco knew or should have known that its conduct violated the North Carolina Act.

551. Graco's foregoing deceptive acts and practices, including its omissions while engaged in business, were and are deceptive acts or practices in violation of N.C. Gen. Stat. §§ 75- 1.1, et seq., in that:

    a.  Graco manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Booster Seats as "side impact tested," when, through its own internal side-impact testing it knew, or should have known, that the Booster Seats posed an unreasonable risk to the safety of children in the event of a side-impact collision;

    b.  Graco knew that the unreasonable risk to the safety of children and the results of its own internal side-impact testing were unknown to and would not be easily discovered by North Carolina Plaintiff and North Carolina Subclass members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Booster Seats;

    c.  North Carolina Plaintiff and North Carolina Subclass members were deceived by Graco's failure to disclose and could not discover the unreasonable risk to the safety of children posed by the Booster

Seats in the event of a side-impact collision;

d. Graco manufactured, labeled, packaged, marketed, advertised, distributed, and/or sold the Booster Seats as safe for children weighing less than 40 pounds, and safe for children as young as three-years-old, when it knew, or should have known, that the Booster Seats posed an unreasonable risk to the safety of children weighing under 40 pounds;

e. Graco knew that the unreasonable risk to the safety of children weighing under 40 pounds was unknown to and would not be easily discovered by North Carolina Plaintiff and North Carolina Subclass members, and would defeat their ordinary, foreseeable and reasonable expectations concerning the performance of the Booster Seats; and

f. North Carolina Plaintiff and North Carolina Subclass members were deceived by Graco's failure to disclose and could not discover the unreasonable risk to the safety of children weighing less than 40 pounds posed by the Booster Seats.

552. North Carolina Plaintiff and North Carolina Subclass members suffered damages when they purchased the Booster Seats. Graco's unconscionable, deceptive and/or unfair practices caused actual damages to North Carolina Plaintiff and the North Carolina Subclass members who were unaware that the Booster Seats posed an unreasonable safety risk to children in the event of a side-impact collision and to children weighing less than 40 pounds, notwithstanding Graco's representations at the time of purchase.

553. Graco's foregoing deceptive acts and practices, including its omissions, were likely to deceive, and did deceive, consumers acting reasonably under the circumstances.

554.   Consumers, including North Carolina Plaintiff and North Carolina Subclass members, would not have purchased the Booster Seats had they known about the unreasonable safety risk they pose to children, or the results of Defendant's internal side-impact testing.

555.   As a direct and proximate result of Graco's deceptive acts and practices, including its omissions, North Carolina Plaintiff and North Carolina Subclass members have been damaged as alleged herein, and are entitled to recover actual damages and/or treble damages to the extent permitted by law, including class action rules, in an amount to be proven at trial.

556.   In addition, North Carolina Plaintiff and North Carolina Subclass members seek equitable and injunctive relief against Graco on terms that the Court considers reasonable, and reasonable attorneys' fees and costs.

### 10.   Ohio

**OHIO COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(Ohio Rev. Code Ann. § 1302.26)**

557.   Plaintiffs Julie Clarke and Jennifer Murphy ("Ohio Plaintiffs") bring this claim on behalf of themselves and the Ohio Subclass against Graco.

558.   Graco is and was at all relevant times a "merchant" with respect to Booster Seats under Ohio Rev. Code Ann. § 1302.1(A)(5), and a "seller" of Booster

Seats under § 1302.1(A)(4).

559.    Ohio Plaintiffs and all Ohio Subclass members who purchased Booster Seats in Ohio are "buyers" within the meaning of Ohio Rev. Code Ann. § 1302.1(A)(1).

560.    The Booster Seats are and were at all relevant times "goods" within the meaning of Ohio Rev. Code Ann. § 1302.1(A)(8).

561.    In connection with the purchase of all Booster Seats, Graco provided the Ohio Plaintiffs and Ohio Subclass members with written express warranties that the Booster Seats were free of defects.

562.    Further, Graco expressly warranted and represented that its Booster Seats:

    a.   Were safe for children who weigh as little as 30 pounds;

    b.   Were safe for children who weigh less than 40 pounds;

    c.   Were "SIDE IMPACT TESTED" and provided side-impact protection;

    d.   Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

    e.   Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

    f.   Included a headrest that "helps keep your child

secure" in a side-impact collision.

563.   Graco's express warranties formed the basis of the bargain that was reached when the Ohio Plaintiffs and the Ohio Subclass members purchased the Booster Seats.

564.   Graco breached its express warranties because the Booster Seats  are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

565.   As a direct and proximate result of Graco's breach of its express warranties, the Ohio Plaintiff and the Ohio Subclass members have been damaged in an amount to be proven at trial.

**OHIO COUNT II**
**BREACH OF IMPLIED WARRANTY**
**(Ohio Rev. Code Ann. § 1302.27)**

566.   Plaintiffs Julie Clarke and Jennifer Murphy ("Ohio Plaintiffs") bring this claim on behalf of themselves and the Ohio Subclass against Graco.

567.   A warranty that the Booster Seats were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ohio Rev. Code Ann. § 1302.27.

568.   The The Booster Seats did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were

defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which Booster Seats were used. Specifically, the Booster Seats are not suitable for use by children weighing less than 40 pounds, did not provide safety and protection for children in the event of a side-impact crash, and did not satisfy federal side-impact safety standards. Thus the Booster Seats are inherently defective and dangerous and pose a high risk of serious bodily injury or death in involved in a crash.

569.    Plaintiffs and the Ohio Subclass members who purchased the Booster Seats in Ohio are "buyers" within the meaning of Ohio Rev. Code Ann. § 1302.1(A)(4).

570.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats Ohio Rev. Code Ann. § 1302.1(A)(5), and a "seller" of Booster Seats under § 1302.1(A)(4).

571.    The Booster Seats were at all relevant times "goods" within the meaning of Ohio Rev. Code Ann. § 1302.1(A)(8).

572.    As a direct and proximate result of Graco's breach of the implied warranty of merchantability, Ohio Plaintiffs and the Ohio Subclass have been damaged in an amount to be proven at trial.

## OHIO COUNT III
## VIOLATION OF THE OHIO CONSUMER SALES PRACTICES ACT
### (Ohio Rev. Code Ann. § 1345.01)

573.    Plaintiffs Julie Clarke and Jennifer Murphy ("Ohio Plaintiffs") bring this claim on behalf of themselves and the Ohio Subclass against Graco.

574.    Graco, Ohio Plaintiffs, and the Ohio Subclass members are "persons" within the meaning of Ohio Rev. Code Ann. § 1345.01(B).

575.    Graco is a "supplier" within the meaning of Ohio Rev. Code Ann. § 1345.01(C).

576.    Ohio Plaintiffs and the Ohio Subclass members are "consumers" within the meaning of Ohio Rev. Code Ann. § 1345.01(D), and their purchase of the Booster Seats were "consumer transactions" within the meaning of Ohio Rev. Code Ann. § 1345.01(A).

577.    The Ohio Consumer Sales Practices Act ("Ohio CSPA") prohibits "unfair or deceptive act[s] or practice[s] in connection with a consumer transaction." Ohio Rev. Code Ann. § 1345.02(A).

578.    In the course of its business, Graco, through its agents, employees, and/or subsidiaries, violated the Ohio CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the durability, reliability, safety, and performance of the Booster Seats, as detailed above.

-170-

579.     Specifically, by misrepresenting the Booster Seats as safe and side-impact tested, and by failing to disclose and actively concealing the dangers and risk posed by the Booster Seats, Graco engaged in one or more unfair or deceptive business practices prohibited by the Ohio CSPA, OHIO REV. CODE ANN. § 1345.02(B)(1)-(2), including:

     i.     Representing that the Booster Seats have characteristics, uses, benefits, and qualities which they do not have.

     ii.     Representing that the Booster Seats are of a particular standard, quality, and grade when they are not.

580.     Graco's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Ohio Plaintiffs and the Ohio Subclass members, about the true safety and reliability of Booster Seats, the quality of Graco's brands, and the true value of the Booster Seats.

581.     Graco's scheme and concealment of the true characteristics of the Booster Seats were material to the Ohio Plaintiffs and the Ohio Subclass members, as Graco intended.  Had they known the truth, Ohio Plaintiffs and the Ohio Subclass members would not have purchased the Booster Seats, or would have paid significantly less for them.

582.    Ohio Plaintiffs and Ohio Subclass members had no way of discerning that Graco's representations were false and misleading, or otherwise learning the facts that Graco had concealed or failed to disclose.  Ohio Plaintiffs and Ohio Subclass members did not, and could not, unravel Graco's deception on their own.

583.    Graco had an ongoing duty to the Ohio Plaintiffs and the Ohio Subclass members to refrain from unfair and deceptive practices under the Ohio CSPA in the course of its business.  Specifically, Graco owed Plaintiffs and Ohio Subclass members a duty to disclose all the material facts concerning the Booster Seats because Graco possessed exclusive knowledge, intentionally concealed the true characteristics of the Booster Seats from the Ohio Plaintiffs and the Ohio Subclass members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

584.    Ohio Plaintiffs and Ohio Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Graco's concealment, misrepresentations, and/or failure to disclose material information.

585.    Graco's violations present a continuing risk to Ohio Plaintiffs and the Ohio Subclass members, as well as to the general public.  Graco's unlawful acts and practices complained of herein affect the public interest.

586.    Pursuant to Ohio Rev. Code Ann. § 1345.09, the Ohio Plaintiff and the Ohio Subclass members seek an order enjoining Graco's unfair or deceptive acts

or practices and awarding damages and any other just and proper relief available under the Ohio CSPA.

## OHIO COUNT IV
## VIOLATION OF THE OHIO DECEPTIVE TRADE PRACTICES ACT
### (Ohio Rev. Code Ann. §§ 4165.01, *et seq.*)

587.    Plaintiffs Julie Clarke and Jennifer Murphy ("Ohio Plaintiffs") bring this claim on behalf of themselves and the Ohio Subclass against Graco.

588.    Graco, Ohio Plaintiffs, and the Ohio Subclass members are "persons" within the meaning of Ohio Rev. Code Ann. § 4165.01(D).

589.    The Ohio Deceptive Trade Practices Act ("Ohio DTPA") prohibits deceptive trade practices.  Ohio Rev. Code Ann. § 4165.02(A).

590.    In the course of its business, Graco, through its agents, employees, and/or subsidiaries, violated the Ohio DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the durability, reliability, safety, and performance of the Booster Seats, as detailed above.

591.    Specifically, by misrepresenting the Booster Seats safe and side-impact tested, and by failing to disclose and actively concealing the dangers and risk posed by the Booster Seats, Graco engaged in one or more unfair or deceptive business practices prohibited by the Ohio DTPA, OHIO REV. CODE ANN. §§

4165.02(A)(7), (9), and (11), including:

    i.    Representing that the Booster Seats have characteristics, uses, benefits, and qualities which they do not have;

    ii.    Representing that the Booster Seats are of a particular standard, quality, and grade when they are not; and

    iii.    Advertising the Booster Seats with the intent not to sell them as advertised.

592. Graco's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Ohio Plaintiffs and the Ohio Subclass members, about the true safety and reliability of Booster Seats, the quality of Graco's brands, and the true value of the Booster Seats.

593. Graco's scheme and concealment of the true characteristics of the Booster Seats were material to Ohio Plaintiffs and the Ohio Subclass members, as Graco intended. Had they known the truth, Plaintiffs and the Ohio Subclass members would not have purchased the Booster Seats, or would have paid significantly less for them.

594. Ohio Plaintiffs and Ohio Subclass members had no way of discerning that Graco's representations were false and misleading, or otherwise learning the

facts that Graco had concealed or failed to disclose.  Plaintiffs and Ohio Subclass members did not, and could not, unravel Graco's deception on their own.

595.    Graco had an ongoing duty to Ohio Plaintiffs and the Ohio Subclass members to refrain from unfair and deceptive practices under the Ohio DTPA in the course of its business.  Specifically, Graco owed Ohio Plaintiffs and Ohio Subclass members a duty to disclose all the material facts concerning the Booster Seats because Graco possessed exclusive knowledge, intentionally concealed the true characteristics of the Booster Seats from Ohio Plaintiffs and the Ohio Subclass members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

596.    Ohio Plaintiffs and Ohio Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Graco's concealment, misrepresentations, and/or failure to disclose material information.

597.    Graco's violations present a continuing risk to Ohio Plaintiffs and the Ohio Subclass members, as well as to the general public.  Graco's unlawful acts and practices complained of herein affect the public interest.

598.    Pursuant to Ohio Rev. Code Ann. §§ 2727.02 and 4165.03, Ohio Plaintiff and the Ohio Subclass members seek an order enjoining Graco's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Ohio DTPA.

### 11.   Oklahoma

**OKLAHOMA COUNT I**
**BREACH OF EXPRESS WARRANTY**
**(Okla. Stat. Ann. Tit. 12A § 2-313)**

599.   Plaintiff Lauranda Atnip ("Oklahoma Plaintiff") brings this claim on behalf of herself and the Oklahoma Subclass against Graco.

600.   Graco is and was at all relevant times a "merchant" with respect to Booster Seats under Okla. Stat. Ann. tit. 12A, § 2-104(1) and a "seller" of Booster Seats under Okla. Stat. Ann. tit. 12A, § 2-103(1)(c).

601.   Oklahoma Plaintiff and all Oklahoma Subclass members who purchased Booster Seats in Oklahoma are "buyers" within the meaning of Okla. Stat. Ann. tit. 12A, § 2-103(1)(a).

602.   The Booster Seats are and were at all relevant times "goods" within the meaning of Okla. Stat. Ann. tit. 12A, § 2-105(1).

603.   In connection with the purchase of all Booster Seats, Graco provided the Oklahoma Plaintiff and Oklahoma Subclass members with written express warranties that the Booster Seats were free of defects.

604.   Further, Graco expressly warranted and represented that its Booster Seats:

    a.   Were safe for children who weigh as little as 30 pounds;

-176-

    b.   Were safe for children who weigh less than 40 pounds;

    c.   Were "SIDE IMPACT TESTED" and provided side-impact protection;

    d.   Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

    e.   Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

    f.   Included a headrest that "helps keep your child secure" in a side-impact collision.

605.   Graco's express warranties formed the basis of the bargain that was reached when the Oklahoma Plaintiff and the Oklahoma Subclass members purchased the Booster Seats.

606.   Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

607.   As a direct and proximate result of Graco's breach of its express warranties, the Oklahoma Plaintiff and the Oklahoma Subclass members have been damaged in an amount to be proven at trial.

## OKLAHOMA COUNT II
## BREACH OF IMPLIED WARRANTY
### (Okla. Stat. Tit. 12A, § 2-314)

608.   Plaintiff Lauranda Atnip ("Oklahoma Plaintiff") brings this claim on

behalf of herself and the Oklahoma Subclass against Graco.

609.    Oklahoma law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Okla. Stat. Ann. tit. 12A § 2-314(1).

610.    Graco is and was at all relevant times a "merchant" as defined by Okla. Stat. Ann. tit. 12A, § 2-104(1).

611.    Oklahoma Plaintiff and members of the Oklahoma Subclass purchased Booster Seats manufactured and marketed by Graco by and through its authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Graco's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Graco was a merchant, manufacturer, marketer, warrantor, and/or seller of the Booster Seats. Graco knew or had reason to know of the specific use for which the Booster Seats were purchased.

612.    The Booster Seats are and were at all relevant times goods within the meaning of Okla. Stat. Ann. tit. 12A, § 2-105(1).

613.    Graco impliedly warranted that the Booster Seats were in merchantable condition and fit. However, when sold, and at all times thereafter, the Booster Seats were not in merchantable condition, were not fit for the ordinary purpose of providing safety and protection for children in the event of a side-impact

-178-

crash, and were not fit for the ordinary purpose of providing safety and protection for children under four years old or who weighed less than 40 pounds, thus presenting an undisclosed safety risks to children. Thus, Graco breached its implied warranty of merchantability for the ordinary purpose for which the Booster Seats are purchased and used.

614.    Graco cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous booster seats.

615.    As a direct and proximate result of Graco's breach of the implied warranty of merchantability, Oklahoma Plaintiff and members of the Oklahoma Subclass have been damaged in an amount to be proven at trial.

616.    Oklahoma Plaintiff and members of the Oklahoma Subclass have been excused from performance of any warranty obligations as a result of Graco's conduct described herein.

## OKLAHOMA COUNT III
## VIOLATION OF THE OKLAHOMA DECEPTIVE TRADE PRACTICES ACT ("OCPA")
## (Okla. Stat. Tit. 15, § 751, *et seq.*)

617.    Plaintiff Lauranda Atnip ("Oklahoma Plaintiff") brings this claim on behalf of herself and the Oklahoma Subclass against Graco.

618.    Graco is a "person," as meant by Okla. Stat. tit. 15, § 752(1).

619.    Graco's advertisements, offers of sales, sales, and distribution of

goods, services, and other things of value constituted "consumer transactions" within the meaning of Okla. Stat. tit. 15, § 752(2).

620.    Graco advertised and sold the Booster Seats in Oklahoma and engaged in trade or commerce directly or indirectly affecting the people of Oklahoma.

621.    Graco, in the course of its business, engaged in unlawful practices in violation of Okla. Stat. tit. 15, § 753, including, but not limited to, the following: making false or misleading representations, knowingly or with reason to know, as to the source, sponsorship, approval, or certification of the subject of a consumer transaction, in violation of Okla. Stat. tit. 15 § 753(2); making false representations, knowingly or with reason to know, as to the characteristics, uses, and benefits of the subject of its consumer transactions, in violation of Okla. Stat. tit. 15, § 753(5); representing, knowingly or with reason to know, that the subject of its consumer transactions were of a particular standard when they were of another, in violation of Okla. Stat. tit 15, § 753(7); advertising, knowingly or with reason to know, the subject of its consumer transactions with intent not to sell as advertised, in violation of Okla. Stat. tit 15, § 753 (8); committing unfair trade practices that offend established public policy and were immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers, as defined by section 752(14), in violation of Okla. Stat. tit. 15, § 753(20); and committing deceptive trade practices that deceived or could reasonably be expected to deceive or mislead a person to the

detriment of that person as defined by section 752(13), in violation of Okla. Stat. tit. 15, § 753(20).

622.   Graco engaged in unlawful practices that violated the OCPA by knowingly making misleading statements about the safety of its Booster Seats and knowingly failing to disclose the safety risks posed by its Booster Seats, which put children's health and wellbeing at serious risk in side-impact car crashes.

623.   For example, Graco falsely and misleadingly represented that the Booster Seats were "Side Impact Tested" and safe for children less than 40 pounds. Graco also failed to disclose material facts, including but not limited to the following: (a) that Graco's side-impact testing did not comply with federal standards because no such standards exist; (b) that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; (c) that the Booster Seats were not suitable for children under 40 pounds; (d) that children should not be moved from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat; and (e) that no child should use a booster seat until he or she weighs at least 40 pounds.

624.   Graco's representations and omissions were material because they were likely to deceive reasonable consumers. Oklahoma Plaintiff and Oklahoma Subclass members relied on Graco's material misrepresentations and omissions regarding the safety of Graco's Booster Seats.

625.    Graco intentionally and knowingly misrepresented and failed to disclose material facts it had a duty to disclose regarding its Booster Seats with the intent to mislead Oklahoma Plaintiff and the Oklahoma Subclass and induce them to rely on the misrepresentations and omissions.

626.    Graco acted unlawfully in failing to disclose to Oklahoma Plaintiff and the Oklahoma Subclass members the material facts about the safety risks posed by its Booster Seats, because Graco:

      a.  Possessed exclusive knowledge about its testing of these seats;

      b.  Intentionally concealed the foregoing from Plaintiff and the Oklahoma Subclass; and/or

      c.  Made incomplete and misleading representations that its Booster Seats were "Side Impact Tested," while purposefully withholding material facts from Plaintiff and the Oklahoma Subclass that contradicted these representations.

627.    Graco had a duty to disclose the truth about the safety risks posed by its Booster Seats because these seats put children's health and well-being at serious risk in side-impact car crashes.

628.    Oklahoma Plaintiff and members of the Oklahoma Subclass could not have discovered through the exercise of reasonable diligence that Graco's Booster Seats are unsafe in side-impact crash tests. Oklahoma Plaintiff and Oklahoma Subclass members acted reasonably in relying on Graco's misrepresentations and

omissions, the truth of which they could not have discovered.

629.    Had Graco disclosed to Oklahoma Plaintiff and Oklahoma Subclass members material facts, including but not limited to, the safety risks posed by its Booster Seats, Oklahoma Plaintiff and the Oklahoma Subclass members would not have purchased the Booster Seats or would have paid less.

630.    Graco's unlawful acts or practices were likely to and did in fact deceive reasonable consumers, including Oklahoma Plaintiff and the Oklahoma Subclass members, about the true safety risks posed by its Booster Seats.

631.    The above unlawful practices and acts by Graco were immoral, unethical, oppressive, unscrupulous, unfair, and substantially injurious. These acts caused substantial injury to Oklahoma Plaintiff and absent Oklahoma Subclass members.

632.    Graco acted intentionally, knowingly, and maliciously to violate the OCPA, and recklessly disregarded Oklahoma Plaintiff's and Oklahoma Subclass members' rights. Graco's knowledge of the safety risks posed by the Booster Seats put it on notice that the Booster Seats were not as it advertised.

633.    As a direct and proximate result of Graco's unlawful acts and practices, Oklahoma Plaintiff and absent Oklahoma Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages, including from not receiving the benefit of

their bargain in purchasing the Booster Seats.

634.    Oklahoma Plaintiff and Oklahoma Subclass members seek all monetary and nonmonetary relief allowed by law, including actual damages, civil penalties, and attorneys' fees and costs under Okla. Stat. tit. 15, § 761.1.

### 12.    Oregon

### OREGON COUNT I
### BREACH OF EXPRESS WARRANTY
### (Or. Rev. Stat. § 72.3130)

635.    Plaintiffs Corallyn Flory and Carl Nelson ("Oregon Plaintiffs") bring this claim on behalf of themselves and the Oregon Subclass against Graco.

636.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats under Or. Rev. Stat. § 72.1040(1) and a "seller" of Booster Seats under Or. Rev. Stat. § 72.1030(d).

637.    Oregon Plaintiffs and all Oregon Subclass members who purchased Booster Seats in Oregon are "buyers" within the meaning of Or. Rev. Stat. § 72.1030(a).

638.    The Booster Seats are and were at all relevant times "goods" within the meaning of Or. Rev. Stat. § 72.1050(1).

639.    In connection with the purchase of all Booster Seats, Graco provided the Oregon Plaintiffs and Oregon Subclass members with written express warranties

that the Booster Seats were free of defects.

640. Further, Graco expressly warranted and represented that its Booster Seats:

    a. Were safe for children who weigh as little as 30 pounds;

    b. Were safe for children who weigh less than 40 pounds;

    c. Were "SIDE IMPACT TESTED" and provided side-impact protection;

    d. Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

    e. Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

    f. Included a headrest that "helps keep your child secure" in a side-impact collision.

641. Graco's express warranties formed the basis of the bargain that was reached when the Oregon Plaintiffs and the Oregon Subclass members purchased the Booster Seats.

642. Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

643. As a direct and proximate result of Graco's breach of its express

warranties, the Oregon Plaintiffs and the Oregon Subclass members have been damaged in an amount to be proven at trial.

## OREGON COUNT II
## BREACH OF IMPLIED WARRANTY
### (Or. Rev. Stat. § 72.3140)

644.    Plaintiffs Corallyn Flory and Carl Nelson ("Oregon Plaintiffs") bring this claim on behalf of themselves and the Oregon Subclass against Graco.

645.    Oregon law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Or. Rev. Stat. § 72.3140(1).

646.    Graco is and was at all relevant times a "merchant" as defined by Or. Rev. Stat. § 72.1040(1).

647.    Oregon Plaintiffs and members of the Oregon Subclass purchased Booster Seats manufactured and marketed by Graco by and through its authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Graco's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Graco was a merchant, manufacturer, marketer, warrantor, and/or seller of the Booster Seats. Graco knew or had reason to know of the specific use for which the Booster Seats were purchased.

648. The Booster Seats are and were at all relevant times goods within the meaning of Or. Rev. Stat. § 72.1050(1).

649. Graco impliedly warranted that the Booster Seats were in merchantable condition and fit. However, when sold, and at all times thereafter, the Booster Seats were not in merchantable condition, were not fit for the ordinary purpose of providing safety and protection for children in the event of a side-impact crash, and were not fit for the ordinary purpose of providing safety and protection for children under four years old or who weighed less than 40 pounds, thus presenting an undisclosed safety risks to children. Thus, Graco breached its implied warranty of merchantability for the ordinary purpose for which the Booster Seats are purchased and used.

650. Graco cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous booster seats.

651. As a direct and proximate result of Graco's breach of the implied warranty of merchantability, Oregon Plaintiffs and members of the Oregon Subclass have been damaged in an amount to be proven at trial.

652. Oregon Plaintiffs and members of the Oregon Subclass have been excused from performance of any warranty obligations as a result of Graco's conduct described herein.

## OREGON COUNT III
## VIOLATIONS OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
### (Or. Rev. Stat. §§ 646.605, *et seq*.)

653. Plaintiffs Corallyn Flory and Carl Nelson ("Oregon Plaintiffs") bring this claim on behalf of themselves and the Oregon Subclass under the Oregon Unfair Trade Practices Act ("Oregon UTPA") against Graco.

654. Oregon Plaintiffs, the Oregon Subclass, and Graco are "persons" within the meaning of Or. Rev. Stat. § 646.605(4).

655. Graco is engaged in "trade" or "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

656. The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits "unlawful practice . . . in the course of . . . business." Or. Rev. Stat. § Ann. 646.608(1).

657. In the course of its business, Graco violated the Oregon UTPA.

658. Graco advertised and sold the Booster Seats in Oregon and engaged in trade or commerce directly or indirectly affecting the people of Oregon.

659. Graco engaged in deceptive trade practices that violated the Oregon UTPA by knowingly making misleading statements about the safety of its Booster Seats and knowingly failing to disclose the safety risks posed by its Booster Seats, which put children's health and wellbeing at serious risk in side-impact car crashes.

660. For example, Graco falsely and misleadingly represented that the

Booster Seats were "Side-impact Tested" and safe for children less than 40 pounds. Graco also failed to disclose material facts, including but not limited to the following: (a) that Graco's side-impact testing did not comply with federal standards because no such standards exist; (b) that the Booster Seats would not provide any appreciable safety to its child occupants in the event of a side-impact crash; (c) that the Booster Seats were not suitable for children under 40 pounds; (d) that children should not be moved from a harnessed seat to a booster seat until they reach the maximum weight or height of their harnessed seat; and (e) that no child should use a booster seat until he or she weighs at least 40 pounds.

661. Graco intentionally and knowingly misrepresented and failed to disclose material facts it had a duty to disclose regarding its Booster Seats with the intent to mislead Oregon Plaintiffs and the Oregon Subclass.

662. Graco knew or should have known that its conduct violated the Oregon UTPA.

663. Graco owed Oregon Plaintiffs and the Oregon Subclass members a duty to disclose material facts about the safety risks posed by the Booster Seats, because Graco:

      a. Possessed exclusive knowledge about its testing of these seats;

      b. Intentionally concealed the foregoing from Oregon Plaintiffs and the Oregon Subclass; and/or

      c.  Made incomplete and misleading representations
          that its Booster Seats were "Side Impact Tested,"
          while purposefully withholding material facts from
          Oregon Plaintiffs and the Oregon Subclass that
          contradicted these representations.

664.    Graco had a duty to disclose the truth about the safety risks posed by its Booster Seats because these seats put children's health and wellbeing at serious risk in side-impact car crashes.

665.    Graco's omissions and/or misrepresentations about the safety of its Booster Seats were material to Oregon Plaintiffs and the Oregon Subclass. Oregon Plaintiffs and Oregon Class members relied on Graco's material misrepresentations and omissions regarding the safety of the Booster Seats.

666.    Oregon Plaintiffs and members of the Oregon Subclass could not have discovered through the exercise of reasonable diligence that Graco's Booster Seats are unsafe in side-impact crash tests. Oregon Plaintiffs and Oregon Subclass members acted reasonably in relying on Graco's misrepresentations and omissions, the truth of which they could not have discovered.

667.    Had Graco disclosed to Oregon Plaintiffs and Oregon Subclass members material facts, including but not limited to, the safety risks posed by its Booster Seats, Oregon Plaintiffs and the Oregon Subclass members would not have purchased the Booster Seats or would have paid less.

668.    Graco's unfair and deceptive acts or practices were likely to and did

in fact deceive reasonable consumers, including Oregon Plaintiffs and the Oregon Subclass members, about the true safety risks posed by the Booster Seats.

669.    Graco had an ongoing duty to all Graco customers to refrain from unfair and deceptive acts and practices under the Oregon UTPA.

670.    As a direct and proximate result of Graco's unfair and deceptive acts and practices, Oregon Plaintiffs and absent Oregon Subclass members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and nonmonetary damages, including from not receiving the benefit of their bargain in purchasing the Booster Seats.

671.    Graco's violations present a continuing risk to Oregon Plaintiffs, the Oregon Subclass and/or the general public. Graco's unlawful acts and practices complained of herein affect the public interest.

672.    A  copy of this complaint was also mailed to the Attorney General of the State of Oregon in accordance with Or. Rev. Stat. § 646.638.

673.    Pursuant to Or. Rev. Stat. § 646.638, Plaintiffs and the Oregon Subclass seek an order enjoining Graco's unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Oregon UTPA.

13.    **Pennsylvania**

## PENNSYLVANIA COUNT I
## BREACH OF EXPRESS WARRANTY
## (13 Pa. Cons. Stat. § 2313)

674.    Plaintiffs Lisa Francoforte and Cheryl Varlaro ("Pennsylvania Plaintiffs") bring this claim on behalf of themselves and the Pennsylvania Subclass against Graco.

675.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats under 13 Pa. Cons. Stat. § 2104, and a "seller" of Booster Seats under § 2103(a).

676.    Pennsylvania Plaintiffs and all Pennsylvania Subclass members who purchased the Booster Seats in Pennsylvania are "buyers" within the meaning of 13 Pa. Cons. Stat. § 2103(a).

677.    The Booster Seats are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. § 2105(a).

678.    In connection with the purchase of all Booster Seats, Graco provided the Pennsylvania Plaintiffs and Pennsylvania Subclass members with written express warranties

679.    Further, Graco expressly warranted and represented that its Booster Seats:

    a.    Were safe for children who weigh as little as 30

    pounds;

  b. Were safe for children who weigh less than 40 pounds;

  c. Were "SIDE IMPACT TESTED" and provided side-impact protection;

  d. Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

  e. Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

  f. Included a headrest that "helps keep your child secure" in a side-impact collision.

680. Graco's express warranties formed the basis of the bargain that was reached when the Pennsylvania Plaintiffs and Pennsylvania Subclass members purchased the Booster Seats.

681. Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

682. As a direct and proximate result of Graco's breach of its express warranties, the Pennsylvania Plaintiffs and Pennsylvania Subclass members have been damaged in an amount to be proven at trial.

## PENNSYLVANIA COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (13 Pa. Cons. Stat. §§ 2314)

683.    Plaintiffs Lisa Francoforte and Cheryl Varlaro ("Pennsylvania Plaintiffs") bring this claim on behalf of themselves and the Pennsylvania Subclass against Graco.

684.    A warranty that the Booster Seats were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 13 Pa. Cons. Stat. § 2314.

685.    The Booster Seats did not comply with the implied warranty of merchantability because, at the time of sale and at all times thereafter, they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for the ordinary purpose for which booster seats were used. Specifically, the Booster Seats were not suitable for a child weighing less than 40 pounds and they would not properly protect child occupants during a side-impact crash, thus they are inherently defective and dangerous.

686.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats under 13 Pa. Cons. Stat. § 2104, and a "seller" of Booster Seats under § 2103(a).

687.    Pennsylvania Plaintiffs and all Pennsylvania Subclass members who purchased the Booster Seats in Pennsylvania are "buyers" within the meaning of 13

Pa. Cons. Stat. § 2103(a).

688.    The Booster Seats are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. § 2105(a).

689.    As a direct and proximate result of Graco's breach of the implied warranty of merchantability, the Pennsylvania Plaintiffs and Pennsylvania Subclass members have been damaged in an amount to be proven at trial.

### PENNSYLVANIA COUNT III
### VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (73 Pa. Cons. Stat. §§ 201-1, *et seq.*)

690.    Plaintiffs Lisa Francoforte and Cheryl Varlaro (hereinafter, "Pennsylvania Plaintiffs") bring this claim on behalf of themselves and the Pennsylvania Subclass against Graco.

691.    Graco, the Pennsylvania Plaintiffs, and Pennsylvania Subclass members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

692.    Pennsylvania Plaintiffs and Pennsylvania Subclass members purchased the Booster Seats primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2(a).

693.    Graco was and is engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

694.    The Pennsylvania Unfair Trade Practices and Consumer Protection

Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3.

695.    In the course of its business, Graco, through its agents, employees, and/or subsidiaries, violated the Pennsylvania CPA by knowingly and intentionally misrepresenting, omitting, concealing, and failing to disclose material facts regarding the reliability, safety, and performance of the Booster Seats, as detailed above.

696.    Specifically, by misrepresenting the Booster Seats as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Booster Seats, Graco engaged in one or more of the following unfair or deceptive business practices prohibited by 73 Pa. Cons. Stat. § 201-2(3):

      a.  Representing that the Booster Seats have characteristics, uses, benefits, and qualities which they do not have;

      b.  Representing that the Booster Seats are of a particular standard, quality, and grade when they are not.;

      c.  Advertising the Booster Seats with the intent not to sell them as advertised;

      d.  Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 a. Cons. Stat. § 201-2(4)(v), (vii), (ix) and (xxi).

697.   Graco's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including the Pennsylvania Plaintiffs and Pennsylvania Subclass members, about the true safety and reliability of Booster Seats, the quality of the Booster Seats, and the true value of the Booster Seats.

698.   Graco's scheme and concealment of the true characteristics of the Booster Seats were material to the Pennsylvania Plaintiffs and Pennsylvania Subclass members, as Graco intended.  Had they known the truth, the Pennsylvania Plaintiffs and Pennsylvania Subclass members would not have purchased the Booster Seats, or would have paid significantly less for them.

699.   The Pennsylvania Plaintiffs and Pennsylvania Subclass members had no way of discerning that Graco's representations were false and misleading, or otherwise learning the facts that Graco had concealed or failed to disclose.  The Pennsylvania Plaintiffs and Pennsylvania Subclass members did not, and could not, unravel Graco's deception on their own.

700.   Graco had an ongoing duty to the Pennsylvania Plaintiffs and Pennsylvania Subclass members to refrain from unfair and deceptive practices under the Pennsylvania CPL in the course of its business.  Specifically, Graco owed the

Pennsylvania Plaintiffs and Pennsylvania Subclass members a duty to disclose all the material facts concerning the Booster Seats because Graco possessed exclusive knowledge, intentionally concealed the true characteristics of the Booster Seats from the Pennsylvania Plaintiffs and Pennsylvania Subclass members, and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

701. The Pennsylvania Plaintiffs and Pennsylvania Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Graco's concealment, misrepresentations, and/or failure to disclose material information.

702. Graco's violations present a continuing risk to the Pennsylvania Plaintiffs and Pennsylvania Subclass members, as well as to the general public. Graco's unlawful acts and practices complained of herein affect the public interest.

703. Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), the Pennsylvania Plaintiff and Pennsylvania Subclass members seek an order enjoining Graco's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Pennsylvania CPA.

### 14.    Texas

## TEXAS COUNT I
## BREACH OF EXPRESS WARRANTY
### (Tex. Bus. & Com. Code § 2.313)

704.    Plaintiff Elizabeth Arellano ("Texas Plaintiff") brings this claim on behalf of herself and the Texas Subclass against Graco.

705.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats under Tex. Bus. & Com. Code § 2.104(a) and a "seller" of Booster Seats under Tex. Bus. & Com. Code § 2.103(a)(4).

706.    Texas Plaintiff and all Texas Subclass members who purchased Booster Seats in Texas are "buyers" within the meaning of Tex. Bus. & Com. Code § 2.103(a)(1).

707.    The Booster Seats are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code § 2.105(a).

708.    In connection with the purchase of all Booster Seats, Graco provided the Texas Plaintiff and Texas Subclass members with written express warranties that the Booster Seats were free of defects.

709.    Further, Graco expressly warranted and represented that its Booster Seats:

   a.    Were safe for children who weigh as little as 30 pounds;

    b.   Were safe for children who weigh less than 40 pounds;

    c.   Were "SIDE IMPACT TESTED" and provided side-impact protection;

    d.   Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

    e.   Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

    f.   Included a headrest that "helps keep your child secure" in a side-impact collision.

710.   Graco's express warranties formed the basis of the bargain that was reached when the Texas Plaintiff and the Texas Subclass members purchased the Booster Seats.

711.   Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child occupants during a side-impact crash.

712.   As a direct and proximate result of Graco's breach of its express warranties, the Texas Plaintiff and the Texas Subclass members have been damaged in an amount to be proven at trial.

## TEXAS COUNT II
## BREACH OF IMPLIED WARRANTY
### (Tex. Bus. & Com. Code Ann. § 2.314)

713.   Plaintiff Elizabeth Arellano ("Texas Plaintiff") brings this claim on

behalf of herself and the Texas Subclass against Graco.

714.    Texas law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Tex. Bus. & Com. Code § 2.314(a).

715.    Graco is and was at all relevant times a "merchant" as defined by Tex. Bus. & Com. Code § 2.104(a).

716.    Texas Plaintiff and members of the Texas Subclass purchased Booster Seats manufactured and marketed by Graco by and through its authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Graco's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Graco was a merchant, manufacturer, marketer, warrantor, and/or seller of the Booster Seats. Graco knew or had reason to know of the specific use for which the Booster Seats were purchased.

717.    The Booster Seats are and were at all relevant times goods within the meaning of Tex. Bus. & Com. Code § 2.105(a).

718.    Graco impliedly warranted that the Booster Seats were in merchantable condition and fit. However, when sold, and at all times thereafter, the Booster Seats were not in merchantable condition, were not fit for the ordinary purpose of providing safety and protection for children in the event of a side-impact

crash, and were not fit for the ordinary purpose of providing safety and protection for children under four years old or who weighed less than 40 pounds, thus presenting an undisclosed safety risks to children. Thus, Graco breached its implied warranty of merchantability for the ordinary purpose for which the Booster Seats are purchased and used.

719.    Graco cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous booster seats.

720.    As a direct and proximate result of Graco's breach of the implied warranty of merchantability, Texas Plaintiff and members of the Texas Subclass have been damaged in an amount to be proven at trial.

721.    Texas Plaintiff and members of the Texas Subclass have been excused from performance of any warranty obligations as a result of Graco's conduct described herein.

### TEXAS COUNT III
### VIOLATION OF THE TEXAS DECEPTIVE TRADE
### PRACTICES AND CONSUMER PROTECTION ACT
### (Tex. Bus. & Com. Code §§ 17.4, *et seq*.)

722.    Plaintiff Elizabeth Arellano ("Texas Plaintiff") brings this claim on behalf of herself and the Texas Subclass against Graco.

723.    Texas Plaintiff and the Texas Subclass members are individuals with assets of less than $25 million (or are controlled by corporations or entities with less

than $25 million in assets). *See* Tex. Bus. & Com. Code § 17.41.

724.    The Texas Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") provides a private right of action to a consumer where the consumer suffers economic damage as the result of either (i) the use of false, misleading, or deceptive acts or practices specifically enumerated in Tex. Bus. & Com. Code § 17.46(b); or (ii) "an unconscionable action or course of action by any person." Tex. Bus. & Com. Code § 17.50(a)(2) & (3).

725.    The Texas DTPA declares several specific actions to be unlawful, including: "(5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have"; "(7) Representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another"; and "(9) advertising goods or services with intent not to sell them as advertised." An "unconscionable action or course of action" means "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree." Tex. Bus. & Com. Code § 17.45(5). As detailed herein, Graco has engaged in an unconscionable action or course of action and thereby caused economic damages to the Texas Plaintiff and the Texas Subclass.

726.    In the course of its business, Graco willfully failed to disclose the

safety risks posed by its Booster Seats, which put children's health and wellbeing at serious risk in side-impact car crashes.

727.   Graco also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of its Booster Seats.

728.   Graco's unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including the Texas Plaintiff and the Texas Subclass members, about the true safety risks posed by its Booster Seats.

729.   Graco intentionally and knowingly misrepresented material facts regarding its Booster Seats with intent to mislead the Texas Plaintiff and the Texas Subclass.

730.   Graco knew or should have known that its conduct violated the Texas DTPA.

731.   Graco owed the Texas Plaintiff and the Texas Subclass a duty to disclose the truth about the safety risks posed by its Booster Seats, because Graco:

     a.   Possessed exclusive knowledge about the testing of these seats;

     b.   Intentionally concealed the foregoing from Texas Plaintiff and the Texas Subclass; and/or

      c.   Made incomplete and misleading representations that that the Booster Seats were "Side Impact Tested," while purposefully withholding material facts from Texas Plaintiff and the Texas Subclass that contradicted these representations.

732.    Graco's omissions and/or misrepresentations about the safety of its Booster Seats were material to the Texas Plaintiff and the Texas Subclass.

733.    The Texas Plaintiff and the Texas Subclass suffered ascertainable loss caused by Graco's misrepresentations and its concealment of and failure to disclose material information. The Texas Plaintiff and the Texas Subclass members would not have purchased the Booster Seats but for Graco's violations of the Texas DTPA.

734.    Graco had an ongoing duty to its customers to refrain from unfair and deceptive practices under the Texas DTPA. As a direct and proximate result of Graco's violations of the Texas DTPA, Texas Plaintiff and the Texas Subclass have suffered injury-in-fact and actual damages.

735.    Graco's violations present a continuing risk to the Texas Plaintiff as well as to the general public. Graco's unlawful acts and practices complained of herein affect the public interest.

736.    On November 5, 2020, Plaintiffs sent Graco pre-suit notice of their claims under the Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.4, *et seq*. Graco did not respond with a reasonable offer of relief to the Texas Plaintiff. A   copy of this complaint was also mailed to the

Attorney General of the State of Texas in accordance with Tex. Bus. & Com. Code § 17.501.

737.    Pursuant to Tex. Bus. & Com. Code § 17.505(a), because Graco did not rectify its conduct within 60 days, the Texas Plaintiff is entitled under the DTPA to obtain monetary relief against Graco, measured as actual damages in an amount to be determined at trial, treble damages for Graco's knowing violations of the Texas DTPA, and any other just and proper relief available under the Texas DTPA.

### 15.    West Virginia

### WEST VIRGINIA COUNT I
### BREACH OF EXPRESS WARRANTY
### (W. Va. Code § 46-2-313)

738.    Plaintiff Jean Leffingwell ("West Virginia Plaintiff") brings this claim on behalf of herself and the West Virginia Subclass against Graco.

739.    Graco is and was at all relevant times a "merchant" with respect to Booster Seats under W. Va. Code § 46-2-104(1) and a "seller" of Booster Seats under W. Va. Code § 46-2-105(1)(d).

740.    West Virginia Plaintiff and all West Virginia Subclass members who purchased Booster Seats in West Virginia are "buyers" within the meaning of W. Va. Code § 46-2-105(1)(a).

741.    The Booster Seats are and were at all relevant times "goods" within

the meaning of W. Va. Code § 46-2-105(1).

742.    In connection with the purchase of all Booster Seats, Graco provided the West Virginia Plaintiff and West Virginia Subclass members with written express warranties that the Booster Seats were free of defects.

743.    Further, Graco expressly warranted and represented that its Booster Seats:

      a.   Were safe for children who weigh as little as 30 pounds;

      b.   Were safe for children who weigh less than 40 pounds;

      c.   Were "SIDE IMPACT TESTED" and provided side-impact protection;

      d.   Were "engineered and tested and crash tested to meet or exceed U.S. safety standards";

      e.   Were subjected to "a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes"; and

      f.   Included a headrest that "helps keep your child secure" in a side-impact collision.

744.    Graco's express warranties formed the basis of the bargain that was reached when the West Virginia Plaintiff and the West Virginia Subclass members purchased the Booster Seats.

745.    Graco breached its express warranties because the Booster Seats are not suitable for children weighing less than 40 pounds and do not protect child

occupants during a side-impact crash.

746.   As a direct and proximate result of Graco's breach of its express warranties, the West Virginia Plaintiff and the West Virginia Subclass members have been damaged in an amount to be proven at trial.

## WEST VIRGINIA COUNT II
## BREACH OF IMPLIED WARRANTY
## (W. Va. Code § 46-2-314)

747.   Plaintiff Jean Leffingwell ("West Virginia Plaintiff") brings this claim on behalf of herself and the West Virginia Subclass against Graco.

748.   West Virginia law states that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." W. Va. Code § 46-2-314(1).

749.   Graco is and was at all relevant times a "merchant" as defined by W. Va. Code § 46-2-104(1).

750.   West Virginia Plaintiff and members of the West Virginia Subclass purchased Booster Seats manufactured and marketed by Graco by and through its authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Graco's contracts with authorized sellers, or eventual purchasers when bought from a third party. At all relevant times, Graco was a merchant, manufacturer, marketer, warrantor, and/or seller of the Booster Seats.

Graco knew or had reason to know of the specific use for which the Booster Seats were purchased.

751.    The Booster Seats are and were at all relevant times goods within the meaning of W. Va. Code § 46-2-105(1).

752.    Graco impliedly warranted that the Booster Seats were in merchantable condition and fit. However, when sold, and at all times thereafter, the Booster Seats were not in merchantable condition, were not fit for the ordinary purpose of providing safety and protection for children in the event of a side-impact crash, and were not fit for the ordinary purpose of providing safety and protection for children under four years old or who weighed less than 40 pounds, thus presenting an undisclosed safety risks to children. Thus, Graco breached its implied warranty of merchantability for the ordinary purpose for which the Booster Seats are purchased and used.

753.    Graco cannot disclaim its implied warranty as it knowingly sold unsafe and hazardous booster seats.

754.    As a direct and proximate result of Graco's breach of the implied warranty of merchantability, West Virginia Plaintiff and members of the West Virginia Subclass have been damaged in an amount to be proven at trial.

755.    West Virginia Plaintiff and members of the West Virginia Subclass have been excused from performance of any warranty obligations as a result of

Graco's conduct described herein.

## WEST VIRGINIA COUNT III
## VIOLATION OF THE WEST VIRGINIA CONSUMER
## CREDIT AND PROTECTION ACT
### (W. Va. Code §§ 46A-6-101, *et seq*.)

756.    Plaintiff Jean Leffingwell ("West Virginia Plaintiff") brings this claim on behalf of herself and the West Virginia Subclass against Graco.

757.    The West Virginia Consumer Credit and Protection Act ("WVCCPA") broadly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce…" W. Va. Code § 46A-6-104.

758.    West Virginia Plaintiff and the West Virginia Subclass are "consumers" within the meaning of W. Va. Code § 46A-1-102.

759.    In the course of its business, Graco willfully failed to disclose the safety risks posed by its Booster Seats, which put children's health and wellbeing at serious risk in side-impact car crashes. Graco also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of its Booster Seats.

760.    Additionally, Graco willfully and intentionally labelled its Booster

Seats as safe for children weighing less than 40 pounds when Graco knew that its Booster Seats were not safe for children weighing less than 40 pounds.

761.    Graco's unlawful acts or practices were likely to and did in fact deceive reasonable consumers, including West Virginia Plaintiff and the West Virginia Subclass members, about the true safety risks posed by its Booster Seats.

762.    West Virginia Plaintiff and West Virginia consumers relied on Graco's representations regarding its side-impact testing and weight limits when purchasing their Booster Seats.

763.    Graco intentionally and knowingly misrepresented material facts regarding its Booster Seats with intent to mislead Plaintiff and the West Virginia Subclass.

764.    Graco knew or should have known that its conduct violated the WVCCPA.

765.    Graco owed the West Virginia Plaintiff and the West Virginia Subclass a duty to disclose the truth about the safety risks posed by its Booster Seats, because Graco:

>    a.    Possessed exclusive knowledge about the testing of these seats;

>    b.    Intentionally concealed the foregoing from Plaintiff and the West Virginia Subclass; and/or

      c.   Made incomplete and misleading representations that its Booster Seats were "side impact tested," while purposefully withholding material facts from Plaintiff and the West Virginia Subclass that contradicted these representations.

766.    Graco's omissions and/or misrepresentations about the safety of its Booster Seats were material to West Virginia Plaintiff and the West Virginia Subclass.

767.    West Virginia Plaintiff and the West Virginia Subclass suffered ascertainable loss caused by Graco's misrepresentations and its concealment of and failure to disclose material information. West Virginia Plaintiff and the West Virginia Subclass members would not have purchased the Booster Seats but for Graco's violations of the WVCCPA.

768.    Graco had an ongoing duty to all of its customers to refrain from unlawful acts or practices under the WVCCPA. As a direct and proximate result of Graco's violations of the WVCCPA, West Virginia Plaintiff and the West Virginia Subclass have suffered injury-in-fact and/or actual damage.

769.    Graco's violations present a continuing risk to West Virginia Plaintiff and the West Virginia Subclass, as well as to the general public. Graco's unlawful acts and practices complained of herein affect the public interest.

770.    West Virginia Plaintiff seeks injunctive and monetary relief against Graco measured as the greater of (a) actual damages in an amount to be determined

at trial and (b) statutory damages in the amount of $200 for each plaintiff; reasonable attorneys' fees and court costs; and any other just and proper relief available under W. Va. Code § 46A-6-106.

771.    Graco also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of its Booster Seats.

772.    On November 5, 2020, Plaintiffs sent Graco pre-suit notice of their claims under the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, *et seq*. Graco did not respond with a reasonable offer of relief to the West Virginia Plaintiff.

773.    West Virginia Plaintiff seeks monetary relief against Graco measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages or other damages available by law for each plaintiff; reasonable attorneys' fees and court costs; and any other just and proper relief available under 46 W Va. Code § 46A-6-106.

## VIII.  <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiffs, individually and on behalf of the other members

of the Classes, respectfully request that this Court enter an Order:

a. Certifying the Nationwide Class and/or the State Subclasses and appointing Plaintiffs as the Class Representatives, and appointing Plaintiffs' Counsel as Class Counsel under Rule 23 of the Federal Rules of Civil Procedure;

b. Declaring that Graco's failure to disclose the dangers of the Booster Seat was negligent, deceptive, unfair, and unlawful;

c. Finding that Graco's conduct was negligent, deceptive, unfair, and unlawful as alleged herein;

d. Finding that Graco's conduct was in violation of the statutes and common law referenced herein;

e. Awarding Plaintiffs and the other Class members actual, compensatory, and consequential damages;

f. Awarding Plaintiffs and the other Class members statutory damages and penalties, as allowed by law;

g. Awarding Plaintiffs and the other Class members restitution and disgorgement;

h. Awarding Plaintiffs and the other Class members pre-judgment and post-judgment interest;

i. Awarding Plaintiffs and the other Class members reasonable attorneys' fees costs and expenses; and

j. Granting such other relief as the Court deems just and proper.

## IX.   JURY TRIAL DEMANDED

Plaintiffs demand a trial by jury of all claims in this Consolidated Amended

Class Action Complaint so triable.

Dated: December 11, 2020

Respectfully submitted,

s/ *Melissa R. Emert*

**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
Melissa R. Emert (pro hac vice)
Gary S. Graifman (pro hac vice)
747 Chestnut Ridge Road
Chestnut Ridge, New York 10977
Telephone: (845) 356-2570
Facsimile: (845) 356-4335
memert@kgglaw.com
ggraifman@kgglaw.com

s/ *Martha A. Geer*

**WHITFIELD BRYSON LLP**
Martha A. Geer (pro hac vice)
Patrick M. Wallace (pro hac vice)
Harper Segui
900 W. Morgan Street
Raleigh, NC 27603
T: 919-600-5000
F: 919-600-5035
martha@whitfieldbryson.com
pat@whitfieldbryson.com
harper@whitfieldbryson.com

*Interim Co-Lead Class Counsel*

**EVANGELISTA WORLEY, LLC**
David J. Worley
Georgia Bar No. 776665
James M. Evangelista
Georgia Bar No. 707807
500 Sugar Mill Road
Suite 245A

Atlanta, GA 30350
Telephone: (404) 205-8400
david@ewlawllc.com jim@ewlawllc.com

**CASEY GERRY SCHENK**
**FRANCAVILLA BLATT &**
**PENFIELD, LLP**
Gayle M. Blatt (pro hac vice)
P. Camille Guerra (pro hac vice)
James M. Davis (PHV application
forthcoming)
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232
gmb@cglaw.com
camille@cglaw.com
jdavis@cglaw.com

**MASON LIETZ & KLINGER LLP**
Gary E. Mason (pro hac vice)
5101 Wisconsin Avenue NW
Suite 305
Washington, D.C. 20016
Tel: (202) 429-2290
Fax: (202) 42902294
gmason@masonllp.com

**GREG COLEMAN LAW PC**
Rachel L. Soffin
Gregory F. Coleman (pro hac vice)
Jonathan B. Cohen (pro hac vice)
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
rachel@gregcolemanlaw.com
greg@gregcolemanlaw.com
jonathan@gregcolemanlaw.com

**ROBINS KAPLAN LLP**

Aaron M. Sheanin (pro hac vice)
46 Shattuck Square
Suite 22
Berkeley, CA 94704
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
asheanin@robinskaplan.com

**ROBINS KAPLAN LLP**

Stacey P. Slaughter (pro hac vice)
Michael Pacelli (pro hac vice)
Austin Hurt (pro hac vice)
800 LaSalle Ave.
Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
sslaughter@robinskaplan.com
mpacelli@robinskaplan.com
ahurt@robinskaplan.com

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**

Mark P. Chalos (PHV application
forthcoming)
222 2nd Avenue South
Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
Facsimile: (615) 313-9965
mchalos@lchb.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**

Matthew M Guiney (pro hac vice
application forthcoming)
270 Madison Ave.
New York, NY 10016
Telephone: (212) 545-4600
guiney@whafh.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
Carl V. Malmstrom (admitted pro hac
vice)
111 W. Jackson Blvd.
Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
malmstrom@whafh.com

**SHUB LAW FIRM LLC**
Jonathan Shub (pro hac vice application
forthcoming)
134 Kings Highway E,
2nd Floor,
Haddonfield, NJ 08033
Telephone: (856) 772-7200
jshub@shublawyers.com

*Plaintiffs' Counsel*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date the foregoing CONSOLIDATED AMENDED CLASS ACTION COMPLAINT JUDGMENT was electronically filed with the Clerk using the CM/ECF system, which will send a notice of electronic filing to all registered users of the CM/ECF system.

Dated: December 11, 2020          By:   <u>/s/ *David J. Worley*</u>
                                        David J. Worley

                                        *Counsel for Plaintiff*