## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## GAINESVILLE DIVISION

| | |
|---|---|
| KELLIE CARDER, et al., | |
| Plaintiffs, | |
| v. | CIVIL ACTION FILE NO. 2:20-cv-00137-LMM |
| GRACO CHILDREN'S PRODUCTS, INC., | |
| Defendant. | |

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF GRACO CHILDREN'S PRODUCTS, INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)

# TABLE OF CONTENTS

**Page**

Introduction ................................................................................................. 1

Background ................................................................................................... 4

    A.    Plaintiffs' Allegations ................................................................ 4

    B.    Graco's Booster Seats Comply with Federal Safety Standards .......... 8

Argument ..................................................................................................... 11

I.    All of Plaintiffs' Claims Should Be Dismissed Because They Lack
Standing. .............................................................................................. 12

    A.    Plaintiffs Have No "Benefit of the Bargain" Injuries Because
Their Booster Seats Have Performed Safely. .............................. 14

    B.    Plaintiffs' Lack Standing to Bring Side-Impact Claims Because
They Have Failed to Plead that the Products Are Wholly
Unsafe. ...................................................................................... 17

    C.    Plaintiffs Lack Standing to Seek Injunctive Relief Because
They Fail to Plead an Actual and Imminent Future Injury. ........ 19

II.    The CAC Should Be Dismissed for Failure to State a Claim. ............... 20

    A.    The CAC Fails to Plead Fraud or Misrepresentation with
Particularity. ............................................................................. 20

    B.    The CAC Fails to State Claims for Breach of Warranty. .............. 23

        1.    The Express Warranty Claims Fail for Various Reasons. ....... 24

            a.    Failure to Provide Notice Within a Reasonable
Time ....................................................................... 24

            b.    Failure to Allege Facts Showing a "Basis of
Bargain" ................................................................. 26

            c.    Failure to Allege Privity ........................................ 29

        2.    The Implied Warranty Claims Also Fail for Various
Reasons. ................................................................................ 29

            a.    Failure to Allege Privity ........................................ 29

            b.    Disclaimer of Implied Warranty ............................ 30

# TABLE OF CONTENTS
(continued)

**Page**

       c.      Failure to Provide Notice Within a Reasonable Time ...................................................................... 32

       d.      Failure to Allege a Particular Purpose ........................... 33

       e.      The Massachusetts Implied Warranty Fails. ................. 34

    3.     The Magnuson-Moss Claim Fails for the Same Reasons. ....... 35

C.    The CAC Fails to State Claims Under State Consumer Protection Acts. ....................................................................... 36

    1.     California Statutes ......................................................... 36

    2.     Florida Unfair and Deceptive Trade Practices Act ................. 37

    3.     Georgia Fair Business Practices Act ...................................... 37

    4.     Illinois Statutes .................................................................. 38

    5.     Massachusetts Consumer Protection Law ............................... 39

    6.     New Jersey Consumer Fraud Act ................................... 40

    7.     New York Unfair and Deceptive Trade Practices Act ........... 40

    8.     North Carolina Unfair and Deceptive Trade Practices Act ................................................................................ 40

    9.     Ohio Statutes ................................................................. 41

    10.    Oklahoma Consumer Protection Act ....................................... 42

    11.    Oregon Unlawful Trade Practices Act ..................................... 42

    12.    Pennsylvania Unfair Trade Practices & Consumer Protection Law .................................................................. 43

    13.    Texas Deceptive Trade Practices and Consumer Protection Act .................................................................. 43

    14.    West Virginia Consumer Credit and Protection Act ............. 44

D.    The CAC Fails to State a Claim for Unjust Enrichment. .................... 44

Conclusion ........................................................................................ 46

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adinolfe v. United Technologies Corp.,*
768 F.3d 1161 (11th Cir. 2014) ................................................................. 15

*Advanced Drainage Sys., Inc. v. SiteCo Materials*, Inc., No. 13-CV-1349 JAP,
2014 WL 1092809 (D.N.J. Mar. 18, 2014) ............................................ 31

*Alt. Health Sys. v. Cummins Inc.,*
2010 WL 5252018 (D.N.J. 2010) ............................................................ 32

*Alvarez v. Chevron Corp.,*
656 F.3d 925 (9th Cir. 2011) ............................................................ 24, 25

*American Fed. of State Cty. & Mun. Employees v.*
*Ortho-McNeil-Janssen Pharmas., Inc.,*
2010 WL 891150 (E.D. Pa. Mar. 11, 2010) .......................................... 25

*Andrews v. AT&T,*
95 F.3d 1014 (11th Cir, 1996) ................................................................. 22

*Asghari v. Volkswagen Group of America, Inc.,*
42 F. Supp. 3d 1306 (C.D. Cal. 2013) .................................................... 28

*Ashcroft* v. *Iqbal,*
556 U.S. 662 (2009) ................................................................................. 11

*Avila v. Vita Pharma., Inc.,*
2013 WL 12124054 (C.D. Cal. Feb. 7, 2013) ........................................ 21

*Banh v. Am. Honda Motor Co., Inc.,* No. 2:19-CV-05984-RGK-AS,
2019 WL 8683361 (C.D. Cal. Dec. 17, 2019) ........................................ 25

*Bascom v. JP Morgan Chase Bank Nat'l Ass'n,*
2018 WL 1804347 (N.D. Ga. Feb. 9, 2018) ...................................... 12, 22

*Bell Atlantic Corp. v. Twombly,*
550 U.S. 544 (2007) ................................................................................. 11

*Boales v. Brighton Builders, Inc.,*
29 S.W.3d 159 (Tex. App. 2000) ............................................................ 43

*Bober v. Glaxo Wellcome PLC,*
246 F.3d 934 (7th Cir. 2001) .................................................................. 38

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Borden v. Antonelli Coll.*,
  304 F. Supp. 3d 669 (S.D. Ohio 2018) ........................................................ 41

*Bowlen v. Coloplast A/S*, No. 2:17CV1372,
  2018 WL 4469319 (W.D. Pa. Sept. 18, 2018), *reconsideration denied*,
  No. 2:17CV1372, 2019 WL 4597570 (W.D. Pa. Sept. 23, 2019) ....................... 24, 25

*Brown v. Electrolux Home Prods., Inc.*,
  817 F.3d 1225 (11th Cir. 2016) .................................................................. 35

*Buske v. Owens Corning*, No. 16-cv-709,
  2017 WL 1062371 (N.D. Ga. Mar. 21, 2017) ............................................... 20

*Byung Ho Cheoun v. Infinite Energy, Inc.*,
  363 F. App'x 691 (11th Cir. 2010) .............................................................. 38

*Byung Ho Cheoun v. Infinite Energy*, No. 1:08-CV-3553-TCB,
  2009 WL 10690518 (N.D. Ga. July 1, 2009) ................................................. 38

*Castillo v. Tyson*,
  268 A.D.2d 336 (N.Y. App. Div. 2000) ........................................................ 44

*CHMM, LLC v. Freeman Marine Equip., Inc.*, No. 3:12-CV-01484-ST,
  2013 WL 3025137 (D. Or. June 14, 2013) ................................................... 24

*City of Los Angeles v. Lyons*,
  461 U.S. 95 (1983) .................................................................................. 20

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ............................................................... 30, 35

*Connick v. Suzuki Motor Co.*,
  174 Ill. 2d 482 (1996) ......................................................................... 24, 25

*Corsello v. Verizon N.Y., Inc.*,
  967 N.E.2d 1177 (N.Y. 2012) .................................................................... 45

*Debernardis v. IQ Formulations, LLC*,
  942 F.3d 1076 (11th Cir. 2019) ......................................................... 17, 18, 19

*Deburro v. Apple, Inc.*, No. A-13-CA-784-SS,
  2013 WL 5917665 (W.D. Tex. Oct. 31, 2013) ............................................... 32

*Dinwiddie v. Suzuki Motor of Am., Inc.*,
  111 F. Supp. 3d 1202 (W.D. Okla. 2015) .................................................... 42

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Dixon v. Allergan USA, Inc.*, No. CV 14-61091-CIV,
    2015 WL 12915671 (S.D. Fla. May 28, 2015) ........................................................... 29

*Doss v. General Mills, Inc.*,
    816 Fed. App'x 312 (11th Cir. 2020) .......................................................... 17, 18, 19

*Duke v. Flying J, Inc.*,
    178 F. Supp. 3d 918 (N.D. Cal. 2016) ........................................................... 43

*Feliciano v. Gen. Motors LLC*, No. 14 CIV. 06374 (AT),
    2016 WL 9344120 (S.D.N.Y. Mar. 31, 2016) ........................................................... 30

*Field v. Mans*,
    516 U.S. 59 (1995) ........................................................... 22

*Fireman's Fund Ins. Co. v. Bradford-White Corp.*, No. 12-cv-10509,
    2014 WL 1515266 (D. Mass. Apr. 15, 2014) ........................................................... 35

*FMR Corp. v. Boston Edison Co.*,
    415 Mass. 393 (1993) ........................................................... 34

*Frenzel v. AliphCom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014) ...................................................... 34, 36

*Fuchs v. Menard, Inc.*,
    2017 WL 4339821 (N.D. Ill. Sept. 29, 2017) ........................................................... 38

*Garcia v. Clarins USA, Inc.*, No. 14CV21249,
    2014 WL 11997812 (S.D. Fla. Sept. 5, 2014) ........................................................... 24

*Gardner v. Mutz*,
    962 F.3d 1329 (11th Cir. 2020) ........................................................... 12

*Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla.*,
    351 F.3d 1112 (11th Cir. 2003) ........................................................... 13

*Great Divide Ins. Co. v. Kimble Mixer Co.*, No. 18-CV-0428-CVE-FHM,
    2019 WL 2372604 (N.D. Okla. June 5, 2019) ........................................................... 32

*Greene v. BMW of N. Am.*, No. CIV. 2:11-04220 WJM,
    2013 WL 5287314 (D.N.J. Sept. 17, 2013) ........................................................... 40

*Griffin v. Dugger*,
    823 F.2d 1476 (11th Cir. 1987) ........................................................... 13

*Hamilton v. Ball*,
    7 N.E.3d 1241 (Ohio Ct. App. 2014) ........................................................... 41

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Hancock v. Urban Outfitters, Inc.,*
830 F.3d 511 (D.C. Cir. 2016) ..................................................................11

*Heffner v. Blue Cross and Blue Shield of Alabama, Inc.,*
443 F.3d 1330 (11th Cir. 2006)..............................................................22

*Helpling v. Rheem Mfg. Co.,* No. 1:15-CV-2247-WSD,
2016 WL 1222264 (N.D. Ga. Mar. 23, 2016) ............................................30

*Herrington v. Johnson & Johnson Consumer Cos.,* No. C 09-1597,
2010 WL 3448531 (N.D. Cal. Sept. 1, 2010) ............................................16

*Hobco, Inc. v. Tallahassee Assocs.,*
807 F.2d 1529 (11th Cir. 1987)..............................................................27

*Holmes v. Behr Process Corp.,* No. 2:15-cv-0454,
2015 WL 7252662 (N.D. Ala. Nov. 17, 2015) ...........................................21

*Horowitz v. Stryker Corp.,*
613 F. Supp. 2d 271 (E.D.N.Y. 2009) ......................................................29

*Houston v. Marod Supermarkets, Inc.,*
733 F.3d 1323 (11th Cir. 2013)..............................................................19

*Hunt v. U.S. Tobacco Co.,*
538 F.3d 217 (3d Cir. 2008) ..................................................................43

*Iannacchino v. Ford Motor Co.,*
888 N.E.2d 879 (Mass. 2008) ................................................................39

*In re Aqua Dots Prods. Liab. Litig.,*
270 F.R.D. 377 (N.D. Ill. 2010) .............................................................45

*In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.,*
2014 WL 3360233 (N.D. Ga. July 9, 2014) ...............................................45

*In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.,*
82 F. Supp. 3d 608 (D.N.J. 2015)...........................................................27

*In re Conagra Peanut Butter Products Liability Litigation,*
251 F.R.D. 689 (N.D. Ga. 2008) ........................................................22, 46

*In re Frito-Lay N. Am., Inc. All Nat. Litig.,* No. 12-MD-2413 RRM RLM,
2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013).............................................24

*In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.,*
831 F. Supp. 2d 507 (D. Mass. 2011) ......................................................16

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Galectin Therapeutics, Inc. Sec. Litig.,*
843 F.3d 1257 (11th Cir. 2016)............................................................12, 22

*In re Hardieplank Fiber Cement Siding Litig.,*
284 F. Supp. 3d 918 (D. Minn. 2018)..........................................................27

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.,*
903 F.3d 278 (3d Cir. 2018)..........................................................................15

*In re MyFord Touch Consumer Litig.,*
46 F. Supp. 3d 936 (N.D. Cal. 2014)...........................................................25

*In re Nexus 6P Prod. Liab. Litig.,*
293 F. Supp. 3d 888 (N.D. Cal. 2018)..........................................................27

*In re Porsche Cars N. Am., Inc.,*
880 F. Supp. 2d 801 (S.D. Ohio 2012).........................................................41

*In re Riddell Concussion Reduction Litig.,*
77 F. Supp. 3d 422 (D.N.J. 2015).................................................................21

*In re Tri State Crematory Litig.,* 215 F.R.D. 660 (N.D. Ga. 2003)...............................22

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,*
684 F. Supp. 2d 942 (N.D. Ohio 2009) ........................................................45

*Int'l Star Registry of Ill. V. ABC Radio Network, Inc.,*
451 F. Supp. 2d 982 (N.D. Ill. 2006) ...........................................................39

*Jasper v. Abbott Labs., Inc.,*
834 F. Supp. 2d 766 (N.D. Ill. 2011) ...........................................................16

*Kearns v. Ford Motor Co.,*
567 F.3d 1120 (9th Cir. 2009)......................................................................21

*Kelly v. Georgia-Pac. LLC,*
671 F. Supp. 2d 785 (E.D.N.C. 2009)...........................................................30

*Kljajich v. Whirlpool Corp.,*
2015 WL 12838163 (N.D. Ill. Sept. 25, 2015) ............................................39

*Koziara v. City of Casselberry,*
392 F.3d 1302 (11th Cir. 2004).....................................................................13

*Kunzelmann v. Wells Fargo Bank, N.A.,* No. 9:11-cv-81373-DMM,
2103 WL 139913 (S.D. Fla. Jan. 10, 2013)..................................................46

## TABLE OF AUTHORITIES
(continued)

<u>**Page(s)**</u>

*Laskowski v. Brown Shoe Co.,*
    2015 WL 1286164 (M.D. Pa. Mar. 20, 2015) ............................................................. 21

*Lewis v. Casey,*
    518 U.S. 343 (1996); ..................................................................................................... 13

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ................................................................................................11, 12

*Martin v. Ford Motor Co.,*
    292 F.R.D. 252 (E.D. Pa. 2013)................................................................................... 29

*Massey v. Novartis Pharm. Corp.,*
    46 F. Supp. 3d 688 (W.D. Tex. 2014) ....................................................................24, 33

*Maxwell v. Remington Arms Co.,*
    2014 WL 5808795 (M.D.N.C. Nov. 7, 2014) ............................................................ 41

*McCune v. Graco Children's Prods., Inc.,*
    495 Fed. App'x 535
    (5th Cir. 2012) ............................................................................................................... 2

*Medley v. Johnson & Johnson Consumer Cos.,* No. 10-cv-02291,
    2011 WL 159674 (D.N.J. Jan. 18, 2011)................................................................... 16

*Michelson v.  Volkswagen Aktiengesellschaft,*
    99 N.E.3d 475 (Ohio Ct. App. 2018) ......................................................................... 41

*Moulton v. LG Elecs. USA, Inc.,*
    2012 WL 3598760 (D.N.J. Aug. 21, 2012) ................................................................ 32

*Mulder v. Kohl's Dep't Stores, Inc.,*
    865 F.3d 17 (1st Cir. 2017) ........................................................................................ 21

*Newman v. Tualatin Dev. Co.,*
    287 Or. 47 (1979)...................................................................................................27, 29

*Nottingham v. Houston Hosps., Inc.,* No. 5:18-CV-00182-TES,
    2018 WL 4604023 (M.D. Ga. Sept. 25, 2018) .......................................................... 38

*O'Neil v. Simplicity, Inc.,*
    574 F.3d 501 (8th Cir. 2009)...................................................................................... 15

*Osness v. Lasko Prod., Inc.,*
    868 F. Supp. 2d 402 (E.D. Pa. 2012) ......................................................................... 32

# TABLE OF AUTHORITIES
## (continued)

<u>Page(s)</u>

*Padilla v. Porsche Cars N. Am.*,
  391 F. Supp. 3d 1108 (S.D. Fla. 2019) ........................................................ 30

*Parkinson v. Guidant Corp.*,
  315 F. Supp.2d 741 (W.D. Pa. 2004) .......................................................... 28

*Parkinson v. Novartis Pharm. Corp.*,
  5 F. Supp. 3d 1265 (D. Or. 2014) ............................................................... 32

*Patel v. Zillow, Inc.*,
  2018 WL 2096453 (N.D. Ill. May 7, 2018) ................................................. 39

*Patrick v. Volkswagen Grp. of Amer., Inc.*,
  2020 WL 38883275 (C.D. Cal. Mar. 5, 2020) ............................................. 45

*Paws Holdings, LLC v. Daikin Applied Americas Inc.*, No. CV 116-058,
  2018 WL 475013 (S.D. Ga. Jan. 18, 2018) ................................................. 37

*Pearson v. Winnebago Indus., Inc.*, No. 5:15-cv-43,
  2016 WL 6893937 (M.D. Fla. Nov. 23, 2016) ............................................ 35

*Pershouse v. L.L. Bean, Inc.*,
  368 F. Supp. 3d 185 (D. Mass. 2019) ......................................................... 44

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
  631 F.3d 436 (7th Cir. 2011) ...................................................................... 21

*Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*,
  2017 WL 4235773 (E.D. Pa. Sept. 25, 2017) ............................................. 45

*Prohias v. Pfizer, Inc.*
  485 F. Supp. 2d 1329 (S.D. Fla. 2007) ....................................................... 44

*Quashie v. Olympus Amer., Inc.*,
  315 F. Supp. 3d 1329 (N.D. Ga. 2018) .................................................. 12, 21

*Rampey v. Novartis Consumer Health, Inc.*,
  867 So. 2d 1079 (Ala. 2003) ....................................................................... 30

*Rivera v. Wyeth-Ayerst Labs.*,
  283 F.3d 315 (5th Cir. 2002) ...................................................................... 15

*Rosenberg v. Avis Rent A Car Sys., Inc.*,
  2007 WL 2213642 (E.D. Pa. July 31, 2007) ............................................... 21

*Sacred Heart Health Systems, Inc. v. Humana Military Healthcare Services, Inc.*, 601
  F.3d 1159, 1180 (11th Cir. 2010) ............................................................... 22

# TABLE OF AUTHORITIES
(continued)

__Page(s)__

*Savalli v. Gerber Prods. Co.,*
2016 WL 5390223 (S.D. Fla. Sep. 20, 2016) ................................................................. 37

*Savett v. Whirlpool Corp.,*
2012 WL 3780451 (N.D. Ohio Aug. 31, 2012) ........................................................... 30

*Schmidt v. Ford Motor Co.,*
972 F. Supp. 2d 712 (E.D. Pa. 2013) ........................................................................... 32

*Sebago, Inc. v. Beazer East, Inc.,*
18 F. Supp. 2d 70 (D. Mass. 1998) .............................................................................. 27

*Seib v. Metro. Life Ins. Co.,* No. 3:19-CV-00892-AC,
2020 WL 2531119 (D. Or. Mar. 30, 2020), *report and recommendation adopted,*
No. 3:19-CV-00892-AC, 2020 WL 2529615 (D. Or. May 15, 2020) ......................... 42

*Seldon v. Home Loan Servs., Inc.,*
647 F. Supp. 2d 451 (E.D. Pa. 2009) ........................................................................... 43

*Shepherd v. Vintage Pharmaceuticals, LLC,*
310 F.R.D. 691 (N.D. Ga. 2015) ................................................................................. 46

*Siemens Med. Sols. USA, Inc. v. Sunrise Med. Tech., Inc.,*
2005 WL 615747 (N.D. Tex. Mar. 16, 2005) ............................................................... 21

*Singleton v. Fifth Generation, Inc.,* No. 515CV474BKSTWD,
2016 WL 406295 (N.D.N.Y. Jan. 12, 2016) ................................................................ 25

*Smajlaj v. Campbell Soup Co.,*
782 F. Supp. 2d 84 (D.N.J. 2011) ................................................................................ 21

*Smith v. Apple, Inc.,*
2009 WL 3958096 (N.D. Ala. Nov. 4, 2009) ....................................................... 24, 32

*Speed Fastners, Inc. v. Newsom,*
382 F. 2d 395 (10th Cir. 1967) .................................................................................... 29

*Spokeo, Inc. v. Robins,*
--- U.S. ---, 136 S. Ct. 1540 (2016) ........................................................................... 12

*St. Clair v. Kroger Co.,*
581 F. Supp. 2d 896 (N.D. Ohio 2008) ....................................................................... 32

*St. Johns United Methodist Church v. Delta Elecs. Inc.,* No. CIV.A. 3-11-57,
2012 WL 3205043 (S.D. Tex. Aug. 3, 2012) ............................................................... 28

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Steel Co. v. Citizens for Better Env't,*
   523 U.S. 83 (1998) ........................................................................................ 12

*Summers v. Earth Island Inst.,*
   555 U.S. 488 (2009) ...................................................................................... 19

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.,*
   992 F. Supp. 2d 962 (C.D. Cal. 2014) .......................................................... 26

*TEU Servs., Inc. V. Inventronics USA, Inc.,* No. SA-16-CV-01023-RCL,
   2018 WL 3338217 (W.D. Tex. Feb. 5, 2018) ............................................... 29

*Thole v. U.S. Bank N.A.,*
   140 S. Ct. 1615 (2020) .................................................................................. 13

*Tiismann v. Linda Martin Homes Corp.,*
   281 Ga. 137 (2006) ....................................................................................... 38

*Toca v. Tutco, LLC,*
   430 F. Supp. 3d 1313 (S.D. Fla. 2020) ......................................................... 30

*Tomasino v. Estee Lauder Cos.,*
   44 F. Supp. 3d 251 (E.D.N.Y. 2014) ............................................................ 30

*Topshelf Mgmt., Inc. v. Campbell-Ewald Co.,*
   117 F. Supp. 3d 722 (M.D.N.C. 2015) ........................................................ 21

*Town of Chester v. Laroe Estates, Inc.,*
   --- U.S. ---, 137 S. Ct. 1645 (2017) ............................................................. 19

*Vega v. T-Mobile USA, Inc.,*
   564 F.3d 1256 (11th Cir. 2009) .................................................................... 46

*Waters v. Electrolux Home Prods., Inc.,*
   154 F. Supp. 3d 340 (N.D.W.Va. 2015) ...................................................... 44

*Weaver v. Chrysler Corp.,*
   172 F.R.D. 96 (S.D.N.Y. 1997) .................................................................... 21

*Webb v. Carter's Inc.,*
   272 F.R.D. 489 (C.D. Cal. 2011) .................................................................. 16

*Whalen v. Pfizer, Inc.,*
   862 N.Y.S.2d 812 (N.Y. Sup. Ct. 2005) ...................................................... 40

*Whitson v. Bumbo,* No. C 07-05597,
   2009 WL 1515597 (N.D. Cal. Apr. 16, 2009) ............................................. 17

# TABLE OF AUTHORITIES
(continued)

<u>Page(s)</u>

*Wojcik v. Empire Forklift, Inc.,*
    783 N.Y.S.2d 698 (N.Y. App. Div. 3d Dep't 2004) .................................................. 27

*Wooden v. Board of Regents of Univ. System of Ga.,*
    247 F.3d 1262 (11th Cir. 2001) ........................................................................... 19

*Zaro v. Maserati N. Am., Inc.,* No. 07 C 3565,
    2007 WL 4335431 (N.D. Ill. Dec. 6, 2007) ........................................................ 30

## <u>Statutes</u>

12A Okla. Stat. Ann. § 2-315 ................................................................................... 33

13 Pa. Cons. Stat. § 2313(a) .................................................................................... 26

13 Pa. Cons. Stat. § 2315 ......................................................................................... 33

13 Pa. Cons. Stat. § 2607(c)(1) ................................................................................ 32

49 U.S.C. § 30101 ..................................................................................................... 8

49 U.S.C. § 30111 ..................................................................................................... 9

49 U.S.C. § 30118 ................................................................................................... 10

810 Ill. Comp. Stat. 5/2–315 .................................................................................. 33

815 Ill. Comp. Stat. 510/3 ...................................................................................... 39

Ala. Code § 7-2-315 at cmt. 2 ............................................................................... 33

Ala. Code § 7-2-607(3)(a) ...................................................................................... 32

Cal. Bus. & Prof. Code § 17200 ............................................................................. 36

Cal. Bus. & Prof. Code § 17500 ............................................................................. 36

Cal. Civ. Code § 1770(a) ........................................................................................ 36

Cal. Com. Code § 2313 ........................................................................................... 26

Cal. Com. Code § 2315 ........................................................................................... 33

Fla. Stat. § 501.212(1) ............................................................................................ 37

Fla. Stat. § 672.313(1)(a) ....................................................................................... 26

Fla. Stat. § 672.315 ................................................................................................. 33

Ga. Code § 10-1-399(b) .......................................................................................... 37

Ga. Code § 11-2-313 ............................................................................................... 26

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

Ga. Code § 11-2-315 .................................................................................... 33

Mass. Gen. Laws ch. 106 § 2-313 ............................................................... 26

Mass. Gen. Laws ch. 106 § 2-315 ............................................................... 33

Mass. Gen. Laws ch. 93A ........................................................................... 39

N.C. Gen. Stat. § 25–2–313 ........................................................................ 26

N.C. Gen. Stat. § 25-2-315 ......................................................................... 33

N.J. Stat. Ann. § 12A:2-313 ....................................................................... 26

N.J. Stat. Ann. § 12A:2-315 ....................................................................... 33

N.J. Stat. Ann. § 12A:2-316 ....................................................................... 31

N.Y. U.C.C. Law § 2-313 ........................................................................... 26

N.Y. U.C.C. Law § 2–315 ........................................................................... 33

Ohio Rev. Code Ann. § 1302.26 ................................................................ 26

Ohio Rev. Code Ann. § 1302.28 ................................................................ 33

Ohio Rev. Code Ann. § 1345.09(B) ........................................................... 41

Okla. Stat. Ann. tit. 12A, § 2-313 .............................................................. 26

Okla. Stat. Ann. tit. 12A, § 2-316 .............................................................. 31

Or. Rev. Stat. Ann. § 72.3130 .................................................................... 26

Or. Rev. Stat. Ann. § 72.3150 .................................................................... 33

Or. Rev. Stat. Ann. § 72.6070 .................................................................... 32

Tex. Bus. & Com. Code Ann. § 2.313 ....................................................... 26

Tex. Bus. & Com. Code Ann. § 2.315 ....................................................... 33

Tex. Bus. & Com. Code Ann. § 2.316 ....................................................... 31

Tex. Bus. & Com. Code Ann. § 2.607(c)(1) .............................................. 32

W. Va. Code § 46-2-315 ............................................................................. 33

**Other Authorities**

FMVSS, *Child Restraint Systems – Side Impact Protection*,
    79 Fed. Reg. 32211 (2014) ................................................................... 10

**TABLE OF AUTHORITIES**
(continued)

<u>Page(s)</u>

## <u>Rules</u>

Fed. R. Civ. P. Rule 12(b)(1) ....................................................................12, 14

Fed. R. Civ. P. Rule 12(b)(6) ....................................................................12, 26

Fed. R. Civ. P. Rule 8(a) ...............................................................................13

Fed. R. Civ. P. Rule 9(b) ...................................................................13, 26, 28

## <u>Regulations</u>

49 C.F.R. § 510 ...............................................................................................11

49 C.F.R. § 554 ...............................................................................................11

49 C.F.R. § 571.213 ...........................................................................2, 6, 9, 10

**Introduction**

In this case, a collection of Plaintiffs from 15 states ask this Court to supplant a federal regulator and impose nationwide remedies related to two child booster car seats manufactured and sold by Defendant Graco Children's Products, Inc. ("Graco") that Plaintiffs themselves agree are "designed to raise children up to the proper height for the seatbelt." (Doc. 60, Consolidated Amended Complaint ("CAC") ¶ 2.) The Court should decline Plaintiffs' improper invitation and dismiss this case because Plaintiffs lack standing and fail to allege sufficient factual matter to state a plausible claim to relief.

This is a quintessential "no injury" putative class action—no Plaintiff alleges that their child has ever suffered any injury while using Graco's booster seats. In all 219 pages of the CAC, no such allegation is found. Rather, Plaintiffs allege that they paid more than they should have for Graco's booster seats because, on Plaintiffs' theory, the booster seats are not safe for children between 30 and 40 pounds and do not provide "appreciable" protection in side-impact collisions. Plaintiffs' theory, however, rests on a false foundation. Plaintiffs primarily rely on an article about a different manufacturer's (Evenflo's) products, not Graco's; and a different plaintiff's expert witness report in another lawsuit against Graco where, unlike this case, a child was injured in a car crash while

1

riding in a booster seat but the jury rejected the expert's testimony and rendered a defense verdict in favor of Graco, finding that the booster seat did not cause the child's injuries. *See McCune v. Graco Children's Prods., Inc.*, 495 Fed. App'x 535, 537 (5th Cir. 2012) (affirming the jury's verdict for Graco). Although Plaintiffs repeatedly cited these materials (CAC ¶¶ 10-11, 143-44), they neglected to disclose to the Court that the materials do not support their theory, and that, in fact, the ultimate result in *McCune*, affirmed by the 5th Circuit, flatly contradicts their theory.[1]

Moreover, Plaintiffs' theory overlooks Graco's compliance with safety standards set by the National Highway Traffic Safety Administration ("NHTSA"), the federal agency responsible for regulating car seat safety. NHTSA, through notice-and-comment rulemaking, promulgated a Federal Motor Vehicle Safety Standard, 49 C.F.R. § 571.213 ("FMVSS 213"), specifically governing booster seats (called "belt-positioning seats" in the rule), as Plaintiffs concede (CAC ¶ 133), which establishes requirements for booster seats' dynamic performance in a crash, force distribution, installation, labeling, and testing. In

---

[1] Paragraphs 11, 143, and 144 of the CAC cite *McCune*. Paragraph 10 refers to "[i]ndependent tests performed at the Medical College of Wisconsin," which involved a case not against Graco, but against a different manufacturer of booster seats.

addition, NHTSA's rule requires children to weigh at least 30 pounds before using a booster seat. *See infra* pp. 10–11.  Nowhere do Plaintiffs allege any way in which Graco's booster seats do not comply with the requirements of NHTSA's rule.  That is because Graco's booster seats comply in every respect with each aspect of the safety standards set by NHTSA, including the requirements for testing and minimum weight.  NHTSA has not found any noncompliance or defect with Graco's booster seats, nor has it issued any recall.  Plaintiffs do not, and cannot, allege otherwise.  Instead, they ask this Court to second-guess NHTSA and rewrite its rule, and to step into NHTSA's shoes to regulate car seats in accordance with Plaintiffs' theory rather than existing federal safety standards.

In the end, the CAC is noteworthy, not for what it says in 219 pages, but rather for what it *fails* to allege.  The CAC, while ostensibly about "misleading marketing and sale of defective booster seats to the Plaintiffs" (*id.* at 1) by Graco, fails to allege facts related to Plaintiffs' purchases, such as which specific products most of the Plaintiffs purchased, the specific dates of most of their purchases, the prices they paid, or what other alternative products they would have purchased absent the "deceptive marketing."  The CAC similarly fails to allege any "defective" performance of Graco's booster seats, or even any facts about Plaintiffs' use of Graco's booster seats at all, much less specific facts

substantiating when and how they used the seats and their children's weights during actual use of the seats.  Unsurprisingly, then, no Plaintiff alleges that they, or any of their children, were ever involved in any car accidents or suffered any physical injuries whatsoever while using Graco's booster seats.

For these reasons, discussed in more detail below, the CAC fails to establish Plaintiffs' standing or to state a claim to relief that is plausible on its face.  Accordingly, this case should be dismissed with prejudice.

## Background

### A.    Plaintiffs' Allegations

Plaintiffs are 21 individuals residing in 15 different states[2]—Alabama, California, Florida, Georgia, Illinois, Massachusetts, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, Texas, and West Virginia.  (CAC ¶¶ 19–81.)  The CAC defines the category of "Booster Seats" it covers as comprising two specific Graco booster seats:  the "TurboBooster Highback Booster" Seat and "AFFIX Highback Booster Seat."  (CAC ¶ 1.)  While all of the Plaintiffs allege they purchased a Graco product, only some of them

---

[2] Many of these Plaintiffs initially filed lawsuits in their home jurisdictions asserting the same or similar claims, but voluntarily dismissed their claims after early proceedings in those lawsuits, and have now re-filed their claims in this Court.

identify the specific product they purchased; 12 of the 21 Plaintiffs merely allege that they purchased a "TurboBooster Seat" without specifying any particular model (*see* CAC ¶¶ 20, 23, 29, 35, 38, 44, 56, 59, 62, 65, 77, 80), even though Graco manufactures and sells several different models of booster seats, including both "Highback" and "Backless" models of the "TurboBooster" and "Affix" booster seats.  *See, e.g.*, https://www.gracobaby.com/car-seats/belt-positioning-booster-car-seats/.  This pleading failure matters because Plaintiffs base their side-impact theory on Graco having "stitch[ed] 'side impact tested' into its seats' backs" (CAC ¶¶ 12, 138), yet over half of the Plaintiffs have not even bothered to specify whether the "TurboBooster Seat" they allegedly purchased was a "Highback" or "Backless" model.

Plaintiffs also plead the timing of their alleged purchases with varying specificity:  some allege they purchased a booster seat "on or about" a specific date, while others merely identify only a month (CAC ¶¶ 38, 44, 59, 62) or only a year (CAC ¶¶ 20, 23), and one Plaintiff only narrows it down to a two-year period (CAC ¶ 56).  Some of the Plaintiffs allege they purchased the products on a website, others allege they went to a brick-and-mortar store, but none of the Plaintiffs allege the price he or she paid for any of the products—indeed, the CAC is devoid of any price information whatsoever.  (*See, e.g.*, CAC ¶¶ 19–81

5

(allegations to each Plaintiff).)  Nor does any Plaintiff identify any other product that they considered purchasing, or would have purchased, as an alternative to Graco's booster seats.  Instead, each Plaintiff simply repeats a single, identical, conclusory allegation that they "ha[ve] suffered a concrete injury" because they "would not have purchased, or would have paid less for" Graco's booster seat "had [they] known that there was no federal side-impact testing standard or that the Booster Seat was not safe for children as light as 30 pounds."  (*See, e.g.*, CAC ¶ 21 (identical allegation subsequently repeated for each Plaintiff).)

Plaintiffs concede that Graco's booster seats "are . . . designed to raise" — or boost — "children up to the proper height for the seatbelt" (CAC ¶ 2) so that the vehicle's lap and shoulder belts are positioned to fit the child properly. Graco's booster seats thus are belt-positioning seats, which are distinct from seats containing internal harnesses.[3]  *See* 49 C.F.R. § 571.213 at S4.  Graco provides safety information to purchasers of its booster seats, such as information contained in Instruction Manuals, which includes statements concerning a weight minimum as well as suitable height, age, and maturity for children using

---

[3] Graco also manufactures and sells other types of car seats besides booster seats, including seats containing internal harnesses for restraint, none of which, however, are implicated by Plaintiffs' allegations in the CAC.  *See, e.g.*, https://www.gracobaby.com/car-seats/.

Graco's booster seats.[4]  Graco also provides information about safety testing it performs on its booster seats, including side-impact testing, even though side-impact testing is not required by federal safety standards established by NHTSA. *See* https://www.gracobaby.com/safety.html (accessed on January 20, 2021).

Plaintiffs do not allege any facts at all about any use of Graco's booster seats.  From the factual material contained in the CAC, there is no indication that Plaintiffs ever actually used the booster seats after purchasing them.  There are no allegations specifying what time periods Plaintiffs used the booster seats, how old and what heights and weights any children were during any actual use, or any other specific facts showing when and how the products were used.  (*See, e.g.*, CAC ¶¶ 19–81.)  Plaintiffs allege various approximations of weights or weight ranges of the children for whom they allege to have purchased the booster seats, but each allegation approximates the weight or weight range "at the time of purchase" and provides no additional information.  (*Id.*)  Five of the

---

[4] In the CAC, Plaintiffs selectively cited snippets of certain manuals, without identifying whether any such snippets pertain to specific models of booster seats purchased and used by Plaintiffs, not to mention whether any particular Plaintiff read available, pertinent information.  As noted above, Graco sells several different models of booster seats, the class period alleged in the CAC spans several years, and different manuals for different products, unsurprisingly, are revised over time.  The CAC, however, fails even to specify particular models and particular dates for the purchases alleged by Plaintiffs.

Plaintiffs approximate that the child for whom the seat was purchased weighed as much as 38 pounds "at the time of purchase." (*Id.* ¶¶ 35, 41, 53, 65, 71.)

Certainly, Plaintiffs do not allege that any one of them, or any one of their children, was ever involved in a car accident while using Graco's booster seats, or that any one of them ever suffered any physical injury of any kind caused by the booster seats. (*Id.*) Plaintiffs do not disclose how many of their children or the putative class was actually involved in an accident and was saved because of the safety protections Graco's booster seat provided them. (*Id.*) Instead, Plaintiffs allege only their economic harm theory irrespective of the benefits they retained, though, as noted above, their actual allegations of economic harm are sparse, conclusory, and repeated verbatim for each Plaintiff.

## B.  Graco's Booster Seats Comply with Federal Safety Standards.

NHTSA regulates car seat safety under the National Traffic and Motor Vehicle Safety Act and the Highway Safety Act, which directs NHTSA to "prescribe motor vehicle safety standards" by "carry[ing] out needed safety research and development" to "reduce traffic accidents and deaths and injuries resulting from traffic accidents." 49 U.S.C. § 30101. NHTSA sets federal safety standards through formal notice-and-comment rulemaking procedures during which, in addition to receiving public comments, the agency must "(1) consider

relevant available motor vehicle safety information; (2) consult with [state or interstate authorities]; (3) consider whether a proposed standard is reasonable, practicable, and appropriate for the particular type of . . . motor vehicle equipment;" and (4) assess whether the standard furthers the Act. *Id.* § 30111(b).

Pursuant to Congress' direction, as Plaintiffs concede (CAC ¶ 133), NHTSA promulgated a rule, FMVSS 213, setting federal safety standards that specifically govern car seats. *See* 49 C.F.R. § 571.213. That rule regulates belt-positioning seats, like Graco's booster seats, separately from car seats containing internal harnesses. *Id.* at S4 (defining "Belt-positioning seat"). The rule establishes specific requirements concerning dynamic performance in a crash, force distribution, installation, and labeling, *id.* at S5.1 to S5.8, and requires belt-positioning seats to undergo a dynamic testing protocol that includes frontal sled testing, *id.* at S6.1. The rule currently does not require side-impact tests on any car seat; however, it does not preclude manufacturers from developing their own side-impact test protocols or other tests. *See id.* at S5.5, 5.1, 5.2(e).[5]

---

[5] NHTSA is working on amending FMVSS 213 to require side-impact tests on some car seats, but the proposed rule would not require side-impact tests on belt-positioning booster seats like Graco's booster seats. *See* FMVSS, *Child Restraint Systems – Side Impact Protection*, 79 Fed. Reg. 32211 (2014).

In addition, the federal safety standards established in NHTSA's rule require children to weigh at least 30 pounds before using booster seats. *Id.* at S5.5.2(f) ("[B]ooster seats shall not be recommended for children whose masses are less than 13.6 kg"). NHTSA adopted this weight threshold in 1994, responding to Congress' direction "to initiate rulemaking on child booster seat safety" due to concerns that "some child booster seats 'may not restrain adequately a child in a crash.'" FMVSS, *Child Restraint Systems*, 59 Fed. Reg. 37167-01 (Jul. 21, 1994) (codified at 49 CFR § 571.213). NHTSA determined available data demonstrated that children weighing less than 30 pounds "are better protected" in seats that contain an internal harness, but children weighing at least 30 pounds may use booster seats. *Id.* NHTSA considered but rejected a provision requiring manufacturers to include an "affirmative warning" that children weighing less than 30 pounds should not use booster seats because it "could reduce the effectiveness" of other warnings. *Id.*

Congress authorized NHTSA to use a broad range of enforcement remedies in response to violations of federal safety standards, including formal investigatory powers, recalls, and civil penalties. 49 U.S.C. §§ 30118-30121; 49 C.F.R. §§ 510, 554. NHTSA has not found that Graco's booster seats violate federal safety standards or fail to comply with any of the specific requirements of

NHTSA's rule, including requirements for testing and minimum weight; nor has it issued any recall or invoked other enforcement remedies regarding Graco's booster seats with respect to any of the issues raised in the CAC.  Plaintiffs do not, and cannot, allege otherwise.

### Argument

To survive a motion to dismiss under Rule 12(b)(1) or 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) ("Each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."); *Hancock v. Urban Outfitters, Inc.*, 830 F.3d 511, 513 (D.C. Cir. 2016) (applying *Iqbal* in deciding post-Spokeo standing issue presented via motion to dismiss).  A claim is facially plausible when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Legal conclusions, "formulaic recitation[s]" of a claim's elements, and "naked assertion[s]" of liability are all insufficient to state a claim. *Id.* Rather,

Rule 8(a) plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully" and "demands more than . . . unadorned, the defendant-unlawfully-harmed-me accusation[s]." *Id.*

Rule 9(b) imposes even more stringent requirements for claims sounding in fraud or misrepresentation.  A plaintiff "must state with particularity the circumstances constituting [the] fraud," Fed. R. Civ. P. 9(b), by pleading "the who, what, when, where and how of the alleged fraud."  *Quashie v. Olympus Amer., Inc.*, 315 F. Supp. 3d 1329, 1340 (N.D. Ga. 2018); *see also In re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d 1257, 1269 (11th Cir. 2016); *Bascom v. JP Morgan Chase Bank Nat'l Ass'n*, 2018 WL 1804347, at *7 (N.D. Ga. Feb. 9, 2018).

## I.   All of Plaintiffs' Claims Should Be Dismissed Because They Lack Standing.

Plaintiffs' CAC should be dismissed in its entirety pursuant to Rule 12(b)(1) because Plaintiffs have suffered no injury and therefore lack standing.

Standing requires three elements:  (1) injury in fact; (2) causation; and (3) redressability.  *Lujan*, 504 U.S at 560; *see also Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998) (injury in fact is the "[f]irst and foremost" requirement of standing); *Gardner v. Mutz*, 962 F.3d 1329, 1338 (11th Cir. 2020).  The claimed injury must be "both concrete and particularized," and "not conjectural or hypothetical."  *Spokeo, Inc. v. Robins*, --- U.S. ---, 136 S. Ct. 1540, 1548 (2016); *see*

*also Koziara v. City of Casselberry*, 392 F.3d 1302, 1305 (11th Cir. 2004) ("An injury in fact cannot be an abstract injury."); *Granite State Outdoor Advertising, Inc. v. City of Clearwater, Fla.*, 351 F.3d 1112, 1116 (11th Cir. 2003). Moreover, a named plaintiff seeking to represent a class cannot establish standing by relying on the alleged injuries of putative class members, but instead must adequately allege an "injury in fact" to herself. *Lewis v. Casey*, 518 U.S. 343, 357 (1996); *Thole v. U.S. Bank N.A.*, 140 S. Ct. 1615, 1620 (2020); *Griffin v. Dugger*, 823 F.2d 1476, 1483 (11th Cir. 1987).

The CAC fails to plead facts plausibly establishing that Plaintiffs have suffered an injury. Plaintiffs do not allege that the booster seats they purchased failed to perform *for them* as intended. They do not allege that any injuries occurred *to them* as a result of using the booster seats. Indeed, Plaintiffs have not alleged any facts about use of the products at all. Instead, the entire CAC is premised on a hypothetical theory: that Plaintiffs were somehow injured, and are entitled to compensation, because they purchased the booster seats for children who, during unspecified periods of time, weighed between 30 and 40 pounds, and the seats purportedly were unsafe for children in that weight range, even though none of Plaintiffs' children suffered any actual injury resulting from use of the seats (and may have benefited in many ways, including instances

when the seats prevented harm).  These types of conclusory allegations fail to meet Plaintiffs' burden to establish an injury in fact under governing standing case law.[6]

### A.   Plaintiffs Have No "Benefit of the Bargain" Injuries Because Their Booster Seats Have Performed Safely.

Plaintiffs fail to plead any facts whatsoever regarding their experiences using Graco's booster seats that they allegedly purchased and certainly no facts suggesting that the booster seats, when used by these particular Plaintiffs, actually manifested defects insinuated in the CAC.  Plaintiffs make no allegations that they could not and did not use the products or that they needed to purchase replacement products from a different manufacturer.  They plead only a few brief, virtually identical allegations regarding each Plaintiff.  (CAC ¶¶ 19–81.)

While in some circumstances economic injuries can confer standing, it is axiomatic that a plaintiff still must plead the actual harm that caused that economic injury.  *See Adinolfe v. United Technologies Corp.*, 768 F.3d 1161, 1170 (11th Cir. 2014).  In *Adinolfe*, a groundwater contamination case, the plaintiffs

---

[6] It goes without saying that a named class representative who lacks standing to proceed with her own claims may not proceed with claims on behalf of a putative class.  *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other members of the class.").

alleged actual injury that led to the economic loss.  There, "the great majority" of plaintiffs (over 300 of 384 individual plaintiffs) "sufficiently alleged that their land had been contaminated."  *Id.* at 1170, 1172.  Actual contamination of property stands in stark contrast to this case where Plaintiffs' only real allegation of injury is that they purchased the booster seats in the first place.

Federal courts have consistently held that plaintiffs lack standing, including in cases involving children's products, in circumstances when no injury is alleged.  *See, e.g.*, *In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 281 (3d Cir. 2018) (plaintiffs who purchased talcum powder did not suffer an economic injury due to any omission of cancer risk disclosures because "[a] plaintiff alleging an economic injury as a result of a purchasing decision must do more than simply characterize that purchasing decision as an economic injury," as "buyer's remorse . . . is not a cognizable injury"); *O'Neil v. Simplicity, Inc.*, 574 F.3d 501, 503-05 (8th Cir. 2009) (rejecting crib class action as "it is well established that purchasers of an allegedly defective product have no legally cognizable claim where the alleged defect has not manifested itself in the product they own") (internal quotation omitted); *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002) (plaintiffs who purchased and safely used a pain killer did not suffer an economic injury

because, had the manufacturer "provided additional warnings or made [the product] safer, the plaintiffs would be in the same positon they occupy now"); *In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*, 831 F. Supp. 2d 507, 510-13 (D. Mass. 2011) (dismissing case for lack of standing; "The fact is that Plaintiffs paid for fruit juice, and they received fruit juice, which they consumed without suffering harm.  The products have not been recalled, have not caused any reported injuries, and do not fail to comply with federal standards."); *Webb v. Carter's Inc.*, 272 F.R.D. 489, 499-500 (C.D. Cal. 2011) (rejecting baby clothes class action "where they have been able to use the clothes without incident, the purchases have not suffered any economic loss"); *Jasper v. Abbott Labs., Inc.*, 834 F. Supp. 2d 766, 772 (N.D. Ill. 2011) (purchaser of recalled baby formula failed to show injury in absence of allegations that her child was sickened by consuming it); *Medley v. Johnson & Johnson Consumer Cos.*, No. 10-cv-02291, 2011 WL 159674, at *2 (D.N.J. Jan. 18, 2011) (rejecting baby shampoo class action as "the economic injury for which Plaintiffs seek redress is the price Plaintiffs paid for shampoo, which they then apparently used in bathing their children, without adverse heath reactions"); *Herrington v. Johnson & Johnson Consumer Cos.*, No. C 09-1597, 2010 WL 3448531, at *1 (N.D. Cal. Sept. 1, 2010) (same); *Whitson v. Bumbo*, No. C 07-05597, 2009 WL 1515597, at *4-6 (N.D. Cal. Apr. 16, 2009) (rejecting baby seat

class action as plaintiff failed to "allege[] how or whether she used her Bumbo seat" and "does not allege that she or any child on whose behalf she has standing to sue actually used or was harmed by any defect in the seat").

Plaintiffs have suffered no injury, not even an economic one, because they have failed to plead that they personally suffered from any of the defects alleged in the CAC. For this reason alone, the CAC should be dismissed in its entirety.

## B. Plaintiffs' Lack Standing to Bring Side-Impact Claims Because They Have Failed to Plead that the Products Are Wholly Unsafe.

To the extent that Plaintiffs seek to assert claims that Graco's booster seats never are safe in a side-impact collision, the CAC fails to plead that the booster seats are wholly unsafe due to the alleged side-impact defects. Rather than a "benefit of the bargain" theory of recovery, such claims, in essence, hold that the booster seats have no value. Recent Eleventh Circuit precedent, however, precludes any such claims here.

In two recent cases, the Eleventh Circuit has described the standard a plaintiff must meet to have standing when arguing that a product is worthless— that the product is wholly unsafe. *Compare Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1085 (11th Cir. 2019) *with Doss v. General Mills, Inc.*, 816 Fed. App'x 312, 314 (11th Cir. May 20, 2020). A plaintiff can potentially have standing to sue "even if there is no indication that she was physically harmed by the product, the

product failed to work as intended, or she paid a premium for the product[,]"

but to do so he or she must clear the high bar of  proving that the product is

worthless. *Debernardis*, 942 F.3d at 1086.  Plaintiffs here cannot do so.  Indeed,

based on their own allegations, Plaintiffs cannot reasonably allege that the

booster seats are ineffective in frontal or rear-end collisions for children weighing

40 pounds or more.  Despite their allegations that they never would have

purchased the booster seats in the first place, the CAC does not plausibly plead

that the booster seats have no value.  Since the products are not worthless, they

do not satisfy the limited exception set out in *Debernardis*.[7]

　　Plaintiffs' CAC here is analogous to the complaint in *Doss*, the dismissal of

which the Eleventh Circuit recently affirmed based on lack of standing.  *Doss*, 816

Fed App'x at 314.  In *Doss*, the plaintiffs alleged that Cheerios contain the

pesticide glyphosate, which conflicts with labels on the cereal that say it is

"packed with nutrients" and "wholesome."  *Id*.  In determining whether or not

the plaintiffs received the benefit of the bargain the Court "consider[ed] whether

---

[7] Moreover, in *Debernardis*, the plaintiffs alleged that they purchased adulterated
dietary supplements that were banned under the Federal Food, Drug, and
Cosmetic Act and unsafe for human consumption.  *Id*. at 1084-85.  The
supplements lacked any value because they could not be legally sold.  *Id*. at 1085.
The opposite holds true here:  the booster seats must comply and do comply with
FMVSS 213, and there is no allegation otherwise.

Doss alleged that the presence of glyphosate lowers the value of the Cheerios she purchased." *Id*. The Court faulted the complaint for not alleging that glyphosate is wholly unsafe to consumers, citing *Debernardis*, noting that it merely alleged that "ultra-low levels of glyphosate . . . may be harmful to human health." *Id*. Such allegations do not establish standing. *Id*.

The complaint here similarly fails to establish standing. As in *Doss*, and unlike *Debernardis*, Plaintiffs here do not allege that the booster seats are wholly unsafe and valueless. The Eleventh Circuit's reasoning *Doss* requires dismissal.

## C. Plaintiffs Lack Standing to Seek Injunctive Relief Because They Fail to Plead an Actual and Imminent Future Injury.

The CAC separately fails to establish standing for injunctive relief. (CAC ¶¶ 17, 178, Prayer for Relief.) Plaintiffs must "demonstrate standing for . . . each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, --- U.S. ---, 137 S. Ct. 1645, 1650 (2017). To establish standing to pursue injunctive relief, Plaintiffs must meet a higher standard and allege facts showing an "actual and imminent" future injury. *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328-29 (11th Cir. 2013); *Wooden v. Board of Regents of Univ. System of Ga.*, 247 F.3d 1262, 1283-84 (11th Cir. 2001). Moreover, the impending future injury must be similar to the injury Plaintiffs already suffered; "[a]bsent a sufficient likelihood that [she] will again

be wronged in a similar way, [Plaintiff is] no more entitled to an injunction than any other citizen." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Although the CAC alleges that Graco's booster seats are unsafe for children between the weights of 30 pounds and 40 pounds, it does not plead any facts indicating whether any of Plaintiffs' children remain within that weight range. (*See* CAC ¶¶ 19–81.) If each child has now reached 40 pounds, then no actual injury is imminent in the future to sustain a claim for injunctive relief.

Plaintiffs also fail to show any "similar" future harm because they do not allege that they will purchase another booster seat in the future. *City of Los Angeles*, 461 U.S. at 111; *see also Buske v. Owens Corning*, No. 16-cv-709, 2017 WL 1062371, at *3 (N.D. Ga. Mar. 21, 2017) (dismissing injunctive relief claim for lack of standing because plaintiff did not allege intent to purchase product in future).

## II. The CAC Should Be Dismissed for Failure to State a Claim.

In addition to lacking standing, each of Plaintiffs' claims fails to satisfy the pleading standards under Rules 9(b) and 12(b)(6) and should be dismissed.

### A. The CAC Fails to Plead Fraud or Misrepresentation with Particularity.

The CAC's Nationwide Counts II, III, and V purport to plead claims for common law fraud, fraudulent concealment, and negligent misrepresentation,

and many of the state consumer protection act counts also sound in fraud.[8]  Rule

9(b)'s heightened pleading standard applies to each of these counts.[9]  Because the

CAC fails to plead these claims with the particularity required by Rule 9(b), each

claim should be dismissed.

Although the CAC's fraud and misrepresentation claims purport to assert

claims under multiple states' laws, which vary from state to state, to plead fraud,

at the very least, the CAC "must state with particularity the circumstances

constituting [the] fraud," Fed. R. Civ. P. 9(b), by pleading "the who, what, when,

where and how of the alleged fraud."  *Quashie*, 315 F. Supp. 3d at 1340; *see also In*

---

[8] These include Alabama Count III; California Counts III, IV, and V; Illinois
Counts III and IV; Massachusetts Count III; New Jersey Count III; New York
Count III; North Carolina Count III; Pennsylvania Count III; and Texas Count III.

[9] *See Holmes v. Behr Process Corp.*, No. 2:15-cv-0454, 2015 WL 7252662, at *2 (N.D.
Ala. Nov. 17, 2015) (Alabama); *Avila v. Vita Pharma., Inc.*, 2013 WL 12124054, at *2
(C.D. Cal. Feb. 7, 2013); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir.
2009) (California); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v.
Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (Illinois); *Mulder v. Kohl's Dep't
Stores, Inc.*, 865 F.3d 17, 22-23 (1st Cir. 2017) (Massachusetts); *In re Riddell
Concussion Reduction Litig.*, 77 F. Supp. 3d 422, 433-36 (D.N.J. 2015); *Smajlaj v.
Campbell Soup Co.*, 782 F. Supp. 2d 84, 91 (D.N.J. 2011) (New Jersey); *Weaver v.
Chrysler Corp.*, 172 F.R.D. 96, 101 (S.D.N.Y. 1997) (New York); *Topshelf Mgmt., Inc.
v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 729 (M.D.N.C. 2015) (North Carolina);
*Laskowski v. Brown Shoe Co.*, 2015 WL 1286164, at *7 (M.D. Pa. Mar. 20, 2015);
*Rosenberg v. Avis Rent A Car Sys., Inc.*, 2007 WL 2213642, at *5 (E.D. Pa. July 31,
2007) (Pennsylvania); *Siemens Med. Sols. USA, Inc. v. Sunrise Med. Tech., Inc.*, 2005
WL 615747, at *5 (N.D. Tex. Mar. 16, 2005) (Texas).

*re Galectin Therapeutics, Inc. Sec. Litig.*, 843 F.3d at 1269; *Bascom*, 2018 WL 1804347,

at *7.  Moreover, the CAC must plead with particularity either affirmative

misrepresentations or material omissions where Graco had a duty to disclose

based on a fiduciary or other special relationship, that Graco intended for

Plaintiffs to rely on the misrepresentations or omissions, and that Plaintiffs did in

fact rely and suffered damages as a result.[10]  *See, e.g., id.*

      The CAC fails to plead with particularity one or more of these elements,

with respect to each of the Plaintiffs, for each of their fraud and

misrepresentation claims.  Plaintiffs do not plead "the who, what, when, where

---

[10] Class certification of Plaintiffs' claims — especially on a nationwide basis —
would be inappropriate and unmanageable for a number of reasons.  A class
action is improper where the laws of the state where each injury took place
governs the individual claims.  *In re Conagra Peanut Butter Products Liability
Litigation,* 251 F.R.D. 689, 697 (N.D. Ga. 2008) ("It goes without saying that class
certification is impossible where the fifty states truly establish a large number of
different legal standards governing a particular claim.") (internal citation
omitted); *see also Sacred Heart Health Systems, Inc. v. Humana Military Healthcare
Services, Inc.*, 601 F.3d 1159, 1180 (11th Cir. 2010).  Fraud and negligent
misrepresentation are particularly inappropriate for nationwide treatment given
variation in states' reliance requirements.  *See Field v. Mans,* 516 U.S. 59 (1995)
(surveying several states' varying reliance requirements). These claims raise
myriad individualized reliance and causation issues that also preclude class
treatment.  *In re Tri State Crematory Litig.*, 215 F.R.D. 660, 693 (N.D. Ga.
2003)(citing *Andrews v. AT&T,* 95 F.3d 1014, 1025 (11th Cir, 1996)); *see also Heffner
v. Blue Cross and Blue Shield of Alabama, Inc.*, 443 F.3d 1330, 1344 (11th Cir. 2006)
("In a variety of contexts, we have held that the reliance element of a class claim
presents problems of individualized proof that preclude class certification").

and how of the alleged fraud," or their reasonable reliance on any particular statement or omission, with particularity.  The CAC contains no particularized allegations specific to any single Plaintiff regarding which allegedly misleading packaging, advertising, marketing, or other information each Plaintiff read, was aware of, or relied on in making their purchases.  Indeed, a majority of the Plaintiffs do not even identify the particular model of booster seat that they allegedly purchased, many do not allege with particularity the time when and the place where they made the purchases, and none allege the price they paid. *See supra* pp. 5–6.

Moreover, the CAC does not, and cannot, allege that Graco's booster seats fail to comply with the federal safety standards established by NHTSA in FMVSS 213.  *See supra* pp. 9–11.  In fact, Graco's booster seats comply with those safety standards, including with respect to testing and minimum weight.  Graco's compliance with FMVSS 213 cannot constitute intentional fraud, fraudulent omission, negligent misrepresentation, or violation of state consumer fraud law.

Accordingly, the fraud and misrepresentation claims should be dismissed.

**B.   The CAC Fails to State Claims for Breach of Warranty.**

The CAC asserts breach of express warranty and implied warranty under 15 states' laws, and a Nationwide Count I for violation of the Magnuson-Moss

Warranty Act.  Each of the state law claims fails for various reasons, and the Magnuson-Moss claim derivatively fails on the same grounds.  Each of these counts, therefore, fails to state a claim and should be dismissed.

        **1.**      **The Express Warranty Claims Fail for Various Reasons.**

        **a.**      **Failure to Provide Notice Within a Reasonable Time**

The breach of express warranty claims fail under the laws of Alabama, California, Florida, Illinois, New York, Oregon, Pennsylvania, and Texas because the CAC does not allege that each of the Plaintiffs notified Graco of a breach within a reasonable time.  *See Smith v. Apple, Inc.*, 2009 WL 3958096, at *1 (N.D. Ala. Nov. 4, 2009); *Alvarez v. Chevron Corp.*, 656 F.3d 925, 931-33 (9th Cir. 2011) (California); *Garcia v. Clarins USA, Inc.*, No. 14CV21249, 2014 WL 11997812, at *7 (S.D. Fla. Sept. 5, 2014); *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 492 (1996); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *27 (E.D.N.Y. Aug. 29, 2013); *CHMM, LLC v. Freeman Marine Equip., Inc.*, No. 3:12-CV-01484-ST, 2013 WL 3025137, at *3 (D. Or. June 14, 2013); *Bowlen v. Coloplast A/S*, No. 2:17CV1372, 2018 WL 4469319, at *5 (W.D. Pa. Sept. 18, 2018), *reconsideration denied*, No. 2:17CV1372, 2019 WL 4597570 (W.D. Pa. Sept. 23, 2019); *Massey v. Novartis Pharm. Corp.*, 46 F. Supp. 3d 688, 692 (W.D. Tex. 2014). Generalized knowledge does not satisfy the notice requirement; rather, each

buyer must specifically notify the seller of the specific breach involving the buyer's own particular purchase.  *See, e.g., Banh v. Am. Honda Motor Co., Inc.*, No. 2:19-CV-05984-RGK-AS, 2019 WL 8683361, at *12 (C.D. Cal. Dec. 17, 2019) (applying Oregon law); *Bowlen*, 2018 WL 4469319, at *6; *Singleton v. Fifth Generation, Inc.*, No. 515CV474BKSTWD, 2016 WL 406295, at *12 (N.D.N.Y. Jan. 12, 2016); *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 978 (N.D. Cal. 2014) (applying Texas law); *American Fed. of State Cty. & Mun. Employees v. Ortho-McNeil-Janssen Pharmas., Inc.*, 2010 WL 891150, at *7 (E.D. Pa. Mar. 11, 2010); *Connick*, 675 N.E.2d at 589.

Here, the CAC alleges only that Plaintiffs provided notice to Graco by mailing a letter on November 5, 2020 — which Plaintiffs did not attach to the CAC — and that there have been other, unspecified lawsuits filed against Graco, without identifying any such lawsuit, much less how it satisfied the notice requirement.  (CAC ¶ 82.)  This bare, unsubstantiated allegation is insufficient to satisfy any individual Plaintiff's obligation to provide notice.  Moreover, the only fact that this allegation does disclose is that this letter was only provided to Graco five months *after* the filing of this lawsuit, not within a reasonable time, as required to state a breach of express warranty claim.  *See, e.g., Alvarez*, 656 F.3d at 931-32 ("Plaintiffs failed to plead that they provided reasonable notice . . .

because their notice letter was sent to Defendants simultaneously with service of the complaint.") (affirming granting of motion to dismiss).

>           **b.      Failure to Allege Facts Showing a "Basis of Bargain"**

The breach of express warranty claims also fail under the laws of California, Georgia, Florida, Massachusetts, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Oklahoma, Oregon, and Texas because the CAC fails to allege facts showing that Graco's representations were part of a "basis of bargain." An express warranty is created only if the "affirmation of fact or promise," "description of the goods," or "sample or model" is part of a "basis of the bargain." Cal. Com. Code § 2313; Fla. Stat. § 672.313(1)(a); Ga. Code § 11-2-313; Mass. Gen. Laws ch. 106 § 2-313; N.J. Stat. Ann. § 12A:2-313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25–2–313; Ohio Rev. Code Ann. § 1302.26(A)(1)–(2); Okla. Stat. Ann. tit. 12A, § 2-313; Or. Rev. Stat. Ann. § 72.3130; 13 Pa. Cons. Stat. § 2313(a); Tex. Bus. & Com. Code Ann. § 2.313. Moreover, in order to establish that a statement was part of a basis of the bargain, Plaintiffs must allege awareness of the statement. *Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.,* 992 F. Supp. 2d 962, 979 (C.D. Cal. 2014) ("Plaintiffs cannot base a claim on [an express warranty created by representations in advertisements] in the absence of allegations that they were exposed to them."); *Hobco, Inc. v. Tallahassee Assocs.,*

807 F.2d 1529, 1533 (11th Cir. 1987) ("Under Florida law, an express warranty

may arise only where justifiable reliance upon assertions or affirmations is part

of the basis of the bargain."); *In re Hardieplank Fiber Cement Siding Litig.*, 284 F.

Supp. 3d 918, 933 (D. Minn. 2018) (under Georgia law, if a buyer was not ever

exposed to an affirmation, the affirmation cannot be part of the basis of bargain);

*Sebago, Inc. v. Beazer East, Inc.*, 18 F. Supp. 2d 70, 102 (D. Mass. 1998) ("To

demonstrate that the express warranty constituted a basis of the bargain [under

Massachusetts law], the plaintiff must demonstrate that the buyer relied on the

warranty."); *In re AZEK Bldg. Prod., Inc., Mktg. & Sales Practices Litig.*, 82 F. Supp.

3d 608, 616 (D.N.J. 2015) ("Representations are presumed to be part of the basis

of the bargain once the buyer becomes aware of the affirmations . . . ."); *Wojcik v.

Empire Forklift, Inc.*, 783 N.Y.S.2d 698, 701-02 (N.Y. App. Div. 3d Dep't 2004)

(holding that a party cannot bring an action for breach of express warranty

where he or she has not seen or read the materials alleged to contain the

warranty.); *In re Nexus 6P Prod. Liab. Litig.*, 293 F. Supp. 3d 888, 940 (N.D. Cal.

2018) (dismissing express warranty claims under the laws of North Carolina and

Ohio when plaintiffs failed to allege they were exposed to the statements

identified as express warranties); *Newman v. Tualatin Dev. Co.*, 287 Or. 47, 54

(1979) (requiring showing that every class member read, was aware of, and relied

upon the representations that gave rise to the express warranty); *Parkinson v. Guidant Corp.*, 315 F. Supp.2d 741, 752 (W.D. Pa. 2004) ("[A] plaintiff effectuates the 'basis of the bargain' requirement . . . by proving that she read, heard, saw or knew of the advertisement containing the affirmation of fact or promise."); *St. Johns United Methodist Church v. Delta Elecs. Inc.*, No. CIV.A. 3-11-57, 2012 WL 3205043, at *2 (S.D. Tex. Aug. 3, 2012) (stating that, to establish that an express warranty was created, Plaintiff must allege that he saw the affirmations that would give rise to that warranty).

Here the CAC repeatedly lists the same several statements that allegedly constitute express warranties, but fails to allege that any individual Plaintiff saw, read, or was aware of any of these statements. (*See, e.g.*, CAC ¶ 275.) Instead, the CAC goes on to allege, repeatedly and in conclusory fashion, that Graco's representations "formed the basis of the bargain that was reached when . . . Plaintiff . . . purchased the booster seats." (*See, e.g.*, CAC ¶ 276.) This bare-bones allegation, repeated for each Plaintiff, is insufficient under the various states' laws. Furthermore, The CAC fails to allege facts showing that Plaintiffs relied on any of these statements, a separate and additional requirement under California, New York, Oklahoma, Oregon, and Texas law. *Asghari v. Volkswagen Group of America, Inc.*, 42 F. Supp. 3d 1306, 1333-34 (C.D. Cal. 2013); *Horowitz v. Stryker*

*Corp.*, 613 F. Supp. 2d 271, 286 (E.D.N.Y. 2009); *Martin v. Ford Motor Co.*, 292 F.R.D. 252, 273 (E.D. Pa. 2013) (discussing Oklahoma law); *Speed Fastners, Inc. v. Newsom*, 382 F. 2d 395, 397 (10th Cir. 1967) (Oklahoma law); Newman, 287 Or. at 54; *TEU Servs., Inc. V. Inventronics USA, Inc.*, No. SA-16-CV-01023-RCL, 2018 WL 3338217, at *11 (W.D. Tex. Feb. 5, 2018).

### c.      Failure to Allege Privity

In addition, the breach of express warranty claims should be dismissed under Florida law for lack of privity.  In Florida, a plaintiff seeking to recover an economic loss cannot maintain an action for breach of express warranty.  *Dixon v. Allergan USA, Inc.*, No. CV 14-61091-CIV, 2015 WL 12915671, at *2 (S.D. Fla. May 28, 2015) ("The law of Florida is that to recover for the breach of a warranty, either express or implied, the plaintiff must be in privity of contract with the defendant.").  Plaintiff Grabowski purchased the product from Amazon.com, not Graco directly.  Accordingly, she was not in privity with Graco.

### 2.      The Implied Warranty Claims Also Fail for Various Reasons.

### a.      Failure to Allege Privity

The claims for breach of implied warranty of merchantability and for a particular purpose fail under the laws of Alabama, California, Florida, Georgia, Illinois, New York, North Carolina, and Ohio for lack of privity.  In these states, a

plaintiff seeking to recover economic loss cannot maintain a claim for breach of implied warranty unless she is in privity of contract with the defendant.  *Rampey v. Novartis Consumer Health, Inc.*, 867 So. 2d 1079, 1089 (Ala. 2003); *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (applying California law); *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1326 (S.D. Fla. 2020); *Padilla v. Porsche Cars N. Am.*, 391 F. Supp. 3d 1108, 1116 (S.D. Fla. 2019); *Helpling v. Rheem Mfg. Co.*, No. 1:15-CV-2247-WSD, 2016 WL 1222264, at *4 (N.D. Ga. Mar. 23, 2016); *Zaro v. Maserati N. Am., Inc.*, No. 07 C 3565, 2007 WL 4335431, at *2 (N.D. Ill. Dec. 6, 2007); *Feliciano v. Gen. Motors LLC,* No. 14 CIV. 06374 (AT), 2016 WL 9344120, at *6 (S.D.N.Y. Mar. 31, 2016); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 262-63 (E.D.N.Y. 2014); *Kelly v. Georgia-Pac. LLC*, 671 F. Supp. 2d 785, 797 (E.D.N.C. 2009); *Savett v. Whirlpool Corp.*, 2012 WL 3780451, at *10 (N.D. Ohio Aug. 31, 2012).

Because Plaintiffs do not allege privity of contract with Graco, their implied warranty claims fail under these states' laws.

### b.    Disclaimer of Implied Warranty

Plaintiffs' implied warranty claims fail under the laws of New Jersey, Oklahoma, and Texas because Graco's clear and conspicuous "Limited Warranty" disclaimed any implied warranty.  New Jersey allows manufacturers

to disclaim implied warranty of merchantability and fitness for a particular

purpose so long as the disclaimer is clear and conspicuous.  N.J. Stat. Ann. §

12A:2-316; *Advanced Drainage Sys., Inc. v. SiteCo Materials*, Inc., No. 13-CV-1349

JAP, 2014 WL 1092809, at *2 (D.N.J. Mar. 18, 2014).  Oklahoma and Texas allow

manufacturers to disclaim implied warranty of merchantability so long as the

disclaimer mentions merchantability, and is in writing and conspicuous.  Okla.

Stat. Ann. tit. 12A, § 2-316; Tex. Bus. & Com. Code Ann. § 2.316.  Graco's Limited

Warranty for its booster seats, publicly available online, clearly states:

> "THIS LIMITED WARRANTY IS EXCLUSIVE AND IN
> LIEU OF ANY OTHER WARRANTY . . . THE
> DURATION OF ANY IMPLIED WARRANTIES,
> INCLUDING ANY IMPLIED WARRANTY OF
> MERCHANTABILITY OR FITNESS FOR A
> PARTICULAR PURPOSE, IS EXPRESSLY LIMITED TO
> THIS LIMITED WARRANTY PERIOD. . . .
>
> THE CUSTOMER'S EXCLUSIVE REMEDY FOR
> BREACH OF THIS LIMITED WARRANTY OR OF ANY
> IMPLIED WARRANTY OR OF ANY OTHER
> OBLIGATION ARISING BY OPERATION OF LAW OR
> OTHERWISE SHALL BE LIMITED AS SPECIFIED
> HEREIN TO REPAIR OR REPLACEMENT, AT OUR
> SOLE OPTION."

*See* https://www.gracobaby.com/on/demandware.store/Sites-gracobaby-

Site/default/Support-Show?cfid=returns (last accessed January 20, 2021).

New Jersey, Oklahoma, and Texas courts have routinely found similar disclaimers adequate to disclaim warranties.  *See Alt. Health Sys. v. Cummins Inc.*, 2010 WL 5252018, at *2 (D.N.J. 2010); *Moulton v. LG Elecs. USA, Inc.*, 2012 WL 3598760, at *2 (D.N.J. Aug. 21, 2012); *Great Divide Ins. Co. v. Kimble Mixer Co.*, No. 18-CV-0428-CVE-FHM, 2019 WL 2372604, at *2 (N.D. Okla. June 5, 2019); *Deburro v. Apple, Inc.*, No. A-13-CA-784-SS, 2013 WL 5917665, at *7 (W.D. Tex. Oct. 31, 2013).  The implied warranty claims under New Jersey, Oklahoma, and Texas law therefore fail.

### c.      Failure to Provide Notice Within a Reasonable Time

The implied warranty claims fail under the laws of Alabama, Ohio, Oregon, Pennsylvania, and Texas, similar to the express warranty claims, the CAC does not allege that each of the Plaintiffs notified Graco of a breach within a reasonable time.  *See* Ala. Code § 7-2-607(3)(a); *Smith*, 2009 WL 3958096, at *1-2; *St. Clair v. Kroger Co.*, 581 F. Supp. 2d 896, 902 (N.D. Ohio 2008); Or. Rev. Stat. Ann. § 72.6070; *Parkinson v. Novartis Pharm. Corp.*, 5 F. Supp. 3d 1265, 1276-77 (D. Or. 2014); 13 Pa. Cons. Stat. § 2607(c)(1); *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 719 (E.D. Pa. 2013); *Osness v. Lasko Prod., Inc.*, 868 F. Supp. 2d 402, 412 (E.D. Pa. 2012); Tex. Bus. & Com. Code Ann. § 2.607(c)(1); *Massey*, 46 F. Supp. 3d at

692.  And as with the express warranty claims, the CAC fails to allege facts

satisfying the notice requirement.  *See supra* pp. 24–26.

### d.    Failure to Allege a Particular Purpose

The breach of implied warranty claims also fail because Plaintiffs do not

allege a product's particular purpose that differs from the ordinary purpose.

Under each state's law, Plaintiffs must allege:  (1) that the purchaser had a

specific purpose in mind for the product; (2) the seller knew of this particular

purpose; (3) the buyer relied on the sellers skill to select appropriate goods; and

(4) the seller knew or should have known at the time that the buyer was so

relying. *See, e.g.*, Cal. Com. Code § 2315.  A product's particular purpose

necessarily differs from the ordinary purpose for which such products are used.

Ala. Code § 7-2-315 at cmt. 2; Cal. Com. Code § 2315 at cmt. 2; Fla. Stat. § 672.315

at cmt. 2; Ga. Code § 11-2-315 at cmt. 2; 810 Ill. Comp. Stat. 5/2–315 at cmt. 2;

Mass. Gen. Laws ch. 106 § 2-315 at cmt. 2; N.J. Stat. Ann. § 12A:2-315 at cmt. 2;

N.Y. U.C.C. Law § 2–315 (McKinney) at cmt. 2; N.C. Gen. Stat. § 25-2-315 at cmt.

2; Ohio Rev. Code Ann. § 1302.28 at cmt. 2; 12A Okla. Stat. Ann. § 2-315 at cmt. 2;

Or. Rev. Stat. Ann. § 72.3150 at cmt. 2; 13 Pa. Cons. Stat. § 2315 at cmt. 2; Tex.

Bus. & Com. Code Ann. § 2.315 at cmt. 2; W. Va. Code § 46-2-315 at cmt. 2.

Plaintiffs allege that Graco's booster seats are marketed as a car seat that is safe for children weighing as little as thirty pounds and provide side-impact protection. Thus, the booster seats ordinary purpose is being safe for children weighing more than thirty pounds and providing side-impact protection. Because Plaintiffs have not alleged a particular purpose of the Booster Seats that differs from its alleged ordinary purpose, the claims for breach of implied warranty of fitness for a particular purpose fail as a matter of law. *See, e.g., Frenzel v. AliphCom,* 76 F. Supp. 3d 999, 1021 (N.D. Cal. 2014) (dismissing implied warranty claim where plaintiff alleged that he purchased the device for "its particular purpose of acting as a fitness and lifestyle tracker" because this was not a particular purpose in the context, "but rather the ordinary purpose for which [the device] is customarily purchased").

### e.    The Massachusetts Implied Warranty Fails.

The implied warrant claim also fails under Massachusetts law for additional reasons. First, Massachusetts' economic loss doctrine bars a breach of implied warranty claim here because the CAC alleges only economic loss. Under Massachusetts law, "purely economic losses are unrecoverable in tort and strict liability actions in the absence of personal injury or property damage." *FMR Corp. v. Boston Edison Co.*, 415 Mass. 393, 395 (1993). Second, the implied

warranty claim fails under Massachusetts law because the CAC fails to allege use of the booster seats as intended by Graco or in a manner at least foreseeable to Graco.  *See Fireman's Fund Ins. Co. v. Bradford-White Corp.*, No. 12-cv-10509, 2014 WL 1515266, at *7 (D. Mass. Apr. 15, 2014).

### 3.     The Magnuson-Moss Claim Fails for the Same Reasons.

The CAC's Magnuson-Moss claim must be dismissed because the CAC fails to plead valid breach of warranty claims.  Breach of warranty claims under Magnuson-Moss are "identical" to state statutory warranty claims, *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1231 (11th Cir. 2016), and therefore "stand or fall with [plaintiffs'] express and implied warranty claims under state law." Clemens, 534 F.3d at 1022.  *See also Pearson v. Winnebago Indus., Inc.*, No. 5:15-cv-43, 2016 WL 6893937, at *5 (M.D. Fla. Nov. 23, 2016) ("[A] federal court applies state law to Magnuson-Moss claims for breach of written and implied warranties.").  Here, Plaintiffs premise their Magnuson-Moss claim on the same theory as their state law warranty claims.  Because their state-law warranty claims fail for the reasons set forth above, their Magnuson-Moss claim fails as well.

C.  **The CAC Fails to State Claims Under State Consumer Protection Acts.**

In addition to failing because they do not plead sufficient particularity, *see supra* pp. 20–23, the CAC's state consumer protection act counts fail for other reasons described below.

1.  **California Statutes**

In California Counts III, IV, and V, the CAC asserts claims under the California False Advertising Law ("FAL") (Cal. Bus. & Prof. Code § 17500), Consumer Legal Remedies Act ("CLRA") (Cal Civ. Code § 1750), and Unfair Competition Law ("UCL") (Cal. Bus. & Prof. Code § 17200). Each count fails to state a claim because they fail to allege that Graco made an actionable "deceptive," "misleading," or "fraudulent" representation. Cal. Bus. & Prof. Code § 17500 (FAL); Cal. Civ. Code § 1770(a) (CLRA); Cal. Bus. & Prof. Code § 17200 (UCL). The representations challenged in the CAC are not actionable because they are true: Graco's booster seats are side-impact tested, as Plaintiffs themselves allege; and the booster seats minimum weight, previously 30 pounds and now 40 pounds, has always complied with the federal safety standards established by NHTSA in FMVSS 213. Accordingly, these representations are not misleading to a "reasonable consumer." *See Frenzel*, 76 F. Supp. 3d at 1011

("reasonable consumer" test "requires a plaintiff to show that members of the public are likely to be deceived;" dismissing FAL, CLRA, and UCL claims).

### 2.    Florida Unfair and Deceptive Trade Practices Act

In Florida Count III, the CAC asserts a claim under Florida's Unfair and Deceptive Trade Practices Act ("FUDTPA").  This count fails because the FDUTPA "does not apply" to any "act or practice required or specifically permitted by federal or state law."  Fla. Stat. § 501.212(1); *Savalli v. Gerber Prods. Co.*, 2016 WL 5390223, at *4 (S.D. Fla. Sep. 20, 2016) (dismissing FDUTPA marketing claims because the labeling on the product "plainly [met] the [federal] regulatory requirements, and [was] thus expressly permitted" by federal law). Graco's booster seats comply with the federal safety standards set by NHTSA.

### 3.    Georgia Fair Business Practices Act

In Georgia Count III, the CAC asserts a claim under Georgia's Fair Business Practices Act ("GFBPA").  This count fails because Plaintiffs did not comply with the *ante litem* requirement to provide "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered."  Ga. Code § 10-1-399(b); *see Paws Holdings, LLC v. Daikin Applied Americas Inc.*, No. CV 116-058, 2018 WL 475013, at *5 (S.D. Ga. Jan. 18, 2018).

37

Separately, the GFBPA claim should be dismissed because the CAC fails to allege facts showing Plaintiffs justifiably relied on any representations made by Graco.  *See Tiismann v. Linda Martin Homes Corp.*, 281 Ga. 137, 139 (2006); *Nottingham v. Houston Hosps., Inc.*, No. 5:18-CV-00182-TES, 2018 WL 4604023, at *3 (M.D. Ga. Sept. 25, 2018); *Byung Ho Cheoun v. Infinite Energy*, No. 1:08-CV-3553-TCB, 2009 WL 10690518, at *7 (N.D. Ga. July 1, 2009), *aff'd sub nom. Byung Ho Cheoun v. Infinite Energy, Inc.*, 363 F. App'x 691 (11th Cir. 2010).

### 4.    Illinois Statutes

In Illinois Counts III and IV, the CAC asserts claims under Illinois' Consumer Fraud Act ("ICFA") and Deceptive Trade Practices Act ("IDTPA"). The ICFA claim fails because the challenged representations are "literally true" and comply with federal law (FMVSS 213).  *Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 940-41 (7th Cir. 2001) (concluding that ICFA exempts those representations "specifically authorized" by federal law and dismissing claims); *Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *4-5 (N.D. Ill. Sept. 29, 2017) (dismissing allegations that lumber had smaller dimensions than labeled because the applicable federal regulator approved the size representations).

The IDTPA claim fails because Plaintiffs cannot show that they are entitled to injunctive relief.  The IDTPA "was not intended to be a consumer protection

statute," *Int'l Star Registry of Ill. V. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 991 (N.D. Ill. 2006), and "does not permit a party to recovery monetary damages." *Kljajich v. Whirlpool Corp.*, 2015 WL 12838163, at *4-5 (N.D. Ill. Sept. 25, 2015). The only relief available to consumers is injunctive relief. *Id.*; 815 Ill. Comp. Stat. 510/3. To qualify for injunctive relief, a consumer must show the defendant's conduct is likely to cause her to suffer damages in the future because of another deceptive trade practice, which, as discussed above, Plaintiffs cannot show here. *Patel v. Zillow, Inc.*, 2018 WL 2096453, at *4 (N.D. Ill. May 7, 2018).

### 5. Massachusetts Consumer Protection Law

In Massachusetts Count III, the CAC asserts a claim under Massachusetts' Consumer Protection Law. This count fails because that law is not intended to provide a remedy for alleged economic loss when Graco complies with federal safety standards set by NHTSA. *See Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 888 & n.17 (Mass. 2008) (explaining that NHTSA was better positioned to remedy economic injury arising from NHTSA standard); *see* Mass. Gen. Laws ch. 93A § 3 (expressly exempting "transactions or actions otherwise permitted" by a federal or state regulatory scheme).

### 6.      New Jersey Consumer Fraud Act

In New Jersey Count III, the CAC asserts a claim under New Jersey's Consumer Fraud Act ("NJCFA").  This count fails because the CAC fails to allege any special relationship between Graco and Plaintiffs.  *Greene v. BMW of N. Am.*, No. CIV. 2:11-04220 WJM, 2013 WL 5287314, at *5 (D.N.J. Sept. 17, 2013) (dismissing NJCFA claim because purchase of vehicle "did not give rise to a fiduciary relationship, an intrinsically fiduciary relationship, or a special relationship of any kind").

### 7.      New York Unfair and Deceptive Trade Practices Act

In New York Count III, the CAC asserts a claim under New York's Unfair and Deceptive Trade Practice Act.  This count fails because the CAC does not allege that Plaintiffs were actually exposed to the allegedly deceptive statements. *Whalen v. Pfizer, Inc.,* 862 N.Y.S.2d 812 (N.Y. Sup. Ct. 2005).  The CAC therefore does not allege the requisite causal connection between alleged misrepresentations and Plaintiff's injury.

### 8.      North Carolina Unfair and Deceptive Trade Practices Act

In North Carolina Count III, the CAC asserts a claim under North Carolina's Unfair and Deceptive Trade Practices Act.  This count fails because the challenged representations are not the type of "egregious or aggravating

circumstances" required to trigger a claim under the Act. *Maxwell v. Remington Arms Co.*, 2014 WL 5808795, at *5 (M.D.N.C. Nov. 7, 2014) (conclusory allegations labeling defendant's advertising as "false, misleading, or deceptive" were not sufficient to allege "the requisite level of unscrupulous, unethical conduct, or aggravating circumstances required to adequately state an UDTPA claim").

### 9.   Ohio Statutes

In Ohio Counts III and IV, the CAC asserts claims under Ohio's Consumer Sales Practices Act ("OCSPA") and Deceptive Trade Practices Act ("ODTPA"). The OCSPA claim fails because Plaintiffs failed to provide notice.  Ohio Rev. Code Ann. § 1345.09(B); *In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 868-69 (S.D. Ohio 2012).

The ODTPA claim fails because the ODTPA cannot be privately enforced by individual consumers, like Plaintiffs. *See Michelson v. Volkswagen Aktiengesellschaft*, 99 N.E.3d 475, 479-80 (Ohio Ct. App. 2018) (affirming dismissal because ODTPA exclusively protects "a purely commercial class"); *Hamilton v. Ball*, 7 N.E.3d 1241, 1252-53 (Ohio Ct. App. 2014); ("consumers lack standing to file suit under the DTPA"); *Borden v. Antonelli Coll.*, 304 F. Supp. 3d 669, 673-76 (S.D. Ohio 2018) ("The majority of courts to address the issue have held that an individual consumer does not have standing to sue under the ODTPA").

### 10.     Oklahoma Consumer Protection Act

In Oklahoma Count III, the CAC asserts a claim under Oklahoma's Consumer Protection Act (mislabeled as the Deceptive Trade Practices Act).  This count fails because the Act exempts from its purview "any 'actions or transactions regulated under laws administered'" by any regulatory body of the United States, including NHTSA.  *Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F. Supp. 3d 1202, 1215-16 (W.D. Okla. 2015) (finding acts under NHTSA's supervision and regulatory authority were not actionable under OCPA).

### 11.     Oregon Unlawful Trade Practices Act

In Oregon Count III, the CAC asserts a claim under Oregon's Unlawful Trade Practices Act.  Such a claim requires pleading "(1) a violation of specific conduct enumerated in O.R.S. § 646.608(1); (2) causation; (3) damages; and (4) willfulness."  *Seib v. Metro. Life Ins. Co.*, No. 3:19-CV-00892-AC, 2020 WL 2531119, at *11 (D. Or. Mar. 30, 2020), *report and recommendation adopted*, No. 3:19-CV-00892-AC, 2020 WL 2529615 (D. Or. May 15, 2020).  The CAC fails to allege elements (1), (2), and (4).  Plaintiffs do not specify which of the sections of O.R.S. § 646.608(1) Graco allegedly violated, do not allege that they relied on any alleged misrepresentations made by Graco, and fail to establish willfulness.  *See Seib*, 2020 WL 2531119, at *11 (dismissing plaintiff's UTPA claim).

### 12. Pennsylvania Unfair Trade Practices & Consumer Protection Law

In Pennsylvania Count III, the CAC asserts a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law. This count fails because Plaintiffs do not allege that they relied on any alleged misrepresentations made by Graco and do not specify that they read, were aware of, or relied on any particular materials in making their purchases. *See Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008); *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009).

### 13. Texas Deceptive Trade Practices and Consumer Protection Act

In Texas Count III, the CAC asserts a claim under Texas' Deceptive Trade Practices and Consumer Protection Act. This count fails because federal safety standards set by NHTSA govern the specific aspects of Graco's booster seats that Plaintiffs' challenge—testing and minimum weight—and the booster seats comply with those standards. *See*, *e.g.*, *Boales v. Brighton Builders, Inc.*, 29 S.W.3d 159, 165 (Tex. App. 2000) (failure to file purchase agreements related to bond issues did not violate TDTPA where nothing in Texas law required their filing); *Duke v. Flying J, Inc.*, 178 F. Supp. 3d 918, 926 (N.D. Cal. 2016) (recognizing TDTPA safe harbor for specifically permitted conduct).

### 14.     West Virginia Consumer Credit and Protection Act

In West Virginia Count III, the CAC asserts a claim under West Virginia's Consumer Credit and Protection Act.  This count fails because the CAC does not adequately allege that Plaintiff Leffingwell provided the sufficient written notice. *Waters v. Electrolux Home Prods., Inc.*, 154 F. Supp. 3d 340, 354 (N.D.W.Va. 2015).

### D.     The CAC Fails to State a Claim for Unjust Enrichment.

Nationwide Count IV of the CAC purports to assert a claim for unjust enrichment under the various states' laws, notwithstanding variations from state to state.  Some states, for example, preclude unjust enrichment claims where the plaintiff received the benefit of the bargain.  *See, e.g.*, *Prohias v. Pfizer, Inc.* 485 F. Supp. 2d 1329, 1336 (S.D. Fla. 2007) (dismissing unjust enrichment claims where plaintiffs received benefit of bargain in purchase of Lipitor); *Castillo v. Tyson*, 268 A.D.2d 336, 337 (N.Y. App. Div. 2000) (affirming dismissal of putative class plaintiffs' claims that fight promoters were unjustly enriched when boxer was disqualified, because "plaintiffs received what they paid for, namely, 'the right to view whatever event transpired'").  Other states preclude unjust enrichment claims when an adequate remedy at law exists.  *See, e.g.*, *Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) (dismissing nationwide unjust enrichment claim and holding, under Massachusetts law, "[i]t is the availability

of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment"); *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) (dismissing unjust enrichment claim and holding, under New York law, that unjust enrichment is "available only in unusual situations," is "not a catchall cause of action to be used when others fail," and is not available "where it simply duplicates, or replaces, a conventional contract or tort claim"). Still other states require contractual privity to state an unjust enrichment claim. *See, e.g., In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 952 (N.D. Ohio 2009) (dismissing unjust enrichment claim where plaintiffs purchased Whirlpool washing machines from retailers, not Whirlpool, and thus had not conferred a direct benefit on defendant Whirlpool). In addition, Georgia and Illinois law precludes unjust enrichment claims simultaneously pled with breach of express warranty claims. *See, e.g., In re Atlas Roofing Corp. Chalet Shingle Prod. Liab. Litig.*, 2014 WL 3360233, at *3 (N.D. Ga. July 9, 2014); *In re Aqua Dots Prods. Liab. Litig.*, 270 F.R.D. 377, 386 (N.D. Ill. 2010). And California and Pennsylvania Law preclude unjust enrichment claims as standalone claims. *See, e.g., Patrick v. Volkswagen Grp. of Amer., Inc.*, 2020 WL 38883275, at *7 (C.D. Cal. Mar. 5, 2020); *Plumbers' Local Union No. 690 Health Plan v. Apotex Corp.*, 2017 WL 4235773, at *10 (E.D. Pa. Sept. 25, 2017).

Plaintiffs' unjust enrichment claims fail for all of these reasons.[11]

## Conclusion

As discussed above, Plaintiffs' CAC should be dismissed because Plaintiffs

lack standing and failed to state a claim.  Graco respectfully requests that the

Court grant its Motion and dismiss this case with prejudice.

### CERTIFICATE OF COMPLIANCE WITH RULE 7.1 D

Pursuant to Local Rule 7.1D of the United States District Court for the

Northern District of Georgia, the undersigned certifies that the foregoing

submission to the Court is computer-processed, double-spaced between lines,

and prepared with 13-point Book Antiqua font.

Respectfully submitted this 25th day of January, 2021.

/s/ Nick Panayotopoulos
Nicholas P. Panayotopoulos
Georgia Bar No. 560679
Jennifer A. Adler

---

[11] Plaintiffs' claim for unjust enrichment also fails on a class-wide basis.  The Eleventh Circuit has held that "common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts."  *Vega v. T-Mobile USA, Inc.,* 564 F.3d 1256, 1274 (11th Cir. 2009); *see also Shepherd v. Vintage Pharmaceuticals, LLC,* 310 F.R.D. 691, 699 (N.D. Ga. 2015); *In re Conagra,* 251 F.R.D. at 696 ("there is substantial conflict between Georgia law and other jurisdictions on the issues of . . . unjust enrichment"); *Kunzelmann v. Wells Fargo Bank, N.A.,* No. 9:11-cv-81373-DMM, 2103 WL 139913 (S.D. Fla. Jan. 10, 2013) ("substantial variations" in laws of fifty states on unjust enrichment precluded a finding of predominance).

Georgia Bar No. 585635
Weinberg, Wheeler, Hudgins, Gunn &
Dial, LLC
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Tel: (404) 876-2700
Fax: (404) 875-9433
npanayo@wwhgd.com
jadler@wwhgd.com

Joseph J. Krasovec III (*pro hac vice*)
David C. Scott (*pro hac vice*)
Schiff Hardin LLP
233 South Wacker Drive, Suite 7100
Chicago, Illinois 60606
Tel: (312) 258-5500
Fax: (312) 258-5600
jkrasovec@schiffhardin.com
dscott@schiffhardin.com

*Attorneys for Graco Children's Products,
Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date the foregoing document was electronically filed with the Clerk using the CM/ECF system, which will automatically send a notice of electronic filing to all counsel of record.

*/s/ Nick Panayotopoulos*
Nicholas P. Panayotopoulos
Georgia Bar No. 560679
