`

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| KELLIE CARDER, et al.,individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>v.<br><br>GRACO CHILDREN'S PRODUCTS, INC. and NEWELL BRANDS DTC, INC.,<br><br>　　　　Defendants. | Civil Action File No.: 2:20-cv-00137-LMM<br><br><br>**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..............................................................1

STATEMENT OF FACTS .....................................................................3

A.    The National Highway Traffic Safety Administration and the American Academy of Pediatrics Develop Age and Weight Safety Guidelines for Child Restraint Systems ....................................3

B.    Graco Ignored Safety Guidelines So It Could Increase Profits Through Sales of TurboBooster and AFFIX High-Back Booster Seats .....................................................................5

C.    Graco Knows Its Booster Seats Are Unsafe For Children Under 40 Pounds ...........................................................6

D.    Graco Falsely Touts the Safety and Crashworthiness of Its Booster Seats...................................................................7

E.    Plaintiffs Were Harmed When They Bought Graco Booster Seats Based on Graco's Deceptive Marketing Campaign...........................10

LEGAL STANDARD...............................................................11

ARGUMENT ......................................................................12

I.    PLAINTIFFS HAVE STANDING TO ASSERT THE CLAIMS IN THE CAC. .......................................................................12

A.    Plaintiffs Have Properly Alleged an "Injury in Fact" under Eleventh Circuit Precedent ....................................................13

B.    Graco's Cited Cases do not Require a Different Conclusion ..17

C.    Plaintiffs have Standing to Seek Injunctive Relief .................20

II.   II. THE CAC HAS PROPERLY PLED COMMON LAW CLAIMS. ...............................................................................21

    A    Georgia Law Governs Plaintiffs' Common Law Claim ..........21

    B.    The CAC Pleads Fraud with Particularity ................................23

    C.    Plaintiffs Have Properly Pled Claims for Unjust Enrichment ...............................................................................25

        1.    Plaintiffs Sufficiently Plead a Claim for Unjust Enrichment Under Georgia Law....................................25

        2.    Plaintiffs Adequately Plead in the Alternative State Law Subclasses ...............................................26

III.   PLAINTIFFS HAVE PROPERLY PLED CLAIMS FOR BREACH OF WARRANTY..........................................................28

    A.    Plaintiffs Provided Required Pre-Suit Notice of the Warranty Claims.......................................................................28

    B.    Plaintiffs Have Properly Pled Express Warranty Claims ..........31

    C.    Plaintiffs have Properly Alleged Breach of Implied Warranty Claims..........................................................33

        1,    Plaintiffs Fall Within Exceptions to the Privity Requirement....................................................33

        2.    Graco's Attempt to Disclaim its Implied Warranties is Ineffective ...................................................35

        3.    Plaintiffs' Booster Seats are Unfit for Their Particular Purpose .........................................................36

        4.    The Massachusetts Implied Warranty Allegations are Sufficient........................................................37

D.   Plaintiffs Have Sufficiently Pled their Magnuson-Moss Claim ........................................................................38

III.   PLAINTIFFS HAVE PROPERLY PLED CLAIMS UNDER STATE CONSUMER PROTECTION ACTS .................................................39

A   No Regulatory Exemption Applies ..........................................39

1.   Graco cannot show that NHTSA has specifically authorized its actions .........................................................40

2.   NHTSA regulations do not permit or authorize Graco's false advertising

B.   No Basis Exists for Dismissing Plaintiffs' State Consumer Protection Act Claims ..............................................................44

CONCLUSION .........................................................................................50

# TABLE OF CASES AND AUTHORITIES

## Cases

*Ackerman v. Coca-Cola Co.*, 2013 WL 7044866
(E.D.N.Y. July 18, 2013)..............................................................20

*Akins v. Nix,* 2009 U.S. Dist. LEXIS 40717
(N.D. Ga. May 13, 2009).............................................................11

*Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011) ........................................30

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591 (1997)...........................................21

*Aspinall v. Philip Morris, Inc.*, 453 Mass. 431 (2009) ............................... 39, 41, 42

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753
(9th Cir. 2015) ..........................................................................27

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)...................................................11

*Berni v. Barilla G.eR.Fratelli, S.p.A.*, 332 F.R.D. 14
(S.D.N.Y. 2019).........................................................................20

*Block v. Lifeway Foods, Inc.*, No. 17 C 1717,
2017 WL 3895565 (N.D. Ill. Sept. 6, 2017)................................21

*Carriuolo v. Gen. Motors Co.*, 823 F.3d 977 (11th Cir. 2016) ..............................15

*Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*,
42 Ohio St. 3d 40 (1989) ...........................................................30

*Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449
(5th Cir. 2001) ...........................................................................18

*Cornell Cos. v. Borough of New Morgan*, 512 F. Supp. 2d 238
(E.D. Pa. 2007)...........................................................................27

*Craig v. Twinings N.Am., Inc.*, 5:14-cv-05214, 2015 WL 505867
(W.D. Ark. Feb. 5, 2015)................................................................18

*Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084
(11th Cir. 2019) ............................................................ 13, 14, 15, 16

*Dixon v. Allergan USA, Inc.*, No. CV 14-61091-CIV,
2015 WL 12915671 (S.D. Fla. May 28, 2015)................................32

*Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526 (D. Md. 2011) ..................................34

*Doss v. General Mills, Inc*, 816 Fed. Appx. 312 (11th Cir. 2020) .........................17

*Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778 (4th Cir. 2012) ..................................47

*Elward v. Electrolux Home Prod., Inc.*, 214 F. Supp. 3d 701
(N.D. Ill. 2016) .............................................................................33

*Erickson v. Pardus*, 551 U.S. 89 (2007) ..................................................11

*Exum v. Nat'l Tire & Battery*, 437 F.Supp.3d 1141
(S.D. Fla. 2020) ............................................................................18

*Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*,
262 S.W.3d 813 (Tex. App. 2008)..................................................35

*FMR Corp. v. Bos. Edison Co.*, 415 Mass. 393 (1993) ...........................................37

*Fox v. Ritz-Carlton Hotel Co., LLC*, 977 F.3d 1039
(11th Cir. 2020)............................................................................15

*Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc.*,
713 F.2d 1500 (11th Cir. 1983) ............................................... 21, 22

*Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1021
(N.D. Cal. 2014) ........................................................................3, 6

*Goldemberg v. Johnson & Johnson Consumer Cos.*,
8 F. Supp. 3d 467 (S.D.N.Y. 2014) ..............................................46

*Great American Assur. Co. v. Braddy Preparatory Acad., Inc.*,
    2019 U.S. Dist. LEXIS 186623 (N.D. Ga., Sept. 5, 2019)...........................12

*Greene v. BMW of N. Am.*, No. CIV 2:11-04220 WJM,
    2013 WL 5287314 (D.N.J. Sept. 17, 2013) ...................................................46

*Greenwald v. Odom*, 723 S.E.2d 305, 312 (Ga. App. 2012) ..................................22

*Gubala v. CVS Pharm., Inc.*, No. 14 C 9039,
    2016 U.S. Dist. LEXIS 32759 (N.D. Ill. 2016).............................................27

*Hedges v. Earth, Inc.*, No. 14 C 9858, 2015 WL 1843029
    (N.D. Ill. Apr. 21, 2015) ...............................................................................31

*In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748 (7th Cir. 2011)..........................14

*In re Arby's Rest. Group Litig.*, No. 1:17-cv-1035,
    2018 U.S. Dist. LEXIS 131140 (N.D. Ga. Mar. 5, 2018) ..................... 25, 26

*In re Celexa & Lexapro Mktg. & Sales Practices Litig.*,
    751 F. Supp. 2d 277 (D. Mass. 2010)............................................................24

*In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*,
    No. CIV. A. 03-4558, 2010 WL 2813788 (D.N.J. July 9, 2010),
    amended, No. CIV.A. 03-4558 GEB, 2011 WL 601279
    (D.N.J. Feb. 16, 2011)...................................................................................30

*In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*,
    831 F. Supp. 2d 507, 512 (D. Mass. 2011).............................................................19

*In re Global Tel*Link Corp.*, No. 5:14-CV-5275,
    2017 U.S. Dist. LEXIS 15093 (W.D. Ark. 2017) .........................................28

*In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales & Liab. Litig.*,
    903 F.3d 2778 (3d Cir. 2018) .......................................................................19

*In re Motor Fuel Temperature Sales Practices Litig.*,
    534 F. Supp. 2d 1214, 1229 (D. Kan. 2008) .................................................39

*In re MyFord Touch Consumer Litig.,* 46 F. Supp. 3d 2014 936
    (N.D. Ca. 2014) ...........................................................................................33

*In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936
    (N.D. Cal. 2014) .........................................................................................34

*In re Tri-state Crematory Litig.*, 215 F.R.D. 660
    (N.D. Ga. 2003)..........................................................................................22

*In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    684 F. Supp. 2d 942 (N.D. Ohio 2009) .....................................................27

*Kline v. Mortg. Elec. Sec. Sys.*, 2014 U.S. Dist. LEXIS 124406
    (S.D. Ohio 2014).........................................................................................28

*Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK,
    2011 U.S. Dist. LEXIS 89379 (N.D. Cal. August 10, 2011) ......................44

*Lass v. Bank of Am., N.A.*, 695 F.3d 129 (1st Cir. 2012)........................................27

*Laurens v. Volvo Cars of North America, LLC*,
    No. 16-3829, 868 F.3d 622, 2017 U.S. App. LEXIS 15940
    (7th Cir. Aug. 22, 2017) .............................................................................45

*Lee v. Mylan Inc.*, 806 F. Supp. 2d 1320, (M.D. Ga. 2011) ...................................34

*Manhattan Const. Co. v. Degussa Corp.*,
    No. CIV-06-611-M, 2008 WL 4058017
    (W.D. Okla. Aug. 26, 2008) .......................................................................36

*Marquis Towers, Inc. v. Highland Group*, 593 S.E.2d 903
(Ga. App. 2004) ...................................................................................................22

*Maxwell v. Remington Arms Co.*, 2014 WL 5808795
    (M.D.N.C. Nov. 7, 2014)............................................................................47

*Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810 (N.D. Cal. 2014)..................................30

*Morrow v. Carter's, Inc.*, No. 1:16-CV-01485-ELR ,
2017 U.S. Dist. LEXIS 139876 (N.D. Ga. 2017) .....................................28

*Mullins v. M.G.D. Graphics Sys. Grp.*, 867 F. Supp. 1578
(N.D. Ga. 1994) .......................................................................................21

*Munsell v. Colgate-Palmolive Co.*, 463 F. Supp. 3d 43
(D. Mass. 2020) ................................................................................ 24, 25

*Nelson v. Nissan N. Am., Inc.*, 894 F.Supp.2d 558
(D.N.J. 2012) ...........................................................................................48

*Newman & Schwartz v. Asplundh Tree Expert Co.*,
102 F.3d 660 (2d Cir. 1996) ....................................................................27

*O'Neil v. Simplicity, Inc.*, 574 F.3d 501 (8th Cir. 2009)...........................19

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815 (1999) .....................................21

*Pegasus Aviation IV, Inc. v. Aircraft Composite Techs., Inc.*,
No. 1:16-CV-21255-UU, 2016 WL 3390122
(S.D. Fla. June 17, 2016) ........................................................................33

*Praxair, Inc. v. Gen. Insulation Co.*, 611 F. Supp. 2d 318
(W.D.N.Y. 2009) .....................................................................................34

*Precision Towers, Inc. v. Nat-Com, Inc.*,
No. 2143 APRIL TERM 2002, 2002 WL 31247992
(Pa. Com. Pl. Sept. 23, 2002) .................................................................30

*Quashie v. Olympus Amer., Inc.*, 315 F. Supp. 3d 1329
(N.D. Ga. 2018) .......................................................................................23

*Rapoport-Hecht v. Seventh Generation, Inc.*,
2017 U.S. Dist. LEXIS 218781 (S.D.N.Y. 2017) ...................................28

*Reynolds v. Wal-Mart Stores, Inc.*,
4:14-cv-381-MW/CAS, 2015 WL 1879615
(N.D. Fla. Apr. 23, 2015) .......................................................................18

*Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523
    (N.D. Cal. 2012) ................................................................................20

*Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315 (5th Cir. 2002) ........................... 17, 18

*Rodi v. S. New England Sch. of Law*, 389 F.3d 5 (1st Cir. 2004)...........................24

*Rollins, Inc. v. Heller*, 454 So. 2d 580 (Fla. Dist. Ct. App. 1984) .........................13

*Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402 (7th Cir. 2004) ................................38

*Sharp v. Hylas Yachts, Inc.*, No. CV 11-11814-JCB,
    2015 WL 13656988 (D. Mass. Jan. 14, 2015)...............................................37

*Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336
    (S.D. Fla. 2009)......................................................................... 32, 33

*Softub, Inc. v. Mundial, Inc.*, 53 F. Supp. 3d 235
    (D. Mass. 2014) ................................................................................37

*Southeast Laborers Health and Welfare Fund v. Bayer Corp.*,
    655 F. Supp. 2d 1270 (S.D. Fla. July 30, 2009).............................................46

*Spokeo, Inc. v. Robins*, ⸺ U.S. ⸺, 136 S. Ct. 1540,
    194 L.Ed.2d 635 (2016)................................................................................12

*Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750 (7th Cir. 2014) ................................45

*Terrill v. Electrolux Home Prods.*, 753 F. Supp. 2d 1272
    (S.D. Ga. 2010)................................................................................25

*Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313 (S.D. Fla. 2020)...................................31

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008) ................................44

*Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560
    (S.D.N.Y. 2012)................................................................................21

*Wotring Towing v. Ford Motor Co.*, No. 2:16-CV-1193,
        2017 WL 2378003 (S.D. Ohio May 31, 2017)..............................................34

*Yachera v. Westminster Pharm., LLC*, 477 F. Supp. 3d 1251
        (M.D. Fla. 2020) .........................................................................................14

**Federal Statutes**

49 C.F.R. § 571.213 S5.5...............................................................................40

U.C.C. § 2-315 ...............................................................................................37

**State Statutes**

815 Ill. Comp. Stat. Ann. 505/10b(1) .........................................................39

Cal. Com. Code § 2607(3)(A).......................................................................30

Fla. Stat. Ann. § 501.212(1)..........................................................................39

Mass. St. 93A § 3 ..........................................................................................39

N.J. Stat. Ann. § 12A:2-316 ..........................................................................35

O.C.G.A. § 9-11-8(a)(2) ...............................................................................26

O.C.G.A. §10-1-399.......................................................................................45

O.C.G.A. §10-1-399(b) ..................................................................................45

Ohio Admin. Code 109:4-3-03(B)(1 ............................................................48

Ohio Rev. Code Ann. § 4165.03(A)(2) .........................................................48

Ohio Rev. Code Ann. 1345.09(B) .................................................................48

ORS § 646.607(1) ..........................................................................................48

ORS § 646.608 ..................................................................................48

Tex. Bus. & Com. Code § 17.49 ......................................................40

Tex. Bus. & Com. Code Ann. §§ 2.316(b) ......................................35

W. Va. Code § 46A-6-101, et seq. ....................................................49

**Rules**

Fed. R. Civ. P. 12(b)(1) ......................................................................1

Fed. R. Civ. P. 12(b)(6) ......................................................................1

Fed. R. Civ. P. 8(d) ...........................................................................26

Fed. R. Civ. P. 9(b) ............................................................... 23, 24, 25

Fed. R. Civ. P. 23(b)(2) ....................................................................20

## <u>PRELIMINARY STATEMENT</u>

We as a society can have no greater mission than to ensure the safety of our children, and our children may be at their greatest risk when traveling in a car or a truck.  Parents trust the government and the car seat manufacturers to be honest and commit themselves to advancing our children's safety in all types of accidents – because, of course, we are talking about our children. Parents trust that a manufacturer like Defendant Graco Children's Products, Inc. ("Graco" or "Defendant") will not market a booster seat that is not safe for their children and that a responsible governmental agency is watching over Defendant's product or examining its claims.  Parents trust that a company like Graco will not mislead them when talking about the safety of their children. And parents trust that when Graco says that it is testing its booster seat to make sure it is safe, they are not lying.

But in February 2020, the United States House of Representatives Subcommittee on Economic and Consumer Policy ("Subcommittee") began investigating the nation's seven largest booster seat manufacturers, including Graco, and ended up shining a long overdue light on an industry willing to sacrifice children for profits.  In a December 10, 2020 report referenced in the Consolidated Amended

Complaint, CAC ¶¶ 150-53,[1] the Subcommittee found that manufacturers, including Graco, "have endangered the lives of millions of American children and misled consumers about the safety of booster seats by failing to conduct appropriate side-impact testing, deceiving consumers with false and misleading statements and material omissions about their side-impact testing protocols, and unsafely recommending that children under 40 pounds and as light as 30 pounds can use booster seats." House Report p. 1. The Subcommittee concluded that the manufacturers have been able to mislead parents and put children at risk because over the last 20 years, the National Highway Traffic Safety Administration ("NHTSA") "has failed to regulate them in any meaningful way." House Report p. 3.

Despite this damning critique, Graco, in its motion to dismiss, doubles down and labels this case a "no injury" class action even though the parents have paid Graco handsomely for safety features and safety testing that was a fraud. And it argues that it should be exempt from any lawsuit because of its "compliance with safety standards set by [NHTSA]" – in reality, the agency that has, according to the House Report, failed to regulate the manufacturers. Plaintiffs – 21 parents – have

---

[1] "CAC" refers to the Plaintiffs' Consolidated Amended Complaint. "MTD" refers to Defendant's Memorandum of Points and Authorities in Support of Graco Children's Products, Inc.'s Motion to Dismiss Plaintiffs' Complaint Under Fed. R. Civ. P. 12(b)(1) and 12(b)(6). As cited in the CAC, the web address for the full report ("House Report") is on p. 65 n.51 of the CAC.

stepped forward to ensure that Graco faces accountability, perhaps so that Graco places no other children at risk solely to maximize its profits.

## STATEMENT OF FACTS

**A.     NHTSA and the American Academy of Pediatrics Develop Age and Weight Safety Guidelines for Child Restraint Systems.**

The first child restraint systems were introduced in 1968. CAC ¶ 90. States began marketing their use by the late 1970s, as the U.S. public became increasingly aware of high rates of death and serious injuries to children in motor vehicle accidents. CAC ¶ 91. By the early 1980s, states started requiring crash testing for car seats and by the mid-1980s, all 50 states had adopted laws aimed at reducing harm to infants and children passengers by requiring the use of a child restraint device. CAC ¶¶ 92-93.

In 1989, the American Academy of Pediatrics ("AAP") recommended keeping a child in a convertible car seat "for as long as possible" and using booster seats only for children who weighed at least 40 pounds. CAC ¶ 95.  In the 1990s, NHTSA and AAP developed child passenger safety standards and guidelines that covered a wider range of child passenger safety issues, including emphasizing the need for device based restraints tailored to the age/size of individual child passengers. CAC ¶ 97.

In this same timeframe, Graco first learned that booster seats were not safe for children under 40 pounds. Graco was aware of a 1992 NHTSA flier, which later appeared in a 1996 National Transportation Safety Board study, stating: "A toddler over one year of age, weighing 20 to 40 pounds, is not big enough for a booster seat in a car. He needs the extra protection for his upper body and head that a harness with hip and shoulder straps can give." CAC ¶ 96. The AAP has also advised, since the early 2000s, that children who weigh 40 pounds or less are best protected in a seat with its own internal harness. CAC ¶ 102.  Graco ignored these standards.

In 2010, NHTSA issued a report stressing that "[f]orward-facing (convertible or combination) child seats are recommended for children age 1 to 4, or until they reach 40 lbs," and finding that "[e]arly graduation from child restraint seats (CRS) to booster seats may also present safety risks." Convertible or combination safety seats use integrated harnesses, rather than seatbelts, to keep children in place. CAC ¶ 99. The AAP revised its 1989 Policy Statement in 2011, issuing a best practice recommendation that children from 2 to 8 years of age should remain in convertible or combination child safety seats, so long as their weight was less than the limit for the seats. CAC ¶ 100. Shortly thereafter, NHTSA updated its guidelines to reflect the AAP's recommendations. *Id.*

The AAP recommended that children stay in harnessed seats "as long as

possible," because a tightly adjusted five-point harness will reduce the risk of ejection in a car crash by securing a child's shoulders and hips. CAC ¶ 105. In contrast a booster seat will not give adequate protection to small children, because the seat belt will not be positioned across the strongest parts of the child's body, and young children often wriggle out of position. CAC ¶ 104.  Today, almost all harnessed seats can accommodate children up to 65 pounds and as tall as 4 feet, 1 inch, and some fit children up to 90 pounds. CAC ¶ 102.

**B.** **Graco Ignored Safety Guidelines So It Could Increase Profits Through Sales of TurboBooster and AFFIX High-Back Booster Seats.**

In 2002, Graco launched the TurboBooster, its first booster seat, to take advantage of the market for young children who were outgrowing child harness car seats but were still too small to properly use a seat belt. CAC ¶ 106. Graco executives approved the booster seat in record time. CAC ¶ 107. They were eager to start generating what proved to be a whopping 394% profit margin on the TurboBooster. CAC ¶ 108. The TurboBooster was sold at retailers nationwide, becoming Graco's top-seller. CAC ¶ 109. Capitalizing on the popularity of the TurboBooster, Graco began production on the virtually-identical AFFIX Highback Booster Seat ("AFFIX"). *Id.*

Graco's aggressive marketing helped make the TurboBooster and AFFIX

Booster Seats (together, the "Booster Seats") two of the top selling booster seats in the United States. CAC ¶ 110. Graco labeled and marketed these Booster Seats in the U.S. as (1) "side impact tested" and (2) safe for children as small as 30 pounds and as young as three-years-old. CAC ¶¶ 112, 116. However, Graco has known since it began selling the Booster Seats that these statements are false and misleading. CAC ¶ 3.

### C.  Graco Knows Its Booster Seats Are Unsafe For Children Under 40 Pounds.

While Graco aggressively marketed the Booster Seats to U.S. consumers as safe for children who weigh as little as 30 pounds, Graco simultaneously represented to Canadian consumers that a child weighing less than 40 pounds using the same Booster Seats risked "serious injury and death." CAC ¶ 5. Canada has prohibited the use of booster seats for children under 40 pounds since 1987. *Id.* Graco informs Canadian consumers that its Booster Seats—seats identical in every material respect to the ones sold in the United States—were specifically designed for use ONLY by children who weigh between 40 and 100 pounds. CAC ¶ 115. Graco has failed to provide its American consumers with similar warnings. CAC ¶ 116. Instead, Graco has expressly stated that 3-year-old children can safely use the Booster Seats and listed the minimum weight as 30 pounds. *Id.*

By 2016, Graco had revised its instruction manual for the TurboBooster by

changing the minimum age from three to four years old, but it did not increase the minimum weight requirement. CAC ¶ 117. Graco ignored nationally-recognized safety guidelines and best practices for booster seats to increase its share of the booster seat market. CAC ¶ 120. By continuing to advertise 30 pounds as the minimum weight for the Booster Seats, Graco intended to convince parents to move their small children out of child harness restraint systems as quickly as possible. CAC ¶ 121. This marketing strategy generated enormous profits for Graco while endangering children. *Id.*

### D.  Graco Falsely Touts the Safety and Crashworthiness of Its Booster Seats.

On its website and in its marketing materials, Graco has claimed that the Booster Seats provide substantial side-impact safety as supported by "the most rigorous crash tests that help protect your little one in frontal, side, rear & rollover crashes…." CAC ¶ 133. Graco also advertised that its Booster Seats "meet or exceed the US Federal Motor Vehicle Safety Standard 213." ("FVMSS 213"). CAC ¶ 133.

In reality, however, the federal government has no standards for side-impact testing of booster seats. CAC ¶ 9. Instead, Graco designed its own side-impact tests but concealed their results, which show that a child riding in a Graco Booster Seat could be severely injured or killed by a side-impact collision.  CAC ¶¶ 10, 149. Independent side-impact tests performed on Graco Booster Seats show properly

positioned child-sized crash dummies being thrown far outside the boundaries of the Booster Seats. CAC ¶ 10. Graco was well aware of the dangers, but it continued to market its Booster Seats as safe for children weighing less than 40 pounds, and even today continues to market its Booster Seats as "side impact tested." CAC ¶¶ 11-12. Graco reinforces its deception by stitching labels onto the Booster Seats that say "SIDE IMPACT TESTED." *Id.* Even the design of the Booster Seat is deceptive with material jutting forward from the backrest to give the illusion of providing additional protection. CAC ¶ 135.

Graco's side-impact tests do not establish that the Booster Seats adequately protect children in a side-impact collision. CAC ¶ 142. One expert found that "side impact testing conducted by Graco demonstrates very poor occupant crash protection," and that, "[e]ven with the side wings provided by the seat back the TurboBooster fails to contain the head and torso of the child dummy and allows severe head and torso excursion." CAC ¶ 143.

Graco's own secret testing shows that its Booster Seats' side structure provides no side-impact protection. CAC ¶ 145. In fact, the headrest and structure of the Booster Seats allow the head, upper torso, and even the abdomen of a child-sized test dummy to be ejected from the boundaries of the Booster Seat. *Id.* This type of violent movement with a real child could lead to abdominal, brain, and spinal

injuries. CAC ¶ 144. Graco concealed the inherent dangers in using the Booster Seats with children under 40 pounds including the inadequacy of its secret side-impact testing and the Booster Seats' lack of side-impact protection. CAC ¶ 149.

In December 2020, the House Report found that:

- Graco "deceptively market[s] their booster seats as 'side-impact tested.' … These tests do not measure occupant safety. … [Graco] grades their booster seats' performance on a standard that it [is] nearly impossible to fail[.]"

- "Graco's self-designed standard also fails to test for occupant safety. Marketing booster seats as 'side-impact tested,' under these circumstances misleads consumers into believing that the booster seats passed meaningful impact tests, which they did not."

- "GRACO … UNSAFELY ADVERTISED BOOSTER SEATS FOR 30-POUND CHILDREN DESPITE WARNINGS OF EXPERTS."

- "Graco … Dangerously Market[s] Their Booster Seats for Children Under 40 Pounds."

- Graco's Canadian products include a "40-pound weight minimum and warn[] consumers that 'FAILURE TO USE booster seat in a manner appropriate for your child's size may increase the risk of serious injury

or death.' By contrast, in the United States, Graco issues no such warnings." CAC ¶ 152. The Subcommittee found that consumers reasonably relied on Graco's deceptive marketing practices. CAC ¶ 153.

Graco did not revise the minimum weight for its Booster Seats from 30 to 40 pounds until after the Congressional investigation was underway. CAC ¶ 152. When it finally did revise the minimum weight, Graco claimed that change was meant "to meet industry standards," CAC ¶ 122, even though the company had ignored scientific safety data for decades. Similarly, Graco revised its website to admit that, "no side-impact testing is currently required under the FMVSS 213," but only after being named in a February 2020 ProPublica exposé on the dangers of child booster seats. CAC ¶ 140. Nonetheless, Graco has still not changed all of its marketing materials for all retail outlets. CAC ¶¶ 123-26.

## E.  **Plaintiffs Were Harmed When They Bought Graco Booster Seats Based on Graco's Deceptive Marketing Campaign.**

Plaintiffs are 21 parents and caregivers to young children in 15 states. Plaintiffs allege that they bought a "TurboBooster" or an "Affix" Booster Seat, the approximate date of purchase, the place of purchase, and the approximate weight of the child —each being less than 40 pounds at the time of purchase. CAC ¶¶ 20, 23, 26, 29, 32, 35, 38, 41, 44, 47, 50, 53, 56, 59, 62, 65, 68, 71, 74, 77, 80. Plaintiffs

purchased high-back models, consistent with the allegations of the CAC as a whole.

Plaintiffs all allege that they decided to buy the Booster Seats based in part on Graco's representations that they were safe for children as light as 30 pounds, and were side-impact tested. They did not know that these representations were false, that the Booster Seats could not perform as advertised, that Graco's purported side-impact testing was meaningless, and that, contrary to Graco's representations, there are no federal standards for side-impact testing of booster seats. Plaintiffs allege they sustained economic injury because they would not have purchased the Booster Seats, or would have paid less, had they known the truth. CAC ¶¶ 21, 24, 27, 30, 33, 36, 39, 42, 45, 48, 51, 54, 57, 60, 63, 66, 69, 72, 75, 78, 81.

## **LEGAL STANDARD**

To withstand a motion to dismiss, a plaintiff merely must move beyond the conceivable and allege "'enough facts to state a claim for relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Specific facts are not necessary, as long as the defendant receives fair notice of the plaintiff's claims and the grounds on which they rest." *Akins v. Nix,* 2009 U.S. Dist. LEXIS 40717 at *2 (N.D. Ga. May 13, 2009) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)) (internal quotation marks omitted). Further, a "complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a 'plausible'

claim for relief. A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is 'improbable' that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely 'remote and unlikely.'" *Great American Assur. Co. v. Braddy Preparatory Acad., Inc*., 2019 U.S. Dist. LEXIS 186623 at *6-7 (N.D. Ga., Sept. 5, 2019).

## **ARGUMENT**

## I.   **PLAINTIFFS HAVE STANDING TO ASSERT THE CLAIMS IN THE CAC.**

The "irreducible constitutional minimum of standing consists of three elements": "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, —— U.S. ——, 136 S. Ct. 1540, 1547, 194 L.Ed.2d 635 (2016). To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Id.* at 1548.

Graco argues that Plaintiffs have not suffered an injury in fact because their children were not physically injured, because the booster seats could still be used and were not totally worthless, and because an economic injury due to false

advertising is not an "injury in fact."  These precise arguments have, however, been squarely rejected by the Eleventh Circuit.

**A.**     **Plaintiffs Have Properly Alleged an "Injury in Fact" under Eleventh Circuit Precedent**.

The Eleventh Circuit recently established that "an economic injury qualifies as a concrete injury," and "[t]here is no requirement that a plaintiff have experienced physical harm to have an economic injury." *Debernardis v. IQ Formulations, LLC*, 942 F.3d 1076, 1084, 1086 n.7 (11th Cir. 2019). The Eleventh Circuit held in *Debernardis* that "[a] person experiences an economic injury" and has standing to sue "when, as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain." *Id.* at 1086. Damages for economic injury "under a benefit of the bargain theory are calculated based on 'the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties.'" *Id.* at 1084  (quoting *Rollins, Inc. v. Heller*, 454 So. 2d 580, 585 (Fla. Dist. Ct. App. 1984)).

Here, the CAC alleges that the bargain offered by Graco was that their Booster Seats were safe for children weighing as little as 30 pounds and that the Booster Seats had been "side impact tested," suggesting to reasonable consumers that Graco's testing had ensured that the Booster Seats would be safe in a side-impact

collision. The CAC further alleges that Plaintiffs did not receive the benefit of that bargain: they did not receive a Booster Seat that was safe for 30-pound children, that had been meaningfully side-impact tested, and that would be safe in a side-impact collision. Finally, Plaintiffs allege that if they had known the truth about Graco's Booster Seats, then they either would not have purchased them or they would have paid less for them.

Although Graco argues that Plaintiffs cannot show they have suffered injury from any actual defect in the Booster Seats and that Plaintiffs were still able to benefit from the Booster Seats, Graco is confusing the dispositive issue. Plaintiffs were injured and have standing because they did not get what they paid for. *See Yachera v. Westminster Pharm., LLC*, 477 F. Supp. 3d 1251, 1264 (M.D. Fla. 2020) (holding that "*Debernardis* forecloses [the] argument" that Plaintiffs lacked standing because they alleged no facts indicating that the product "'failed to work for its intended purpose' or 'that it caused any adverse effects'"; concluding that "the absence of allegations that a medication made a plaintiff sick or failed to work as *intended* is not fatal to establishing injury in fact where, as here, each plaintiff plausibly pleads that she would not have purchased the medication had she known it was defective"); *see also In re Aqua Dots Prod. Liab. Litig.*, 654 F.3d 748, 751 (7th Cir. 2011) (cited approvingly by *Debernardis* and holding that even though

plaintiffs' children were not physically injured by toys, "it does not mean that they were uninjured. The plaintiffs' loss is financial: they paid more for the toys than they would have, had they known of the risks the beads posed to children. A financial injury creates standing.").

Under *Debernardis*, Plaintiffs have standing to recover the difference between the market value of what Graco promised and what Plaintiffs received. *See Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986-87 (11th Cir. 2016) (cited approvingly by *Debernardis* and holding that class members were denied the benefit of their bargain and thus injured when they purchased vehicles that were represented as having three perfect safety ratings but actually had no safety ratings); *see also Fox v. Ritz-Carlton Hotel Co., LLC*, 977 F.3d 1039, 1047 (11th Cir. 2020) (holding plaintiff had standing based on his economic injury arising out of hotel's deceptive practices when "[a] favorable judicial decision would likely redress [plaintiff's] injury by awarding Fox damages against Ritz-Carlton").[2]

The *Debernardis* opinion also recognized that "allegations were *sufficient* to establish standing" when "the products did not work as advertised or where the plaintiffs had paid a premium." 942 F.3d at 1086 (emphasis in original). Here,

---

[2] *See Uzuegbunam v. Preczewski*, __ S. Ct. __, 2021 WL 850106 at *6-7 (U.S. Sup. Ct. Mar. 8, 2021) (even nominal damages may confer standing as being redressable).

Plaintiffs have plausibly alleged that the product failed to work as intended because they could not be safely used with children weighing less than 40 pounds and they did not provide protection in a side-impact collision.  Additionally, Plaintiffs have alleged that they either would not have purchased the Booster Seat *or they would have paid less for it*, meaning that they had originally paid more than the fair market value.  As *Debernardis* held, allegations such as these are sufficient to establish standing.

Graco, however, proceeds into wholly uncharted territory by claiming, without support, that Plaintiffs must in fact show the product is worthless. And, disturbingly, Graco then argues that its motion to dismiss should be granted because Booster Seats are not "worthless" since Plaintiffs have not alleged that they are "ineffective in frontal or rear-end collisions for children weighing 40 pounds or more." MTD p. 18. In other words, even though side-impact crashes account for 25% of vehicle collision fatalities involving children under 15, Graco insists that Plaintiffs should use the Graco seats, which are admittedly unsafe for side-impact collisions, because if the car, fortuitously, is hit only in the front or rear, the seat might have value (but only for children over 40 lbs).

The Court need not address that argument because the "worthless product" argument is contrary to *Debernardis*, which specifically recognized that ordinarily

benefit-of-the-bargain damages are less than the entire purchase price of the product, but a plaintiff may recover the full price of the product if the product is worthless to the plaintiff.  942 F.3d at 1084.  Thus, whether a product is worthless is relevant to damages and not to standing.

Although Graco points to *Doss v. General Mills, Inc*., an unreported case at 816 Fed. Appx. 312 (11th Cir. 2020) as support for its novel theory, *Doss* does not hold that a product must be worthless in order to demonstrate economic harm. To the contrary, the *Doss* court confirms Plaintiffs' standing in this case, holding: "To evaluate a benefit-of-the-bargain theory in this context, we must consider whether Doss alleged that the presence of glyphosate *lowers the value* of the Cheerios she purchased." *Id*. at 314 (emphasis added). The *Doss* plaintiff had, however, failed to allege that any of the Cheerios she bought contained glyphosate and only alleged that glyphosate "may be" harmful. Plaintiffs in this case have, of course, alleged that the reality of the Booster Seats – that they were unsafe for children weighing between 30 and 40 pounds and were not side-impact tested – did lower the market value of the Booster Seats.  Plaintiffs have, therefore, properly alleged an economic injury sufficient for standing.

### B.    <u>Graco's Cited Cases do not Require a Different Conclusion</u>.

The other cases cited by Graco also illustrate the distinction between cases involving an economic injury and those that do not. In *Rivera v. Wyeth-Ayerst Labs.*, 283 F.3d 315, 320 (5th Cir. 2002), the Court distinguished the case before it, in which plaintiffs were merely claiming the product was defective, from its decision in *Coghlan v. Wellcraft Marine Corp.*, 240 F.3d 449, 455 (5th Cir. 2001), in which the plaintiffs claimed that the defective product was less valuable than what they bargained for, just like Plaintiffs in this case.  The Court stated:

> The key distinction between [the Coghlans'] case and a "no-injury" products liability suit is that the Coghlans' claims are rooted in basic contract law rather than the law of product liability: *the Coghlans assert they were promised one thing but were given a different, less valuable thing.* The core allegation in a no-injury product liability class action is ... the defendant produced or sold a defective product and/or failed to warn of the product" dangers.

*Rivera*, 283 F.3d at 320 (citing Coghlan, 240 F.3d at 455 n.4) (emphasis added).

Numerous other cases are in accord.  *See, e.g., Exum v. Nat'l Tire & Battery*, 437 F. Supp. 3d 1141, 1151-52 (S.D. Fla. 2020) (holding plaintiffs who alleged they purchased a less valuable product than properly registered tires establish Article III standing); *Craig v. Twinings N.Am., Inc.*, 5:14-cv-05214, 2015 WL 505867 at *3-4 (W.D. Ark. Feb. 5, 2015) ("Craig argues that her claim is not based upon harm caused by consuming the teas, *but upon Twinings' unlawful claim on its product label, which misled Craig into buying Twinings' tea that she otherwise would not*

*have purchased at a premium*.") (emphasis added); *Reynolds v. Wal-Mart Stores, Inc*., 4:14-cv-381-MW/CAS, 2015 WL 1879615 at *2 (N.D. Fla. Apr. 23, 2015) ("|A plaintiff can meet the injury-in-fact requirement with a showing that by relying on a misrepresentation on a product label, they paid more for the product than they otherwise would have paid, or bought it when they otherwise would not have done so.").

Like *Rivera*, the other cases Graco cites involve "no injury" products liability suits in which the plaintiffs failed to allege that their purchase was at a premium or that they would not have purchased the product but for the misrepresentation of some essential or intrinsic quality. *See In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales & Liab. Litig*., 903 F.3d 278, 281 (3d Cir. 2018) (holding that plaintiff "fails to allege that the purchase provided her with an economic benefit worth less than the economic benefit for which she bargained"); *O'Neil v. Simplicity, Inc.,* 574 F.3d 501, 504-05 (8th Cir. 2009) (holding that plaintiffs could not bring products liability case for a non-defective crib that happened to come from product line at risk for a defect); *In re Fruit Juice Prods. Mktg. & Sales Pracs. Litig.*, 831 F. Supp. 2d 507  (D. Mass. 2011) (holding that plaintiffs received benefit of the bargain and had no standing when plaintiffs "failed to allege that the fruit juice products had any

diminished value because of the presence of lead or that they would have purchased different or cheaper fruit juice products had they known about the lead").

In sum, Plaintiffs have properly alleged Article III standing for compensatory relief.

### C.   Plaintiffs have Standing to Seek Injunctive Relief.

Graco argues that Plaintiffs lack standing to seek injunctive relief because they do not allege that they will purchase another booster seat in the future, and thus no "similar future harm" can be shown. Graco's argument ignores the many courts throughout the nation holding that previously deceived consumers have standing to seek injunctive relief if they allege that a product's labeling or marketing is misleading to a reasonable consumer.  Even where a plaintiff may not affirmatively plead he intends to make another purchase of the product in question, the plaintiff still maintains standing to sue for injunctive relief.  *Ackerman v. Coca-Cola Co.*, 2013 WL 7044866, at *15, *15 n.23 (E.D.N.Y. July 18, 2013); *Berni v. Barilla G.eR.Fratelli, S.p.A.*, 332 F.R.D. 14, 25 (S.D.N.Y. 2019) (holding "past purchasers of a product may obtain an injunction requiring a labeling change through Rule 23(b)(2) even if there is no clear evidence that they will purchase the product again").

To hold otherwise would require that "a plaintiffs' mere recognition of the alleged deception operates to defeat standing for an injunction, [and] then injunctive

relief would never be available in false advertising cases, a wholly unrealistic result" for the very harm which consumer protection statutes are designed to redress. *Ries v. Arizona Beverages USA LLC*, 287 F.R.D. 523, 533 (N.D. Cal. 2012); *see also Block v. Lifeway Foods, Inc.*, No. 17 C 1717, 2017 WL 3895565, at *7 (N.D. Ill. Sept. 6, 2017). Accordingly, Plaintiffs in this case maintain standing to seek injunctive relief regardless whether they intend to purchase another Graco Booster Seat again in the future.[3]

## II.   THE CAC HAS PROPERLY PLED COMMON LAW CLAIMS.

### A.   Georgia Law Governs Plaintiffs' Common Law Claims.

In arguing that the Court should dismiss Plaintiffs' common law claims, Graco has ignored the most important rule: Georgia law applies to all of Plaintiffs' common law claims, including the claims for fraud. "A federal court faced with the choice of law issue must look for its resolution to the choice of law rules of the forum state." *Frank Briscoe Co., Inc. v. Ga. Sprinkler Co., Inc.*, 713 F.2d 1500, 1503 (11th Cir. 1983). Georgia typically follows the traditional approach of *lex loci delecti* in

---

[3] Some district courts have also held that it is "appropriate to defer standing objections until after class certification where certification issues are 'logically antecedent to Article III concerns,'" making Defendant's argument premature at this stage of the litigation. *See e.g. Winfield v. Citibank, N.A.*, 842 F. Supp. 2d 560, 574-75 (S.D.N.Y. 2012) (relying on the Supreme Court's decisions in *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 612 (1997) and *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831 (1999)).

tort cases, which usually means that "the law of the place of the injury governs rather than the law of the place of the tortious acts allegedly causing the injury." *Mullins v. M.G.D. Graphics Sys. Grp.*, 867 F. Supp. 1578, 1581 (N.D. Ga. 1994). "Georgia's choice of law system, however, has an unusual characteristic: the application of another jurisdiction's laws is limited to statutes and decisions construing those statutes." *In re Tri-state Crematory Litig.*, 215 F.R.D. 660, 677 (N.D. Ga. 2003) (internal citations and quotations omitted). "When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law." *Id.; see also Frank Briscoe Co.*, 713 F.2d at 1503 ("When no statute is involved, Georgia courts apply the common law as developed in Georgia rather than foreign case law."). Consequently, this Court must apply the common law of Georgia to Plaintiffs' common law fraud, negligent misrepresentation, and unjust enrichment claims.[4]

Graco does not dispute that Plaintiffs have adequately alleged the elements of fraud and negligent misrepresentation under Georgia law. *See Greenwald v. Odom*, 723 S.E.2d 305, 312 (Ga. App. 2012) (setting forth the elements of a fraud claim

---

[4] For this reason, Defendant's premature concern is misplaced that "[c]lass certification of Plaintiffs' claims—especially on a nationwide basis—would be inappropriate and unmanageable . . .because the laws of the state where each injury took place governs [sic] the individual claims." MTD p. 22 n.10.

under Georgia law); *Marquis Towers, Inc. v. Highland Group*, 593 S.E.2d 903, 906 (Ga. App. 2004) (setting forth the elements of a claim for negligent misrepresentation under Georgia law).  Instead, Graco argues only that Plaintiffs failed to plead fraud with particularity under Fed. R. Civ. P. 9(b).

### B.  The CAC Pleads Fraud with Particularity.

Plaintiffs have satisfied Rule 9(b)'s requirement that they plead fraud with "particularity" because they have alleged the "who, what, when, where and how of the alleged fraud."  *Quashie v. Olympus Amer., Inc.,* 315 F. Supp. 3d 1329, 1340 (N.D. Ga. 2018).  Graco does not – as it cannot – dispute that Plaintiffs have alleged the specifics of Graco's fraudulent acts in great detail, including: identifying the perpetrator of the fraud; identifying each named Plaintiff and their place of residence; alleging in painstaking detail the "what" and "how" of Graco's fraud;[5] and adequately alleging the "where" and "when" of Graco's fraud by describing the nationwide marketing scheme, as well as the date and location of each Plaintiff's purchase(s) of Graco's defective Booster Seats.[6]

---

[5] *See, e.g.,* CAC ¶¶ 3, 4, 7, 8, 9, 10, 12, 14, 20-21, 23-24, 26-27, 29-30, 32-33, 35- 36, 38-39, 41-42, 44-45, 47-48, 50-51, 53-54, 56-57, 59-60, 62-63, 65-66, 68-69, 71-72, 74-75, 77-78, 80-81,111-112, 116-118, 134, 136, 139, 146, 148-149, 152, 161-162, 169, 195, 204-206, 223-224.

[6] *See* CAC ¶¶ 20, 23, 26, 29, 32, 35, 38, 41, 44, 47, 50, 53, 56, 59, 62, 65, 68, 71, 74, 77, 80.

Graco, however, argues that the CAC is inadequate because it does not include, for each named Plaintiff information such as the Booster Seat model, details regarding Plaintiffs' reliance, the time and place of the purchase, and the price paid. Graco, however, fails to cite a single case holding that such information is required under Rule 9(b). In *Munsell v. Colgate-Palmolive Co.*, 463 F. Supp. 3d 43, 52–53 (D. Mass. 2020), the defendants similarly argued that the plaintiff failed to comply with Rule 9(b) when she did not identify the kind of Tom's deodorant that she purchased or the dates and locations of her purchases. The Court in *Munsell* held that "defendant misunderstands that the 'specificity requirement extends only to the particulars of the allegedly misleading statement itself'. . ., not to 'the circumstances of the plaintiff's conduct in reliance' on that statement." *Id.* (quoting *Rodi v. S. New England Sch. of Law*, 389 F.3d 5, 15 (1st Cir. 2004)).

The Court in *Munsell* concluded that the plaintiff adequately met the heightened pleading standard of Rule 9(b) by alleging, in a false advertising case, that defendants are "who" committed the fraud; the "what" is the misleading "natural" claim on the packaging of the products; the "where" is the packaging of the products and the "when" is the class period. *Id.* at 53; s*ee also In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, 751 F. Supp. 2d 277, 290 (D. Mass. 2010)

(finding fraud allegations sufficiently definite when plaintiff alleged details of deceptive advertising and identified perpetrators and recipients of false information).

Plaintiffs have included allegations identical to those found sufficient in *Munsell* and *In re Celexa*. The additional allegations sought by Graco are merely the circumstances of Plaintiffs' reliance – allegations that the *Munsell* opinion explains do not fall within the scope of Rule 9(b). Rule 9(b) provides no basis, therefore, for dismissing any of Plaintiffs' claims.

### C.    Plaintiffs Have Properly Pled Claims for Unjust Enrichment.

Plaintiffs have pled an unjust enrichment claim on behalf of a nationwide class, or alternatively, state subclasses. CAC ¶¶ 217-21.  As with the fraud claim, Graco mischaracterizes the cause of action as one asserting unjust enrichment claims under various states' laws, arguing that variations in those laws require dismissal and preclude class certification.  However, Georgia choice of law principles dictate that Georgia law applies to all class members' unjust enrichment claims.  Therefore, Plaintiffs have alleged a nationwide class under Georgia law.

### 1.    Plaintiffs Sufficiently Plead a Claim for Unjust Enrichment Under Georgia Law.

Graco does not challenge Plaintiffs' unjust enrichment claim asserted on behalf of a *nationwide* class under Georgia law.  *See e.g.*, *In re Arby's Rest. Group Litig.*, No. 1:17-cv-1035, 2018 U.S. Dist. LEXIS 131140, *59 (N.D. Ga. Mar. 5,

2018) (denying defendant's motion to dismiss consumers' unjust enrichment claim pled under Georgia law on behalf of a nationwide class); *Terrill v. Electrolux Home Prods.,* 753 F. Supp. 2d 1272, 1281 (S.D. Ga. 2010) (applying Georgia unjust enrichment law to nationwide consumer class).

Graco's only argument with respect to Georgia law is that it does not permit a plaintiff to plead both unjust enrichment and breach of express warranty claims. This argument misstates the rule.  Although a plaintiff cannot *recover* for an unjust enrichment claim if an express contract governs the dispute, a plaintiff "may plead these claims in the alternative."  *In re Arby's Rest. Group Litig.*, 2018 U.S. Dist. LEXIS 131140, at *59 (citing substantial authority).  This conclusion is consistent with basic federal and state civil procedure principles allowing parties to plead in the alternative.  Fed. R. Civ. P. 8(d); O.C.G.A. § 9-11-8(a)(2).  Moreover, if Graco prevails on its denial that any express warranty applies, Plaintiffs will be entitled to recover for unjust enrichment.  Plaintiffs, therefore, have properly stated a claim for unjust enrichment in the alternative.

## 2.    Plaintiffs Adequately Plead in the Alternative State Law Subclasses.

Alternatively, Plaintiffs have pled a prima facie case for state law unjust enrichment subclasses. Graco's attack on the viability of unjust enrichment claims under other state laws does not support dismissal of these alternative claims. First,

Graco argues that states like Florida and New York preclude unjust enrichment when plaintiffs received the benefit of the bargain. MTD p. 44. Plaintiffs have, of course, already shown that they did not receive the benefit of the bargain Graco promised.

Next, Graco argues that Massachusetts and New York preclude unjust enrichment claims when an adequate remedy at law exists, that California and Pennsylvania preclude unjust enrichment as a standalone claim, and that Illinois also does not permit pleading both an unjust enrichment and breach of express warranty claim. Graco does not explain why these arguments require dismissal at this stage and ignores ample case law allowing such claims to proceed in the alternative, just as Georgia law does. *See, e.g.*, *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762-763 (9th Cir. 2015) (holding that dismissal of an unjust enrichment claim under California law was improper since claim can be pleaded in the alternative); *Lass v. Bank of Am., N.A.*, 695 F.3d 129, 140 (1st Cir. 2012) (Massachusetts law); *Newman & Schwartz v. Asplundh Tree Expert Co.,* 102 F.3d 660, 663 (2d Cir. 1996) (New York law); *Gubala v. CVS Pharm., Inc.*, No. 14 C 9039, 2016 U.S. Dist. LEXIS 32759, *56-57 (N.D. Ill. 2016) (Illinois law); *Cornell Cos. v. Borough of New Morgan*, 512 F. Supp. 2d 238, 265-66 (E.D. Pa. 2007) (Pennsylvania law).

Further, Graco's reliance on *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 684 F. Supp. 2d 942, 952 (N.D. Ohio 2009), to argue that

Plaintiffs must satisfy a privity requirement under Ohio law is similarly misplaced because Plaintiffs have alleged that they conferred the "benefit" of their purchase on *Graco*, regardless whether a "middleman" retailer or agent facilitated the transaction.  CAC ¶¶ 122-23 n.30, 217-18; s*ee also Kline v. Mortg. Elec. Sec. Sys.*, 2014 U.S. Dist. LEXIS 124406, *17-20 (S.D. Ohio 2014).

Finally, Graco's argument set forth in a footnote that variances in state law preclude class certification of the unjust enrichment claim should be addressed later in the litigation and not on a motion to dismiss. *See, e.g.*, *Morrow v. Carter's, Inc.*, No. 1:16-CV-01485-ELR , 2017 U.S. Dist. LEXIS 139876, *26 (N.D. Ga. 2017). Notably, all of the cases Graco cites were decided at the class certification stage.[7]

For all these reasons, the Court should deny Graco's motion to dismiss Plaintiffs' unjust enrichment claim.

## III.   PLAINTIFFS HAVE PROPERLY PLED CLAIMS FOR BREACH OF WARRANTY.

### A.   Plaintiffs Provided Required Pre-Suit Notice of the Warranty Claims.

---

[7] At a minimum, the cases in footnote 11 would not preclude class certification here because none dealt with a plaintiff seeking certification of a nationwide unjust enrichment class under Georgia law outside of the MDL context, and distinct factual issues exist here. Regardless, courts do certify unjust enrichment classes.  *See, e.g.*, *In re Global Tel*Link Corp.*, No. 5:14-CV-5275, 2017 U.S. Dist. LEXIS 15093, *27 (W.D. Ark. 2017) (certifying four multistate unjust enrichment subclasses comprised of 44 states for litigation purposes); *Rapoport-Hecht v. Seventh Generation, Inc.*, 2017 U.S. Dist. LEXIS 218781, *11-12 (S.D.N.Y. 2017) (certifying nationwide unjust enrichment class).

Graco seeks to avoid breach of warranty liability by arguing that Plaintiffs failed to give statutorily-required pre-suit notification of the claims.  Graco argues Plaintiffs' express warranty claims are barred with respect to Alabama, California, Florida, Illinois, New York, Oregon, Pennsylvania, and Texas and their implied warranty claims are barred with respect to Alabama, Ohio, Oregon, Pennsylvania, and Texas for failure to allege Plaintiffs provided notice of the breach of warranty within a reasonable time.

The CAC was filed on December 11, 2020.  More than a month before the CAC was filed, Plaintiffs sent an omnibus breach of warranty notice letter on November 5, 2020, giving notice of claims under the law of all 50 states.  CAC ¶ 82; MTD at 25.  That letter was proper pre-suit notice, and Graco does not contend otherwise.  Instead, Graco argues that the November 5, 2020, letter was sent out after the underlying cases were filed, rendering it tardy.

Graco overlooks the fact that plaintiffs in the CAC from Alabama, California, Florida, New York, Oregon, and Texas, with two exceptions,[8] were *not* plaintiffs in any of the underlying cases. As for the new plaintiffs from California, Florida, New

---

[8] One of the California plaintiffs, Emilio Pensado, Jr., initially filed suit in California, but dismissed his California case and refiled his claims in this case.  Prior to suing in California, Mr. Pensado provided notice to Graco on May 1, 2020 and again before filing in this case.  Silvia Tehomilic similarly initially filed suit in New York, voluntarily dismissed that action, and then refiled her claims in this case.  Her initial lawsuit in New York provided adequate pre-suit notice to Graco, especially in conjunction with the November 5, 2020 omnibus notice.

York, Oregon, and Texas that did not join the case until the CAC was filed, the November 5, 2020, pre-suit notice letter is appropriate and timely under the law cited by Graco.

With respect to Ohio and Pennsylvania, the law is well established that the filing of a complaint may suffice for notice of breach of express and implied warranties. *See Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co.*, 42 Ohio St. 3d 40, 54 (1989); *Precision Towers, Inc. v. Nat-Com, Inc.*, No. 2143 APRIL TERM 2002, 2002 WL 31247992, at *5 (Pa. Com. Pl. Sept. 23, 2002). Likewise, New York courts allow the complaint to serve as notice of the breach of warranty where, as here, a retail consumer is making the claim against the product's manufacturer. *See, e.g., In re Ford Motor Co. E-350 Van Prod. Liab. Litig. (No. II)*, No. CIV. A. 03-4558, 2010 WL 2813788, at *72 (D.N.J. July 9, 2010), amended by, No. CIV.A. 03-4558 GEB, 2011 WL 601279 (D.N.J. Feb. 16, 2011) (filing of complaint in MDL over defective vans could provide notice under New York warranty law).

In addition, California and Florida do not require notice to the manufacturer when, as in this case, the consumers did not purchase directly from the

manufacturer.[9] *See* Cal. Com. Code § 2607(3)(A); *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 817 (N.D. Cal. 2014) ("timely notice of a breach of an express warranty is not required where the action is brought by 'injured consumers against manufacturers with whom they have not dealt'"); *Toca v. Tutco, LLC*, 430 F. Supp. 3d 1313, 1323 (S.D. Fla. 2020) ("Plaintiffs are correct in their assertion that notice is required to be given to the *seller*, not the manufacturer, under Florida law") (citation omitted) (emphasis in original).

Lastly, in Illinois, pre-suit notice for breach of express warranty is not required where the defendant already has actual knowledge of a product's defect, as Plaintiffs have alleged with Graco. *Hedges v. Earth, Inc.*, No. 14 C 9858, 2015 WL 1843029, *3 (N.D. Ill. Apr. 21, 2015) (holding defendant's pre-suit knowledge that none of its shoes provided the advertised health benefits rendered pre-suit notification unnecessary).

### B.    Plaintiffs Have Properly Pled Express Warranty Claims.

Graco seeks to avoid Plaintiffs' express warranty claims in certain states by arguing that Plaintiffs have failed to allege that Graco's misrepresentations were the

---

[9]    *Alvarez v. Chevron Corp.*, 656 F.3d 925 (9th Cir. 2011), cited by Graco, does not apply here because the defendants were both the seller and the manufacturer of the products at issue, and the plaintiffs in that case did not contend notice to the product manufacturer was unnecessary under California law. *See id.* at 928-929.

basis of the bargain and that Plaintiffs lacked privity with Graco. Neither of these arguments justify dismissal.

Graco claims the California, Georgia, Florida, Massachusetts, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, and Texas Plaintiffs' claims fail because they do not allege facts showing that Graco's misrepresentations were part of the "basis of the bargain" when Plaintiffs purchased their Booster Seats. MTD pp. 26-28. To the contrary, Plaintiffs specifically allege which of Graco's statements they read before purchasing the Booster Seats that formed the basis of their bargain. *See*, *e.g.*, CAC ¶¶ 23-24, 26-27, 29-30, 32-33, 35-36, 44-45, 47-48, 50-51, 53-54, 56-57, 59-60.

Graco also claims that Plaintiffs must allege reliance under California, New York, Oklahoma, Oregon, and Texas law. They have. The California, New York, Oklahoma, Oregon, and Texas Plaintiffs allege that they read and relied on Graco's descriptions that its Booster Seat was "safe" for children as light as 30 pounds and "side impact tested" and that they "decided to buy" Graco's Booster Seats "based in part on" those representations. CAC ¶¶ 23, 26, 50, 62, 65, 68, and 77.

With respect to Florida, Graco claims that Plaintiffs have failed to allege privity. However, the case on which it relies – *Dixon v. Allergan USA, Inc.*, No. CV 14-61091-CIV, 2015 WL 12915671, at *3 (S.D. Fla. May 28, 2015) – acknowledged

that privity exists where there is "a warranty communicated from the manufacturer to plaintiff." *Id.* at *2. The CAC makes clear that these warranties were expressly communicated from Graco to Plaintiff through its marketing materials, product descriptions, and labeling. At bottom, Graco went above and beyond to communicate these warranties. Additionally, Florida courts generally hold that when, as here, the express warranty is created by claims on the product's packaging, privity is not required. *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1342–1343 (S.D. Fla. 2009) (allowing breach of express warranty claim against manufacturer of chewing gum because "it [was] significant that the express warranty . . . [was] contained on the packaging[.]"). Similar to the *Smith* plaintiff, Plaintiff Grabowski has sufficiently pled breach of express warranty under Florida law by pointing to misleading statements on Graco's packaging that she relied upon in making her purchase.

## C. **Plaintiffs have Properly Alleged Breach of Implied Warranty Claims.**

### 1. **Plaintiffs Fall Within Exceptions to the Privity Requirement.**

Graco argues that Plaintiffs' implied warranty claims for Alabama, California, Florida, Georgia, Illinois, New York, North Carolina, and Ohio fail for lack of privity because Plaintiffs did not buy their Booster Seats directly from Graco. With

the exception of Alabama, that is incorrect. Graco fails to address state law allowing exceptions to the privity requirement.

Plaintiffs alleged that as the ultimate consumers of the Booster Seats, they are the intended third-party beneficiaries of Graco's contracts with its retailers. *E.g.* CAC ¶¶ 189, 243, 332. Since Florida, Illinois, New York, North Carolina, and Ohio all recognize a third-party beneficiary exception to the privity rule, Plaintiffs have adequately pled breach of implied warranty in those states. *See, e.g., Elward v. Electrolux Home Prod., Inc.*, 214 F. Supp. 3d 701, 705 (N.D. Ill. 2016); *Pegasus Aviation IV, Inc. v. Aircraft Composite Techs., Inc.*, No. 1:16-CV-21255-UU, 2016 WL 3390122, at *5 (S.D. Fla. June 17, 2016); *In re MyFord Touch Consumer Litig.,* 46 F. Supp. 3d 2014 936, 985 (N.D. Ca. 2014) (applying North Carolina law); *Praxair, Inc. v. Gen. Insulation Co.*, 611 F. Supp. 2d 318, 330 (W.D.N.Y. 2009); *Wotring Towing v. Ford Motor Co.*, No. 2:16-CV-1193, 2017 WL 2378003, at *3 (S.D. Ohio May 31, 2017).

With respect to California, there is a split in authority regarding whether there is a third-party beneficiary privity exception in the consumer warranty context. The better reasoned rule is that such an exception exists. *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 983 (N.D. Cal. 2014) (after analyzing split in

authority, finding third-party beneficiary exception to privity requirement cognizable under California law).

Georgia and Illinois recognize an exception to privity when, as here, the manufacturer has made direct representations to the consumer. *See, e.g., Lee v. Mylan Inc.*, 806 F. Supp. 2d 1320, 1325–26 (M.D. Ga. 2011); *Edward*, 214 F. Supp. 3d at 705.

Lastly, New York recognizes an exception to the privity requirement when the product is a source of danger. *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 540–41 (D. Md. 2011) (holding the privity requirement under New York U.C.C. "is eliminated in situations where the products' defect is dangerous"). This exception applies here because the New York Plaintiff's allegations establish that Graco's Booster Seats are a potential source of danger for children under 40 pounds and in a side-impact collision. *See, e.g.,* CAC ¶ 115.

### 2. Graco's Attempt to Disclaim its Implied Warranties is Ineffective.

Graco next argues that it disclaimed all implied warranties under New Jersey, Oklahoma, and Texas law because it posted its disclaimers on its website. MTD p. 31. Graco fails to explain how this argument – requiring the court to examine materials outside the allegations in the complaint – can be decided on a motion to dismiss. Regardless, under each of these state's laws, any disclaimer of an implied

warranty must be conspicuous. *See* N.J. Stat. Ann. § 12A:2-316; Tex. Bus. & Com. Code Ann. §§ 2.316(b); 12A O.S. § 2–316(1). And none of the Plaintiffs in these states purchased their booster seats from Graco's website.  CAC ¶¶ 47, 62, and 77. Posting a disclaimer on a website the buyer never has to visit to purchase the product does not qualify as conspicuous. *See also Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 829 (Tex. App. 2008) (holding that disclaimer located in clickwrap agreement was inconspicuous and ineffective); *Manhattan Const. Co. v. Degussa Corp.*, No. CIV-06-611-M, 2008 WL 4058017, at *6 (W.D. Okla. Aug. 26, 2008) (question of fact as to whether disclaimer at the back of product data sheet is sufficiently conspicuous). [10]

### 3.      Plaintiffs' Booster Seats are Unfit for Their Particular Purpose.

Graco also claims that Plaintiffs' breach of implied warranty claim fails because Plaintiffs do not allege that the Booster Seats' particular purpose differs from a booster seat's ordinary purpose. MTD p. 33.  *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1021 (N.D. Cal. 2014), cited by Graco, holds only that fitness for a particular purpose cannot be the exact same thing as the general purpose of the

---

[10]  Graco cites to several cases it claims show courts in these states "have routinely found similar disclaimers adequate to disclaim warranties." MTD p. 32. But none of those cases involves an inconspicuous website disclaimer. Rather, they simply hold it is possible to disclaim implied warranties under the laws of those states provided all the criteria are met.

product line as a whole. In making this argument, Graco misses the crux of Plaintiffs' grievance: Plaintiffs purchased the Booster Seats for children under 40 pounds, because according to Graco's representations, Graco's seats aren't *ordinary* booster seats.  Rather, they serve two particular purposes:  (a) unlike ordinary booster seats that cannot safely transport children under 40 pounds, Graco's Booster Seats purportedly can safely transport children who are between 30-40 pounds; and (b) Graco's Booster Seats purportedly exceed federal standards and, based on claimed side-impact testing, will keep children safe in side impact collisions.

Plaintiffs were induced by these two advertised purposes to buy Graco's Booster Seats instead of other car safety seats, when, in fact, Graco knows that its Booster Seats do not actually serve these two particular purposes. *See* U.C.C. § 2-315. (an implied warranty of fitness for particular purposes arises "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required."). Plaintiffs have adequately alleged this implied warranty breach.

### 4.   The Massachusetts Implied Warranty Allegations are Sufficient.

Graco argues that Massachusetts Plaintiff Arnold is barred from seeking recovery for breach of implied warranties because she purportedly "only allege[s] economic loss." MTD p. 34.  Although Graco cites *FMR Corp. v. Bos. Edison Co.*,

415 Mass. 393, 395 (1993), in support of this argument, *FMR Corp.* addressed negligence and not warranty claims. Ample Massachusetts authority holds that a plaintiff can recover purely economic damages for breach of warranty. *See, e.g.*, *Sharp v. Hylas Yachts, Inc.*, No. CV 11-11814-JCB, 2015 WL 13656988, at *7 (D. Mass. Jan. 14, 2015) (economic loss rule does not apply to contract-based warranty claims); *Softub, Inc. v. Mundial, Inc.*, 53 F. Supp. 3d 235, 260 (D. Mass. 2014) (same). Graco's additional claim that the Massachusetts Plaintiff did not allege that she used the booster seats as intended by Graco or in a manner foreseeable to Graco, MTD p. 35, is refuted by the CAC, which alleges that Plaintiff Arnold purchased the seat "for her children" and has "stopped using" it due to safety concerns. That is sufficient at the pleading stage.

### D.    Plaintiffs Have Sufficiently Pled their Magnuson-Moss Claim.

It is well settled that the Magnusson-Moss Warranty Act ("MMWA") "allows consumers to enforce written and implied warranties in federal court, borrowing state law causes of action." *Schimmer v. Jaguar Cars, Inc.*, 384 F.3d 402, 405 (7th Cir. 2004). Graco merely links its argument for dismissal of the MMWA claim to its arguments regarding express and implied warranties.   Since Plaintiffs have sufficiently pled their state law warranty claims, the Court should deny Graco's motion to dismiss the MMWA claim.

III. **PLAINTIFFS HAVE PROPERLY PLED CLAIMS UNDER STATE CONSUMER PROTECTION ACTS**

   A. **No Regulatory Exemption Applies.**

Consistent with Graco's overarching theme that it cannot be sued – even for false and misleading advertising – because it has not violated any NHTSA regulations, Graco argues that Plaintiffs' claims under the consumer protection acts of Florida, Illinois, Massachusetts, Oklahoma, and Texas are barred by NHTSA's regulation of Graco. Because the exemptions upon which Graco relies present affirmative defenses,  Graco bears the "heavy" burden of proving that a particular practice is "affirmatively" permitted, especially in the context of a motion to dismiss. *Aspinall v. Philip Morris, Inc.*, 902 N.E.2d 421, 424 (2009).

   1. **Graco cannot show that NHTSA has specifically authorized its actions.**

The fact that a business is subject to a regulatory regime does not remove the business from the scope of state consumer protection acts. Instead, the affirmative defense Graco invokes applies only when the conduct at issue is required, affirmatively permitted, or specifically approved.  *See* Fla. Stat. Ann. § 501.212(1) (FUDTPA provides exemption for acts "required or specifically permitted" by federal or state law); 815 Ill. Comp. Stat. Ann. 505/10b(1) (Illinois exemption applies to "[a]ctions or transactions specifically authorized by" state or federal law);

Mass. St. 93A § 3 (Massachusetts exemption applies to "transactions or actions otherwise permitted under" state or federal laws).  Even with the broader Oklahoma exemption, the mere fact of regulation does not activate the exemption.  Rather, "[t]o determine whether the exemption applies, the Court must compare the purposes of the [Oklahoma Consumer Protection Act] and the allegedly conflicting regulatory scheme."  *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1229 (D. Kan. 2008)

Because Graco cannot (and does not) show that the conduct alleged in the complaint is "required," "specifically permitted," or "specifically authorized" by NHTSA, the statutory exemptions do not apply.  Notably, no analysis is needed for Texas since the Texas Deceptive Trade Practices Act ("TDTPA") exemption is limited to "practices authorized under specific rules or regulations promulgated by the Federal Trade Commission." Tex. Bus. & Com. Code § 17.49. As Graco's defense is not based on a regulation by the FTC, the TDTPA exemption does not apply.

### 2.   <u>NHTSA regulations do not permit or authorize Graco's false advertising</u>.

In arguing its entitlement to the regulatory exemption, Graco conveniently ignores the fact that FMVSS213 S5.5, 49 C.F.R. § 571.213 S5.5, which is enforced

by NHTSA, specifically mandates that any "labels or written instructions provided in addition to those required by this section shall not obscure or confuse the meaning of the required information or *be otherwise misleading to the consumer*." (Emphasis added).  In short, NHTSA expressly forbids Graco from making false or misleading representations to consumers about its booster seats.

With respect to Graco's marketing and labelling of its Booster Seats as "side-impact tested" using tests "equaling and exceeding government requirements,"[11] it is undisputed that NHTSA has not adopted any regulations governing side-impact testing of booster seats. Because of the absence of regulations, Graco's assurance to consumers that its side-impact testing equals and exceeds government requirements is false and misleading.  Significantly, Graco revised its website to acknowledge that "no side impact testing is currently required under the FMVSS 213" only *after* ProPublica published an exposé regarding the dangers and misrepresentations of booster seats. CAC ¶ 140.

Further, consumers seeing Graco's "side-impact tested" labelling would reasonably assume that the representation meant that the Booster Seat had undergone substantial testing designed to confirm that the Booster Seats would be safe in a side-

---

[11] "Car Seat Safety Standards & Testing," https://www.gracobaby.com/en-US/safety (last visited Nov. 1, 2020).

impact collision. As alleged in the CAC, however, independent testing has demonstrated that Graco's Booster Seats are not safe in the event of a side impact crash. CAC ¶¶ 10-11, 143-44. As alleged in the CAC, the House Report reached a blunt conclusion: "Although . . . Graco . . . advertised their booster seats as 'Side-impact tested,' they were not."  CAC ¶ 152.

In short, far from NHTSA permitting or authorizing Graco's false and misleading statements about its Booster Seats being "side-impact tested," those statements violated FMVSS213 S5.5.  The fact that NHTSA has taken no action is immaterial. As the Massachusetts Supreme Judicial Court emphasized in *Aspinall*, inaction by the administrative agency does not establish that the agency "has affirmatively permitted" the conduct. 902 N.E.2d at 425.

With respect to Graco's promise that its Booster Seats were safe for children weighing between 30 and 40 pounds, Graco contends that these statements are specifically authorized by NHTSA.  FMVSS 213 S5.5 governs "Labelling" and in addition to prohibiting misleading labelling, subsection S5.5.2(f) requires manufacturers to include on their packaging a label that specifies "the manufacturers recommendations" for the maximum and minimum height and weight of children who can safely occupy the system.  The regulation leaves the weight determinations up to the manufacturer with one exception: the regulation provides "that booster

seats shall not be recommended for children whose masses are less than 13.6 kg [30 lbs.]." *Id.* S5.5.2(f). In other words, it is the responsibility of the manufacturer to determine the safe minimum weight for its booster seats, but that minimum weight cannot be less than 30 lbs.

The regulation prohibits booster seat manufacturers from marketing booster seats for children under 30 pounds, but nowhere does FMVSS 213 provide a specific endorsement of Graco's claim that booster seats are safe for children between 30 and 40 pounds. The prohibition of certain conduct does not equate with specific authorization of other related conduct. *See, e.g., Aspinall,* 902 N.E.2d 421 at 426 (holding, for purposes of the statutory exemption, that when FTC entered into consent decree enjoining certain labelling that fact did not meet defendants' burden of showing that FTC had given them affirmative permission to include other words on label).

In short, NHTSA's prohibition against marketing booster seats to children weighing less than 30 lbs. cannot be construed as specific authorization for Graco to market its Booster Seats as safe for children weighing between 30 and 40 lbs., especially given NHTSA's repeated acknowledgment dating back to 1992 that booster seats *are not* safe for children weighing under 40 pounds. Graco has not met

its burden of showing that the statutory exemptions in the consumer protection acts of Florida, Illinois, Massachusetts, Oklahoma, and Texas apply.

**B.**     <u>**No Basis Exists for Dismissing Plaintiffs'State Consumer Protection Act Claims.**</u>

For those states that do not have a regulatory exemption that applies to the state consumer protection statutes, Graco has presented a hodge-podge of arguments urging this Court to dismiss all of the claims.  None of these arguments justify dismissal of Plaintiffs' claims.

- <u>California Consumer Protection Statutes</u>

Graco claims that the Court should dismiss Plaintiffs' claims under the California consumer protection statutes claims on the grounds that its statements about its Booster Seats are true.  MTD p. 36. Even if that were the case, California law provides the fact that a statement is literally true does not foreclose liability under the California consumer protection statutes. *See Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." (citation omitted))). At a minimum, Graco's statements about the minimum safe weight and

side-impact testing are misleading given scientific recommendations of a 40-pound limit and the likelihood that most reasonable consumers would believe that "side-impact tested" means that the seat would be safer in a side-impact collision.[12]

- Georgia Fair Business Practices Act

Contrary to Graco's argument, Plaintiffs complied with the *ante litem* requirement of the Georgia Fair Business Practices Act ("GFBPA") to provide "a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered" by sending the pre-suit letter to Graco on November 5, 2020, more than 30 days prior to filing of the CAC. O.C.G.A. §10-1-399(b).  CAC ¶ 382.  A copy of this complaint was also mailed to the Attorney General of the State of Georgia in accordance with O.C.G.A. §10-1-399." CAC ¶ 382.

Contrary to Graco's additional argument, Plaintiffs have sufficiently alleged that they justifiably relied on Graco's representations. *See also* CAC ¶¶ 373-78.

- Illinois Consumer Protection Statutes

---

[12] Graco does not challenge Plaintiffs' allegations that Graco's failure to disclose the dangers and risk posed by the Booster Seats violated the CLRA, UCL, and FAL. ¶ 305. A plaintiff can state an omissions-based claim under these statutes if they plausibly plead that a defendant knew or should have known about the defect. *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 U.S. Dist. LEXIS 89379, at *18-19 (N.D. Cal. August 10, 2011). Plaintiffs have thoroughly detailed the extent of Graco's pre-sale knowledge of the dangers posed by the Booster Seats sufficient to state an omission-based claim under California's consumer protection statutes. *See* ¶¶ 11, 12, 114, 122.

A statement under the ICFA is actionable if it is false or "is likely to mislead a reasonable consumer, even if the statement is literally true." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 762 (7th Cir. 2014). Just as with the California statutes, the CAC amply demonstrates that Graco's statements either were false or likely to mislead a reasonable consumer.

With respect to Plaintiffs' IDTPA claim, Graco argues that it should be dismissed because Plaintiffs cannot show that they are entitled to injunctive relief. MTD pp. 38-39. This argument is premature. *See Laurens v. Volvo Cars of North America, LLC*, No. 16-3829, 868 F.3d 622, 2017 U.S. App. LEXIS 15940, at *2 (7th Cir. Aug. 22, 2017) (declining to dismiss claims for injunctive relief at this early stage due, in part, to the concern that such a ruling would preclude injunctive relief in consumer class actions because "at some point each class member will discover that the [product] falls short of what was promised").

- New Jersey Consumer Fraud Act

Plaintiffs have alleged all three elements required for a claim under the New Jersey Consumer Fraud Act ("NJCFA"): (1) unlawful conduct; (2) ascertainable loss; (3) a causal connection between the unlawful conduct and the loss. *Southeast Laborers Health and Welfare Fund v. Bayer Corp.*, 655 F. Supp. 2d 1270, 1285 (S.D. Fla. July 30, 2009). While Graco claims that the NJCFA requires that a plaintiff

have a "special relationship" with the defendant, citing *Greene v. BMW of N. Am.*, No. CIV 2:11-04220 WJM, 2013 WL 5287314, *5 (D.N.J. Sept. 17, 2013), that case applies only to claims based solely on omissions – this case is not so limited.

- New York Unfair Deceptive Trade Practices Act

Remarkably, Graco argues that the CAC does not allege that the New York Plaintiff was actually exposed to deceptive statements even though the CAC states explicitly that Ms. Tehomilic "decided to buy the Booster Seat based in part on Graco's representations that it was "SIDE IMPACT TESTED" and that this representation was "among the primary reasons Plaintiff Tehomilic´ chose the Booster Seats." CAC ¶ 50; *see also* ¶¶ 51, 116-19; *Goldemberg v. Johnson & Johnson Consumer Cos.*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014) (causation adequately pled when complaint described misleading statements and alleged that statements deceieved and misled plaintiff).

- North Carolina Consumer Protection Act

With respect to Plaintiffs' claim under the North Carolina Unfair and Deceptive Trade Practices Act, Graco argues that "[t]his count fails because the challenged representations are not the type of 'egregious or aggravating circumstances' required to trigger a claim under the Act." MTD pp. 40-41 (citing *Maxwell v. Remington Arms Co.*, 2014 WL 5808795, at *5 (M.D.N.C. Nov. 7,

2014)).   It is well established that egregious or aggravating circumstances are required *only* when a breach of contract claim is giving rise to the NCUDTPA claim. *See Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012); *see also Maxwell*, 2014 WL 5808795, at *5 (discussing allegations required to move beyond a mere allegation of a breach of contract or breach of warranty). Plaintiffs were, therefore, not required to plead egregious or aggravated circumstances – although, certainly, a jury could conclude that lying about safety issues related to children's booster seats amounts to egregious and aggravated circumstances.

- Ohio Deceptive Trade Practices Act and Ohio Consumer Sales Practices Act

The Ohio DTPA provides that a "person . . . may commence a civil action to recover actual damages from the person who commits the deceptive trade practice." Ohio Rev. Code Ann. § 4165.03(A)(2). Graco asserts that the ODTPA cannot be privately enforced by individual consumers. Faced with a split in authorities, another federal judge applying Ohio law reasoned that "[i]n the absence of clear guidance from the Ohio Supreme Court and in light of the conflicting case law on the issue and the plain statutory language, this Court will decline to dismiss [plaintiff's] ODTPA claim on the basis of standing at this time." *Nelson v. Nissan N. Am., Inc.*, 894 F.Supp.2d 558, 571-572 (D.N.J. 2012).

With respect to Plaintiffs' Ohio Consumer Sales Practices Act ("OCSPA") claim, Graco argues that Plaintiffs failed to provide notice (citing Ohio Rev. Code Ann. 1345.09(B)). Graco had ample notice that its conduct was deceptive or unconscionable under Ohio Admin. Code 109:4-3-03(B)(1), which addresses offers to sell goods with misleading representations regarding the quality or value of the goods.

- Oregon Unlawful Trade Practices Act

Graco mistakenly argues that Plaintiffs must plead a specifically-enumerated violation of the Oregon Unfair Trade Practices Act ("OUTPA") under ORS § 646.608.  MTD p. 42.  ORS § 646.608 provides *additional* bases for violations of the OUTPA.  Plaintiffs have met the requirements of ORS § 646.607(1) by alleging that Graco, in the course of its business, employed unconscionable tactics (false statements about the safety of children's booster seats) in connection with the sale of goods. *See Daniel N. Gordon, PC v. Rosenblum*, 276 Ore. App. 797, 806 (Or. Ct. App. 2016).

- Pennsylvania Unfair Trade Practices and Consumer Protection Act

As with other states, Graco again argues that the CAC fails to allege that the Pennsylvania Plaintiffs relied on any misrepresentations by Graco.  MTD p. 43. Both Pennsylvania Plaintiffs specifically alleged that they "decided to buy the

Booster Seat based in part on representations that it was 'safe' for children as light at 30 pounds and as young as three-years-old, and it was 'SIDE IMPACT TESTED'." CAC ¶¶ 71, 74. Graco cites no authority that requires Plaintiffs to allege anything more.

- West Virginia Consumer Credit and Protection Act

Graco seeks dismissal of the WVCCPA claim solely on the grounds that the CAC did not adequately allege that the West Virginia Plaintiff provided sufficient written notice. The CAC, however, specifically alleges that "[o]n November 5, 2020, Plaintiffs sent Graco pre-suit notice of their claims under the West Virginia Consumer Credit and Protection Act, W. Va. Code § 46A-6-101, et seq. Graco did not respond with a reasonable offer of relief to the West Virginia Plaintiff." CAC ¶ 772.

## CONCLUSION

For all the foregoing reasons, Graco's Motion to Dismiss should be denied. In the event that the Court believes that any of Plaintiffs' claims are inadequately pled, Plaintiffs respectfully seeks leave to amend the CAC.

Dated: March 12, 2021                    Respectfully submitted,

                                         s/ Martha A. Geer

                                         **WHITFIELD BRYSON LLP**
                                         Martha A. Geer (admitted pro hac vice)
                                         Patrick Wallace (admitted pro hac vice)
                                         Harper Segui
                                         900 W. Morgan Street
                                         Raleigh, NC 27603
                                         T: 919-600-5000
                                         F: 919-600-5035
                                         dan@whitfieldbryson.com
                                         martha@whitfieldbryson.com
                                         pat@whitfieldbryson.com
                                         harper@whitfieldbryson.com


                                         s/  Melissa R. Emert

                                         **KANTROWITZ, GOLDHAMER &
                                         GRAIFMAN, P.C.**
                                         Melissa R. Emert (admitted pro hac vice)
                                         Gary S. Graifman (admitted pro hac vice)
                                         747 Chestnut Ridge Road
                                         Chestnut Ridge, New York 10977
                                         Telephone: (845) 356-2570
                                         Facsimile: (845) 356-4335
                                         memert@kgglaw.com
                                         ggraifman@kgglaw.com

                                         *Interim Class Counsel*

**EVANGELISTA WORLEY, LLC**
David J. Worley
Georgia Bar No. 776665
James M. Evangelista
Georgia Bar No. 707807
500 Sugar Mill Road
Suite 245A
Atlanta, GA 30350
Telephone: (404) 205-8400
david@ewlawllc.com jim@ewlawllc.com

**CASEY GERRY SCHENK
FRANCAVILLA BLATT &
PENFIELD, LLP**
Gayle M. Blatt (admitted pro hac vice)
P. Camille Guerra (admitted pro hac vice)
James M. Davis (PHV application
forthcoming)
110 Laurel Street
San Diego, CA 92101
Telephone: (619) 238-1811
Facsimile: (619) 544-9232
gmb@cglaw.com
camille@cglaw.com
jdavis@cglaw.com

**MASON LIETZ & KLINGER LLP**
Gary E. Mason (pro hac vice)
5101 Wisconsin Avenue NW
Suite 305
Washington, D.C. 20016
Tel: (202) 429-2290
Fax: (202) 42902294
gmason@masonllp.com

**GREG COLEMAN LAW PC**
Rachel L. Soffin
Gregory F. Coleman
Jonathan B. Cohen
800 S. Gay Street, Suite 1100
Knoxville, TN 37929
Telephone: (865) 247-0080
Facsimile: (865) 522-0049
rachel@gregcolemanlaw.com
greg@gregcolemanlaw.com
jonathan@gregcolemanlaw.com

**ROBINS KAPLAN LLP**
Aaron M. Sheanin (pro hac vice)
46 Shattuck Square
Suite 22
Berkeley, CA 94704
Telephone: (650) 784-4040
Facsimile: (650) 784-4041
asheanin@robinskaplan.com

**ROBINS KAPLAN LLP**
Stacey P. Slaughter (pro hac vice)
Michael Pacelli (pro hac vice)
Austin Hurt (pro hac vice)
800 LaSalle Ave.
Suite 2800
Minneapolis, MN 55402
Telephone: (612) 349-8500
Facsimile: (612) 339-4181
sslaughter@robinskaplan.com
mpacelli@robinskaplan.com
ahurt@robinskaplan.com

**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**

Mark P. Chalos (PHV application
forthcoming)
222 2nd Avenue South
Suite 1640
Nashville, TN 37201
Telephone: (615) 313-9000
Facsimile: (615) 313-9965
mchalos@lchb.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP**
Matthew M Guiney (pro hac vice
application forthcoming)
270 Madison Ave.
New York, NY 10016
Telephone: (212) 545-4600
guiney@whafh.com

**WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLC**
Carl V. Malmstrom (admitted pro hac
vice)
111 W. Jackson Blvd.
Suite 1700
Chicago, IL 60604
Telephone: (312) 984-0000
malmstrom@whafh.com

**SHUB LAW FIRM LLC**
Jonathan Shub (pro hac vice application
forthcoming)
134 Kings Highway E,
2nd Floor,
Haddonfield, NJ 08033
Telephone: (856) 772-7200
jshub@shublawyers.com

*Plaintiffs' Counsel*

-54-

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this document was prepared in compliance with Northern

District of Georgia Local Rule 5.1C using Times New Roman 14-point font.

Dated: March 12, 2021                              */s/ David J. Worley*
                                                   David J. Worley
                                                   Ga. Bar No. 776665

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 12, 2021, a true and correct copy of the foregoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.

Dated:  March 12, 2021.                    */s/ David J. Worley*
                                           David J. Worley