**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**GAINESVILLE DIVISION**

---

KELLIE CARDER et al., on behalf of
themselves and all others similarly
situated,

     Plaintiffs,

vs.

GRACO CHILDREN'S PRODUCTS,
INC.,

     Defendant.

---

Case No.: 2:20-cv-00137-LMM

**REPLY IN SUPPORT OF**
**GRACO CHILDREN'S PRODUCTS, INC.'S MOTION TO DISMISS**
**PLAINTIFFS' COMPLAINT UNDER FED. R. CIV. P. 12(b)(1) AND 12(b)(6)**

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................... 1

Argument ........................................................................................................ 5

I.    Plaintiffs Lack Standing Because They Have Not Suffered Injury in Fact. .......................................................................................................... 5

    A.    Plaintiffs Have Not Suffered a Concrete and Particularized Economic Injury that Confers Standing to Pursue Damages. ........... 5

    B.    Plaintiffs Have Not Pleaded a Future Injury that Could Confer Standing to Seek Injunctive Relief. ......................................... 9

II.    Plaintiffs Fail to State a Claim Under Rule 12(b)(6) ................................... 10

    A.    Plaintiffs Fail to Plead the Fraud-Based Claims with Particularity. ........................................................................... 11

    B.    Plaintiffs' Nationwide Claims (Counts I-V) Should Be Dismissed. ................................................................................ 11

    C.    Plaintiffs Fail to State Actionable Breach of Warranty Claims. ........ 13

        1.    Plaintiffs Fail to Allege When They Discovered the Breach. ............................................................................. 13

        2.    Plaintiffs' Omnibus Notice Is Deficient ................................. 13

        3.    Plaintiffs' Remaining Warranty Claims Also Fail. ................. 14

        4.    Express Warranty:  Basis of the Bargain and Reliance .......... 16

        5.    Implied Warranty ................................................................. 16

            a.    No Exception to the Requirement of Privity Applies. ............................................................ 16

            b.    Implied Warranties Were Disclaimed. ........................... 17

            c.    Plaintiffs Fail To Allege Any Particular Purpose. ........ 18

            d.    The Massachusetts Implied Warranty Claim Fails. ..... 19

        6.    Plaintiffs' Magnuson-Moss Claim Also Fails. .......................... 19

    D.    Plaintiffs' State Statutory Law Claims Should Be Dismissed. .......... 20

        1.    California Consumer Protection Statutes ................................. 20

## TABLE OF CONTENTS
(continued)

**Page**

| | | |
|---|---|---|
| 2. | Georgia Fair Business Practices Act and West Virginia Consumer Credit and Protection Act | 21 |
| 3. | Illinois Deceptive Trade Practices Act | 21 |
| 4. | New Jersey Consumer Fraud Act | 21 |
| 5. | New York General Business Law § 349 and Pennsylvania Unfair Trade Practices & Consumer Protection Act | 22 |
| 6. | North Carolina Unfair & Deceptive Trade Practices Act | 22 |
| 7. | Ohio Deceptive Trade Practices Act and Ohio Consumer Sales Practices Act | 23 |
| 8. | Oregon Unlawful Trade Practice Act | 23 |
| 9. | Oklahoma, Florida, Illinois, Massachusetts, and Texas Consumer Protection Acts | 24 |

Conclusion ...... 25

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aspinall v. Philip Morris, Inc.,*
902 N.E.2d 421 (Mass. 2009) ........................................................................ 24

*Baker v. Firestone Tire & Rubber Co.,*
793 F.2d 1196 (11th Cir. 1986) ...................................................................... 4

*Borden v. Antonelli Coll.,*
304 F. Supp. 3d 669 (S.D. Ohio 2018) ........................................................ 23

*Brown v. Electrolux Home Prods., Inc.,*
817 F.3d 1225 (11th Cir. 2016) .................................................................... 19

*Carriuolo v. Gen. Motors Co.,*
823 F.3d 977 (11th Cir. 2016) ........................................................................ 8

*Colgate v. JUUL Labs, Inc.,*
402 F. Supp. 3d 728 (N.D. Cal. 2019) ......................................................... 18

*Cruickshank v. Clean Seas Co.,*
346 B.R. 571 (D. Mass. 2006) ...................................................................... 19

*Cummings v. FCA US LLC,*
401 F. Supp. 3d 288 (N.D.N.Y. 2019) .......................................................... 17

*Debernardis v. IQ Formulations, LLC*
942 F.3d 1076 (11th Cir. 2019) ................................................................ 7, 8

*Dinwiddie v. Suzuki Motor of Am., Inc.,*
111 F. Supp. 3d 1202 (W.D. Okla. 2015) ..................................................... 24

*Dixon v. Ford Motor Co.,*
2015 WL 6437612 (E.D.N.Y. Sept. 30, 2015) .............................................. 17

*Duke v. Flying J, Inc.,*
178 F. Supp. 3d 918 (N.D. Cal. 2016) ......................................................... 25

*Forsher v. J.M. Smucker Co.,* No. 5:19-CV-00194,
2020 WL 1531160 (N.D. Ohio Mar. 31, 2020) ............................................. 15

*Fox v. Ritz-Carlton Hotel Company, LLC*
977 F.3d 1039 (11th Cir. 2020) ...................................................................... 8

*Franz v. Beiersdorf, Inc.,*
745 F. App'x 47 (9th Cir. 2018) ..................................................................... 7

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Frenzel v. AliphCom,*
  76 F. Supp. 3d 999 (N.D. Cal. 2014) ................................................................. 18, 20

*Fuchs v. Menard, Inc.,*
  2017 WL 4339821 (N.D. Ill. Sept. 29, 2017) ................................................. 24

*George v. Amgen, Inc.,* No. 18 C 6421,
  2019 WL 10893813 (N.D. Ill. June 6, 2019) ................................................. 18

*Gosha v. Bank of New York Mellon Corp.,* No. 3:16-CV-00073,
  2016 WL 7238927 (D. Or. Dec. 13, 2016),
  *aff'd,* 707 F. App'x 484 (9th Cir. 2017) ....................................................... 23

*Greene v. BMW of N. Am.,* No. CIV 2:11-04220 WJM,
  2013 WL 5287314 (D.N.J. Sept. 17, 2013) ................................................... 21

*Hilsley v. Gen. Mills, Inc.,*
  376 F. Supp. 3d 1043 (S.D. Cal. 2019) ......................................................... 19

*Houston v. Marod Supermarkets, Inc.,*
  733 F.3d 1323 (11th Cir. 2013) ......................................................................... 9

*Iannacchino v. Ford Motor Co.,*
  888 N.E.2d 879 (Mass. 2008) ........................................................................... 24

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.,*
  393 F. Supp. 3d 745 (N.D. Ill. 2019) ............................................................. 15

*In re 5-Hour ENERGY Mktg. & Sales Practices Litig.,* No. MDL-132438,
  2015 WL 12734796 (C.D. Cal. Jan. 22, 2015) ............................................. 15

*In re Aqua Dots Prods. Liab. Litig.,*
  654 F.3d 748 (7th  Cir. 2011) ............................................................................. 7

*In re Motor Fuel Temperature Sales Practices Litig.,*
  534 F. Supp. 2d 1214 (D. Kan. 2008) ........................................................... 24

*In re Porsche Cars N. Am., Inc.,*
  880 F. Supp. 2d 801 (S.D. Ohio 2012) ......................................................... 23

*In re Seagate Tech. LLC Litig.,*
  233 F. Supp. 3d 776 (N.D. Cal. 2017) ........................................................... 17

*In re Shop-Vac Mktg. & Sales Practices Litig.,* No. 4:12-MD-2380,
  2014 WL 3557189 (M.D. Pa. July 17, 2014) ............................................... 14

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*In re Tri-State Crematory Litig.*,
215 F.R.D. 660 (N.D. Ga. 2003) ........................................................12

*In re: Elk Cross Timbers Decking Mktg.*, No. 2577,
2015 WL 6467730 (D.N.J. Oct. 26, 2015) ...................................16

*Jones v. Apple, Inc.*, No. 15-CV-249-NJR-SCW,
2017 WL 11495257 (S.D. Ill. May 5, 2017) ................................15

*Kelly v. Georgia-Pacific LLC*,
*671 F. Supp. 2d 785 (E.D.N.C .2009)* .........................................22

*Laurens v. Volvo Cars of N. Am., LLC*,
868 F.3d 622 (7th Cir. 2017)........................................................21

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......................................................................6

*Mandani v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287,
2019 WL 652867 (N.D. Cal. Feb. 15, 2019) ................................17

*Manley v. Hain Celestial Grp., Inc.*,
417 F. Supp. 3d 1114 (N.D. Ill. 2019) ........................................17

*Marty v. Anheuser-Busch Companies, LLC*,
43 F. Supp. 3d 1333 (S.D. Fla. 2014) .........................................10

*Maxwell v. Remington Arms Co.*,
2014 WL 5808795 (M.D.N.C. Nov. 7, 2014) ..............................22

*McCune v. Graco Children's Prods., Inc.*,
495 Fed. App'x 535 (5th Cir. 2012).............................................3

*Metal Morphosis, Inc. v. Acorn Media Publ'g, Inc.*,
639 F. Supp. 2d 1367 (N.D. Ga. 2009) .......................................17

*Muransky v. Godiva Chocolatier, Inc.*,
979 F.3d 917 (11th Cir. 2020).......................................................6

*Nathan v. Whirlpool Corp.*, No. 3:19-CV-226,
2020 WL 5877574 (S.D. Ohio Oct. 2, 2020)................................13

*Oden v. Bos. Sci. Corp.*,
330 F. Supp. 3d 877 (E.D.N.Y. 2018),
*adhered to on reconsideration*, No. 18-CV-0334,
2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019) .............................22

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Patel v. Zillow, Inc.,*
2018 WL 2096453 (N.D. Ill. May 7, 2018) ....................................................21

*Paws Holdings, LLC v. Daikin Applied Americas Inc.*, No. CV 116-058,
2018 WL 475013 (S.D. Ga. Jan. 18, 2018) ....................................................21

*Pearce v. E.F. Hutton Group, Inc.,*
653 F. Supp. 810 (D.D.C. 1987) .....................................................................4

*Phillips Petroleum Co. v. Shutts,*
472 U.S. 797 (1985) .......................................................................................12

*Phillips v. Hobby Long Stores, Inc.*, No. 2:16-cv-00837-JEO,
2019 WL 8348613 (N.D. Ala. Dec. 16, 2019) ................................................9

*Quashi v. Olympus Amer., Inc.,*
315 F. Supp. 3d 1329 (N.D. Ga. 2018) ........................................................11

*Savalli v. Gerber Prods. Co.,*
2016 WL 5390223 (S.D. Fla. Sept. 20, 2016) ..............................................24

*Schmitt v. Younique LLC*, No. SA-CV-171397,
2017 WL 10574060 (C.D. Cal. Dec. 4, 2017) ..............................................14

*Sebastian v. Kimberly-Clark Corp.*, No. 17-CV-442,
2017 WL 6497675 (S.D. Cal. Dec. 18, 2017) ..............................................15

*Seldon v. Home Loan Servs., Inc.,*
647 F. Supp. 2d 451 (E.D. Pa. 2009) ...........................................................22

*Sharp v. Hylas Yachts, Inc.*, No. CV 11-11814,
2015 WL 13656988 (D. Mass. Jan. 14, 2015) ..............................................19

*Sloan v. Gen. Motors LLC,*
287 F. Supp. 3d 840 (N.D. Cal. 2018),
*clarified on reconsideration*,
438 F. Supp. 3d 1017 (N.D. Cal. 2020) ........................................................14

*Steel Co. v. Citizens for Better Env't,*
523 U.S. 83 (1998) ...........................................................................................8

*Stewart v. Electrolux Home Prod., Inc.,*
304 F. Supp. 3d 894 (E.D. Cal. 2018) ..........................................................17

*Traxler v. PPG Indus., Inc.,*
158 F. Supp. 3d 607 (N.D. Ohio 2016) ........................................................17

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Tsao v. Captiva MVP Restaurant Partners, LLC,*
   986 F.3d 1332 (11th Cir. 2021) ................................................................ 6

*Uzuegbunam v. Preczewski,*
   --- U.S. ---, 141 S. Ct. 792 (2021) .......................................................... 8

*Varner v. Domestic Corp.,* No. 16-22482-CIV,
   2017 WL 3730618 (S.D. Fla. Feb. 7, 2017) ......................................... 17

*Waters v. Electrolux Home Prods.,* Inc.,
   154 F. Supp. 3d 340 (N.D. W.Va. 2015) ............................................... 21

*Williams v. CSC Credit Servs., Inc.,* No. 07-CV-0255,
   2007 WL 1959219 (N.D. Okla. June 29, 2007) .................................... 24

*Williams v. Gerber Prods. Co.,*
   552 F.3d 934 (9th Cir. 2008) ................................................................. 20

*Wooden v. Bd. of Regents of Univ. Sys. of Ga.,*
   247 F.3d 1262 (11th Cir. 2001) ............................................................... 9

## Statutes

49 C.F.R. § 571.213 ..................................................................... 2, 25

815 Ill. Comp. Stat. Ann. § 505/10b(1) ............................................ 24

Fla. Stat. Ann. § 501.212(1) .............................................................. 24

Mass. St. 93A § 3 ................................................................................ 24

O.R.S. § 646.607 ................................................................................ 23

O.R.S. § 646.608(1) ........................................................................... 23

## Other Authorities

California False Advertising Law
   (Cal. Bus. & Prof. Code § 17500) ........................................................ 20

Consumer Legal Remedies Act
   (Cal Civ. Code § 1750) .......................................................................... 20

Tex. Bus. & Com. Code § 17.49 ......................................................... 25

Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) .............. 20

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

<u>**Rules**</u>

Fed. R. Civ. P. 12(b)(1) ............................................................................................. 5

Fed. R. Civ. P. 12(b)(6) ........................................................................................... 10

Fed. R. Civ. P. 9(b) .................................................................................................. 11

**Introduction**

Plaintiffs' Response to Graco's Motion to Dismiss concedes that not one of Plaintiffs' children has ever suffered any injury while using one of Graco's booster seats.  Having conceded no actual injury, Plaintiffs instead protest that they "have paid Graco handsomely for safety features and safety testing that was a fraud."  (Pls.' Resp. to Mot. to Dismiss, Doc. 70 ("Pls.' Resp."), at 2.)  Yet nowhere in either the Consolidated Amended Complaint (Doc. 60, (the "CAC")) or Plaintiffs' Response has any Plaintiff even alleged what "handsome" amount he or she paid for a booster seat.  Plaintiffs argue that "they sustained economic injury because they would not have purchased the booster seats, or would have paid less" (Pls.' Resp. at 11), but no Plaintiff points to an alternative product he or she purchased, or would have purchased, at a lower price.  The CAC contains no such allegations.  No facts alleged support such economic "injury."

Indeed, Plaintiffs' Response confirms that their entire theory rests on a false foundation.  Plaintiffs first claim is that Graco's booster seats are not safe for children between 30 and 40 pounds solely because one professional association's (the AAP's) guidelines "recommend" keeping a child in a harnessed seat "as long as possible" and transitioning to a booster seat when the child outgrows the harnessed seat based not just on height, but also age and height.  But the Federal

Motor Vehicle Safety Standard promulgated by the agency charged with regulating car seats, the National Highway Traffic Safety Administration ("NHTSA"), permits children who weigh 30 pounds to use booster seats. 49 C.F.R. § 571.213 ("FMVSS 213"). Graco manufactures and sells both harnessed and booster seats, all of which comply with FMVSS 213, and parents choose when to transition from a harnessed seat to a booster seat based on their own assessment of factors unique to their children, such as the child's age, height, weight, behavior, and maturity, as well as NHTSA's federal safety standard and their particular state's laws, among other factors. Plaintiffs recognize that booster seats fill a need "for young children who were outgrowing child harness car seats but were still too small to properly use a seat belt." (Pls.' Resp. at 5.) Presumably Plaintiffs purchased Graco's booster seats because they believed their children had outgrown a harnessed seat but still needed a booster seat "to raise [them] up to the proper height for the seatbelt." (CAC ¶ 2.) But while the CAC alleges various approximations of weights or weight ranges of Plaintiffs' children "at the time of purchase," it contains no allegations of any child's age, weight, height, or maturity when actually using the booster seat.

Plaintiffs second claim is that Graco's side-impact testing of its booster seats is "meaningless" (Pls.' Resp. at 11); yet, Plaintiffs concede both that "the

2

federal government has no standards for side-impact testing of booster seats" (*id.* at 7) and that, therefore, Graco must, and does, conduct its own testing. Plaintiffs cite to allegations that "one expert" disapproved of Graco's side-impact testing (*id.* at 8-9 (citing CAC ¶¶ 142-45)), but Plaintiffs again neglect to disclose that this refers to an expert witness retained by a different plaintiff in a different lawsuit, involving a *frontal impact collision* in which a child was actually injured, where the jury *rejected* the expert's testimony, found in favor of Graco, and determined that its booster seat did *not* cause the very real injuries in *that* case. *See McCune v. Graco Children's Prods., Inc.*, 495 Fed. App'x 535 (5th Cir. 2012).

Plaintiffs rely heavily on a "staff report" requested by two members of a House subcommittee.  This report, which discusses all booster seat makers, was written by staff for members of one political party without having conducted any hearing and without reflecting views from the other party or the subcommittee as a whole.  It was neither approved by the House Committee on Oversight and Reform nor published in the Congressional Record.  Plaintiffs' Response, nonetheless, represents to the Court that this is a "House Report" containing a "damning critique" of Graco and making various "findings" in December 2020 (Pls.' Resp. at 2, 9-10), which, coincidentally, reflect allegations from Plaintiffs' original complaint in this case and the complaint in another case brought by

many of the same attorneys against a different manufacturer (Evenflo) earlier in the year.  Besides being factually inaccurate and unsupported—as well as entirely beyond the pleadings—the Eleventh Circuit has found that these types of reports lack trustworthiness and are "properly omitted from evidence" because they consist of "heated conclusions" and are "politically motivated." *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986). Consistent with the Eleventh Circuit's reasoning, another court observed:

> Given the obviously political nature of Congress, it is questionable whether any report by a committee or subcommittee of that body could be admitted . . . against a private party.  There would appear to be too great a danger that political considerations might affect the findings of such a report.

*Pearce v. E.F. Hutton Group, Inc.*, 653 F. Supp. 810, 814 (D.D.C. 1987).

Plaintiffs' reliance on an inadmissible staff report—the type of politically-motivated report that is deemed inherently untrustworthy—in response to a motion to dismiss their complaint, only serves to highlight that the CAC itself is fundamentally flawed and entirely inadequate.  As shown below and in Graco's opening brief, the CAC fails to establish Plaintiffs' standing or to state a claim to relief that is plausible on its face.  Accordingly, this case should be dismissed.

<u>**Argument**</u>

**I.    Plaintiffs Lack Standing Because They Have Not Suffered Injury in Fact.**

**A.    Plaintiffs Have Not Suffered a Concrete and Particularized
Economic Injury that Confers Standing to Pursue Damages.**

Plaintiffs' Response confirms that the CAC fails to establish any injury in
fact and therefore cannot survive scrutiny under Rule 12(b)(1).  The booster seats
Plaintiffs purchased complied with FMVSS 213 and performed as intended, and
Graco disclosed the nature of its side-impact testing.[1]  Even under Plaintiffs'
theory that the booster seats temporarily would have an unspecified, diminished
value for children between 30 and 40 pounds (even though NHTSA's rule
directly contradicts that theory), the essence of Plaintiffs' contention is that the
seats suddenly spring into full value once each child reaches 40 pounds.  At
most, Plaintiffs complain of some delayed gratification—a speculative and
illusory "loss" that is both fleeting and fails to rise to the level of a concrete and
particularized injury necessary to confer standing.

In February, the Eleventh Circuit reaffirmed that, even though economic
injuries can give rise to standing, these injuries must be "'actual or imminent'"

---

[1] Plaintiffs concede they have not experienced a manifestation of any defect in
the booster seats or any actual physical injuries.  (Pls.' Resp. at 18-19.)  Rather
than dispute these points, they argue that the long line of cases cited by Graco
(Graco's Op. Br., Doc. 67-1 ("Graco's Op. Br."), at 15-17) should not be followed.

and not merely "'conjectural or hypothetical.'"  *Tsao v. Captiva MVP Restaurant Partners, LLC*, 986 F.3d 1332, 1338 (11th Cir. 2021) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).  In *Tsao*, the Eleventh Circuit upheld dismissal of the complaint in a data breach class action even though the defendant had violated its obligations and a data breach had occurred, because the plaintiff did not plausibly allege that *he* had suffered identity theft or a substantial risk of future identity theft.  *Id.* at 1345.  The *Tsao* court looked to the law in several other circuits and declined to follow a line of cases that found standing for only an increased *risk* of injury (in that case, identify theft).  *Id.* at 1342-43.

In this case, Plaintiffs have pleaded only an increased risk of injuries that never manifested.  Plaintiffs also have not pleaded (and cannot plead) that they have any risk in the future because each has a fully-functional booster seat that complies with FMVSS 213 and that either already satisfies even their own particular preferences if their child now weighs 40 pounds, or will satisfy those preferences when their child reaches 40 pounds.  *See Muransky v. Godiva Chocolatier, Inc.*, 979 F.3d 917, 936 (11th Cir. 2020) (*en banc*) (upholding dismissal where plaintiff failed to allege a "concrete harm or material risk of harm").

Relying almost exclusively on a lone case that predates *Tsao*, Plaintiffs primarily argue that *Debernardis v. IQ Formulations, LLC* stands for propositions

that it does not.  942 F.3d 1076 (11th Cir. 2019).  First, *Debernardis* concerned

adulterated supplements that were banned from sale by the Federal Food, Drug,

and Cosmetic Act (FDCA).  *Id.* at 1080.  Here, in contrast, Graco's booster seats

fully comply with FMVSS 213 and other NHTSA regulations and have never

been banned from sale.  (*See* Graco's Op. Br. at 8-11.)  *Debernardis* involved an

illegal substance banned by FDCA; this case concerns legally-required child car

seats that comply with the applicable federal safety standard.  Plaintiffs also

misconstrue *Debernardis*' legal analysis, incorrectly arguing it did not focus on

standing when products are essentially "worthless"; in fact, that was *Debernardis*'

focus.  *See Debernardis*, 942 F.3d at 1086-88 (using "worthless" seven times in five

paragraphs).[2]  (*Compare* Pls.' Resp. at 16.)  Because Plaintiffs recognize that they

cannot plausibly allege, even under the broadest reading of the CAC, that the

booster seats are "worthless," they therefore misconstrue and cherry-pick

---

[2] *Debernardis* relied on cases finding standing where plaintiffs purchased, respectively, skin lotion that could not be sold under the FDCA and an "unsafe and therefore worthless [Aqua Dots] product."  *Id.* at 1086-87 (citing *Franz v. Beiersdorf, Inc.*, 745 F. App'x 47 (9th Cir. 2018); *In re Aqua Dots Prods. Liab. Litig.*, 654 F.3d 748 (7th  Cir. 2011)).

quotations from *Debernardis*.  That decision, however, ultimately supports the conclusion that Plaintiffs have no standing here.[3]

Plaintiffs also conflate two distinct elements of standing:  injury in fact and redressability.  Injury in fact is the "[f]irst and foremost" requirement of standing and cannot be side-stepped in any standing analysis.  *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 103 (1998).  Before a court even considers redressability, it first must determine if an injury occurred.  Plaintiffs cite *Fox v. Ritz-Carlton Hotel Company, LLC* even though in that case "no one dispute[d] that [plaintiff] suffered an individual injury-in-fact" when it charged a customer an "illegal automatic gratuity."  977 F.3d 1039, 1047 (11th Cir. 2020).  (*See* Pls.' Resp. at 15.)  *Fox* therefore concerned the quintessential economic injury—money taken out of the plaintiff's pocket—a far cry from the illusory and, at best, temporary diminution in value Plaintiffs claim here.  And injury was not disputed in *Fox*.[4]

---

[3] Plaintiffs claim *Debernadis* "cited approvingly" *Carriuolo v. Gen. Motors Co.*, 823 F.3d 977, 986-87 (11th Cir. 2016).  (*See* Pls.' Resp. at 15.)  *Carriuolo* did not address standing at all, but merely acknowledged, on a class certification appeal, that benefit-of-the-bargain damages existed under a Florida statute, which is not the issue here.

[4] Plaintiffs also cite *Uzuegbunam v. Preczewski*, but that case addresses only "whether a plaintiff who sues over a completed injury and establishes the first two elements of standing (injury and traceability) can establish the third [redressability] by requesting only nominal damages."  --- U.S. ---, 141 S. Ct. 792 (2021).  (*See* Pls.' Resp. at 15 n.2.)

**B.      Plaintiffs Have Not Pleaded a Future Injury that Could Confer Standing to Seek Injunctive Relief.**

Plaintiffs lack standing to seek injunctive relief because they have not pleaded a future injury.  Plaintiffs' attempts to argue around this flaw are unavailing.  First, although Plaintiffs concede they have no intent to purchase another Graco booster seat in the future, they still argue that "previously deceived consumers have standing to seek injunctive relief if they allege that a product's labeling or marketing is misleading to a reasonable consumer."  (Pls.' Resp. at 20.)  But that is not the law in this Circuit.  Plaintiffs rely on district court decisions from California, New York, and Illinois, while ignoring controlling Eleventh Circuit precedent.  *See Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328-29 (11th Cir. 2013) ("In addition to past injury, a plaintiff seeking injunctive relief 'must show a sufficient likelihood that he will be affected by the allegedly unlawful conduct in the future.'") (quoting *Wooden v. Bd. of Regents of Univ. Sys. of Ga.*, 247 F.3d 1262, 1284 (11th Cir. 2001)).

Plaintiffs claim a different standard applies to false advertising for consumer products, but courts in this Circuit have consistently applied *Houston* in consumer products false advertising cases.  *See, e.g.*, *Phillips v. Hobby Long Stores, Inc.*, No. 2:16-cv-00837-JEO, 2019 WL 8348613, at *8 (N.D. Ala. Dec. 16, 2019) (holding that plaintiff lacked standing for injunctive relief when "there is

9

no evidence that [plaintiff] will even purchase furniture from Hobby Lobby again"); *Marty v. Anheuser-Busch Companies, LLC*, 43 F. Supp. 3d 1333, 1354-59 (S.D. Fla. 2014) (dismissing injunctive relief where plaintiff failed to allege he "will purchase [defendant's beer] again in the future if appropriately labeled"). In *Marty*, the court held that "the mere fact that the defendant will continue to engage in the same conduct is not enough. There must also be a likelihood that the complained of conduct will likely harm these particular plaintiffs in the future." *Id.* at 1357. Plaintiffs have failed to meet this clear standard.

Finally, Plaintiffs fail to confront the fact that they cannot allege a future injury because, even under their theory, each booster seat would have full value when a child reaches 40 pounds. This is analogous to arguing that a grocery customer who purchased fruit that was not yet ripe suffered a future harm because they did not care to eat the fruit at the time of purchase when it would reach full value at a later date. Here, Plaintiffs are foreclosed from seeking injunctive relief because the value of the booster seats, under Plaintiffs' misguided logic, actually increases as their children grow.

## II.  Plaintiffs Fail to State a Claim Under Rule 12(b)(6).

Beyond standing, the CAC also fails to state a claim under Rule 12(b)(6).

### A.    Plaintiffs Fail to Plead the Fraud-Based Claims with Particularity.

Plaintiffs concede for their common law fraud, fraudulent concealment, negligent misrepresentation claims, and many of their state statutory claims that they must meet Rule 9(b)'s heightened pleading requirements, including "the who, what, when, where and how of the alleged fraud."  Plaintiffs have failed to meet this standard.  Plaintiffs have not identified where they read or saw any alleged misrepresentations.  Nor have they specified the timing of their purchases:  one plaintiff identifies a two-year range in which she may have purchased her booster seat, two plaintiffs identify the year of purchase, four plaintiffs identify the month of purchase, and fourteen plaintiffs identify the date of purchase.  Further, over half of the plaintiffs fail to specify the model of seat they purchased.  *See Quashi v. Olympus Amer., Inc.*, 315 F. Supp. 3d 1329, 1340 (N.D. Ga. 2018) (plaintiff failed to "identify[] the time and date of the statement, the specific place of the statement . . . or the precise details of the statement").  Plaintiffs' Response does not address these holes, instead merely citing non-binding, inapplicable Massachusetts cases.  (*See* Pls.' Resp. at 24-25.)

### B.    Plaintiffs' Nationwide Claims (Counts I-V) Should Be Dismissed.

Plaintiffs' nationwide claims invoke the varying laws of numerous states. Plaintiffs however cannot lump together distinct claims governed by different

states' laws under a single count and call it a "nationwide claim" — this is improper pleading.  Moreover, case law in this Circuit consistently rejects such nationwide claims.  (*See* Graco's Op. Br. at 20-23 & n.10, 44-45 & n.11.)

Recognizing this problem, Plaintiffs attempt to argue that "this Court must apply the common law of Georgia to Plaintiffs' common law . . . claims," relying on *In re Tri-State Crematory Litig.*, 215 F.R.D. 660, 677 (N.D. Ga. 2003).  (Pls.' Resp. at 22.)  Plaintiffs, however, omit the key limiting principle stated in *Tri-State*: "the application of Georgia law [cannot] be inconsistent with due process" and "[t]he State of Georgia must have 'a significant contact or significant aggregation of contacts' to the claims asserted by each member of the plaintiff class, 'contacts creating state interests,' in order to ensure that the choice of [Georgia] law is not arbitrary or unfair."  *Id.* at 679 (quoting *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 821-22 (1985)).  In *Tri-State*, the wrongful acts occurred at a single location — the defendant's crematory property — within Georgia (*id.*); here, the purchases underlying Plaintiffs' claims occurred in various states throughout the country, as Plaintiffs themselves allege in the CAC.  There is no contact between the out-of-state purchases and Georgia, much less a *significant* contact, and Plaintiffs do not even attempt to argue otherwise.  Rather, they neglected to disclose the due process limiting principle, apparently hoping the Court would just overlook it.

12

Plaintiffs' Georgia law argument does not apply to the facts alleged here.

## C.   Plaintiffs Fail to State Actionable Breach of Warranty Claims.

### 1.   Plaintiffs Fail to Allege When They Discovered the Breach.

Plaintiffs' Response does not even address the crux of Graco's argument: that the CAC does not allege any facts showing when any individual Plaintiff discovered the alleged breach of warranty and any individual Plaintiff notified Graco within a reasonable time.  Plaintiffs' failure to provide these facts is fatal to their express warranty claims under laws of Alabama, California, Florida, Illinois, New York, Oregon, Pennsylvania, and Texas, and implied warranty claims under laws of Alabama, Ohio, Oregon, Pennsylvania, and Texas.

### 2.   Plaintiffs' Omnibus Notice Is Deficient.

Separately, the above warranty claims should also be dismissed because Plaintiffs' November 5, 2020 omnibus letter failed to provide the requisite individualized notice.  Each state's law requires that *the buyer* must give notice of the alleged breach; generalized knowledge is not enough.  What is required is that *each* buyer notify Graco of the specific breach involving that buyer's own particular purchase.  *See e.g., Nathan v. Whirlpool Corp.*, No. 3:19-CV-226, 2020 WL 5877574, at *3-4 (S.D. Ohio Oct. 2, 2020) (dismissing warranty claims under Illinois and Ohio law for failing to give individualized notice); *Sloan v. Gen.*

*Motors LLC*, 287 F. Supp. 3d 840, 883 (N.D. Cal. 2018), *clarified in*, 438 F. Supp. 3d 1017 (N.D. Cal. 2020) (same under Alabama law); *Schmitt v. Younique LLC*, No. SA-CV-171397, 2017 WL 10574060, at *5 (C.D. Cal. Dec. 4, 2017) (same under Florida law); *In re Shop-Vac Mktg. & Sales Practices Litig.*, No. 4:12-MD-2380, 2014 WL 3557189, *8 (M.D. Pa. July 17, 2014) (same under Pennsylvania law).

Here, the CAC alleges only that Plaintiffs provided notice to Graco by an [unattached] omnibus letter.  Plaintiffs do not allege that the letter specified each individual Plaintiff's notice.  Plaintiffs' failure to provide individualized notice is separately fatal to the above warranty claims, which should be dismissed.

### 3. Plaintiffs' Remaining Warranty Claims Also Fail.

With respect to Plaintiffs who were added in the CAC (Alabama, California, Florida, New York, Oregon, and Texas), the November 5, 2020 omnibus letter is still deficient.  The CAC is not a new lawsuit; it is a consolidated amended complaint to the already-pending lawsuit that was filed more than five months earlier.  It would defeat the purpose of the notice requirement to find that the added Plaintiffs satisfied the pre-suit notice requirement when they provided notice more than five months after the initial complaint was filed.  *See e.g., Jones v. Apple, Inc.*, No. 15-CV-249-NJR-SCW, 2017

WL 11495257, at *2 (S.D. Ill. May 5, 2017) (holding lawsuit did not satisfy pre-suit notice because finding otherwise "would invite improper gamesmanship").

Plaintiffs' remaining arguments for specific states are also unavailing.  In Ohio and Pennsylvania, more recent decisions have found that filing the complaint is insufficient notice because it thwarts the purpose of pre-suit notice altogether.  *Forsher v. J.M. Smucker Co.*, No. 5:19-CV-00194, 2020 WL 1531160, at *8 (N.D. Ohio Mar. 31, 2020); *In re 5-Hour ENERGY Mktg. & Sales Practices Litig.*, No. MDL-132438, 2015 WL 12734796, at *10 (C.D. Cal. Jan. 22, 2015).

Likewise, under Florida law, notice is required when, like here, the plaintiff's breach of warranty claims are premised on misleading content in the manufacturer's advertisements or packaging.  *Sebastian v. Kimberly-Clark Corp.*, No. 17-CV-442, 2017 WL 6497675, at *9 (S.D. Cal. Dec. 18, 2017) (Florida law).

And under Illinois law, the "actual knowledge" exception to pre-suit notice does not apply.  That exception "is satisfied only where the manufacturer is somehow apprised of the trouble with the *particular product purchased by a particular buyer*" — not where "a manufacturer is aware of problems with a particular product line."  *In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 393 F. Supp. 3d 745, 759 (N.D. Ill. 2019) (emphasis added).  Plaintiffs have not alleged actual pre-suit knowledge of Mr.  Hager's purchases.

15

For these reasons, Plaintiffs' express warranty claims fail under several states' laws (AL, CA, FL, IL, NY, OR, PA, and TX), and their implied warranty claims also fail under several states' laws (AL, OH, OR, PA, and TX).

### 4. Express Warranty:  Basis of the Bargain and Reliance

Plaintiffs' breach of express warranty claims fail to provide requisite facts that Graco's statements formed the basis of the bargain.  The CAC merely repeats the same cut-and-paste allegation over-and-over for every individual Plaintiff. (*See, e.g.*, ¶ 11.)  The CAC fails to identify *where* any Plaintiff saw or heard the statements, *when* they saw or heard them, from *whom*, and *whether* the statements actually induced them to purchase the product.  In other words, Plaintiffs allege only conclusory allegations regarding whether Graco's statements formed the basis of the bargain.  This is insufficient.  *In re: Elk Cross Timbers Decking Mktg.*, No. 2577, 2015 WL 6467730, at *29 (D.N.J. Oct. 26, 2015).  Plaintiffs also fail to show any individual Plaintiff relied on any of Graco's statements, which is fatal to their claims under California, New York, Oklahoma, Oregon, and Texas law.

### 5. Implied Warranty

#### a. No Exception to the Requirement of Privity Applies.

Plaintiffs do not fall into any exception to the privity requirement. Plaintiffs have not alleged sufficient facts to invoke the third-party beneficiary

exception to the privity requirement under the laws of Florida, Illinois, New York, North Carolina, or Ohio. *See Manley v. Hain Celestial Grp., Inc.*, 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019); *Varner v. Domestic Corp.*, No. 16-22482-CIV, 2017 WL 3730618, at *12 (S.D. Fla. Feb. 7, 2017); *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 625 (N.D. Ohio 2016) (New York, North Carolina, and Ohio law).

As to California law, recent cases have held that the third-party beneficiary exception does not apply in the consumer warranty context. *See Mandani v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-07287, 2019 WL 652867, at *6 (N.D. Cal. Feb. 15, 2019); *Stewart v. Electrolux Home Prod., Inc.*, 304 F. Supp. 3d 894, 915 (E.D. Cal. 2018); *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017).

Finally, a "source of danger" privity exception does not apply to economic loss. *See Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 312 (N.D.N.Y. 2019); *Dixon v. Ford Motor Co.*, 2015 WL 6437612, at *5 (E.D.N.Y. Sept. 30, 2015).

### b.    Implied Warranties Were Disclaimed.

Graco's website, which includes a disclaimer of implied warranties, is incorporated by reference and cited repeatedly in the CAC. (CAC at ns. 7, 17, 23, 48.) *See Metal Morphosis, Inc. v. Acorn Media Publ'g, Inc.*, 639 F. Supp. 2d 1367, 1373 (N.D. Ga. 2009) (considering website on motion to dismiss). Plaintiffs are "chargeable with notice of disclaimer" because Graco's clear and conspicuous

17

Limited Warranty disclaiming any implied warranties was available to them prior to purchasing the booster seats.  *See, e.g.*, *Colgate v. JUUL Labs, Inc.*, 402 F. Supp. 3d 728, 756 (N.D. Cal. 2019).

**c.**     **Plaintiffs Fail To Allege Any Particular Purpose.**

Plaintiffs fail to allege a particular purpose that differs from the ordinary purpose.  "No warranty for a particular purpose is created if the [consumer's] intended use is no different from the ordinary use of the product."  *George v. Amgen, Inc.*, No. 18 C 6421, 2019 WL 10893813, at *6 (N.D. Ill. June 6, 2019).  A particular purpose "envisages a specific use by the buyer which is peculiar to the nature of his business . . . ."  *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1021 (N.D. Cal. 2014).  The booster seats' ordinary purpose is to provide restraint for children weighing more than thirty pounds in a motor vehicle collision, which is the purpose that Plaintiffs purchased the seats for.  Plaintiffs do not allege any particular or special use by any individual Plaintiff which is peculiar to them.

Plaintiffs attempt to transform Graco's statements about the features of the booster seats into Plaintiffs' alleged particular purpose in purchasing the booster seats, but various courts have rejected similar attempts.  In *Frenzel*, for example, the court rejected plaintiffs' argument that they intended to use the product for "its particular purpose of acting as a fitness and lifestyle tracker with a . . . 10 day

18

battery life" because this was not a particular purpose "but rather the ordinary purpose for which [the product] is customarily purchased."  76 F. Supp. 3d at 1021.  Likewise in *Hilsley v. Gen. Mills, Inc.*, the court rejected the plaintiff's argument that the alleged particular purpose of fruit snacks was "a naturally-flavored food product" because it was not "peculiar to" plaintiff's use.  376 F. Supp. 3d 1043, 1050 (S.D. Cal. 2019).

### d.    The Massachusetts Implied Warranty Claim Fails.

Massachusetts' economic loss doctrine bars Plaintiff Arnold's breach of implied warranty claims because the CAC sounds in tort and alleges only economic loss.  *Cruickshank v. Clean Seas Co.*, 346 B.R. 571, 582 (D. Mass. 2006). Plaintiffs cite cases involving *contract*-based warranty claims, which are inapposite.  *Sharp v. Hylas Yachts, Inc.*, No. CV 11-11814, 2015 WL 13656988, at *4 (D. Mass. Jan. 14, 2015) (economic loss doctrine inapplicable to contract claims).

### 6.    Plaintiffs' Magnuson-Moss Claim Also Fails.

Plaintiffs' Magnuson-Moss claim also must be dismissed because the CAC fails to plead valid breach of warranty claims, as explained above.  *See Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1231 (11th Cir. 2016).

**D.      Plaintiffs' State Statutory Law Claims Should Be Dismissed.**

**1.      California Consumer Protection Statutes**

Plaintiffs cannot plausibly show that a reasonable consumer would find Graco's claims to be untrue.  This dooms their claims under the California False Advertising Law (Cal. Bus. & Prof. Code § 17500), Consumer Legal Remedies Act (Cal Civ. Code § 1750), and Unfair Competition Law (Cal. Bus. & Prof. Code § 17200).  As Graco explained in its opening brief, the statements cited in the CAC are not deceptive, misleading, or fraudulent.  Plaintiffs' Response does not substantively dispute the standard that applies under California law.  The Court must consider whether any representation will be misleading to a "reasonable consumer."  (Graco's Op. Br. at 36-37 (citing *Frenzel*, 76 F. Supp. 3d at 1011.))  *Frenzel* is in complete accord with the *Williams* case cited by Plaintiffs.  *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) ("Appellants' claims under these California statutes are governed by the 'reasonable consumer' test.").  Thus, as explained in *Williams*, it depends what statements a reasonable consumer interprets as "ha[ving] a capacity, likelihood or tendency to deceive or confuse the public."  *Id.*  But that is where Plaintiffs' factual allegations in the CAC fall short.  Graco's statements are true.  (Graco's Op. Br. at 3, 6-7.)  Plaintiffs have not plausibly pleaded anything to the contrary.

### 2.      Georgia Fair Business Practices Act and West Virginia Consumer Credit and Protection Act

Plaintiffs argue that they complied with the pre-suit notice requirements under the GFBPA and WVCCPA by sending Graco an omnibus letter on November 5, 2020.  The letter does not satisfy the pre-suit notice because it was sent five months after the lawsuit was filed.  *Paws Holdings, LLC v. Daikin Applied Americas Inc.*, No. CV 116-058, 2018 WL 475013, at *5 (S.D. Ga. Jan. 18, 2018); *Waters v. Electrolux Home Prods.*, Inc., 154 F. Supp. 3d 340, 354 (N.D. W.Va. 2015).

### 3.      Illinois Deceptive Trade Practices Act

Contrary to Plaintiffs' contention (Pls.' Resp. at 46), Graco's argument that Plaintiffs' IDTPA claim must be dismissed because Plaintiffs cannot show they are entitled to injunctive relief is not premature.  *See Patel v. Zillow, Inc.*, 2018 WL 2096453, at *74 (N.D. Ill. May 7, 2018) (dismissing IDTPA claim at the motion to dismiss stage).  The *Laurens v. Volvo Cars of N. Am., LLC*, 868 F.3d 622 (7th Cir. 2017) Plaintiffs' cite, addresses Article III standing and is therefore distinguishable.

### 4.      New Jersey Consumer Fraud Act

A "special relationship" requirement applies to Plaintiffs' NJCFA claim, regardless of whether the claim is based on omissions.  *Greene v. BMW of N. Am.*, No. CIV 2:11-04220 WJM, 2013 WL 5287314, *5 (D.N.J. Sept. 17, 2013).  The CAC

alleges that Graco failed to disclose risks posed by the booster seats, but does not allege any special relationship.  (CAC ¶ 487.)

### 5.    New York General Business Law § 349 and Pennsylvania Unfair Trade Practices & Consumer Protection Act

Plaintiffs fail to satisfy the reliance requirements for GBL § 349 and UTPCPL claims.  Plaintiffs' boilerplate allegations, repeated for each of the Plaintiffs, regardless of where or when they purchased the booster seats, is insufficient to satisfy these statutes' reliance requirements.  *See Oden v. Bos. Sci. Corp.*, 330 F. Supp. 3d 877, 902 (E.D.N.Y. 2018), *adhered to on reconsideration,* No. 18-CV-0334, 2019 WL 1118052 (E.D.N.Y. Mar. 11, 2019); *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 466 (E.D. Pa. 2009).

### 6.    North Carolina Unfair & Deceptive Trade Practices Act

Plaintiffs' argument that "egregious or aggravating circumstances are required only when a breach of contract claim is giving rise to the [NCUDTPA] claim" misstates the law.  (Pls.' Resp. at 48.)  While courts previously held that a simple breach of contract is insufficient for a NCUDTPA claim absent substantial aggravating circumstances, a party must still allege "egregious or aggravating circumstances" to sustain a claim.  *See Maxwell v. Remington Arms Co.*, 2014 WL 5808795, at *5 (M.D.N.C. Nov. 7, 2014). *See also Kelly v. Georgia-Pacific LLC*, 671 F. Supp. 2d 785, 799 (E.D.N.C .2009).

### 7. Ohio Deceptive Trade Practices Act and Ohio Consumer Sales Practices Act

Plaintiffs argue there is a split in authority as to whether the ODTPA can be privately enforced. Even so, "[t]he majority of courts to address the issue have held that an individual consumer does not have standing to sue under the ODTPA." *Borden v. Antonelli Coll.*, 304 F. Supp. 3d 669, 673-76 (S.D. Ohio 2018)). As for the OCSPA, Plaintiffs' conclusory allegation that "Graco had ample notice . . . under Ohio Admin. Code 109:4-3-03(B)(1)" raised in Plaintiffs' Response fails to satisfy the notice requirement. (Pls.' Resp. at 49.) *See In re Porsche Cars N. Am., Inc.*, 880 F. Supp. 2d 801, 868-69 (S.D. Ohio 2012).

### 8. Oregon Unlawful Trade Practice Act

Instead of addressing Graco's argument that Plaintiffs failed to established the required elements under O.R.S. § 646.608(1), Plaintiffs now turn to a different subsection of the statute and argue that they "have met the requirements of ORS § 646.607(1) by alleging that Graco, in the course of its business, employed unconscionable tactics." (Pls.' Resp. at 49.) Plaintiffs' argument fails because the OUTPA does not create a private right of action for violations of ORS § 646.607. *See Gosha v. Bank of New York Mellon Corp.*, No. 3:16-CV-00073, 2016 WL 7238927, at *7 (D. Or. Dec. 13, 2016), *aff'd,* 707 F. App'x 484 (9th Cir. 2017).

### 9. Oklahoma, Florida, Illinois, Massachusetts, and Texas Consumer Protection Acts

Under Oklahoma law, "[i]f plaintiffs' claim falls within the scope of the regulatory scheme, it is exempt from coverage under the OCPA." *In re Motor Fuel Temperature Sales Practices Litig.*, 534 F. Supp. 2d 1214, 1229 (D. Kan. 2008). As Plaintiffs concede, NHTSA is the federal agency responsible for regulating and enforcing car seat safety. (Pls.' Resp. at 40-41.) Plaintiffs' claims fall squarely within FMVSS 213, and so, are exempt. *Williams v. CSC Credit Servs., Inc.*, No. 07-CV-0255, 2007 WL 1959219, at *3 (N.D. Okla. June 29, 2007); *Dinwiddie v. Suzuki Motor of Am., Inc.*, 111 F. Supp. 3d 1202, 1215-16 (W.D. Okla. 2015).

Next, Plaintiffs' FUDTPA, ICFA, and MCPL claims fail because Graco's actions are permitted under the federal safety standards set by NHTSA.[5] Fla. Stat. Ann. § 501.212(1); *Savalli v. Gerber Prods. Co.*, 2016 WL 5390223, at *4 (S.D. Fla. Sept. 20, 2016); 815 Ill. Comp. Stat. Ann. § 505/10b(1); *Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *4-5 (N.D. Ill. Sept. 29, 2017); Mass. St. 93A § 3; *Iannacchino v. Ford Motor Co.*, 888 N.E.2d 879, 888 & n.17 (Mass. 2008).

---

[5] Importantly, *Aspinall v. Philip Morris, Inc.*, 902 N.E.2d 421, 424 (Mass. 2009), cited by Plaintiffs throughout their argument is a Massachusetts case that does not apply to the FUDTPA or the ICFA. To the extent *Aspinall* applies to the MCPL, Graco has met its burden of proving its actions are "permitted" under federal law. Mass. St. 93A § 3.

Contrary to Plaintiffs' argument, Graco's "side impact tested" label is not misleading to the consumer because Graco conducts its own side impact testing on the Booster Seats, which is permitted under federal safety standards. Although NHTSA does not currently require side-impact testing on any car seat, it does not preclude manufacturers from developing their own test protocols. *See* 49 C.F.R. § 571.213. Further, Graco's representation that its Booster Seats are safe for children weighing between 30 and 40 pounds is not only permitted, but required under the federal safety standards. As Plaintiffs point out, NHTSA "requires manufacturers to include . . . a label that specifies 'the manufacturer's recommendations' for maximum and minimum height and weight of children who can safely occupy the system." (Pls.' Resp. at 42.)

Finally, Graco does not allege that it is exempt from the TDTPA under Tex. Bus. & Com. Code § 17.49. Instead, there can be no TDTPA violation where the alleged misconduct is required or specifically permitted by federal or state law. *See Duke v. Flying J, Inc.*, 178 F. Supp. 3d 918, 926 (N.D. Cal. 2016) (Texas law).

## <u>Conclusion</u>

For these reasons, the CAC should be dismissed with prejudice.

## **Certificate Of Compliance**

I hereby certify that this document was prepared in compliance with

Northern District of Georgia Local Rule 5.1C using Book Antiqua 13-point font.

Respectfully submitted this 2nd day of April, 2021.

*/s/ Nick Panayotopoulos*
Nicholas P. Panayotopoulos
Georgia Bar No. 560679
Jennifer A. Adler
Georgia Bar No. 585635
Weinberg, Wheeler, Hudgins, Gunn
& Dial, LLC
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Tel: (404) 876-2700
Fax: (404) 875-9433
npanayo@wwhgd.com
jadler@wwhgd.com

Joseph J. Krasovec III (*pro hac vice*)
David C. Scott (*pro hac vice*)
Schiff Hardin LLP
233 South Wacker Drive, Suite 7100
Chicago, Illinois 60606
Tel: (312) 258-5500
Fax: (312) 258-5600
jkrasovec@schiffhardin.com
dscott@schiffhardin.com

*Attorneys for Graco Children's Products, Inc.*

## **Certificate Of Service**

I HEREBY CERTIFY that on this 2nd day of April, 2021, the foregoing Reply

Brief was electronically filed with the Clerk of Court using the CM/ECF system,

which will automatically send a notice of electronic filing to all parties of record.

/s/ Nick Panayotopoulos
Nicholas P. Panayotopoulos
Georgia Bar No. 560679