IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | | |
|---|---|---|
| KELLIE CARDER, *individually and on behalf of all others similarly situated*, et al., | : : : : | |
| Plaintiffs, | : : | |
| v. | : : | CIVIL ACTION NO. 2:20-CV-00137-LMM |
| GRACO CHILDREN'S PRODUCTS, INC., | : : : : | |
| Defendant. | : | |

## ORDER

This case comes before the Court on Defendant Graco Children's Products, Inc.'s ("Graco") Motion to Dismiss [67]. After due consideration, and with the benefit of a hearing and supplemental briefing, the Court enters the following Order.

## I.   BACKGROUND

In this putative class action, Plaintiffs from fifteen states allege that Defendant Graco made false and misleading representations about the TurboBooster Highback Booster Seat and the AFFIX Highback Booster Seat (the "Booster Seats"), two models of children's car seats manufactured and sold by Defendant. See generally Dkt. No. [60]. Plaintiffs allege that Defendant labeled

and marketed these Booster Seats in the United States as being (1) "side-impact tested" and (2) safe for children as small as thirty pounds and as young as three years old. Id. ¶ 3. Plaintiffs allege that Defendant has known since 2002 that these representations are false and misleading—namely, that the Booster Seats do not appreciably reduce the risks associated with side-impact collisions (and that there are no federal safety standards for side-impact testing), that Defendant's own testing does not show that the Booster Seats are safe in side-impact collisions, and that the Booster Seats are in fact not safe for children under forty pounds or younger than four years old—but that Defendant omitted or concealed this information from its marketing of the Booster Seats. Id. ¶¶ 3–4. Plaintiffs also allege that they purchased Booster Seats based in part on Defendant's representations that these seats were safe for children under forty pounds and as young as three years old, and that they were side-impact tested (and would offer protection in side-impact collisions). In their Consolidated Amended Complaint, Plaintiffs maintain that, had they known that no federal side-impact testing existed, that the seats did not provide "any appreciable safety" to children in a side-impact collision, and that the seats were in fact not safe for children under forty pounds and as young as three years old, Plaintiffs would not have purchased their respective Booster Seats or would have paid less for them. See id. ¶¶ 19–81.

Plaintiffs assert claims for (1) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*; (2) common law fraud; (3) unjust enrichment; (4) negligent misrepresentation, and (5) violations of state-specific breach of

warranty and consumer protection statutes. Id. ¶¶ 182–773. Defendant has moved to dismiss Plaintiffs' Consolidated Amended Complaint in its entirety, arguing that Plaintiffs (1) lack standing and (2) otherwise fail to adequately state claims for relief. Dkt. No. [67]. The Court held a hearing on July 29, 2021, and the parties have submitted supplemental briefing. See Dkt. Nos. [75, 77, 78, 83, 84].

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content necessary for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. Id. (citing Twombly, 550 U.S. at 556).

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th

3

Cir. 2011) (quoting <u>Garfield v. NDC Health Corp.</u>, 466 F.3d 1255, 1261 (11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. <u>Iqbal</u>, 556 U.S. at 678.

### III.   DISCUSSION

Defendant makes two overarching arguments for dismissing Plaintiffs' Consolidated Amended Complaint. First, Defendant argues that Plaintiffs lack standing (including that they lack standing to seek injunctive relief). Dkt. No. [67] at 27–35.[1] Second, Defendant argues that Plaintiffs' claims should be dismissed under Rule 9(b) or Rule 12(b)(6). <u>Id.</u> at 35–61. The Court addresses each of Defendant's arguments below.

### A. Standing

Defendant first argues that Plaintiffs lack standing. <u>Id.</u> at 27–34. To have standing, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." <u>Spokeo, Inc. v. Robins</u>, 136 S. Ct. 1540, 1547 (2016) (citation omitted). "Where, as here, a case is at the pleading stage, the plaintiff must clearly allege facts demonstrating each element." <u>Id.</u> (quotation marks, alterations, and citation omitted).

---

[1] For consistency and clarity, the Court cites the page number reflected in the docket stamp at the top of each page of the parties' briefs (as opposed to citing each document's original pagination).

Defendant focuses primarily on the "injury in fact" element, arguing that Plaintiffs have failed to allege that they have suffered an injury. Dkt. No. [67-1] at 27–34. "To establish injury in fact, a plaintiff must show that he or she suffered an invasion of a legally protected interest that is concrete and particularized and actual or imminent, not conjectural or hypothetical." Spokeo, 136 S. Ct. at 1548 (quotation marks and citation omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." Id. (citation omitted). "Economic harm and physical injury are well-established injuries-in-fact under federal standing jurisprudence." Adinolfe v. United Techs. Corp., 768 F.3d 1161, 1172 (11th Cir. 2014) (citations omitted).

Here, Plaintiffs allege that they did not get what they thought they paid for when purchasing their respective Booster Seats. See Dkt. Nos. [60] ¶¶ 19–81; [70] at 26. Specifically, Plaintiffs allege and argue that they suffered an economic injury because Defendant purported to offer them Booster Seats that were "side-impact tested" such that they were safe in side-impact collisions and safe for children as light as thirty pounds and as young as three years old, but that Plaintiffs instead received seats that were not safe for such children, were not meaningfully tested for side-impact safety and did not, in fact, provide "any appreciable safety" in side-impact collisions. See Dkt. Nos. [60] ¶¶ 3–4, 8–9, 12, 14, 19–81, 136–138, 146–149; [70] at 25–26. To this end, Plaintiffs also allege that they were unaware that federal standards for side-impact testing of Booster Seats do not exist and that Defendant "concealed that its side-impact testing did

5

not comply with federal standards because no such standards exist." <u>See</u> Dkt. No. [60] ¶¶ 19–81; <u>see also</u> <u>id.</u> ¶¶ 136–139. Thus, Plaintiffs maintain that they suffered an economic injury and were harmed by Defendant's allegedly deceptive marketing campaign and have standing because they did not receive the benefit of their bargain. Dkt. No. [70] at 22–23, 25–29.

To begin, Defendant first suggests that because Plaintiffs have not alleged that the Booster Seats failed to perform such that their children suffered physical injuries as a result of Plaintiffs' use of the Booster Seats, Plaintiffs have not suffered any injury at all. Dkt. No. [67-1] at 28–29. However, this argument has been rejected by the Eleventh Circuit: "[P]hysical injuries are distinct from economic injuries. There is no requirement that a plaintiff have experienced physical harm to have an economic injury." <u>Debernardis v. IQ Formulations, LLC</u>, 941 F.3d 1076, 1086 n.7 (11th Cir. 2019) (citation omitted).

Defendant next argues that Plaintiffs have not alleged any injury at all—even an economic one—because Plaintiffs have failed to articulate the actual harm that caused their purported economic injury. Dkt. No. [67-1] at 30–32. Defendant characterizes Plaintiffs' alleged injuries as based on a "hypothetical theory" that they were injured simply by purchasing the Booster Seats. <u>See</u> Dkt. No. [67-1] at 28–30. In support of this argument, Defendant cites a string of

products liability cases from other Circuits, arguing that Plaintiffs do not have standing because no injury is alleged in this case.[2] See id. at 30–31.

The Court is not persuaded by these arguments and disagrees with Defendant on this issue. Under the Eleventh Circuit's decision in Debernardis, "an economic injury qualifies as a concrete injury," and "[a] person experiences an economic injury when, as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain." Debernardis, 942 F.3d at 1084 (citations omitted). As discussed above, Plaintiffs have alleged and argued that they suffered an economic injury because Defendant presented its Booster Seats as being (1) safe for children as small as thirty pounds and as young as three and (2) "side-impact tested" (and therefore safer in side-impact collisions), but that Plaintiffs instead received seats that were (1) not safe for such children and (2)

---

[2] For example, Defendant relies heavily on In re Johnson & Johnson Talcum Powder Prods. Mktg., Sales Pracs. & Liab. Litig., 903 F.3d 278 (3d Cir. 2018), to argue that Plaintiffs have not suffered an injury that would confer standing. Even if this case was binding authority, in In re Johnson & Johnson, the Third Circuit noted that the plaintiff did not even allege that the product at issue (baby powder) "failed to adequately perform any of the[] functions" its label indicated that it would perform, whereas in this case the Plaintiffs have alleged that Defendant's Booster Seats were labeled in a way that suggested they were safe for children under forty pounds and were "side-impact tested" but that these representations were, in fact, untrue and misleading. See 903 F.3d at 281; Dkt. No. [60] ¶¶ 3–4, 19–81. Moreover, the plaintiff in In re Johnson & Johnson failed to allege that she would have paid less for the allegedly unsafe baby powder. 903 F.3d at 289–90. By contrast, Plaintiffs in this case have pled that they either would not have purchased the Booster Seats or would have paid less for them had they known that Defendant's representations were either untrue or misleading. Dkt. No. [60] ¶¶ 19–81.

did not, in fact, provide "any appreciable safety" in side-impact collisions.[3] Dkt. Nos. [60] ¶¶ 19–81; [70] at 25–26. Moreover, Plaintiffs have alleged that they would not have purchased their respective seats, or would have paid less for them, had they known the alleged truth about the Booster Seats' functionality and safety. Dkt. No. [60] ¶¶ 19–81. The Court finds that these allegations are sufficient to establish standing.[4] Debernardis, 942 F.3d at 1086 (noting that in cases where plaintiffs alleged that "products did not work as advertised or where the plaintiffs had paid a premium . . . these allegations were *sufficient* to establish standing").[5] Other courts in this Circuit have reached the same conclusion and found standing in cases with analogous allegations. See, e.g., James v. Yamaha Motor Corp., No. 15-23750, 2016 WL 3083378, at *14 (S.D. Fla. May 31, 2016)

---

[3] Plaintiffs also allege that Defendant "concealed that its side-impact testing did not comply with federal standards because no such standards exist." See Dkt. No. [60] ¶¶ 19–81; see also id. ¶¶ 137–139.

[4] The concurrence in Debernardis provides additional support for the conclusion that Plaintiffs' allegations are sufficient to establish standing at this stage of the litigation: "[The plaintiffs] nonetheless plausibly allege an injury in fact—that they paid more for IQ Formulations' dietary supplements than they would have paid had they known the company did not follow the law. This difference in price states a concrete economic harm that satisfies Article III standing's injury in fact element, no matter the label we give it. Without the benefit of discovery, we are not in a position to second guess the harm they allege. And that suffices to permit the case to proceed." Debernardis, 942 F.3d at 1090 (Sutton, J. concurring) (citations omitted).

[5] The Court does not find that Tsao v. Captiva MVP Rest. Partners, LLC, 986 F.3d 1332 (11th Cir. 2021), or TransUnion LLC v. Ramirez, 141 S. Ct. 2190 (2021), two cases discussed in Defendant's briefing, contradict Debernardis or require a different outcome at this stage of the litigation.

(finding standing at pleading stage based on theory of economic injury even where plaintiffs had not yet personally experienced defects in the boats they had purchased); Marty v. Anheuser-Busch Cos., LLC, 43 F. Supp. 3d 1333, 1336, 1352 (S.D. Fla. 2014) (finding standing where plaintiffs alleged that they suffered an economic injury because they paid more to purchase beer advertised as being brewed in and imported from Germany but which was instead brewed domestically); Yachera v. Westminster Pharms., LLC, 477 F. Supp. 3d 1251, 1263–64 (M.D. Fla. 2020) ("Plaintiffs suffered a concrete monetary injury when they paid for thyroid medication that they plausibly allege they would not have purchased had they known it did not contain the amount of API they thought they were receiving."); Reilly v. Chipotle Mexican Grill, Inc., No. 15-Civ-23425, 2016 WL 10644065, at *2–3 (S.D. Fla. Apr. 20, 2016) (finding plaintiff's allegations sufficient to establish standing where plaintiff "allege[d] that she suffered monetary losses when she paid premium prices for Chipotle's GMO-containing food products . . . and that she paid premium prices because Chipotle's advertisements led her to believe she was purchasing food products without GMO ingredients"); Reynolds v. Wal-Mart Stores, Inc., No. 4:14cv381, 2015 WL 1879615, at *2 (N.D. Fla. Apr. 23, 2015) (stating that plaintiffs "can meet the injury-in-fact requirement with a showing that by relying on a misrepresentation on a product label, they paid more for a product than they

otherwise would have paid, or bought it when they otherwise would not have done so").[6]

Defendant has also argued that Plaintiffs lack standing to bring side-impact claims because they have failed to plead that the Booster Seats are wholly unsafe and thus entirely worthless. Dkt. No. [67-1] at 32–34. In support of this argument, Defendant suggests that Debernardis stands for the proposition that a plaintiff cannot establish standing under certain circumstances without proving that the product is entirely worthless. See id. at 32–33 ("A plaintiff can potentially have standing to sue 'even if there is no indication that she was physically harmed by the product, the product failed to work as intended, or she paid a premium for the product[,]' *but to do so he or she must clear the high bar of proving that the product is worthless*." (quoting Debernardis, 942 F.3d at

---

[6] Plaintiffs also cite Carriuolo v. Gen. Motors Co., 823 F.3d 977 (11th Cir. 2016), to support their argument that they have standing to recover the difference in value between what Defendant promised and what Plaintiffs allegedly received. Dkt. No. [70] at 27. Though the Eleventh Circuit's decision in Carriuolo did not specifically address standing or the injury-in-fact element, the Eleventh Circuit has cited the Carriuolo decision in subsequent discussions regarding standing, particularly for the proposition that "[a] person experiences an economic injury when, as a result of a deceptive act or an unfair practice, he is deprived of the benefit of his bargain." See Debernardis, 942 F.3d at 1084; Doss v. Gen. Mills, Inc., 816 F. App'x 312, 314 (11th Cir. 2020). In Carriuolo, the plaintiffs alleged that the vehicles they purchased were represented as having three five-star safety ratings from the National Highway Traffic Safety Administration ("NHTSA") when, in fact, the NHTSA had not assigned any safety ratings to that model at the time of the class members' purchases. 823 F.3d at 981–82.

1086) (emphasis added)). Even if Defendant was correct on this point,[7] it is irrelevant because <u>Debernardis</u> recognized that, where a product "failed to perform as advertised" or where plaintiffs allegedly purchased a product "at a premium due to a misrepresentation about the product," such allegations are sufficient to establish standing. <u>See</u> 942 F.3d at 1085–86. As has already been discussed, Plaintiffs have alleged that they either would not have purchased the Booster Seats or would have paid less for them had they known that Defendant's representations about the Booster Seats' features and functionality were untrue and misleading. Dkt. No. [60] ¶¶ 19–81.

Relatedly, Defendant also argues that Plaintiffs' claims should be dismissed pursuant to the Eleventh Circuit's decision in <u>Doss</u>. In that case, a plaintiff brought claims against General Mills for its alleged failure to disclose that Cheerios contain a harmful herbicide called glyphosate. <u>Doss</u>, 816 F. App'x at 313. The Eleventh Circuit analyzed the plaintiff's claims in the context of a benefit-of-the-bargain theory and affirmed dismissal of the plaintiff's complaint, explaining that she had "alleged merely a conjectural or hypothetical injury." <u>Id.</u> at 314. However, <u>Doss</u> is distinguishable from the present case for various reasons. In

---

[7] As Plaintiffs argue in their Response, the distinction referenced in <u>Debernardis</u> related to the damages a plaintiff may ultimately recover under a benefit-of-the-bargain theory, not to standing itself. Dkt. No. [70] at 29; <u>See</u> <u>Debernardis</u>, 942 F.3d at 1084; <u>see also</u> <u>Doss</u>, 816 F. App'x at 314 (explaining ordinary damages calculation for defective products before noting that <u>Debernardis</u> recognized that "one exception to this general rule applies when the product is rendered valueless as a result of a defect").

_Doss_, the plaintiff "ha[d] not alleged that she purchased any boxes of Cheerios that contained any glyphosate . . . ." Id. By contrast, Plaintiffs in this case have alleged that Defendant's Booster Seats are, in fact, not safe for children who are under forty pounds and younger than four years old, and that the Booster Seats do not provide any appreciable safety in actual side-impact collisions; moreover, Plaintiffs have alleged that they in fact purchased seats that were not safe in precisely these ways. See, e.g., Dkt. No. [60] ¶¶ 3–4, 19–81.[8]

### B. Standing for Injunctive Relief

Defendant also argues that Plaintiffs lack standing to seek injunctive relief because they do not plead any actual and imminent future harm. Dkt. No. [67] at 19–20. The Court agrees.

"[A] plaintiff must demonstrate standing for each claim and for each form of relief that is sought." JW ex rel. Tammy Williams v. Birmingham Bd. of Educ., 904 F.3d 1248, 1264 (11th Cir. 2018) (quotation marks omitted) (quoting Town of Chester, N.Y. v. Laroe Ests., 137 S. Ct. 1645, 1650 (2017)). "A party has standing to seek injunctive relief only if the party alleges, and ultimately proves, a real and immediate—as opposed to a merely conjectural or hypothetical—threat of _future_ injury." Id. (quoting Church v. City of Huntsville, 30 F.3d 1332, 1337 (11th Cir.

---

[8] Moreover, in originally dismissing the complaint, the district court in Doss distinguished the case from those in which plaintiffs had standing because they alleged that representations on certain product labels were, in fact, untrue. See Doss v. Gen. Mills, Inc., No. 18-61924, 2019 WL 7946028, at *2 (S.D. Fla. June 14, 2019) (citing Askin v. Quaker Oats Co., 818 F. Supp. 2d 1081 (N.D. Ill. 2011) and Guerrero v. Target Corp., 889 F. Supp. 2d 1348 (S.D. Fla. 2012)).

1994)). "Logically, a prospective remedy will provide no relief for an injury that is, and likely will remain, entirely in the past." Wooden v. Bd. of Regents of Univ. Sys. of Ga., 247 F.3d 1262, 1284 (11th Cir. 2001) (quotation marks and citation omitted).

Here, Plaintiffs do not have standing to seek injunctive relief because they do not allege that they will purchase Booster Seats again in the future, even if properly labeled and marketed. Instead, Plaintiffs only allege that they would not have purchased the seats, or would have paid less for them, had they known the alleged truth about the seats' features and capabilities. These allegations are insufficient to establish standing for injunctive relief. See, e.g., Marty, 43 F. Supp. 3d at 1353–54 ("Because there are no allegations in the Amended Complaint that the plaintiffs would purchase [the allegedly mislabeled product] in the future . . . plaintiffs have failed to plead 'a real and immediate threat of future injury[]' . . . and thus have failed to plead standing to seek injunctive relief." (quoting Shotz v. Cates, 256 F.3d 1077, 1081 (11th Cir. 2001)). Though Plaintiffs cite a number of district court cases from other Circuits to argue that they need not affirmatively plead an intention to purchase the Booster Seats in the future in order to maintain standing to seek injunctive relief, Plaintiffs do not cite any authority (nor has the Court found any) that suggests this proposition is supported by Eleventh Circuit precedent, which the Court must follow. See, e.g., Houston v. Marod Supermarkets, Inc., 733 F.3d 1323, 1328 (11th Cir. 2013) ("[A] plaintiff seeking injunctive relief *must show* a sufficient likelihood that he will be affected

13

by the allegedly unlawful conduct *in the future.*" (emphasis added) (quotation marks and citation omitted)). Accordingly, Plaintiffs' claim for injunctive relief is **DISMISSED without prejudice**.

### C. Fraud and Misrepresentation Claims

Defendant also argues that Plaintiffs' nationwide claims for common law fraud, fraudulent concealment, and negligent misrepresentation (Counts II, III, and V), as well as some of Plaintiffs' consumer protection-based claims, fail under Federal Rule of Civil Procedure 9(b). Dkt. No. [67-1] at 35–38. Rule 9(b) requires that a complaint "state with particularity the circumstances constituting fraud or mistake," though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Whether the "allegations of a complaint contain sufficient indicia of reliability to satisfy Rule 9(b)" is evaluated "on a case-by-case basis." U.S. ex rel. Atkins v. McInteer, 470 F.3d 1350, 1358 (11th Cir. 2006). Rule 9(b) is satisfied if the complaint sets forth

> (1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud.

FindWhat, 658 F.3d at 1296. "[U]nder Rule 9(b), it is sufficient to plead the who, what, when, where, and how of the allegedly false statements and then allege generally that those statements were made with the requisite intent." Mizzaro v. Home Depot, Inc., 544 F.3d 1230, 1237 (11th Cir. 2008).

14

Here, Defendant asserts that Plaintiffs have failed to allege "the who, what, when, where, and how" of their fraud and misrepresentation claims (and that Plaintiffs fail to identify various details about their specific purchases, including the particular packaging or marketing materials relied upon in making their purchase decisions). See Dkt. No. [67-1] at 36–38.

In response, Plaintiffs argue that their fraud claims are properly pled and compare their allegations to those in other false advertising cases in which federal district courts determined that the plaintiffs' allegations were sufficient to satisfy Rule 9(b). Dkt. No. [70] at 35–37 (citing Munsell v. Colgate-Palmolive Co., 463 F. Supp. 3d 43 (D. Mass. 2020). In essence, Plaintiffs argue that their allegations are sufficient to satisfy Rule 9(b) because they have identified the perpetrator of the fraud (Graco); identified the named Plaintiffs and their places of residence; alleged "what" Defendant's fraud was and "how" it was executed; and alleged the "where" and "when" of Defendant's fraud by describing Defendant's nationwide marketing scheme and the location of Plaintiffs' purchases. Dkt. No. [70] at 35. The Court agrees.

Here, Plaintiffs have indeed alleged that, during the class period, Defendant Graco labeled, marketed, and sold Booster Seats as though they were (1) safe for children as small as thirty pounds and as young as three years old and (2) "side-impact tested" (and thus suggesting that they met federal standards and offered more safety in side-impact collisions). See, e.g., Dkt. No. [67-1] ¶¶ 3–4, 7–8, 12, 118, 119, 137–139, 146. Plaintiffs have also alleged that Defendant made

these representations in various places, including on Defendant's website, product packaging, the Booster Seats themselves, and other websites. See id. ¶¶ 8–9, 12, 109–110, 116–121, 136–137, 195–196, 204. Finally, the Consolidated Amended Complaint alleges that Plaintiffs from various states relied on Defendant's alleged misrepresentations in making their respective purchases. See id. ¶¶ 3–4, 20, 23, 26, 29, 32, 35, 38, 41, 44, 47, 50, 53, 56, 59, 62, 65, 68, 71, 74, 77, 80, 109–110, 116–121, 195–196. Thus, the Court finds that Plaintiffs have satisfactorily stated the basis for their claims sounding in fraud—that is, "the who, what, when, where, and how" of these claims. See U.S. ex rel. Longest v. Dyncorp, No. 603CV16ORL31JGG, 2006 WL 47791, at *5 (M.D. Ga. Jan. 9, 2006) ("Rule 9(b) exists to prevent spurious charges and provide notice to defendants of their alleged misconduct, not to require plaintiffs to meet a summary judgment standard before proceeding to discovery."). Moreover, the Court is unpersuaded by Defendant's suggestion that Plaintiffs' claims fail under Rule 9(b) insofar as some Plaintiffs do not plead the exact model of Booster Seat they purchased or the *exact* time, date, and price of their purchases. See Dkt. No. [67-1] at 38. Defendant does not cite any authority suggesting that such details are necessary for a Rule 9(b) analysis. See Munsell, 463 F. Supp. 3d at 52–53 (explaining that "the specificity requirement extends only to the particulars of the allegedly misleading statement itself, not to the circumstances of the plaintiff's conduct in

reliance on that statement").[9] Accordingly, Plaintiffs' claims do not fail for the reasons argued in Defendant's brief.[10]

### D. Failure to Provide Notice for Breach of Express Warranty and Implied Warranty Claims

Defendant argues that Plaintiffs' express warranty claims fail under the laws of Alabama, California, Florida, Illinois, New York, Oregon, Pennsylvania, and Texas because the Consolidated Amended Complaint does not allege that each Plaintiff notified Defendant of a breach within a reasonable time. Dkt. No. [67-1] at 39. Defendant also argues that Plaintiffs' implied warranty claims fail

---

[9] Defendant also briefly argues that its Booster Seats comply with FMVSS 213 and that such compliance cannot constitute intentional fraud, fraudulent omission, negligent misrepresentation, or violation of state consumer fraud laws. Dkt. No. [67-1] at 38. It is unclear what relation this argument has to Rule 9(b)'s specificity requirements, and Defendant does not cite any authority illustrating why Plaintiffs' claims would fail under Rule 9(b) for this reason.

[10] The Court makes two notes concerning choice-of-law. The parties discuss and dispute choice-of-law issues at two primary points in the briefing (first in relation to Plaintiffs' fraud and misrepresentation claims, and then also in relation to Plaintiffs' unjust enrichment claims). First, the Court need not reach this issue (or any issues regarding class certification) at this time with regard to the fraud and misrepresentation claims because Defendant has only argued that these claims fail under Rule 9(b). Second, Defendant has moved to dismiss Plaintiffs' unjust enrichment claims, arguing that these claims fail or are precluded by various states' laws. Dkt. No. [67-1] at 59–61. In response, Plaintiffs maintain that Georgia law should apply to all of Plaintiffs' unjust enrichment claims, while Defendant argues that application of Georgia law to all such claims would be improper and potentially violate due process. Dkt. Nos. [70] at 37; [71] at 21–22. The Court is concerned about resolving this issue on the present briefing and record. In short, the Court finds that the briefing is not detailed enough to resolve the choice-of-law issue at this time and that it would therefore be premature to potentially dismiss claims—or make other broad determinations on this issue—based on an insufficient record. Therefore, Defendant's Motion is denied without prejudice on these issues, and Defendant may raise them again in future briefing.

under the laws of Alabama, Ohio, Oregon, Pennsylvania, and Texas for the same

reason. Id. at 47–48. Here, it is undisputed that Plaintiffs have alleged that they

provided Defendant with notice by sending Defendant a letter on November 5,

2020. Dkt. Nos. [60] ¶ 82 ("Plaintiffs, on behalf of themselves, and the Class

Members, have provided Graco reasonable notice and opportunity to cure its

breaches of express warranties, breaches of implied warranties of merchatability

[sic], and violations of consumer protection law by mailing a notice letter to

Graco on November 5, 2020."); [67-1] at 40; [70] at 41.

Defendant's first argument appears to be that Plaintiffs' notice allegation is

categorically insufficient to meet these states' notice requirements. Dkt. No. [67-

1] at 25. However, the authorities cited in Defendant's brief generally establish

that plaintiffs must plead that they gave a defendant notice of the alleged breach

within a reasonable time after discovery of the breach, not that plaintiffs must

separately plead facts about when it discovered the alleged breach or other facts

about the contents of the notice itself. See, e.g., Smith v. Apple, Inc., No. 08-AR-

1498-S, 2009 WL 3958096, at *1 (N.D. Ala. Nov. 4, 2009) ("Affirmatively

pleading notice is critical to the stating of a claim for breach of warranty under

Alabama law." (citation omitted)); Alvarez v. Chevron Corp., 656 F.3d 925, 932

(9th Cir. 2011) ("To avoid dismissal of a breach of contract or breach of warranty

claim in California, [a] buyer must plead that notice of the alleged breach was

provided to the seller within a reasonable time after discovery of the breach."

(quotation marks and citations omitted)); Garcia v. Clarins USA, Inc., No. 14-CV-

21249, 2014 WL 11997812, at *6 (S.D. Fla. 2014) ("To plead a cause of action for breach of express warranties under the Florida [UCC], a complaint must allege[] . . . notice to the seller of the breach[.]" (quotation marks and citation omitted)). As has already been noted, Plaintiffs allege that they provided notice to Defendant. Dkt. No. [60] ¶ 82.

Relatedly, Defendant also argues that Plaintiffs' November 5, 2020 letter was categorically deficient because each state requires each buyer to provide individual and specific notice to the seller about the buyer's particular purchase and the alleged breach. Dkt. Nos. [67-1] at 39–41; [71] at 22–23. However, it is not clear from the face of the Consolidated Amended Complaint that Plaintiffs' November 5, 2020 letter in fact failed to articulate details about particular Plaintiff's purchases and claims of breach. Dkt. No. [60] ¶ 82 ("Plaintiffs, on behalf of themselves, and the Class Members, have provided Graco reasonable notice and opportunity to cure its breaches of express warranties, breaches of implied warranties of merchatability [sic], and violations of consumer protection law by mailing a notice letter to Graco on November 5, 2020."). Thus, to the extent Defendant argues that Plaintiffs' November 5, 2020 letter was too general to constitute sufficient notice under particular state's laws—and to the extent this proposition is supported by relevant authority—this argument raises issues of fact about the substance of Plaintiffs' November 5, 2020 letter (and thus the sufficiency of the notice) that cannot be resolved at this stage, not least because Plaintiffs' letter is outside the pleadings (and was not produced by either party).

The next question is whether Plaintiffs' November 5, 2020 letter actually constitutes pre-suit notice as to certain Plaintiffs from Alabama, California, Florida, New York, Oregon, and Texas. Plaintiffs argue that the November 5, 2020 letter constitutes pre-suit notice for these Plaintiffs because, with two exceptions,[11] the Plaintiffs from these states were not parties to any of the underlying cases and only joined the case as of the filing of the Consolidated Amended Complaint on December 11, 2020. Dkt. No. [70] at 41–42.

Defendant disagrees and emphasizes that the suit itself was filed five months before the November 5, 2020 letter was issued, meaning that these Plaintiffs simply joined the pre-existing suit through an amended complaint. Dkt. No. [71] at 23. Thus, Defendant argues that the purpose of the notice requirement would be defeated if these Plaintiffs could satisfy the pre-suit notice requirement through a notice letter that was issued after the initial complaint was filed in this case. Id. at 23–24.

In support of this argument, Defendant cites Jones v. Apple, Inc., No. 15-CV-249-NJR-SCW, 2017 WL 11495257, at *2 (S.D. Ill. May 5, 2017). In Jones, a court applying Illinois law addressed an analogous factual situation. The problem for Defendant is that the new Plaintiffs in this case are bringing claims under the

---

[11] Plaintiffs note that one of the California Plaintiffs, Emilio Pensado, Jr., initially filed suit in California but later refiled his claims in this case, and that New York Plaintiff Silvia Tehomilic likewise initially filed suit in New York before refiling her claims in this case. Dkt. No. [70] at 41 n.8. The Court addresses these Plaintiffs' claims (and whether they are dismissed for lack of notice) below.

laws of Alabama, California, Florida, New York, Oregon, and Texas, not Illinois. Defendant has not cited any authority indicating that courts interpreting the laws of Alabama, California, Florida, New York, Oregon, or Texas have reached a similar conclusion to <u>Jones</u>. And though there may be similarities across states in terms of the requirements for bringing breach of warranty claims (and the purpose of these requirements), other district courts have observed that states sometimes do interpret various requirements for such claims differently. <u>See, e.g.</u>, <u>Gregorio v. Ford Motor Co.</u>, ---F. Supp. 3d---, No. 20-11310, 2021 WL 778913, at *11 (E.D. Mich. Mar. 1, 2021) ("Although the relevant states have all adopted U.C.C. § 2-607(3)(a), states differ on what constitutes reasonable notice and to whom notice must be given."). Thus, in the absence of Defendant citing authority establishing (or suggesting) that, as a matter of law, the November 5, 2020 letter *cannot* constitute pre-suit notice for the newly joined Plaintiffs because it would contravene the purpose of the notice requirement under Alabama, California, Florida, New York, Oregon, or Texas law (and even though these Plaintiffs were not a party to any of the underlying suits or this suit), the Court declines to reach this conclusion, at least at this time, based on the current record and briefing. At this stage, it is ultimately Defendant's burden to demonstrate that these claims fail as a matter of law, and the Court does not find that Defendant has carried its burden on this issue at this time.

Plaintiffs also argue that, in various other states, pre-suit notice is either not required or is satisfied by the filing of a complaint. Dkt. No. [70] at 42–43

(making such arguments with regard to Ohio, Pennsylvania, New York, California, Florida, and Illinois). Beginning with California and Florida, Plaintiffs argue that neither state requires notice to the manufacturer when, as in this case, the consumer did not purchase directly from the manufacturer. Dkt. No. [70] at 42–43. Defendant contests this assertion with regard to Florida law but not to California. Dkt. No. [71] at 24. The Court need not address this disputed issue as to Florida law at this time because if Plaintiffs' November 5, 2020 letter suffices as pre-suit notice to Defendant for newly joined Plaintiffs (discussed above), this point of contention is rendered moot. As to the same issue under California law, Defendant makes no rebuttal argument and, in any case, it appears Plaintiffs are correct. See, e.g., Rojas v. Bosch Solar Energy Corp., 386 F. Supp. 3d 1116, 1126 (N.D. Cal. 2019) (collecting cases supporting this proposition). For this reason, the express warranty claim asserted by Plaintiff Emilio Pensado, Jr., the California Plaintiff who was newly added to the Consolidated Amended Complaint but who had previously filed (and dismissed) a lawsuit in California, does not fail for lack of pre-suit notice (though Plaintiffs argue in their brief that Plaintiff Pensado provided pre-suit notice to Defendant). Dkt. No. [70] at 41 n.8.

Next, Plaintiffs maintain that, under Ohio law, the filing of a complaint may suffice for notice of breach of express and implied warranties. Dkt. No. [70] at 42. The Court agrees. Chemtrol Adhesives, Inc. v. Am. Mfrs. Mut. Ins. Co., 537 N.E.2d 624, 638 (Ohio 1989) ("[M]any courts have held that the filing of the complaint cannot constitute adequate notice. We decline to adopt such an

absolute rule, as we believe in a proper case the filing of a civil complaint *could* serve as notice of breach." (emphasis added) (citations omitted)).[12] Though Defendant correctly argues that some courts have more recently held that the filing of a complaint is insufficient notice under Ohio law, other courts have recently reached the opposite conclusion. Compare Forsher v. J.M. Smucker Co., No. 5:19-CV-00194, 2020 WL 1531160, at *8 (N.D. Ohio Mar. 31, 2020) with Francis v. Gen. Motors, LLC, 504 F. Supp. 3d 659, 679 (E.D. Mich. 2020) (citing Chemtrol).

Plaintiffs likewise argue that the filing of a complaint may suffice for notice of breach of express and implied warranties under Pennsylvania law. Dkt. No. [70] at 42. The Court again agrees with Plaintiffs. Precision Towers, Inc v. Nat-Com, Inc., No. 2143, 2002 WL 31247992, at *5 (Pa. C.P. Sept. 23, 2002) ("The filing of a complaint has been held to satisfy the notice requirement for a breach of warranty claim." (citations omitted); see also Gregorio, 2021 WL 778913, at *12

---

[12] In Chemtrol, the Ohio State Supreme Court explained that whether the filing of a complaint could suffice as notice of breach largely turned on a consideration of the facts and circumstances of the case (namely, a comparison of when damages were sustained versus when the suit was filed). See 537 N.E.2d at 638 (explaining that because the plaintiff's "suit was filed a full two years after the damages were sustained" the filing of the complaint was "inadequate notice as a matter of law"); see also Lincoln Elec. Co. v. Technitrol, Inc., 718 F. Supp. 2d 876, 883 (N.D. Ohio 2010) (analyzing Chemtrol and stating that "[t]he circumstances in this case are similar to the circumstances described by the court in *Chemtrol* that would preclude the complaint from constituting sufficient notice: defendant had no prior knowledge of the defects, and the complaint was filed a long period of time after plaintiff's damages were sustained").

(citing <u>Precision Towers</u>). In response, Defendant argues that more recent decisions have held that the filing of a complaint is insufficient because it thwarts the purpose of pre-suit notice, <u>see</u> Dkt. No. [71] at 24, but, again, Defendant's contention is not uniformly correct.[13] <u>See, e.g.</u>, <u>Parish v. Volkswagen Grp. of Am., Inc.</u>, 463 F. Supp. 3d 1043, 1063–64 (C.D. Cal. 2020) (analyzing various decisions regarding this issue under Pennsylvania law and finding that the filing of a complaint can constitute notice); <u>Gregorio</u>, 2021 WL 778913, at *12 (citing <u>Precision Towers</u>); <u>Persad v. Ford Motor Co.</u>, No. 17-12599, 2018 WL 3428690, at *4 (E.D. Mich. July 16, 2018) (citing <u>Precision Towers</u>). Accordingly, the Court finds that the filing of a complaint may suffice as notice of a breach of warranty claim under Pennsylvania law. <u>See</u> <u>Siqueiros v. Gen. Motors LLC</u>, No. 16-cv-07244-EMC, 2021 WL 2115400, at *13 (N.D. Cal. May 25, 2021) ("GM does not cite any Pennsylvania appellate court overruling *Precision Towers*. Mr. Graziano's filing of the complaint is therefore sufficient under Pennsylvania law to notify GM of his implied warranty claim.").

Plaintiffs also argue that that the filing of a complaint can constitute sufficient notice under New York law. Dkt. No. [70] at 42. Though Plaintiffs have

---

[13] The Pennsylvania Supreme Court observed that "the law of this Commonwealth is neither 'well-settled' nor self-evident" as to (1) "what constitutes reasonable notice in the context of a class action" and (2) whether "the consumer [must] provide an opportunity to cure before filing suit for breach of warranty." <u>Samuel-Bassett v. Kia Motors Am., Inc.</u>, 34 A.3d 1, 26 n.17 (Pa. 2011).

cited a 2010 district court decision that appears to support this proposition,[14] more recent decisions indicate that this is not the prevailing understanding of New York law. See, e.g., Barton v. Pret A Manger (USA) Ltd., ---F. Supp. 3d---, 2021 WL 1664319, at *12 (S.D.N.Y. Apr. 27, 2021) (collecting cases and stating that "[t]he weight of authority in this Circuit does not view a complaint to be by itself sufficient reasonable notice" under New York law). Accordingly, Plaintiffs' New York breach of express warranty claim (New York Count I)[15] is **DISMISSED without prejudice**.[16]

Next, Plaintiffs argue that, under Illinois law, pre-suit notice for breach of express warranty is not required where, as here, the defendant is alleged to already have actual knowledge of the product's defects. Dkt. No. [70] at 43. In response, Defendant argues that the "actual knowledge" exception to pre-suit notice under Illinois law does not apply in this case. Dkt. No. [71] at 24.

Under Illinois law, "[d]irect notice is not required when [] the seller has actual knowledge of the defect of the particular product." Connick v. Suzuki

---

[14] See In re Ford Motor Co. E-350 Van Prods. Liab. Litig. (No. II), No. 03-4558 (GEB), 2010 WL 2813788, at *73 (D.N.J. July 9, 2010).

[15] Defendant has only moved to dismiss the New York express warranty claim on this basis. See Dkt. No. [67-1] at 39, 47.

[16] As discussed above, Plaintiffs have noted that New York Plaintiff Tehomilic filed (and dismissed) a lawsuit against Graco before joining this case. Dkt. No. [70] at 41 n.8. Plaintiffs' only argument is that Plaintiff Tehomilic's "initial lawsuit in New York provided adequate pre-suit notice to Graco, especially in conjunction with the November 5, 2020 omnibus notice." Id.

Motor Co., 675 N.E.2d 584, 589 (Ill. 1996). However, "actual knowledge" in this context is not satisfied by a defendant's "generalized knowledge" that a product may be problematic; instead, "actual knowledge" also entails the defendant's knowledge that the buyer's particular transaction (and the particular product at issue) are "troublesome" and may be the basis for a specific claim. Id. at 590 ("The notice of the breach required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of *buyer's claim* that they constitute a breach." (quotation marks and citation omitted)). "Thus, even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2–607 is satisfied *only where* the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer." Id. (emphasis added).

Here, Plaintiffs do not appear to allege or argue that Defendant was on notice of their particular claims of breach (which involved particular Graco products) before they filed suit, but rather that Defendant generally knew that its Booster Seats were not as safe as they were warranted to be. These allegations are insufficient to satisfy the "actual knowledge" exception under Connick. See 675 N.E.2d at 590; Cf. In re 100% Grated Parmesan Cheese Mktg. and Sales Pracs. Litig., 393 F. Supp. 3d 745, 759 (N.D. Ill. 2019) (citing and analyzing Connick). The sole district court case cited by Plaintiffs in support of their position, Hedges v. Earth, Inc., No. 14 C 9858, 2015 WL 1843029, at *3 (N.D. Ill. Apr. 21, 2015), does not align with the holding in Connick and is therefore unpersuasive. See

<u>Muir v. NBTY, Inc.</u>, 2016 WL 5234596, at *9 (N.D. Ill. Sep. 22, 2016) (noting that <u>Hedges</u> departs from the Illinois Supreme Court's holding in <u>Connick</u>). Accordingly, Plaintiffs' Illinois breach of express warranty claim (Illinois Count I) is **DISMISSED without prejudice**.

### E. Express Warranty Claims – Other Arguments

In addition to its notice argument, Defendant raises other arguments for dismissing Plaintiffs' breach of express warranty claims. <u>See</u> Dkt. No. [67-1] at 39–44. The Court addresses these arguments separately below.

#### 1. Basis of the Bargain

Defendant argues that Plaintiffs' breach of express warranty claims fail under the laws of California, Georgia, Florida, Massachusetts, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Oklahoma, Oregon, and Texas because the Consolidated Amended Complaint fails to allege facts indicating that Defendant's representations were part of the "basis of the bargain" between the parties. <u>Id.</u> at 41–43. In response, Plaintiffs generally argue that the allegations in the Consolidated Amended Complaint are sufficient. Dkt. No. [70] at 44–45.

Each of the states at issue has adopted U.C.C. § 2-213, which describes how express warranties are formed. This section states that express warranties are created by a seller when any (1) "affirmation of fact or promise . . . relate[d] to the goods," (2) "description of the goods," or (3) "sample or model" is made "part of the basis of the bargain." <u>See</u> Cal. Com. Code § 2313; Fla. Stat. § 672.313(1)(a); O.C.G.A. § 11-2-313; Mass. Gen. Laws ch. 106 § 2-313; N.J. Stat. Ann. § 12A:2-

313; N.Y. U.C.C. Law § 2-313; N.C. Gen. Stat. § 25–2–313; Ohio Rev. Code Ann. § 1302.26(A)(1)–(2); Okla. Stat. Ann. tit. 12A, § 2-313; Or. Rev. Stat. Ann. § 72.3130; 13 Pa. Cons. Stat. § 2313(a); Tex. Bus. & Com. Code Ann. § 2.313.

Defendant first argues that, under the laws of California, Florida, Georgia, Massachusetts, New Jersey, New York, North Carolina, Ohio, Oklahoma, Oregon, Pennsylvania, and Texas, a Plaintiff must allege awareness of the statements that formed the basis of the bargain between the parties. See Dkt. No. [67-1] at 41–42. Defendant asserts that the Consolidated Amended Complaint fails to allege that any individual Plaintiff saw, read, or was aware of any of Defendant's statements that allegedly constituted express warranties. Id. at 43 (citing Dkt. No. [60] ¶¶ 275–276).

In response, Plaintiffs argue that they have sufficiently alleged such awareness because the Consolidated Amended Complaint identifies the statements from Graco that the Plaintiffs from these states were exposed to before purchasing their respective Booster Seats (and which allegedly impacted their decisions to purchase Booster Seats). Dkt. No. [70] at 44.

The Court agrees with Plaintiff. Here, as Defendant acknowledges, Plaintiffs allege that Defendant made the following express warranties and representations about the Booster Seats:

a. Were safe for children who weigh as little as 30 pounds;
b. Were safe for children who weigh less than 40 pounds
c. Were "SIDE IMPACT TESTED" and provided side-impact protection;

> d.   Were 'engineered and tested and crash tested to meet or exceed U.S. safety standards';
>
> e.   Were subjected to 'a combination of the most rigorous crash tests that help to protect your child in frontal, side, rear, and rollover crashes' and
>
> f.   Included a headrest that 'helps keep your child secure' in a side impact collision[17]

Dkt. No. [60] ¶¶ 275, 325, 352, 434, 472, 500, 529, 562, 604, 640, 679, 709.

Then, each Plaintiff from the states at issue also individually alleges that he or she (1) "decided to buy the Booster Seat based in part on Graco's representations that it was 'safe' for children as light as 30 pounds and as young as three-years-old, and it was 'SIDE IMPACT TESTED' (i.e., it would protect the child occupant in frontal, side, rear & rollover)" and that (2) "[t]hese representations were among the primary reasons [each Plaintiff] chose the Booster Seat." Id. ¶¶ 23, 26, 29, 32, 35, 44, 47, 50, 53, 56, 59, 65, 68, 71, 74, 77. Given that these Plaintiffs affirmatively allege that they decided to buy their respective Booster Seats based at least in part on Defendant's representations about the safety and capabilities of the seats, it is reasonably inferable—when viewing the allegations in the light most favorable to Plaintiffs—that Plaintiffs were aware of and exposed to these alleged representations before they made their purchases.

Still, Defendant maintains that Plaintiffs' allegations are overly conclusory because Plaintiffs fail to state where they heard these representations, when they saw or heard them, from whom they heard them, and whether the statements

---

[17] This alleged representation concerning the headrest is not listed under the California Plaintiffs' express warranty claim. See Dkt. No. [60] ¶ 275.

induced them to purchase Defendant's products. Dkt. No. [71] at 25. With regard to some of these details, Defendant seems to overlook facts that are alleged in the Consolidated Amended Complaint. For instance, Plaintiffs allege that it was Graco who made various representations on its website, marketing materials, and the Booster Seats themselves. See, e.g., Dkt. No. [60] ¶¶ 3, 8, 12, 118, 119, 138. As discussed above, Plaintiffs also affirmatively allege that these representations at least partly informed their purchasing decisions, and thus it is reasonably inferable that these representations *did* play a part in inducing Plaintiffs' purchases. Id. ¶¶ 23, 26, 29, 32, 35, 44, 47, 50, 53, 56, 59, 65, 68, 71, 74, 77. Accordingly, when viewing Plaintiffs' allegations in the light most favorable to them, the Court is not persuaded that Plaintiffs' allegations are insufficient as a matter of law.

Defendant separately argues that Plaintiffs' express warranty claims also fail under California, New York, Oklahoma, Oregon, and Texas law because the Consolidated Amended Complaint fails to allege facts showing that Plaintiffs relied on any of Graco's statements.[18] Dkt. No. [67-1] at 43–44. The Court disagrees for the reasons discussed above. Here, as Plaintiffs argue in their Response, each Plaintiff alleges that he or she (1) "decided to buy the Booster Seat based in part on Graco's representations that it was 'safe' for children as light as

---

[18] As an initial matter, reliance is not an additional requirement under California law. Hastings v. Ford Motor Co., 495 F. Supp. 3d 919, 924 (S.D. Cal. 2020) (citing Weinstat v. Dentsply Int'l, Inc., 103 Cal. Rptr. 3d 614, 626 (Cal. Ct. App. 2010)).

30 pounds and as young as three-years-old, and it was 'SIDE IMPACT TESTED'"
and that (2) "[t]hese representations were among the primary reasons [each
Plaintiff] chose the Booster Seat." Dkt. No. [60] ¶¶ 23, 26, 50, 62, 65, 77. It is
reasonably inferable from these allegations that Plaintiffs relied on Defendant's
alleged representations in making their respective purchases. See TEU Servs.,
Inc. v. Inventronics USA, Inc., No. SA-16-CV-01023-RCL, 2018 WL 3338217, at
*11 (W.D. Tex. Feb. 5, 2018) ("[I]n order to survive a motion to dismiss, a plaintiff
pleading an express-warranty claim must plead sufficient facts from which the
Court can draw a reasonable inference that the plaintiff relied on the defendant's
representation and that that representation became part of the basis of the
bargain between the parties.").

### 2. Failure to Allege Privity – Florida Law

Defendant argues that Plaintiffs' breach of express warranty claim fails
under Florida law due to a lack of privity between the parties. Dkt. No. [67-1] at
44. Defendant asserts that because Florida Plaintiff Grabowski purchased the
product from Amazon.com instead of directly from Graco, she was not in privity
with Graco, and her express warranty claim therefore fails under Florida law. Id.
In response, Plaintiffs make two primary arguments. First, Plaintiffs appear to
contend that privity exists because Defendant expressly communicated
warranties to Plaintiffs through marketing materials, product descriptions, and
labeling. Dkt. No. [70] at 44–45. Second, Plaintiffs argue (alternatively) that

privity is not required under the alleged circumstances of Plaintiff Grabowski's purchase. Id.

The Court does not find that this claim should be dismissed for lack of privity, at least at this time. First, as the Eleventh Circuit has observed, it is unclear whether privity is strictly required for all breach of express warranty claims under Florida law: "Our review of Florida law reveals no clear rule about whether privity is required in every Florida express warranty claim." Godelia v. Doe 1, 881 F.3d 1309, 1321 (11th Cir. 2018). Indeed, some courts applying Florida law have held that privity is not required where, as here, plaintiffs allegedly purchased the product in a common retail setting in which (1) there was no learned intermediary between the manufacturer and end-purchaser, and (2) the express warranty the defendant was alleged to have breached was on the product's packaging. See, e.g., Smith v. Wm. Wrigley Jr. Co., 663 F. Supp. 2d 1336, 1341–43 (S.D. Fla. 2009); Garcia v. Kashi Co., 43 F. Supp. 3d 1359, 1388–89 (S.D. Fla. 2014). However, even assuming arguendo that privity is strictly required, some courts analyzing Florida case law have nevertheless noted—as Plaintiffs appear to also argue—that "some factual circumstances satisfy the privity requirement even in the absence of a purchase directly from the manufacturer." See MacMorris v. Wyeth, Inc., No. 2:04CV596FTM-29DNF, 2005 WL 1528626, at *3 (M.D. Fla. June 27, 2005) (collecting cases). In denying motions to dismiss, these courts have noted that resolution of the privity issue involves considerations of fact that must be addressed at a later stage. Id.

(denying motion to dismiss in case where express warranty was alleged to be in the form of "direct-to-consumer advertisements"); see also Mardegan v. Mylan, Inc., No. 10-14285-CIV, 2011 WL 3583743, at *6 & n.4 (S.D. Fla. Aug. 12, 2011). Defendant's Motion is therefore denied on this issue at this time.[19]

### F. Breach of Implied Warranty Claims – Other Arguments

In addition to its notice argument (discussed above in Part D), Defendant raises other arguments for dismissing Plaintiffs' breach of implied warranty claims. Dkt. No. [67-1] at 44–50. The Court addresses these arguments below.

### 1. Failure to Allege Privity

Defendant argues that Plaintiffs' implied warranty claims fail under the laws of Alabama, California, Florida, Georgia, Illinois, New York, North Carolina, and Ohio for lack of privity. Dkt. No. [67-1] at 44–45. Plaintiffs appear to concede that their Alabama implied warranty claim fails for this reason.[20] Dkt. No. [70] at 45–46. As for the other states at issue, Plaintiffs do not dispute that they have privity requirements; instead, Plaintiffs contend that certain exceptions to these states' privity requirements in these states that are applicable here. Id. at 46–47.

First, Plaintiffs argue that Florida, Illinois, New York, North Carolina, and Ohio recognize a third-party beneficiary exception to the privity rule. Id. at 46.

---

[19] For these reasons, the Court need not presently reach Plaintiffs' second argument, which is that privity is not required under the facts of this case. Dkt. No. [70] at 45.

[20] Accordingly, the Plaintiffs' Alabama implied warranty claim (Alabama Count II) is **DISMISSED**.

Plaintiffs assert that because they have adequately alleged that they were the intended third-party beneficiaries of Graco's contracts with it retailers, they have sufficiently pled their breach of implied warranty claims under these states' laws. Id. In its Reply, Defendant argues that Plaintiffs have failed to plead sufficient facts to invoke this exception under the relevant states' laws. Dkt. No. [71] at 25–26. The Court will address each state—and Plaintiffs' corresponding allegations—in turn.

Turning first to Florida, Florida Plaintiff Grabowski alleges that she bought a Graco TurboBooster Seat from Amazon.com on or about February 29, 2020. Dkt. No. [60] ¶ 29. Additionally, Plaintiff Grabowski alleges that she and the "members of the Florida Subclass purchased Booster Seats manufactured and marketed by Graco by and through its authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Graco's contracts with authorized sellers, or eventual purchasers when bought from a third party." Id. ¶ 332. These allegations are sufficient to meet the third-party beneficiary exception at this stage. See, e.g., Sanchez-Knutson v. Ford Motor Co., 52 F. Supp. 3d 1223, 1234 (S.D. Fla. 2014). Defendant cites Varner v. Domestic Corp., No. 16-22482-Civ-Scola, 2017 WL 3730618 (S.D. Fla Feb. 7, 2017), to argue that Plaintiff Grabowski has not alleged sufficient facts to satisfy the third-party beneficiary exception, but in Varner the plaintiffs' third-party beneficiary argument was rejected because they had failed to allege "when, how, and from whom their [products] were purchased." Varner, 2017 WL 3730618, at

34

*12. As noted above, Plaintiff Grabowski pled those details in the Consolidated Amended Complaint. See Dkt. No. [60] ¶ 29.

Next, Illinois Plaintiff Davis-Berg alleges she purchased a Graco TurboBooster LX seat from a Target in Homewood, Illinois, in January 2020. Id. ¶ 38. Illinois Plaintiff Hager alleges she purchased two Graco Affix Highback Booster Seats from TPCooking.com on June 30, 2017, and two more Booster Seats of this model on September 5, 2019. Id. ¶ 41. Plaintiffs argue that they have alleged that they were the intended third-party beneficiaries of Graco's contracts with its retailers. See Dkt. No. [70] at 46 (citing Dkt. No. [60] ¶ 189). However, Plaintiffs' allegations are insufficient under Illinois law to satisfy the third-party beneficiary exception, "which applies where the manufacturer knew the identity, purpose and requirements of the dealer's customer and manufactured or delivered the goods specifically to meet those requirements." Elward v. Electrolux Home Prods., Inc., 214 F. Supp. 3d 701, 705 (N.D. Ill. 2016) (quotation marks and citations omitted). Here, the Illinois Plaintiffs merely allege that they purchased their Booster Seats from Target and TPCooking.com. See Manley v. Hain Celestial Grp., Inc., 417 F. Supp. 3d 1114, 1124 (N.D. Ill. 2019) ("[The third-party beneficiary exception] has no application to plaintiff's claim. She does not allege that defendant manufactured the product to her specifications but sold it to her through a middle man. Rather, plaintiff alleges she picked it up off the shelf at a TJ Maxx. Nor does she allege she was a direct beneficiary of any contract between defendant and TJ Maxx. Under *Rozny* and *Altevogt*, she would be, at

35

best, an incidental beneficiary."). Accordingly, Plaintiffs' Illinois breach of

implied warranty claim (Illinois Count II) is **DISMISSED without**

**prejudice**.[21]

> Turning next to New York,

> Under New York law, a plaintiff claiming rights as a third-party
> beneficiary must demonstrate: (1) the existence of a valid and binding
> contract between other parties, (2) that the contract was intended for
> his benefit[,] and (3) that the benefit to him is sufficiently immediate,
> rather than incidental, to indicate the assumption by the contracting
> parties of a duty to compensate him if the benefit is lost.

Marshall v. Hyundai Motor Am., 51 F. Supp. 3d 451, 469 (S.D.N.Y. 2014)

(quotation marks and citations omitted). New York Plaintiff Tehomilic alleges she

bought two Graco TurboBooster Highback Booster Seats from BestBuy.com on

July 27, 2019. Dkt. No. [60] ¶ 50. As has already been discussed, Plaintiffs argue

that they have alleged that they were the intended third-party beneficiaries of

Graco's contracts with its retailers. See Dkt. No. [70] at 46 (citing Dkt. No. [60] ¶

189). As with the Illinois Plaintiffs, these allegations are insufficient under New

---

[21] Plaintiffs also argue that Illinois recognizes an exception to the privity
requirement when the manufacturer has made direct representations to the
consumer. Dkt. No. [70] at 47. However, the Court is not persuaded by Plaintiffs'
arguments on this point. Though Plaintiffs cite Elward in support of their
position, recent decisions by other courts interpreting Illinois law have cast
serious doubt on the applicability of the "direct dealing" exception in cases where,
as here, the alleged contact between the manufacturer and the end-consumer is
primarily through representations in marketing materials or advertisements. See
Guajardo v. Skechers USA, Inc., 503 F. Supp. 3d 746, 752–53 (C.D. Ill. 2020);
Redmon v. Whirlpool Corp., No. 20 C 6626, 2020 WL 9396529, at *5 (N.D. Ill.
Apr. 28, 2020).

York law. See Patellos v. Hello Prods., LLC, ---F. Supp. 3d---, 2021 WL 827769, at

*8 (S.D.N.Y.  Mar. 4, 2021) (explaining that, though the plaintiffs had alleged that

they "were intended third-party beneficiaries of the warranties breached herein,"

this allegation was still insufficient under New York law because "it is devoid of

facts indicating that the contracts between [the defendant] and the two online

sellers of [the product] at issue, Amazon and Target, were intended to benefit the

plaintiffs"); see also Cummings v. FCA US LLC, 401 F. Supp. 3d 288, 313

(N.D.N.Y. 2019) ("Plaintiff has failed to allege facts plausibly suggesting the

applicability of [the third-party beneficiary] exception here because she has not

included any factual allegations regarding the contract between Defendant and

the authorized dealer, much less any factual allegations plausibly suggesting that

the contract was intended to provide a sufficiently immediate benefit to her."

(citations omitted)). Accordingly, Plaintiffs' New York breach of implied warranty

claim (New York Count II) is **DISMISSED without prejudice**.[22]

---

[22] Plaintiffs also argue that New York law recognizes an exception to the privity
requirement when the product at issue is a "source of danger." Dkt. No. [70] at
47. In response Defendant argues that the "source of danger" privity exception
does not apply to implied warranty claims that only allege economic loss. Dkt.
No. [71] at 26. The Court agrees with Defendant on this issue. See Cummings v.
FCA US LLC, 401 F. Supp. 3d 288, 311–13 (N.D.N.Y. 2019) (analyzing relevant
case law and concluding that the "thing of danger exception"—to the extent it
exists under New York law—does not apply in cases where the only alleged injury
is economic); Dixon v. Ford Motor Co., No. 14-CV-6135 (JMA/ARL), 2015 WL
6437612, at *4–5 (E.D.N.Y. Sep. 30, 2015) (reviewing New York law and
concluding that (1) New York courts have rarely, if ever, followed the "thing of
danger" exception in cases involving purely economic injury and (2) "numerous
New York state court decisions have rejected economic loss claims based on a
lack of privity in situations where the product at issue was clearly dangerous").

Turning to North Carolina law, some courts simply observe that "if the third party is an intended beneficiary, the law implies privity of contract." See, e.g., In re MyFord Touch Consumer Litig., 46 F. Supp. 3d 936, 985 (N.D. Cal. 2014). Others state that plaintiffs must also "show (1) the existence of a contract between two other persons; (2) the contract was valid and enforceable; and (3) the contract was entered into for [the plaintiff's] direct, and not incidental, benefit." Traxler v. PPG Indus., Inc., 158 F. Supp. 3d 607, 625 (N.D. Ohio 2016) (citation omitted). Here, North Carolina Plaintiff Sanford alleges that she bought a Graco Affix Highback Booster Seat from Amazon.com on December 14, 2019. Dkt. No. [60] ¶ 53. Plaintiff Sanford also alleges that she and the "members of the North Carolina Subclass purchased Booster Seats manufactured and marketed by Graco by and through its authorized sellers for retail sale to consumers, or were otherwise expected to be the third-party beneficiaries of Graco's contracts with authorized sellers, or eventual purchasers when bought from a third party." Id. ¶ 536.

In arguing that these allegations are insufficient, Defendant relies on Traxler, but in that case the district court merely concluded that it was "questionable" whether the plaintiffs' allegations were sufficient because the plaintiffs had only alleged "that 'they [were] the intended third-party beneficiaries'" of the warranty that was at issue. See Traxler, 158 F. Supp. 3d at 625–26. Because the Court must construe Plaintiffs' allegations in their favor, and because it is Defendant's burden at this stage to show that Plaintiffs'

allegations are insufficient as a matter of law, the Court finds that the North Carolina implied warranty claim does not fail for the reasons argued by Defendant at this time.

Turning to the next state at issue, Ohio Plaintiff Clarke alleges that in or around 2019 and 2020, she purchased a Graco TurboBooster Seat from Aldi and another from Walmart. Dkt. No. [60] ¶ 56. Similarly, Ohio Plaintiff Murphy alleges that she purchased a Graco Turbobooster Seat at Walmart around June 2019. Id. ¶ 59. Though Plaintiffs have argued that they alleged that they were the intended third-party beneficiaries of Graco's contracts with its retailers, see Dkt. No. [70] at 46 (citing Dkt. No. [60] ¶ 189), Plaintiffs' third-party beneficiary allegations are insufficient under Ohio law. See Traxler, 158 F. Supp. 3d at 625 ("Plaintiffs claim that 'Plaintiffs and class members are intended third-party beneficiaries of contracts' between Defendants and their dealers. They make no other specific allegations supporting this contention. Absent some additional allegation, Plaintiffs' purchase of Rescue It! Products from Lowe's was a mere 'downstream consumer transaction.'"); Rollolazo v. BMW of N. Am., LLC, No. CV 16-00966 BRO, 2017 WL 1536456, at *16 (C.D. Cal. Feb. 3, 2017) (finding plaintiffs' allegations insufficient under the third-party beneficiary exception in Ohio "because Plaintiffs fail to allege facts . . . such as (1) BMW knew it was manufacturing any particular Subject Vehicle for a particular Ohio plaintiff, (2) BMW NA does not mass-produce the Subject Vehicle, or (3) BMW knew exactly who the Ohio consumer of a particular Subject Vehicle would be"). Accordingly,

Plaintiffs' Ohio breach of implied warranty claim (Ohio Count II) is **DISMISSED without prejudice**.

Plaintiffs' next argument on this issue concerns California law. Plaintiffs note that there is a split in authority as to whether California recognizes a third-party beneficiary exception, but they argue that the Court should find in favor of such an exception existing under California law. Dkt. No. [70] at 46. In its Reply, Defendant argues that other courts have recently held that this exception does not apply in the consumer warranty context. Dkt. No. [71] at 26. However, the opposite is also true. See, e.g., Mosqueda v. Am. Honda Motor Co., Inc., 443 F. Supp. 3d 1115, 1128–29 (C.D. Cal. 2020). On balance, the Court is more persuaded that a third-party beneficiary exception "remains viable under California law." In re MyFord, 46 F. Supp. 3d at 984; see also Mosqueda, 443 F. Supp 3d at 1129 ("[T]he Court concurs with many of the courts in the Ninth Circuit to consider the issue and determines that where a plaintiff sufficiently pleads that he or she is a third-party beneficiary to a contract that gives rise to the implied warranty of merchantability, he or she may assert a claim for the warranty's breach."). Here, California Plaintiff English alleges she bought a Graco TurboBooster from a Target in or around 2017. Dkt. No. [60] ¶ 23. California Plaintiff Pensado alleges he purchased a Graco TurboBooster LX Highback Booster Seat at a Costco on or around May 6, 2018. Dkt. No. [60] ¶¶ 23, 26. As has been discussed, Plaintiffs also argue that they have alleged that they are the ultimate consumers of Defendant's products and are thus the intended third-

party beneficiaries of Defendant's contracts with its retailers. Dkt. No. [70] at 46 (citing Dkt. No. [60] ¶ 189). Defendant has only argued that the third-party beneficiary exception has not been recognized by some recent district court decisions (as opposed to challenging the sufficiency of Plaintiffs' third-party beneficiary allegations); therefore, the Court does not find, at least at this time, that California Plaintiffs' allegations are insufficient for invoking the exception.

Finally, Plaintiffs also argue that Georgia recognizes an exception to the privity requirement when the manufacturer has made direct representations to the consumer. Dkt. No. [70] at 47. The Court agrees with Plaintiffs. See Lee v. Mylan Inc., 806 F. Supp. 2d 1320, 1326 (M.D. Ga. 2011) (stating that, under Georgia law, "[i]f the manufacturer expressly warrants to the ultimate consumer that the product will perform in a certain way or that it meets particular standards, privity with that ultimate consumer is deemed to exist" and that, "[o]nce privity is established, a plaintiff may bring claims for breach of the implied warrant[y] of merchantability").

### 2. Disclaimer

Defendant next argues that Plaintiffs implied warranty claims fail under the laws of New Jersey, Oklahoma, and Texas because Graco disclaimed any implied warranty through its "Limited Warranty" that is posted on the Graco website. Dkt. No. [67-1] at 45–46. In response, Plaintiffs initially note that Defendant's argument calls for the Court to consider the "Limited Warranty"

allegedly posted on Defendant's website, which is material that is outside the pleadings. Dkt. No. [70] at 47.

"[T]he court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed." Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005). Here, the "Limited Warranty" on Defendant's website is not central to any of Plaintiffs' claims; instead, it appears to only be central to one of Defendant's defenses. Defendant attempts to justify its inclusion of the "Limited Warranty" at this stage by arguing that the Graco website is referenced multiple times in Plaintiffs' Consolidated Amended Complaint, but it is unclear how or why this is relevant to whether the "Limited Warranty" is itself central to Plaintiffs' claims. Dkt. No. [71] at 26–27. Accordingly, the Court declines to consider this evidence at this stage, which renders the arguments predicated on it moot (for now). Jones v. Auto. Ins. Co. of Hartford, Conn., 917 F.2d 1528, 1531–32 (11th Cir. 1990) ("It is within the judge's discretion to decide whether to consider matters outside of the pleadings that are presented to the court.").

### 3.  Particular Purpose

Defendant also argues that Plaintiffs' implied warranty claims fail because Plaintiffs do not allege a particular purpose for the Booster Seats that differs from the ordinary purpose. Dkt. No. [67-1] at 48. Defendant cites every relevant state's codification of U.C.C. § 2-315—the provision of the U.C.C. pertaining to implied

warranties of fitness for a particular purpose—before arguing that Plaintiffs'
implied warranty claims fail because Plaintiffs have not alleged a particular
purpose for the Booster Seats that differs from their ordinary purpose. Id. at 48–
49. Plaintiffs respond to this argument by asserting that they have adequately
alleged such a breach. Dkt. No. [70] at 48–49. Notably, neither party ever cites
paragraphs from the Consolidated Amended Complaint when making their
respective arguments about these purportedly alleged claims. See Dkt. Nos. [67-
1] at 48–49; [70] at 48–49; [71] at 27–28.

After reviewing the parties' arguments and the Consolidated Amended
Complaint, it is unclear why the parties have briefed this issue. Plaintiffs never
reference claims for breach of an implied warranty of fitness for a particular
purpose in the Consolidated Amended Complaint. Indeed, Plaintiffs never cite
any state's codification of § 2-315 in the Consolidated Amended Complaint.
Instead, it appears that Plaintiffs only bring claims for breach of implied
warranty of merchantability under § 2-314. Claims for breach of implied warranty
of merchantability and breach of implied warranty of fitness for a particular
purpose are distinct claims. See, e.g., Advon Corp. v. Coopwood's Air Condition
Inc., ---F. Supp. 3d---, 2021 WL 391716, at *4 (S.D. Tex. Feb. 4, 2021) ("[The
third-party plaintiff] brings *two claims* for breach of implied warranty—one as to
merchantability, the other as to fitness for a particular purpose." (emphasis
added)). As it appears that Plaintiffs have simply not pled a claim for breach of
implied warranty of fitness for a particular purpose, the Court does not address

these arguments other than to say that the fact that Plaintiffs do not plead such claims has no bearing on the sufficiency of their claims for breach of implied warranty of merchantability.

### 4. Massachusetts Implied Warranty Claim

Defendant argues that Plaintiffs' Massachusetts implied warranty claim fails under Massachusetts law for two reasons. First, Defendant maintains that Massachusetts's "economic loss rule" bars the implied warranty claim because Massachusetts Plaintiff Arnold has only alleged economic damages. Dkt. No. [67-1] at 49. Second, Defendant argues that the Massachusetts implied warranty claim fails because the Consolidated Amended Complaint fails to allege that Plaintiff Arnold used the Booster Seat as intended by Graco or in a manner at least foreseeable to Graco. Id. at 49–50.

Defendant is incorrect on both points. First, as noted in Plaintiffs' Response and conceded in Defendant's Reply, the bar on recovery of purely economic damages under Massachusetts law (the economic loss rule) does not apply to contract-based breach of warranty claims, which is the basis of Plaintiffs' Massachusetts implied warranty claim. Sharp v. Hylas Yachts, Inc., No. 11-11814-JCB, 2015 WL 13656988, at *7 (D. Mass. Jan. 14, 2015)) ("[W]here a party's warranty claims are contract-based, the economic loss doctrine does not apply." (citation omitted). Defendant's cursory assertion that Plaintiffs' implied warranty claim instead "sounds in tort" (and is therefore barred by the economic loss rule)

is insufficient for carrying Defendant's burden of showing this claim fails as a matter of law. Dkt. No. [71] at 28.

As for Defendant's second argument, Plaintiff Arnold alleges that she purchased a Booster Seat for her children based in part on Defendant's representations about its safety features and capabilities. Dkt. No. [60] ¶ 44. She also alleges that she stopped using the Booster Seat once she became aware that Defendant's representations were allegedly untrue. See id. ¶ 45. It is reasonably inferable from these allegations that Plaintiff Arnold used the Booster Seat as intended by Graco—that is, as a car seat for her children—because she alleges that she subsequently stopped using the Booster Seat. Id. Thus, the Court finds Defendant's arguments on this point unavailing.

### G. Magnuson-Moss Claims

Defendant moves to dismiss Plaintiffs' Magnuson-Moss Warranty Act Claims, arguing that these claims fail because Plaintiffs' state-law warranty claims fail. Dkt. No. [67-1] at 50. Indeed, breach of warranty claims asserted under the Magnuson-Moss Warranty Act are based on underlying state law, so their success (or failure) depends on their sufficiency under the relevant state's law. See Brown v. Electrolux Home Prods., 817 F.3d 1225, 1231 (11th Cir. 2016) (noting that claims under the Magnuson-Moss Warranty Act are "based on state law"); see also Cardenas v. Toyota Motor Corp., 418 F. Supp. 3d 1090, 1110 (S.D. Fla. 2019) ("The Magnuson-Moss Warranty Act gives consumers a private right of against warrantors for a breach of warranty, as defined by state law." (citation

omitted)). "Therefore, a federal court applies state law to Magnuson-Moss claims for breach of written and implied warranties." <u>Pearson v. Winnebago Indus., Inc.</u>, No. 5:15-cv-43-Oc-PRL, 2016 WL 6893937, at *5 (M.D. Fla. Nov. 23, 2016) (citation omitted). The Court has already determined that the following breach of warranty claims are due to be dismissed: Alabama Count II (implied warranty claim); Illinois Counts I and II (express and implied warranty claims); New York Counts I and II (express and implied warranty claims); Ohio Count II (implied warranty claim).[23] Accordingly, the Magnuson-Moss claims that correspond with these claims are likewise **DISMISSED.**

### H. Additional State-Specific Claims

Defendant moves to dismiss various other state law claims asserted in the Consolidated Amended Complaint. The Court addresses these arguments separately below.

### 1. California Consumer Protection Statutes

Defendant moves to dismiss California Counts III, IV, and V, which are claims for violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*, the California Consumer Legal Remedies Act, Cal. Civ. Code 1750, *et seq.*, and the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* Dkt. No. [67-1] at 51. Plaintiffs allege that Defendant

---

[23] With the exception of the Alabama implied warranty claim (Alabama Count II), these claims have been **dismissed without prejudice** (and thus with leave to amend).

violated these statutes by "misrepresenting the Booster Seats as being safe for children weighing less than 40 pounds and beings side-impact tested, and by failing to disclose and actively concealing the dangers and risk posed by the Booster Seats[,]" see Dkt. No. [60] ¶ 290, 305, and by "misrepresenting and fraudulently concealing the safety and testing of the Booster Seats," id. ¶ 316.

Plaintiffs' claims under these statutes "are governed by the reasonable consumer test." Williams v. Gerber Prods. Co., 552 F.3d 934, 938 (9th Cir. 2008). "Under the reasonable consumer standard, [Plaintiffs] must show that members of the public are likely to be deceived." Id. (citations omitted). Defendant argues that all three of these claims should be dismissed because the representations challenged in Consolidated Amended Complaint—namely that the Booster Seats are "side-impact tested" and had a minimum safety weight of thirty pounds—are true (or complied with safety standards established by NHTSA), and are therefore not actionable as "deceptive," "misleading," or "fraudulent." Dkt. No. [67-1] at 51–52.

The Court disagrees. The Court is instead persuaded by Plaintiffs' argument that, at the very least, reasonable consumers could believe that Booster Seats advertised and represented as "side-impact tested" would offer appreciably increased safety in side-impact collisions. Dkt. No. [70] at 56–57. Plaintiffs have alleged that this representation by Defendant was false or misleading because Defendant's Booster Seats are, in fact, not appreciably safer in such accidents. See, e.g., Dkt. No. [60] ¶¶ 3, 8–12, 134, 137–138, 141–142. And even accepting

that the "side-impact tested" representation may have been literally true, it would nevertheless still be actionable if it was ultimately misleading to a reasonable consumer. <u>Williams</u>, 552 F.3d at 938 ("The California Supreme Court has recognized that these laws prohibit not only advertising which is false, but also advertising which, although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." (quotation marks and citations omitted) (alterations adopted)). In addition, the Court notes that these issues are typically a question of fact that are not appropriately decided at the motion to dismiss stage. <u>Id.</u> (stating that "California courts . . . have recognized that whether a business practice is deceptive will usually be a question of fact not appropriate for decision on demurrer" and characterizing the granting of a motion to dismiss on these issues as a "rare situation").

> **2.  Florida Unfair and Deceptive Trade Practices Act, Illinois Consumer Fraud Act, Massachusetts Consumer Protection Law, Texas Trade Practices and Consumer Protection Act, and Oklahoma Consumer Protection Act**

Defendant argues that a number of Plaintiffs' state-specific claims fail because they are exempt under relevant state law, or because Defendant's alleged misconduct was permitted or required under federal law (or both). The Court begins with Defendant's arguments regarding Florida Count III before moving to the others.

Defendant moves to dismiss Florida Count III, a claim under the Florida Unfair and Deceptive Trade Practices Act ("FUDTPA"), Fla. Stat. §§ 501.201, *et*

48

*seq*. Dkt. No. [67-1] at 52. Defendant argues that the FUDTPA claim fails because Defendant's Booster Seats comply with (or are specifically permitted by) federal safety standards set by the National Highway Traffic Safety Administration ("NHTSA"). Id. (citing Fla. Stat. § 501.212(1)).

Under § 501.212(1), the FUDTPA does not apply to "[a]n act or practice required or specifically permitted by federal or state law." Thus, Defendant argues that § 501.212(1)'s exemption applies to Florida Count III because Defendant's alleged conduct is permitted by NHTSA (specifically by the Federal Motor Vehicle Safety Standard ("FMVSS 213"), 49 C.F.R. § 571.213). See Dkt. Nos. [67-1] a 52; [71] at 33–34. However, Plaintiffs contend that § 501.212(1)'s exemption does not apply in this case because Defendant's alleged conduct was not "required" or "specifically permitted" by NHTSA. Dkt. No. [70] at 51–56.

The Court agrees with Plaintiffs. As Plaintiffs note, FMVSS 213 does not "specifically authorize" or "require" Defendant to state that its Booster Seats are safe for children under forty pounds. Instead, it requires a manufacturer to include a label stating its recommendation for the maximum and minimum sizes of children "who can safely occupy the system, except that booster seats shall not be recommended for children whose masses are less than 13.6 kg." 49 C.F.R. § 571.213 S5.5.2(f). In other words, while FMVSS 213 requires a manufacturer to make a recommendation, it leaves it up to the individual manufacturer (like Defendant) to determine what that specific safety recommendation should be (*i.e.*, the appropriate height and weight at which children can safely occupy the

manufacturer's seat), with the caveat that "booster seats shall not be recommended for children whose masses are less than 13.6 kg" (or thirty pounds). <u>Id.</u> Furthermore, while FMVSS 213 does not presently include side-impact testing standards or requirements, it expressly forbids manufacturers from including "[a]ny label or written instructions" that are "misleading to the customer." <u>Id.</u> S5.5. Thus, to the extent Defendant's "side-impact tested" label misleadingly suggested that the Booster Seats offered increased safety in side-impact collisions (as alleged by Plaintiffs), this representation would in fact violate FMVSS 213 rather than be authorized by it. Accordingly, Defendant's request to dismiss this claim is denied.

Defendant's arguments for dismissing Illinois Count III,[24] Massachusetts Count III,[25] and Texas Count III[26] are based on the same premise that is

---

[24] Illinois Count III is a claim under the Illinois Consumer Fraud Act ("ICFA"), 815 Ill. Comp. Stat. § 505/1, *et seq.* Similar to the FUDTPA provision cited above, § 505/10b of the ICFA states that the Act shall not apply to "[a]ctions or transactions specifically authorized by laws administered by any regulatory body or officer acting under statutory authority of this State or the United States."

[25] Massachusetts Count III is a claim under the Massachusetts Consumer Protection Law ("MCPL"), Mass Gen. Laws Ch. 93a, § 1, *et seq.* Section 3 of the MCPL states an exemption provision that is similar to the ones found in the FUDTPA and ICFA: "Nothing in this chapter shall apply to transactions or actions otherwise permitted under laws as administered by any regulatory board or officer acting under statutory authority of the commonwealth or of the United States."

[26] Texas Count III is a claim under the Texas Deceptive Trade Practices and Consumer Protection Act, Tex. Bus. & Com. Code § 17.4, *et seq.* Defendant does not argue that it is exempt under the TDCPA, but rather that there simply cannot

addressed above: Defendant maintains that its alleged conduct was specifically permitted or required by NHTSA and federal law. Dkt. No. [67-1] at 38–39, 43. For the reasons discussed above, the Court similarly denies Defendant's request to dismiss Illinois Count III,[27] Massachusetts Count III, and Texas Count III.

Finally, Defendant has also moved to dismiss Oklahoma Count III, which is a claim under the Oklahoma Consumer Protection Act ("OCPA"), Okla. Stat. tit. 15 § 751, *et seq*. Dkt. No. [67-1] at 57. The OCPA provides a slightly broader exemption: it does not apply to any "[a]ctions or transactions *regulated* under laws administered by the Corporation Commission or any other regulatory body or officer acting under statutory authority of this state or the United States. Okla. Stat. tit. 15 § 754(2) (emphasis added). Accordingly, Defendant's argument for dismissing the OCPA claim is slightly different than those referenced above. In essence, Defendant argues that because the NHTSA (and specifically FMVSS 213) regulates car seat safety, Plaintiffs' claim under the OCPA is categorically exempted. See Dkt. Nos. [67-1] at 57; [70] at 33.

---

be a TDTPA violation where the alleged misconduct is specifically permitted or required by federal law. Dkt. No. [67-1] at 58; [71] at 34.

[27] With regard to the ICFA claim (Illinois Count III), Defendant also broadly asserts that "the challenged representations are 'literally true,'" but even if so, FMVSS 213 still prohibits manufacturers from including labels that are misleading to customers, which, as discussed above, is part of what Plaintiffs have alleged in this case.

However, the Court is not persuaded by Defendant's argument on this point, at least at this time. As Plaintiffs note, courts considering this issue tend to "compare the purposes of the OCPA and the allegedly conflicting regulatory scheme." See In re Motor Fuel Temperature Sales Pracs. Litig., 534 F. Supp. 2d 1214, 1229 (D. Kan. 2008); see also In re Gen. Motors Corp., No. MDL 04-1600, 2005 WL 1924335, at *3 (W.D. Okla. Aug. 8, 2005) (concluding that because "there is no indication the regulatory activities of the Oklahoma Motor Vehicle Commission extend to the circumstances involved here, essentially the regulation of allegedly defective products, the exemption to the Oklahoma Consumer Protection Act does not apply to exempt the defendant from suit under the Act"). Defendant has not presented any substantive (or comparative) analysis on this point aside from the broad assertion that "Plaintiffs' claims fall squarely within FMVSS 213, and so, are exempt." Dkt. No. [71] at 33. Accordingly, the Court does not find that Defendant has presently carried its burden of demonstrating that Plaintiffs' OCPA claim falls within the statute's exemption provision.

### 3. Georgia Fair Business Practices Act

Defendant argues that Georgia Count III, a claim under the Georgia Fair Business Practices Act, O.C.G.A. § 10-1-390, *et seq.*, fails because Plaintiffs did not comply with the statute's *ante litem* notice requirement, which states the following:

> At least 30 days *prior to the filing of any such action*, a written demand for relief, identifying the claimant and reasonably describing

the unfair or deceptive act or practice relied upon and the injury suffered, shall be delivered to any prospective respondent.

O.C.G.A. § 10-1-399(b) (emphasis added). Plaintiffs argue that they complied with this requirement by sending a letter to Defendant on November 5, 2020, which was more than thirty days before they filed the Consolidated Amended Complaint. Dkt. No. [70] (citing Dkt. No. [60] ¶ 382). However, as Defendant argues, such notice is insufficient because the Consolidated Amended Complaint did not constitute a new lawsuit; instead, it was an amendment of the original complaint, which had been filed roughly five months earlier. See Dkt. No. [1]. Accordingly, Plaintiffs' Georgia Fair Business Practices Act claim (Georgia Count III) is **DISMISSED**. Paws Holdings, LLC v. Daikin Applied Am. Inc., No. CV 116-058, 2018 WL 475013, at *5 (S.D. Ga. Jan. 18, 2018) (holding that the plaintiff's claim under the Georgia Fair Business Practices Act failed "because [the plaintiff] failed to give [the defendant] notice before filing its lawsuit").

### 4. Illinois Deceptive Trade Practices Act

Defendant also moves to dismiss Illinois Count IV, which is a claim under the Illinois Deceptive Trade Practices Act ("IDTPA"), 815 Ill. Comp. Stat. § 510/1, *et seq.* Dkt. No. [67-1] at 53. Defendant argues that the IDTPA claim fails because Plaintiffs cannot show that they are entitled to injunctive relief. Id. at 53–54. The Court agrees.

"Although the Deceptive Practices Act does not permit a party to recover monetary damages, it does allow an injured party to obtain 'injunctive relief upon

terms that the court considers reasonable.' <u>Kensington Wine Auctions. & Brokers, Inc. v. John Hart Fine Wine, Ltd.</u>, 909 N.E.2d 848, 857 (Ill. App. Ct. 2009) (quoting 815 Ill. Comp. Stat. § 510/3). To maintain an action under the IDTPA, "a consumer must allege facts which would indicate that he is likely to be damaged in the future." <u>Reid v. Unilever U.S., Inc.</u>, 964 F. Supp. 2s 893 (N.D. Ill. 2013) (quotation marks and citation omitted). "The problem inherent in such consumer actions is the inability to allege facts which would indicate that the plaintiff is 'likely to be damaged.' Ordinarily, the harm has already occurred, thus precluding a suit for injunctive relief." <u>Id.</u> (quoting <u>Brooks v. Midas-Int'l Corp.</u>, 361 N.E.2d 815, 821 (Ill. App. Ct. 1977)). As discussed above, Plaintiffs have already discovered the alleged problems with their Booster Seats, and they do not allege any future intention of re-purchasing these seats from Defendant. Accordingly, Plaintiffs' Illinois IDTPA claim (Illinois Count IV) is **DISMISSED**. <u>See</u> <u>id.</u> (dismissing IDTPA claim where the plaintiff had already purchased the product, discovered the alleged damage-causing defect (and could therefore avoid future use of the product), and failed to show any likelihood of future damage from the defendant's acts).[28]

---

[28] Though Plaintiffs argue that dismissing the IDTPA claim at this stage is "premature," they have failed to sufficiently demonstrate why this is so. And as Defendant notes, the only case Plaintiffs cite in support of this argument was addressing Article III standing for injunctive relief (which the Court has already addressed based on Eleventh Circuit precedent). Dkt. No. [70] at 52 (citing <u>Laurens v. Volvo Cars of N. Am., LLC</u>, 868 F.3d 622, 625 (7th Cir. 2017)).

### 5.  New Jersey Consumer Fraud Act

Defendant argues that New Jersey Count III, a claim under the New Jersey Consumer Fraud Act ("NJCFA"), N.J. Stat. Ann. § 56:8-1, *et seq.*, fails because the Consolidated Amended Complaint fails to allege any special relationship between Defendant and Plaintiffs. Dkt. No. [67-1] at 55 (citing Greene v. BMW of N. Am., No. CIV 2:11-04220 WJM, 2013 WL 5287314, at *5 (D.N.J. Sept. 17, 2013). Plaintiffs respond that the "special relationship" rule discussed in Greene applies only when an alleged omission is the sole basis of the NJCFA claim; they therefore argue that it is inapplicable because the NJCFA claim in this case is based on more than alleged omissions. Dkt. No. [70] at 58–59. Defendant then argues that the "special relationship" requirement applies to Plaintiffs' NJFCA claim regardless of whether the claim is based on omissions. Dkt. No. [71] at 30.

The NJFCA "imposes liability on any person who uses[] 'any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission.'" Int'l Union of Operating Eng'rs Loc. No. 68 Welfare Fund v. Merck & Co. Inc., 929 A.2d 1076, 1086 (N.J. 2007) (citing N.J. Stat. Ann. § 56:8-2.). Thus, "[c]onsumer fraud violations are divided broadly into three categories: affirmative acts, knowing omissions, and regulatory violations." Id. As an initial matter, Defendant has not cited any authority that supports the proposition that all NJCFA claims—even those based on alleged affirmative acts

such as misrepresentations, or regulation violations—require a plaintiff to plead the existence of a "special relationship" with the defendant. Dkt. No. [71] at 30. Moreover, the Court agrees with Plaintiffs that the NJCFA claim in this case is not based solely on an alleged omission; instead, New Jersey Plaintiff Rivera's "omission" allegation is intertwined with her allegation that Defendant misrepresented information about the Booster Seats. See Dkt. No. [60] ¶ 487; see also Arcan v. Brother Int'l Corp., 673 F. Supp. 2d 282, 298 (D.N.J. 2009) (finding that, though an omission may have occurred simultaneously with an alleged misrepresentation, this "[did] not convert the claim into one of omission"). Accordingly, Defendant's arguments for dismissing the NJFCA claim are unavailing.

### 6.   New York Unfair and Deceptive Trade Practices Act

Defendant argues that New York Count III, a claim asserted under N.Y. Gen. Bus. Law § 349, fails because the Consolidated Amended Complaint does not allege that Plaintiffs were exposed to allegedly deceptive statements. Dkt. No. [67-1] at 55. However, as the Court discussed above, Plaintiffs allege that Defendant's representations about the Booster Seats' side-impact testing and suitability for children under forty pounds were false or misleading. See, e.g., Dkt. No. [60] ¶¶ 3–4. Plaintiffs also allege that Graco made these representations in its marketing materials, website, and on the Booster Seats. See id. ¶¶ 3, 8, 12, 118, 119, 137, 138. Finally, New York Plaintiff Tehomilic alleges that she "decided to buy the Booster Seat based in part on Graco's representations that it was "SIDE

IMPACT TESTED" (i.e., it would protect the child occupant in frontal, side, rear & rollover crashes)" and that "[t]hese representations were among the primary reasons [she] chose the Booster Seats." Id. ¶ 50. Again, the reasonable inference from this allegation is that Plaintiff Tehomilic was exposed to and relied upon the representations that allegedly informed her decision to purchase the product. See Goldemberg v. Johnson & Johnson Consumer Cos., Inc., 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014).

### 7. **North Carolina Unfair and Deceptive Trade Practices Act**

Defendant moves to dismiss North Carolina Count III, which is a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen. Stat. § 75-1.1, *et seq*. Dkt. No. [67-1] at 55–56. Defendant argues that this claim fails because the representations alleged in the Consolidated Amended Complaint are not the type of "egregious or aggravating circumstances" that trigger a claim under the NCUDTPA. Id.

"In order to state a claim under the [NC]UDTPA, a plaintiff must show (1) defendant committed an unfair or deceptive act or practice; (2) the action in question was in or affecting commerce; and (3) the act proximately caused injury to the plaintiff." Ellis v. Louisiana-Pacific Corp., 699 F.3d 778, 787 (4th Cir. 2012) (quotation marks and citations omitted). "Egregious or aggravating circumstances must be alleged before the provisions of the [NCUDTPA] may take effect." Id. Importantly, however, "[a]ggravating circumstances include conduct

of the breaching party that is deceptive." Id. Here, North Carolina Plaintiff

Sanford alleges, *inter alia*, that Defendant omitted material facts about the safety

of its Booster Seats (particularly the Booster Seats' safety in side-impact

collisions) and instead "marketed and labeled the Booster Seats as 'side-impact

tested' and misrepresented that the Booster Seats are safe for children as small as

30 pounds, and safe for children as young as three-years-old." Dkt. No. [60] ¶

546; see also id. ¶ 551 ("North Carolina Plaintiff and North Carolina Subclass

members were deceived by Graco's failure to disclose and could not discover the

unreasonable risk . . . posed by the Booster Seats."). Defendant does not address

these—or any—specific allegations when arguing that Plaintiffs' NCUDTPA claim

must fail; accordingly, the Court does not find that Defendant has carried its

burden on this issue.

### 8. Ohio Statutes

Defendant moves to dismiss Ohio Counts III and IV, which assert claims

under the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code Ann. §

1345.01, and the Ohio Deceptive Trade Practices Act ("ODTPA"), Ohio Rev. Code

Ann. § 4165.01, *et seq.* Dkt. No. [67-1] at 56.

First, Defendant argues that the OCSPA claim fails because Plaintiffs failed

to provide notice. Id. The Court agrees. As explained by the Ohio Supreme Court,

"R.C. 1345.09(B) provides that a consumer may qualify for class-action status

only when a supplier acted in the face of prior notice that its conduct was

deceptive or unconscionable." Marrone v. Philip Morris USA, Inc., 850 N.E.2d 31,

34 (Ohio 2006). "The prior notice may be in the form of (1) a rule adopted by the Attorney General under R.C. 1345.05(B)(2) or (2) a court decision made available for public inspection by the Attorney General under R.C. 1345.05(A)(3)." Id.; Vuyancih v. Jones & Assocs. L. Grp., L.L.C., 95 N.E.3d 458, 460 (Ohio Ct. App. 2018) (citing Marrone and also explaining that "a consumer intending to rely upon R.C. 1345.09(B) must specifically inform the trial court of the decision or rule relied upon"). Here, Plaintiffs make only the broad argument that "Graco had ample notice that its conduct was deceptive or unconscionable," but Plaintiffs do not cite any rule adopted by the Ohio Attorney General, nor do they cite any court decision that would have potentially put Defendant on notice. Dkt. No. [70] at 61. Accordingly, Plaintiffs' OCSPA claim (Ohio Count III) is **DISMISSED**. Marrone, 850 N.E.2d at 34.[29]

Second, Defendant argues that the ODTPA claim (Ohio Count IV) fails because the ODTPA cannot be privately enforced by individual consumers such as Plaintiffs. Dkt. No. [67-1] at 56. The Court again agrees with Defendant. Though Plaintiffs note that there is a split of authority on this issue, "[t]he majority of courts to address the issue have held that an individual consumer does not have standing to sue under the ODTPA." Borden v. Antonelli Coll., 304 F. Supp. 3d 669, 673 (S.D. Ohio 2018) (collecting cases and agreeing with

---

[29] This claim fails for this reason only insofar as it is asserted on behalf of a class. See In re Porsche Cars N. Am., Inc., 880 F. Supp. 2d 801, 870 (S.D. Ohio 2012) ("Because Ohio Plaintiffs fail to satisfy Section 1345.09(B), they are precluded from advancing an OCSPA claim on behalf of a class.").

majority that individual consumers do not have standing under the ODTPA).

Importantly, the Sixth Circuit reached the same conclusion after analyzing how

this issue had been resolved by the Ohio Court of Appeals. Holbrook v. Louisiana-

Pacific Corp., 533 F. App'x 493, 497–98 (6th Cir. 2013) ("[The appellant] has

failed to make the requisite strong showing that the Ohio Supreme Court would

decide this issue differently. We therefore affirm the district court's decision that

[the appellant] does not have standing to raise an ODTPA claim as a consumer.").

For these reasons, Plaintiffs' ODTPA claim (Ohio Count IV) is **DISMISSED**.

### 9.   **Oregon Unlawful Trade Practices Act**

Defendant moves to dismiss Oregon Count III, which is a claim under

Oregon's Unlawful Trade Practices Act, Or. Rev. St. § 646.605, *et seq.* Dkt. No.

[67-1] at 57. "To prevail under ORS 646.638(1) a plaintiff must prove: (1) a

violation of ORS 646.608(1); (2) causation ('as a result of'); and (3) damage

('ascertainable loss')." Feitler v. Animation Celection, Inc., 13 P.3d 1044, 1047

(Or. Ct. App. 2000); see also Anderson v. Freedom Mortg. Corp., No. 3:19-cv-

388-JR, 2019 WL 6135035, at *2 (D. Or. Nov. 19, 2019) (citing Feitler).

Defendant argues that Plaintiffs have failed to allege the first and second

elements.[30] Dkt. No. [67-1] at 57.

---

[30] Defendant asserts that "willfulness" is a separate (fourth) element of a claim
under the OUTPA and that Plaintiffs have also failed to allege or establish this
element. Dkt. No. [67-1] at 57 (citing Seib v. Metro Life Ins. Co., No. 3:19-CV-
00892, 2020 WL 2531119. The Court is not persuaded that "willfulness" is in fact
a distinct element of an OUTPA claim. See, e.g., Feitler, 13 P.3d at 1047.
However, even if it is, Plaintiffs allege that Defendant "knowingly [made]

As to Defendant's argument regarding the first element, it is unclear whether Defendant's contention is that Plaintiffs have not alleged any conduct that would be "unlawful" under § 646.608(1), or instead that Plaintiffs have simply not labeled such allegations correctly (by citing the specific, enumerated "unlawful practice"). Id. If it is the former, the Court disagrees. For example, it is an unlawful practice under § 646.608(1)(e) to "represent[] that . . . goods or services have . . . characteristics . . . that the . . . goods or services do not have[,]" and here Plaintiffs allege, *inter alia*, that Defendant "misleadingly represented that the Booster Seaters were 'Side-impact Tested' and safe for children less than 40 pounds" while allegedly failing to disclose that the Booster Seats did not provide "appreciable safety" to children in side-impact collisions and were not suitable for children under forty pounds. See Dkt. No. [60] ¶ 660. If Defendant's argument is instead that Plaintiffs simply have not attached the proper statutory labels to Defendant's allegedly unlawful practices, Plaintiffs will be granted leave to amend and add such details (that is, specifically note which enumerated unlawful acts pertain to Defendant's alleged conduct).

As to the second element, Defendant argues that Plaintiffs have not alleged that Plaintiffs relied on any misrepresentations by Graco. Dkt. No. [67-1] at 57. However, Plaintiffs expressly allege that "Oregon Plaintiffs and Oregon Subclass members relied on Graco's material misrepresentations and omissions regarding

---

misleading statements about the safety of its Booster Seats and knowingly fail[ed] to disclose the safety risks posed by its Booster Seats . . . ." Dkt. No. [60] ¶ 659.

the safety of the Booster Seats." Dkt. No. [60] ¶ 665. Accordingly, the Court does not find that Plaintiffs' OUTPA claim fails, except that Plaintiffs will be granted leave to amend and list the specific act(s) under § 646.608(1) that pertain to Defendant's alleged conduct.[31]

### 10. Pennsylvania Unfair Trade Practices & Consumer Protection Law

Defendant argues that Pennsylvania Count III, a claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Pa. Cons. Stat. § 201-1, *et seq.*, fails because Plaintiffs do not adequately allege that they relied on any alleged misrepresentations by Graco. Dkt. No. [67-1] at 58. As has been discussed, Plaintiffs allege that Defendant misrepresented the Booster Seats' safety features and its suitability for children under forty pounds. See, e.g., Dkt. No. [60] ¶¶ 3, 8, 12, 118, 119, 136–139, 695. Both Pennsylvania Plaintiffs allege that they decided to buy their Boosters based in part on such representations. Id. ¶¶ 71, 74. Defendant's cited authority does not indicate that

---

[31] To the extent Plaintiffs suggest they are also (or alternatively) asserting a claim pursuant to Or. Rev. St. § 646.607(1), see Dkt. No. [70] at 61, this claim fails because Or. Rev. St. § 646.607(1) is not enforceable by private parties. Horton v. Nelson, 288 P.3D 967, 972–73 (Or. Ct. App. 2012) ("The trial court properly dismissed the portion of plaintiff's claim containing the allegation that defendants violated ORS 646.607, because only the state can prosecute trade practices declared unlawful by ORS 646.607."). Plaintiffs cite Gordon v. Rosenblum, 393 P.3d 1122 (Or. 2017), to support their argument, but that case involved private parties seeking to *prevent* the Oregon Department of Justice from enforcing this section of the OUTPA against them. Gordon, 393 P.3d at 1124 (noting that plaintiffs sought "an injunction preventing the Oregon Department of Justice from enforcing the UTPA against [them]").

more is required of Plaintiffs at this stage. See Hunt v. U.S. Tobacco Co., 538 F.3d 217, 222 (3d Cir. 2008) (noting that the Pennsylvania Supreme Court has "held that plaintiffs bringing a private suit under Consumer Protection Law § 201–2(4)(v) and (ix) must allege that they relied on the defendant's deceptive conduct." (citation and footnotes omitted)).[32] Accordingly, Pennsylvania Count III does not fail for the reasons argued by Defendant.

### 11.   West Virginia Consumer Credit and Protection Act

Defendant argues that the claim under the West Virginia Consumer Credit and Protection Act ("WVCCPA"), Wa. Va. Code § 46A-6-101, *et seq.*, fails because the Consolidated Amended Complaint does not adequately allege that West Virginia Plaintiff Leffingwell provided sufficient written notice. Dkt. No. [67-1] at 59. Plaintiffs respond that the Consolidated Amended Complaint alleges that, on November 5, 2020, they "sent Graco pre-suit notice of their claims under the West Virginia Consumer Credit and Protection Act . . . ." Dkt. Nos. [60] ¶ 772; [70] at 62. Relying on Waters v. Electrolux Home Prods., Inc., 154 F. Supp. 3d 340 (N.D. W.Va. 2015), Defendant maintains that this letter was insufficient because it was sent after the initial complaint was filed and thus was not pre-suit notice. Dkt. No. [71] at 30.

---

[32] The other case cited in Defendant's brief is inapposite because the plaintiffs' allegations failed in that case not for a lack of factual specificity, but because the representations upon which they based their claims "[did] not qualify as advertising and [could not] constitute a violation of the UTPCPL's false advertising prohibition"). See Seldon v. Home Loan Servs., Inc., 647 F. Supp. 2d 451, 466 (E.D. Penn. 2009).

In <u>Waters</u>, the court, quoting W. Va. Code § 46A-6-106(c), stated the following:

> no action . . . may be brought [under the WVCCPA] . . . until the [plaintiff] has informed the [defendant] . . . in writing and by certified mail, return receipt requested, of the alleged violation and provided the seller or lessor twenty days from the receipt of the notice of violation . . .  to make a cure offer.

 <u>Waters</u>, 154 F. Supp. 3d at 353. However, it appears that W. Va. Code § 46A-6-106 no longer contains this same provision requiring pre-suit notice. <u>Compare</u> W. Va. Code § 46A-6-106 (June 16, 2021) <u>with</u> W. Va. Code § 46A-6-106 (June 12, 2015–June 15, 2021). The parties have not addressed this issue in their original briefing or supplemental briefing, so the Court declines to dismiss Plaintiffs' claim on this basis at this time. Defendant's request to dismiss this claim is therefore denied without prejudice, and Defendant may raise and address this issue in future briefing.

## IV.   CONCLUSION

In accordance with the foregoing, Defendant Graco Children's Products, Inc.'s Motion to Dismiss [67] is **GRANTED in part and DENIED in part**. To summarize, Defendant's Motion is **GRANTED** as to the following claims and counts: Plaintiffs' claim for injunctive relief; Alabama Count II; Georgia Count III; Illinois Counts I, II, and IV; New York Counts I and II; and Ohio Counts II, III, and IV. Additionally, Defendant's Motion is **GRANTED** as to Plaintiffs' Magnusson-Moss claims that correspond with Alabama Count II; Illinois Counts

I and II; New York Counts I and II; and Ohio Count II.[33] Defendant's Motion is otherwise **DENIED**.

As to the claims for which Plaintiffs have been granted leave to amend (which includes Oregon Count III and those claims dismissed without prejudice), Plaintiffs are **DIRECTED** to file an amended complaint within **twenty-one (21)** days of this Order (if they choose to amend).

Finally, and as noted above, the Court is aware that there are outstanding issues related to choice-of-law, particularly with regard to Plaintiffs' "nationwide" common law claims. If the parties seek clarification on this issue before the class certification stage, the parties may notify the Court of this request, at which time the Court will consider allowing the parties to address this issue in separate briefing.

**IT IS SO ORDERED** this 31st day of August, 2021.

_Leigh Martin May_
**Leigh Martin May**
**United States District Judge**

---

[33] To be clear, the following claims are **DISMISSED without prejudice** and with leave to amend (which would apply to the Magnuson-Moss claims that are based on these claims): Plaintiffs' claim for injunctive relief; Illinois Counts I and II; New York Counts I and II, and Ohio Count II.