IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| KELLIE CARDER et al., on behalf of themselves and all others similarly situated, <br><br>         Plaintiffs, <br><br> vs. <br><br> GRACO CHILDREN'S PRODUCTS, INC., <br><br>         Defendant. | Case No.:  2:20-cv-00137-LMM |

## STIPULATED ORDER GOVERNING ESI AND DOCUMENT PRODUCTION PROTOCOL

Pursuant to a stipulation by and between the Parties[1] and through their respective counsel of record, IT IS HEREBY ORDERED to further facilitate the Parties' ongoing discovery efforts, to streamline the production of Electronically Stored Information ("ESI") as part of those discovery efforts, and to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1:

---

[1] As used herein, "Party" means the individual Plaintiffs and Defendant named in the Second Consolidated Amended Class Action Complaint ("Consolidated Complaint") (Doc. No. 87), and "Parties" shall collectively refer to the Plaintiffs and the Defendant.

## I.   SCOPE AND APPLICATION

A.   **General.**  The Parties have been engaged in written discovery and document production and productive meet and confer sessions regarding their respective discovery requests to narrow and resolve disputes, as the Parties previously described in their Joint Motion for Amendment of the Scheduling Order.  (Doc. No. 105 at ¶¶ 2-6 see Doc. No. 108, Nov. 10, 2022 Order (granting the Parties' joint motion).)  As part of those ongoing discovery and conferral efforts, the Parties have agreed that it will be beneficial to adopt certain stipulated procedures and protocols for productions of ESI and paper documents occurring after the date of the Parties' filing of this stipulated Order.[2]  This Order supplements all other discovery rules and orders.  The procedures and protocols outlined herein govern the production of ESI and paper documents by the Parties during the remainder of this litigation.  The production formats for any other materials will be addressed by the Parties after a meet and confer regarding the

---

[2] The Parties already have been engaged in producing documents on a rolling basis in response to their respective requests for production and pursuant to their meet and confer sessions (*see, e.g.*, Doc. No. 105 at ¶ 4 (describing Graco's seven document productions to date)), and previously agreed that certain productions could be more efficiently made without adopting the procedures and protocols outlined herein.  With respect to documents that have already been produced, the Parties agree to confer and work cooperatively in good faith to address any issues related to the format of such productions, additional information regarding the content of the production, or provision of available metadata associated with the produced documents.

specific item or category of items.  Except as expressly stated, nothing in this order affects the Parties' discovery obligations as set forth in the Federal or Local Rules, including but not limited to the proportionality requirements of Fed. R. Civ. P. 26(b)(1) and the provisions in Fed. R. Civ. P. 26(b)(2(B) regarding the potential undue burdens or costs associated with production of such ESI.  Any practice or procedure set forth herein may be varied by written agreement of the Parties where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data discovery.  Should any Party subsequently determine that it cannot in good faith proceed as required by this protocol or that application of the protocol would not be consistent with proportionality requirements or would give rise to undue burdens or costs, then the Parties will meet and confer to resolve any such issue or dispute in good faith before seeking Court intervention.

      **B.**    **Limitations and No-Waiver.**  The Parties and their attorneys do not intend by this protocol to waive their rights to any privileges.  All Parties preserve their attorney-client privileges and other privileges and there is no intent by the protocol, or the production of documents pursuant to the protocol, to in any way waive or weaken these privileges.  The mere inadvertent production of ESI in litigation as part of a mass production shall not itself constitute a waiver for any

purpose.  Further, under Federal Rule of Evidence 502(d), the inadvertent production of privileged or work product protected ESI is not a waiver in this case or in any other federal or state proceeding.

C.    A Party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

D.    **Preservation.**  The Parties each acknowledge that they have taken steps to preserve discovery information in their possession, custody, or control consistent with the requirements of the Federal Rules of Civil Procedure.  The Parties have issued litigation hold notices to those custodians that each Party currently believes are most likely to have discoverable information, including, but not limited to, those individuals and data sources identified in the Parties' Initial Disclosures.  The Parties shall also take actions, consistent with their obligations under the Federal Rules of Civil Procedure, to prevent the destruction of discoverable information.

## II.    DEFINITIONS

As used herein, the following terms shall have the following definitions:

A.    The term "electronically stored information" or "ESI" is coextensive with Fed. R. Civ. P. 34, and means information or data stored electronically,

4

regardless of the media or whether it is in the original format in which it was created, as opposed to stored in hard copy.

**B.** The term "Documents" shall be interpreted to have the meaning contemplated by Fed. R. Civ. P. 34(a)(1)(A) and shall include ESI and paper discovery.

**C.** The term "Document Family" means a collection of pages or files maintained together constituting a logical single communication of information, but consisting of more than a single stand-alone record. Examples include a fax cover sheet, the faxed letter, and an attachment to the letter—the fax cover sheet being the "Parent," and the letter and attachment being a "Child," or an email and associated attachments, including hyperlinks, or a presentation with embedded files. The Parties will take reasonable steps to preserve parent-child relationships in ESI Documents already in existence from the ordinary course of business.

**D.** The term "Email" means an electronic means for communicating written information through non-telephone systems that will send, store, process and receive information.

**E.** The term "Extracted text" or "Full Text" means the text extracted from a native Document, and includes all header, footer and Document body information when available. A "Text File" is a file containing the full text of native

files extracted directly from the native file, or, in the case of hard copy Documents or scanned PDF Documents, subject to OCR, a file containing the text resulting from the OCR.  Certain text may not always be extracted completely or accurately from certain types of files using standard, commercially available e-discovery tools (*e.g.*, certain hidden rows or headers/footers in Excel documents).  The Text file shall include comments and track changes and shall be visible on the produced image files.  To the extent such issues arise, the Parties shall meet and confer in good faith to resolve such issues.  In some instance these documents may only feasibly be produced in native format.

F.     The term "Format" means the internal structure of a file, which defines the way it is stored and its intended use.

G.     The term "Hard Copy Discovery" means any document or thing discoverable under Fed. R. Civ. P. 26(b)(1) and Fed. R. Civ. P. 34 that cannot be characterized as ESI.

H.     The term "Litigation" means the above-captioned case.

I.     The term "Load file" means an electronic file that relates to a set of scanned images or electronically processed files, and that indicates where individual pages or files belong together as Documents, to include attachments, and where each Document begins and ends, and may contain data relevant to the

6

individual Documents such as selected metadata, coded data, and extracted text. A load file is used to import all image, native, and text files and their corresponding production information into a Document database. The Producing Party shall produce a load file for all produced Documents in accordance with specifications provided herein to ensure transfer of accurate and usable data.

J.       The term "Metadata" means: (i) structural information embedded in a file that is not ordinarily viewable or printable from the application that generated, edited, or modified such file; (ii) information generated automatically by the operation of a computer or other information technology system when a file is created, modified, transmitted, deleted or otherwise manipulated by a user of such system; and (iii) production process fields created in the course of producing Documents.

K.       The term "Native Format" means the underlying file(s) containing the ESI at issue in the file system in which such ESI was originally created, viewed and/or modified.

L.       The term "OCR" means the optical character recognition file which is created by a technology process that captures text-from an image for the purpose of creating a parallel text file that can be associated with the image and is searchable.

7

**M.**     The term "Responsive Document" means any document, excluding source code, that is responsive to any document requests served on the Producing Party in the Litigation that the Producing Party has agreed to produce or that the Producing Party has been ordered to produce by the Court.  The term "Responsive Document" shall not be construed to require the production of any document not required to be produced by the Federal Rules of Civil Procedure, relevant case law, or any order of the Court in this Litigation.

**N.**     The term "Requesting Party" means the Party requesting the production of Documents.

**O.**     The term "Producing Party" means the Party that may be producing Documents in response to the request of the Requesting Party.

**P.**     The term "Tagged Image File Format" or "TIFF" refers to the CCITT Group IV graphic file format for storing bit-mapped images, with multiple compression formats and resolutions.

**Q.**     The term "Unitization" means the assembly of individual scanned pages or electronically processed files into Documents and indicates where individual pages or files belong together as Documents, including attachments, and where each Document begins and ends.  The Parties shall make a good faith attempt at Unitization for hard-copy documents, but certain types of hard-copy

documents do not lend themselves to unitization for the purposes of scanning. The Parties shall meet and confer in good faith if any such issues arise.

## III.   PRODUCTION FORMATS AND METADATA PROTOCOLS

**A.**   **General.**   In general, Responsive Documents originally collected as ESI will be processed to extract metadata and text and converted to TIFF format using Group IV compression with at least 300 dots per inch resolution.  They will be produced with corresponding TXT files that contain a given document's underlying text, extracted via processing or through Optical Character Recognition ("OCR") if no text can be extracted.  Documents that are difficult to render in TIFF because of technical issues, or any other documents that are impracticable to render in TIFF format, may be produced in their native format with a placeholder TIFF image stating "Document Produced Natively," unless such documents contain redactions, in which case the documents will be produced in TIFF format.  A Producing Party retains the option to produce ESI in alternative formats if so agreed by the Requesting Party, which may include native format, or a combination of native and TIFF formats.  Images may be reduced by a reasonable amount to allow for a dedicated space for page numbering and other endorsements of documents.  Images may be in black and white, unless color is necessary to understand the meaning of the document.  Images shall include track

changes and comments.  All documents produced pursuant to this paragraph shall be produced with its extracted/OCR text in a document level TXT file that is named with the same Bates-number as the corresponding TIFF image of the first page (*e.g.*, a single page document bearing a Bates-number ending in 002356 shall result in two files for production: Bates-002356.tiff and Bates-002356.txt).  When email files are produced pursuant to this paragraph, the emails shall be printed to TIFF such that the headers are displayed (*i.e.*, To, From, Subject, Date, and any Attachments shall be displayed at the top of each email).  The Producing Party shall also produce an appropriate load file for e-discovery.

B.      **Exceptions.**  Exceptions include files such as Microsoft Excel files, audio files, video files, and database files (*e.g.*, Microsoft Access) that must be produced in native format.  PowerPoint slides will be produced in TIFF format, which shall include speaker notes and "hidden" slides, except where dynamic content or color requires production in native format.  If the PowerPoint or slide program contains video or audio components, the video or audio will be produced as native files with the appropriate attachment relationships.  To the extent that print-outs or images of all or part of a spreadsheet were also maintained in static form (*e.g.*, as a PDF attachment), those documents will be produced as static images.  Documents containing redactions shall be produced in TIFF format.  To

the extent that Microsoft Excel (including .csv) or Microsoft Access files require redactions, the Parties will meet and confer regarding a mutually agreeable form or production.  All other file types shall be produced in TIFF format unless otherwise agreed upon.  Documents produced in native format will be accompanied by a slip sheet containing information such as the Bates-numbering for the document page and confidentiality designations.  To the extent such documents are used in discovery or at trial, or are otherwise disclosed to third parties, the accompanying slip sheet must be maintained with and precede the natively produced document at all times.  If particular documents warrant a different format, the Parties will cooperate regarding the mutually acceptable production of such documents in an alternative format.

       1.    **Database Records.**  To the extent that any Party requests information that is stored in a database or database management system, the Parties will meet and confer regarding the accessibility of such information and the format of production.

       2.    **Non-Standard Files.**  Non-standard electronic files include, but are not limited to, source code, transactional data, database files, and proprietary applications not publicly available.  Upon request and demonstration of need, the Parties will meet and confer as to a reasonable production format for such files.

**3.     Text Messages, Mobile Application Data, and Collaboration Software Programs.**   The parties will meet and confer to discuss the format of production of text messages, mobile application data, and collaboration software programs.   The parties recognize that there is a wide variety of capabilities available, and it is difficult to assert a standard into a protocol without information as to each party's capabilities.

**C.     Production Media.**   The Producing Party may produce documents via a secure file transfer mechanism and/or on readily accessible computer or electronic media.   Each piece of Production Media will be assigned a production number or other unique identifying label.   For electronic media productions, the Parties will cooperate in good faith to use the highest-capacity available media to minimize associated overhead.   The producing Party will label the physical media with the producing Party name, production date, media volume name, and document number range.   Any replacement Production Media will cross-reference the original Production Media, clearly identify that it is a replacement and cross-reference the Bates Number range that is being replaced.

**D.     Encryption.**   To maximize the security of the information in transit, any media on which documents are produced may be encrypted by the Producing Party.   In such cases, the Producing Party shall transmit the encryption key or

12

password to the Requesting Party, under separate cover, contemporaneously with sending the encrypted media.

**E.     Dates**.   To the maximum extent possible, all documents shall be processed so as to show the date and time in Coordinated Universal Time ("UTC").

**F.     Color.**  Where color is necessary to decipher the meaning, context, or content of the document, the Producing Party shall honor reasonable requests for production of a color image of the Document.

**G.     Confidentiality Treatment.**  The confidentiality treatment level for any item will be provided in the field entitled "Confidentiality Treatment."  For items with no confidentiality requirements, the field will be left blank.  The producing party will brand any confidentiality endorsements in a corner of any TIFF images representing the produced item.  Those endorsements must be in a consistent font type and size, and, to the extent possible, should not obscure any part of the underlying image or Bates number.

**H.     Culling of ESI**

**1.     Deduplication.**  A Party is only required to produce a single copy of a Responsive Document or family of Responsive Documents.  The Parties shall make reasonable efforts to globally de-duplicate across the processed data

set, stand-alone documents against one another and email against entire families. Deduplication will be accomplished using hash values (*e.g.*, MD5 or SHA-1 algorithms). All email and attachment family relationships will be preserved. As a result, a document will not be considered duplicative if it appears in different document families, and/or contains any additional text, recipients or markings such that it is not identical in its entirety. Producing Party will provide OtherCustodian names and related DuplicateFilePath metadata in Exhibit A for all files withheld as duplicates.

        **2.    Email Threading.** The Parties may use email thread suppression to avoid review and production of information contained within an existing email thread in another document being reviewed and produced, but under no circumstances will email thread suppression remove from a production any unique branches and/or attachments contained within an email thread. For the avoidance of doubt, all attachments to any responsive email shall be produced.

        **3.    Email Domain Culling.** The Parties may exclude from any ESI search process uniquely identifiable categories of documents, such as emails from domains typically associated with junk email, such as fantasy football-related emails or newsletters.

4.      **System Files.**  ESI productions may be de-NISTed using the industry standard list of such files maintained in the National Software Reference Library by the National Institute of Standards & Technology as it exists at the time of de-NISTing.  Other file types may be added to the list of excluded files by agreement of the Parties.

I.      **Bates-Numbering.**  Files will be named according to the Bates-number of the corresponding production images.  The Bates-number will (i) employ a consistent Bates prefix across the Producing Party's entire production; and (ii) be numerically sequential within a given document. Attachments to documents will be assigned Bates-numbers that directly follow the Bates-numbers on the documents to which they were attached.  If a Bates-number or set of Bates-numbers is skipped, the skipped number or set of numbers will be noted.  The Producing Party will brand all TIFF images in the lower right-hand corner with its corresponding Bates number, using a consistent font type and size.  To the extent possible, the Bates number should not obscure any part of the underlying image. If the placement in the lower right-hand corner will result in obscuring the underlying image, the Bates number should be placed as near to that position as possible while preserving the underlying image.  All files and documents that are

replaced for any reason shall be identified with a "-R" designation appended to the original production number.

**J.   Metadata.**  Contemporaneous with any production, the Producing Party shall produce a load file containing the available metadata fields identified in Exhibit A to this Order.  If subsequent loading or processing of data in an e-discovery platform reveals that production of certain metadata fields would not be possible due to undue burden or cost, the Parties shall meet and confer in good faith in order to resolve the issue.

## IV.   ELECTRONICALLY STORED INFORMATION

**A.   ESI of Limited Accessibility.**  If a Producing Party contends that any responsive ESI is not reasonably accessible within the meaning of Fed. R. Civ. P. 26(b)(2)(B), then that Party shall timely identify such ESI with reasonable particularity and shall provide the Requesting Party with the basis for declining to produce such ESI, including but not limited to information about the nature of any limitations on access, the method used for storage of such ESI (*e.g.*, the type of system used to store the ESI), and the places in which such ESI is kept.  Some documents may be password-protected or otherwise encrypted in a manner that does not easily permit decryption.  The Parties will negotiate in good faith concerning the production of any such ESI while recognizing the proportionality

requirements of Fed. R. Civ. P. 26(b)(1) and the provisions in Fed. R. Civ. P. 26(b)(2B) regarding the potential undue burdens or costs associated with production of such ESI.

**B.    Sources and Search Methodology.**

1.    The Parties agree to meet and confer on the data sources likely to contain discoverable information from each Party.  The Parties agree to meet and confer on the persons whose files are likely to contain Responsive Documents and ESI ("Document Custodians").

2.    The Parties recognize that there exist a variety of search tools and methodologies, including but not limited to the use of search terms and technology assisted review ("TAR") tools.  The Parties agree to meet and confer over the use of search tools and methodologies, including the use of search terms and TAR, before any particular tool or methodology is applied.  Where potentially responsive ESI shall be searched using search terms, the Parties agree to propose search terms they intend to employ to search for potentially responsive ESI. Where potentially responsive ESI shall be searched using search terms, the Parties agree to propose search terms they intend to employ to search for responsive ESI. In the first instance, the Producing Party will propose search terms for the

consideration of the Requesting Party.  Proposed search terms will be subject to negotiation with and reasonable input from the Requesting Party.

       **3.**    **Custodians.**  The Parties shall, on or before January 6, 2023, exchange lists of persons whose files are reasonably likely to contain Responsive Documents and ESI.  This will include a description of the proposed custodians' job titles, departments or business groups, and brief description of such persons' responsibilities (including dates of employment by the applicable party).  The Parties retain the right, upon reviewing the initial production of documents, and conducting other investigation and discovery, to request that files from additional custodians be searched and/or additional search terms be used. The Parties agree to meet and confer regarding such request, subject to and consistent with the proportionality requirements of <u>Fed. R. Civ. P. 26(b)(1)</u> and the provisions in <u>Fed. R. Civ. P. 26(b)</u>(2(B) regarding the potential undue burdens or costs associated with production of such ESI, as well as the supplementation requirements of <u>Fed. R. Civ. P. 26(e)</u>.

       **4.**    The Parties acknowledge that there may be subsequent instances where potential modification of a previously agreed upon search protocol may be warranted.  Should such an instance arise, the Parties agree to meet and confer in good faith about modifications to a search methodology.

## V.    DOCUMENTS THAT EXIST IN ONLY PAPER FORMAT

**A.    Hard Copy Discovery.**  Documents that only exist in paper form shall be scanned and produced as TIFF images with load files, metadata and OCR'd text.  To the extent possible and reasonable, unitization and the parent/child relationships of such documents shall be preserved and provided in the load files.

**B.    Metadata for Paper Documents.**  To the extent it is available, the Producing Party shall provide the following metadata (or objective coding) for paper format documents: beginning and ending Bates numbers, beginning and ending attachment Bates numbers, custodian information, record type, the document's redaction status, page count, the document's replacement status and the document's confidentiality status shall be provided in a load file.

**C.    OCR for Paper Documents.**  High-quality multipage OCR text shall be provided for each paper document.  Page breaks shall be preserved within the OCR text.  OCR text files shall match the respective Bates number of its document, with a file extension of "txt."  Any settings such as "auto-skewing," "auto-rotation," and the like should be turned on when paper documents are run through the process.

## VI.    PRIVILEGE LOG AND TREATMENT OF PRIVILEGED MATERIALS

**A.    Privilege Log.**  Consistent with the Federal Rules of Civil Procedure, a Producing Party withholding or redacting any Responsive Document on the grounds of privilege, work product, or any similar claim of privilege or protection from discovery shall provide to the receiving party a privilege log.

**B.    Format.**  The Producing Party will produce a privilege log for any documents withheld or redacted within 60 days of substantially completing production of those Document Custodians' documents, and will produce a privilege/redaction log for any withheld or redacted documents not previously logged within 60 days of the substantial completion of document productions in a searchable format as a Microsoft Excel file (.xlsx) that includes at least the following fields, when available:  A unique privilege log identifier; Custodian; Date; Filename/Email Subject; Author; Recipient(s); CC; Bcc; Document Type; Attorney-client privilege, Attorney work product doctrine, and/or any other applicable privilege asserted; and the basis for such assertion.

**C.    Protocols for Logging Email Chains**.  Any email chain (*i.e.*, a series of emails linked together by email responses and forwarding) that is withheld or redacted on the grounds of privilege or any similar claim shall be logged as one document and shall be identified by the top-most email in the chain that is withheld or redacted.  The Parties shall not be required to log identical copies of

20

an email that is included in a chain that has been logged in accordance with this Paragraph.

**D.    Protocols for Partially Privileged or Protected Documents**.  If only a portion of a Responsive Document, including, without limitation, email, is claimed to be privileged or protected, the Producing Party shall furnish a redacted version of the Responsive Document, removing only the part(s) thereof claimed to be privileged or protected from disclosure.  If portions of documents are redacted for privilege or for any other reason, the Producing Party shall mark every page or significant component that contains privileged or redacted information "Redacted."  The Producing Party shall include any such redacted documents in the privilege log.

**E.    Exceptions.** The following documents presumptively need not be included on a privilege log:

1.    Communications exclusively between a Plaintiff and his/her/its counsel regarding this Litigation;

2.    Communications exclusively between a Defendant and its counsel regarding this Litigation;

3.    Communications between Plaintiffs' counsel and experts, consultants, and litigation support personnel regarding the prosecution of this Litigation;

4.    Communications between Defendants' counsel and experts, consultants, and litigation support personnel regarding the defense of this Litigation;

5.    Work product created by Plaintiffs' counsel in anticipation of this Litigation within three (3) years of filing of the Litigation and thereafter; and

6.    Work product created by Defendants' counsel in anticipation of this Litigation.

**F.    FRE 502(d) Order and Clawback Procedure.**  This Order is entered pursuant to Rule 502(d) of the Federal Rules of Evidence.  Subject to the provisions of this Order, if the Producing Party discloses information in connection with the Litigation that the Producing Party thereafter claims to be privileged or protected by the attorney-client privilege, work-product protection, or any similar claim of privilege or protection ("Protected Information"), the disclosure of that Protected Information will not constitute or be deemed a waiver or forfeiture—in this or any other action or proceeding—of any claim of privilege or work product protection

22

that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

1.	This Order protects any disclosure of Protected Information, whether that disclosure is inadvertent or otherwise.

2.	The disclosure of Protected Information in discovery conducted in this Litigation shall not waive any claim of privilege or work-product protection that the Producing Party would otherwise be entitled to assert with respect to the Protected Information and its subject matter.

3.	A Producing Party must notify the party receiving the Protected Information, in writing, that it has disclosed that Protected Information without intending a waiver by the disclosure.  Upon receipt of such notification, the party having received Protected Information shall immediately take all reasonable steps to destroy or return all copies, electronic or otherwise, of such document or other information, and shall provide a certification that it will cease further review, dissemination, and use of the Protected Information.

4.	This Order shall be interpreted to provide the maximum protection allowed to the Producing Party by Federal Rule of Evidence 502(d).  The provisions of FRE 502(b)(2) are inapplicable to the production of Protected Information under this Order.  However, if for any reason, a Court finds that this

Section is inapplicable to Protected Information, then FRE 502(b) will apply in its absence.

**G.    Contesting Privilege Claims.**  Nothing in this Order shall limit the Requesting Party's right to challenge (on grounds unrelated to the fact or circumstances of the disclosure) the Producing Party's claim that Protected Information is protected from disclosure by the attorney-client privilege, work-product doctrine, or other similar claim of privilege or protection from discovery. Following the receipt of a privilege log, a Requesting Party may identify, in writing (by Bates/unique identified number), the particular documents that it believes require further explanation.  The Producing Party shall respond to such a request within 14 days. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution.  If they cannot agree, the matter may be brought to the Court. If, after meeting and conferring in good faith, the Parties are unable to resolve any dispute they have concerning the Protected Information for which a claim of disclosure has been asserted, the Requesting Party may file the appropriate motion or application as provided by the Court's procedures to compel production of such material.  Any Protected Information submitted to the Court in connection with a challenge to the Producing Party's claim of attorney-client privilege, work-product protection, or

other similar privilege or protection shall not be filed in the public record, but rather shall be redacted, filed under seal, or submitted for *in camera* review.

## VII.   PROTECTIVE ORDER

All productions are subject to the Protective Order entered by the Court in this Litigation.

## VIII.  MODIFICATION OF THIS ORDER

This Order may be modified by Order of the parties or by the Court for good cause shown.

IT IS SO ORDERED,

This 22nd day of _____December_____, 2022.

Honorable Leigh Martin May
United States District Judge

## EXHIBIT A

### ESI Metadata and Coding Fields

To the extent the following types of metadata are available and applicable

to a particular ESI document, such metadata should be provided for produced ESI.

| Field | Definition | ESI Doc Type |
|---|---|---|
| SOURCE | Name of party producing the document | All |
| CUSTODIAN | Identifier for person or other data source (non-human) from where documents/files are produced. *Where redundant names occur, individuals should be distinguished by an initial that is kept constant throughout productions (e.g., Smith, John A. and Smith, John B.)* | All |
| BEGBATES | Beginning Bates Number (production number) | All |
| ENDBATES | End Bates Number (production number) | All |
| PGCOUNT | Number of pages in the imaged or Tiff documents | All |
| FILESIZE | File Size | All |
| FILEPATH | Original file/path of the location where the item was located at the time of collection. This should include location, file name, and file source extension. | All |
| NATIVEFILELINK | For documents provided in native format | All |
| TEXTPATH | File path for OCR or Extracted Text files | All |
| MSGID | Email system identifier assigned by the host email system.  This value is extracted from parent message during processing | Email |
| FROM | Sender | Email |
| TO | Recipient | Email |

| CC | Additional Recipients | Email |
|---|---|---|
| BCC | Blind Additional Recipients | Email |
| SUBJECT | Subject line of email | Email |
| BEGATTACH | First Bates number of family range (i.e., Bates number of the first page of the parent email) | Email |
| ENDATTACH | Last Bates number of family range (i.e., Bates number of the last page of the last attachment) | Email |
| ATTACHCOUNT | Number of attachments to an email | Email |
| DATESENT (mm/dd/yyyy hh:mm:ss) | Date Sent | Email |
| FILE EXTENSION | File extension (e.g., .msg; .doc; .pdf; .ppt, etc.) | All |
| HASHVALUE | MD5 or SHA-1 hash values | All |
| FILE NAME | File name for document | E-documents |
| AUTHOR | Creator of a document | E-documents |
| DATECRTD (mrm/dd/yyyy hh:mm:ss) | File system date created | E-documents |
| LAST MODIFIED BY | Last person who modified (saved) a document | E-documents |
| LASTMODDATE (mm/dd/yyyy hh:mm:ss) | Last modified date | E-documents |
| LASTACCESSDATE (mm/dd/yyyy hh:mm:ss) | Last accessed date | E-documents |
| Importance | High Importance - indicates Priority Email message. | Email |

| | | |
|---|---|---|
| Redacted | Descriptor for documents that have been redacted. "Yes" for redacted documents; "No" for un-redacted documents. | All |
| Confidentiality | Confidentiality level if assigned pursuant to any applicable Protective Order or stipulation. | All |
| DuplicateFilepath | Original file/path of the locations where the duplicate items were located at the time of collection. This should include location, file name, and file source extension. Multiple values should be separated by semicolons. | E-documents |
| OtherCustodians | If cross-custodians deduplication is employed | All |
| PAPER | "Y" if document is scanned from hard copy in connection with the collection and production of documents in this matter. | All |
| TITLE | Any value populated in the Title field of the document properties. | E-documents |
| SUBJECT | Any value populated in the Subject field of the document properties. | E-documents |
| COMMENTS | Any value populated in the Comments field of the document properties. | E-documents |

**EXHIBIT B:**

<u>FILE FORMATS</u>

A. Image Load Files
- Every document referenced in a production image load file shall have all corresponding images, text, and data logically grouped together.
- The name of the image load file shall mirror the name of the delivery volume; and should have an .lfp, .opt or .dii extension (e.g., ABC001.lfp).
- The volume names shall be consecutive (i.e., ABC001, ABC002, et. seq.).
- The image load file shall contain one row per TIFF image.
- Every image in the delivery volume shall be contained in the image load file.
- The image key shall be named the same as the Bates number of the page.
- Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.), i.e., a separate volume shall be created for each piece of media delivered.

B. Metadata Load Files
- The metadata load file shall use the following delimiters:
    o Column Delimiter: Pilcrow- ¶ (ASCII :020)
    o Text Qualifier: Thorn- þ (ASCII :254)
    o New line: Registered sign - ® (ASCII 174)

- The first record shall contain the field names in the order of the data set forth in Exhibit A above.
- Metadata fields that are not applicable to a document shall be filled with two adjacent text delimiters.
- All date fields shall be produced in "mm/dd/yyyy hh:mm AM" format.
- A carriage-return line-feed shall be used to indicate the start of the next record.
- Load files shall not span across media (e.g., CDs, DVDs, Hard Drives, etc.); a separate volume shall be created for each piece of media delivered.
- The name of the metadata load file shall mirror the name of the delivery volume, and shall have a .dat, .csv or .txt extension (i.e., ABC001.dat).
- The volume names shall be consecutive (i.e., ABC001 , ABC002, et. seq.).
- The .dat and .txt files shall be encoded in UTF-8 coding.