## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA

| | |
|---|---|
| KELLIE CARDER, et al. individually, and on behalf of all others similarly situated, <br><br>                         Plaintiff, <br><br>    v. <br><br> GRACO CHILDREN'S PRODUCTS, INC., <br><br>                     Defendant. | Civil Action File No.: <br><br> 2:20-CV-00137-LMM <br><br> **REDACTED** |

**MEMORANDUM IN SUPPORT OF DEFENDANT GRACO'S MOTION TO**
<u>**EXCLUDE TESTIMONY AND EXPERT REPORT OF LARRY SICHER**</u>

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................. 1

GRACO'S SIDE IMPACT TESTING PROTOCOLS ....................................... 2

ARGUMENT........................................................................................................ 5

I.     LEGAL STANDARD.................................................................................. 5

II.    SICHER'S OPINIONS ARE IRRELEVANT. ........................................ 6

III.   SICHER'S OPINIONS ARE UNRELIABLE. ...................................... 10

IV.   SICHER'S OPINIONS ARE UNDULY PREJUDICIAL................................ 17

CONCLUSION ................................................................................................. 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re C.R. Bard, Inc.,*
   948 F. Supp. 2d 604-05 (S.D.W. Va. 2013) ............................................................ 13

*Coggon v. Fry's Electronics, Inc.,*
   2019 WL 2137465 (N.D. Ga. 2019) ...................................................................... 5

*Cook v. Sheriff of Monroe Cty.,*
   402 F.3d 1092 (11th Cir. 2005) ............................................................................ 12

*Daubert v. Merrell Dow Pharms., Inc.,*
   509 U.S. 579 (1993) .................................................................................... *passim*

*Diviero v. Uniroyal Goodrich Tire Co.,*
   114 F.3d 851 (9th Cir. 1997) ................................................................................ 14

*FTC v. Fleetcor Techs., Inc.,*
   No. 1:19-cv-5727-AT, 2022 WL 3350066 (N.D. Ga. Aug. 9, 2022) ...................... 12

*Gen. Elec. Co. v. Joiner,*
   522 U.S. 136 (1997) .............................................................................................. 10

*Grasshopper House, LLC v. Clean & Sober Media LLC,*
   No. 2:18-cv-00923-SVW-RAO, 2019 WL 12074086 (C.D. Cal. July
   1, 2019) .................................................................................................................. 8

*Knepfle v. J-Tech Corporation,*
   48 F.4th 1282 (11th Cir. 2022) .............................................................................. 5

*Kumho Tire Co. v. Carmichael,*
   526 U.S. 137 (1999) .............................................................................................. 14

*Lucido v. Nestle Purina Petcare Co.,*
   217 F. Supp. 3d 1098 (N.D. Cal. 2016) ................................................................. 8

*Nease v. Ford Motor Co.,*
   848 F.3d 219 (4th Cir. 2017) ................................................................................ 16

# TABLE OF CONTENTS
(continued)

<div align="right">**Page**</div>

*Pro Service Automotive, LLC v. Lenan Corp.*,
    469 F.3d 1210 (8th Cir. 2006) ............................................................................ 14, 16

*Sardis v. Overhead Door Corp.*,
    10 F. 4th 268 (4th Cir. 2021) .......................................................................... 6

*Smith v. Nexus RVs, LLC*,
    472 F. Supp. 3d 470 (N.D. Ind. 2020) ...................................................... 16

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) .................................................................. 11

*United States v. Thanh Quoc Hoang*,
    891 F. Supp. 2d 1355 (M.D. Ga. 2012), *aff'd*, 560 F. App'x 849 (11th
    Cir. 2014) ........................................................................................................ 6

**Other Authorities**

49 C.F.R. § 571.213 (Federal Motor Vehicle Safety Standard 213) .......................... 15

Fed. R. Evid. 403 .................................................................................. 2, 6, 16

Fed. R. Evid. 702 .......................................................................... 2, 5, 6, 9, 13

## INTRODUCTION

Plaintiffs bring claims against Graco for allegedly misleading consumers by representing its TurboBooster and Affix highback belt-positioning booster seats (the "Booster Seats") as "side impact tested for occupant retention with a standard vehicle lap/shoulder belt in high back booster mode." Plaintiffs have proffered zero evidence—expert or otherwise—on whether reasonable consumers were misled by this representation. Moreover, Graco designed, developed, and implemented side-impact testing protocols to support its representation. Graco ran over a hundred tests on all its car seats that had the "side impact tested" label, and those tests included dozens on the Booster Seats specifically. Plaintiffs do not dispute that the Booster Seats passed all those tests. All told, Plaintiffs do not dispute that Graco's Booster Seats were, in fact, "side impact tested."

Instead, Plaintiffs point to the opinions of Mr. Larry Sicher, a mechanical engineer, who opines that—even though Graco conducted and passed its side-impact testing—the testing was not good enough for Sicher because, in his view, he does not think that the testing showed whether a child would be "safe" (a term he subjectively uses without any definition or scientific meaning) in a side-impact collision. Sicher's opinions completely miss the mark in this case. His personal opinions about Graco's non-public testing protocols have nothing to do with what a reasonable consumer's interpretation of Graco's "side impact tested" label

would be and therefore are completely irrelevant to this case. In fact, he admits he has no opinion on what a reasonable consumer would understand Graco's side-impact label to mean. Sicher's opinions on Graco's side-impact test protocols also lack any reliable foundation. He cites no relevant data, conducted no independent testing, does not suggest any standard or an alternative test, or opine that the testing results would be different if an alternative test was used. His opinions are unreliable, irrelevant, and prejudicial, warranting exclusion under Rule 702 and Rule 403 of the Federal Rules of Evidence.

## GRACO'S SIDE IMPACT TESTING PROTOCOLS

While Graco has never been required by federal regulations to perform side-impact testing on its Booster Seats sold in the United States, Graco has been doing so for more than a decade. In 2012, Graco developed, designed, and implemented two different side-impact testing protocols for its child car seats: Specification No. 20.5.7-20 and Specification No. 20.5.8-20.

**Graco's Specification No. 20.5.7-20**. ███████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

---

[1] Citations to "Ex. _" are to exhibits attached to the declaration of Mir Y. Ali, attached hereto as Exhibit A.

Highway Transportation Safety Administration ("NHTSA") had issued a Notice of Proposed Rule Making to the public outlining what it perceived to be an appropriate side-impact test protocol. While NHTSA did not ultimately issue an actual side-impact test protocol and standard until 2022, Graco used NHTSA's proposed standard as the framework for Specification No. 20.5.7-20. Specification No. 20.5.7-20 requires all applicable child seats to undergo dynamic testing on a test bench mounted to a sled that impacts a fixed barrier at an 80-degree angle at a specified velocity. For that test, the Booster Seats were placed in the seating position next to the fixed barrier (near-side) and in the seating position away from that barrier (far-side).



There is no dispute that the Booster Seats underwent repeated testing pursuant to Specification No. 20.5.7-20. Nor is there any dispute that the Booster Seats passed all the requirements of Specification No. 20.5.7-20.

**Graco's Specification No. 20.5.8-20.**

---

[2] Graco's TurboBooster with Safety Surround and Affix with TrueShield have an additional feature (referred to as a "bumper") in the structure of those seats which absorbs energy in a side-impact and redirects it away from the child occupant. (Ex. 3, Kitchens Tr. 81:7-22.)

███████████████████████████████████████████████████████

███████████    There is no dispute that the TurboBooster and Affix (Safety Surround / True Shield) seats at issue in this case underwent testing pursuant to Specification No. 20.5.8-20.  Nor is there any dispute that these TurboBooster and Affix (Safety Surround / True Shield) seats passed the requirements of Specification No. 20.5.8-20.

## ARGUMENT

### I.    Legal Standard

Expert testimony is admissible under Rule 702 only if the expert is qualified and the testimony is both reliable and relevant.  To be reliable, the testimony must be "based on sufficient facts or data" *and* a "product of reliable principles and methods" that are "reliably applied to the facts of the case."  Fed. R. Evid. 702.  To be relevant, the testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute."  *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (citation and internal quotation marks omitted).  The proponent of expert testimony bears the burden of establishing the expert's qualifications, reliability, and helpfulness.  *Knepfle v. J-Tech Corporation*, 48 F.4th 1282, 1294 (11th Cir. 2022); *Coggon v. Fry's Electronics, Inc.*, 2019 WL 2137465, at *3 (N.D. Ga. 2019) ("Any step that renders the analysis unreliable...renders the expert's testimony inadmissible").

Rule 702 was amended at the end of 2023 to emphasize, not change, "the indispensable nature of district courts' Rule 702 gatekeeping function in all cases in which expert testimony is challenged on relevance and/or reliability grounds." *Sardis v. Overhead Door Corp.*, 10 F. 4th 268, 283-84 (4th Cir. 2021). The district court's Rule 702 gatekeeping function is "indispensable…in all cases in which expert testimony is challenged on relevance and/or reliability grounds." *Sardis*, 10 F. 4th at 284.

Courts should exclude expert opinions when their probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence under Rule 403. *United States v. Thanh Quoc Hoang*, 891 F. Supp. 2d 1355, 1363 (M.D. Ga. 2012), *aff'd*, 560 F. App'x 849 (11th Cir. 2014) (excluding expert testimony because the likely prejudice outweighed their minimum probative value and the opinions would likely confuse the issues and mislead the jury).

## II.    Sicher's Opinions Are Irrelevant.

As a threshold matter, Sicher's opinions have no bearing on the question at the heart of this case: whether Graco's side-impact tested representations were misleading to a reasonable consumer. In fact, Plaintiffs provide no evidence—from their experts or any other source—to address this critical inquiry for the

Court.  To be admissible, an expert's opinions must be relevant—that is, they must "fit the facts of the case." *Daubert*, 509 U.S. at 591.  Sicher's opinions do not "fit the facts of this case" and should be excluded.

This is a consumer labeling case.  The pertinent question is whether Graco's labeling of its Booster Seats as "side-impact tested" was misleading to a reasonable consumer.  Plaintiffs try to dress up and contort Sicher's opinions to make them appear relevant to Plaintiffs' claims, but they simply are not.

Sicher is a mechanical engineer.  He's not an expert in consumer survey methodologies, and he expressly disclaims offering any opinions regarding a reasonable consumer's understanding of the "side-impact tested" label (Ex. 4, Sicher Tr. 19:19-25).  All that Sicher did in this case was review Graco's side-impact testing protocols and declare them to be inadequate because, in his subjective view, they did not test whether a child would be "safe" in a side-impact collision. But Sicher never provides a definition for "safe" or explains what additional testing would be required to meet his undefined standard of being "safe."

Sicher's undefined standard is based solely on his own interpretation of what the phrase "side-impact tested" implies to him:

> "By saying it's side-impact tested, it's giving the indication **to me** that they're telling the public that it's been tested and it's safe. I mean they're not going to advertise side-impact tested, and it fails. **So to me**, the implication is that it's going to be safe." (Ex. 4, Sicher Tr. 74:18-25.)  (emphasis added)

"**If they're going to advertise it as being side-impact tested, which implies that it's side-impact tested for safety to me**, they've got to measure something, whether it's excursion or injury values. So that's [] my criticism." (Ex. 4, Sicher Tr. 108:25-109:5.) (emphasis added)

However, Sicher's subjective, lay interpretation of Graco's representation is irrelevant to the issues in this case, and he is not remotely qualified to opine on what a reasonable consumer would perceive any labeling to mean, much less the labeling on the Booster Seats. *Lucido v. Nestle Purina Petcare Co.*, 217 F. Supp. 3d 1098, 1103 (N.D. Cal. 2016) (holding that an expert in the field of veterinary medicine is not qualified to testify about what a reasonable consumer would consider to be "material" when assessing dog food products).

At other points in his deposition, Sicher went even further outside his field of expertise, stating that he doesn't have a problem with the testing, but with the way that it was advertised:

"I'm not critical for doing the testing; **I'm critical for the way they've advertised it**."  (Ex. 4, Sicher Tr. 73: 2-9) (emphasis added).

"So again, I don't fault them from [sic] running the test.  **I'm faulting them for advertising to the public that its side-impact tested**, and giving the implication that they've proven it to be safe compared to other – other modes. But the test, it's a test. I have no problem with the test." (Ex. 4, Sicher Tr. 74:8-14) (emphasis added).

Sicher is not an advertising expert.  Thus, he is wholly unqualified to opine on criticisms relating to advertising. *Grasshopper House, LLC v. Clean & Sober Media LLC*, No. 2:18-cv-00923-SVW-RAO, 2019 WL 12074086, at *16 (C.D. Cal. July 1,

2019) (finding that physician was not qualified and his testimony irrelevant regarding how individuals interpret the word "cure" to mean because asking him "to opine on this subject would be asking [him] to provide opinions outside his specialized knowledge.") Sicher's comments on Graco's advertising practices are beyond his expertise and hold no probative value in this context.

Finally, Sicher's opinions are irrelevant because Graco clearly states that it conducted "side-impact testing for occupant retention," as noted on the Booster Seats and in other marketing materials.



(Report of Graco's Expert Witness Will Van Arsdell, Figure 6.)

Sicher's attempt to impose his own undefined and subjective "safety" standard is irrelevant when Graco explicitly explained what its "side impact tested" label meant and defined the scope of its testing.  For this reason alone, Sicher should be precluded from testifying in this case.

III.    __Sicher's Opinions are Unreliable.__

To be reliable, the testimony must be the "product of reliable principles and methods" that are "reliably applied to the facts of the case."  Fed. R. Evid. 702. Sicher's opinions are not based on any reliable principles or methods; they are based on his own *ipse dixit*.  Courts are not required to simply take the expert's word for it when determining whether a conclusion necessarily flows from the data.  As the Supreme Court explained, "nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the ipse dixit of the expert."  *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).  Because Sicher's opinions are not a product of reliable principles and methods, his testimony should be excluded.

As to Specification No. 20.5.7-20 specifically, Sicher broadly claims that Graco's side-impact testing protocols "did not test to determine whether a child would be safe in a side-impact collision." (Ex. 5, Sicher Rep., p. 24.) Sicher criticizes Graco's testing under 20.5.7-20 because Graco did not compare the testing results to any benchmark injury or excursion data.  But Sicher does not identify what benchmark injury or excursion values Graco should have compared their test results to in order to determine if the Booster Seats are, in his words, "safe."  (Ex. 4, Sicher Tr. 63:7-19; 75:11-17; 153:13-19.)  Indeed, Sicher admitted that identifying any objective criteria to assess Graco's protocols was "beyond the scope of what

he's been asked to do."  (Ex. 4, Sicher Tr. 71:21-72:10.)  Thus, Sicher did not have any opinion on what the appropriate criteria should be, such as a head injury threshold to which Graco should have compared its test results.   (Ex. 4, Sicher Tr. 71:21-72:10.)

In other words, Sicher criticizes Graco for failing to use "objective" performance criteria in its tests but then fails to (1) identify the performance criteria Graco should have used; (2) identify what criteria should be used to assess his subjective and undefined standard of "safe," or (3) explain whether application of some other criteria would have changed the outcome of Graco's testing. This absence leaves a fatal gap in his proffered opinions, as it does not allow for an objective assessment of them against Graco's protocols.  That gap is compounded by Sicher's admitted failure to conduct any independent testing of his own in this case.  (Ex. 4, Sicher Tr. 85:21-86:5.)  Ultimately, Sicher's opinion as to Specification No. 20.5.7-20 is not the product of reliable principles and methods but of Sicher's limited and subjective experience.  *United States v. Frazier*, 387 F.3d 1244, 1284 (11th Cir. 2004) ("While experience may be sufficient to qualify a person as an expert, the ipse dixit of an expert in a given field is simply not enough to establish the reliability of a particular opinion.").

Sicher's conclusion as to Specification No. 20.5.8-20 suffers from a similar flaw.  Sicher's sole criticism of this test is that it ████████████████████

11



██████████████████████████████████████████████████████

████  Stated differently, Sicher has not seen, nor does he rely on, data that supports his conclusion, effectively conceding that his opinions are *ipse dixit*. *Cook v. Sheriff of Monroe Cty.*, 402 F.3d 1092, 1112 (11th Cir. 2005) (affirming exclusion of expert witness's opinions that were connected to the data "only be the *ipse dixit* of the expert); *FTC v. Fleetcor Techs., Inc.*, No. 1:19-cv-5727-AT, 2022 WL 3350066, at *30 (N.D. Ga. Aug. 9, 2022) (excluding expert opinion because there was "too great an analytical gap" between [the expert's] data and his proffered opinion); *In re C.R. Bard, Inc.*, 948 F. Supp. 2d 604-05 (S.D.W. Va. 2013) (excluding expert opinion where it was "based on nothing more than [the expert's] personal, unscientific observation and opinion that 'it's obvious' that mesh arms are sharp and can serrate or tear nerves" and finding such testimony to be "the type of subjective, conclusory approach that cannot reasonably be assessed for reliability and that Rule 702 is designed to exclude") (quotation marks and citation omitted).

Sicher purports to impose an undefined, subjective threshold for Graco's testing—the term "safe"—but does not provide any definition or framework for evaluating what constitutes "safe" in his mind. Without defining the term, Sicher's opinions lack any meaningful way to evaluate his opinions and whether they are a reliable critique of Graco's testing. For instance, does "safe" mean the complete absence of any injury, even minor ones? Does it mean the absence of

serious or life-threatening injuries?  Or does it refer to specific metrics such as no head contact or a limited amount of head contact during a collision?  If the latter, what constitutes an acceptable amount of head contact, and how should it be measured?  Sicher offers no answers to these critical questions, leaving his opinions ungrounded and devoid of any objective or scientific foundation.

This is evident when assessing Sicher's opinions under the non-exhaustive list of factors that *Daubert* sets out to determine whether an expert's opinions are reliable, including whether the expert's theory: (1) is testable; (2) has been subjected to peer review and publication; (3) has a known or potential rate of error; (4) is guided by standards controlling its operation; and (5) has gained general acceptance in the relevant scientific community.  *Daubert*, 509 U.S. at 592-95. Sicher's conclusions fail to meet any of these criteria.

Sicher's opinions are not testable because he does not provide any objective criteria or benchmarks to evaluate his theory.  Courts do not admit expert opinions, even plausible or intuitive ones, that are based on "unsubstantiated speculation" or the expert's "subjective beliefs." *Diviero v. Uniroyal Goodrich Tire Co.*, 114 F.3d 851, 853 (9th Cir. 1997); *see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 157 (1999) (stating that "intellectual rigor" and "scientific validity" are essential to testability); *see also Pro Service Automotive, LLC v. Lenan Corp.*, 469 F.3d 1210, 1216 (8th Cir. 2006) (excluding expert opinion that "offered only vague theorizing based

upon general principles"). Here, Sicher criticizes Graco for not comparing its tests to benchmark values but does not identify what benchmark injury or excursion data Graco should have compared it to. (Ex. 4, Sicher Tr. 63:7-19; 75:11-17; 153:13-19.) Sicher similarly criticizes Graco for not testing at angles other than 90 degrees but does not and cannot point to any actual data that the outcome of Graco's tests would have been any different. Sicher's opinions are based on his "unsubstantiated speculation." This lack of testability and objective support highlights why Sicher's opinions fail under Daubert's reliability standards.

Perhaps most telling, Sicher does not opine that the Booster Seats are unsafe in a side-impact collision and admits that he "do[es not] have any data" on this, because opining on whether the Booster Seats were actually safe or not was "outside the scope" of what he was asked to do in this case. (Ex. 4, Sicher Tr. 143:23-144:8.) Nor could Sicher opine that the Booster Seats are unsafe because he is well aware that Graco's Booster Seats have uniformly passed the rigorous requirements of Federal Motor Vehicle *Safety* Standard 213 (FMVSS 213) for nearly 25 years.

In the end, Sicher's subjective views on what is "safe" are just that: subjective views. Sicher admits that Graco implemented the test protocols it says it did and that the Booster Seats uniformly passed that testing. (Ex. 4, Sicher Tr. 123:1-5.) He does not dispute that the Booster Seats perform their intended

function: to properly position the vehicle's seat belts over a child.  (Ex. 4, Sicher Tr. 23:14-24:8.)  He admits that the Booster Seats, when used properly with a vehicle seat belt, keeps the child occupant from being ejected from their seating position, hence reducing the risk of injury and thus increasing safety.  (Ex. 4, Sicher Tr. 78:10-79:6.)  And, he admits that he is not aware of any instance where the Booster Seats failed to meet FMVSS 213 or any other applicable U.S. safety standard.  (Ex. 4, Sicher Tr. 131:12-132:16.)

What Sicher does not do is provide any definition of what he means by "safe" for this Court to assess the validity and admissibility of his opinions. Sicher's opinions are precisely the type of unsubstantiated opinions that courts repeatedly exclude under *Daubert*, and the Court should do so here.  *See Nease v. Ford Motor Co.*, 848 F.3d 219, 232 (4th Cir. 2017) (reversing admission of expert engineer's opinion because the expert "conducted no testing whatsoever to arrive at his opinion," noting that he "used no 'methodology' for reaching his opinions" aside from visual observation of the relevant parts); *Pro Service Automotive, LLC v. Lenan Corp.*, 469 F.3d 1210, 1216 (8th Cir. 2006) (excluding expert opinion that "offered only vague theorizing based upon general principles"); *Smith v. Nexus RVs, LLC*, 472 F. Supp. 3d 470, 479 (N.D. Ind. 2020) (excluding expert opinion in part because expert "performed no testing, though he could, that would substantiate his opinion or assist the jury").

IV.    <u>**Sicher's Opinions are Unduly Prejudicial.**</u>

Rule 403 of the Federal Rules of Evidence allows the court to exclude relevant evidence where "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by consideration of undue delay, waste of time, or needless presentation of cumulative evidence. Fed. R. Evid. 403. Here, the probative value of Sicher's opinions is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury, and Sicher's opinions should be excluded for this reason as well.

This case is about whether reasonable consumers were deceived by Graco's representation that its Booster Seats were "side-impact tested side impact tested for occupant retention with a standard vehicle lap/shoulder belt in high back booster mode." Sicher is not a consumer survey expert and provides no opinion relevant to his inquiry. He is admittedly not offering any opinions regarding a reasonable consumer's interpretation of Graco's representations, nor are his opinions based on any consumer interpretation of Graco's "side impact tested" label. (Ex. 4, Sicher Tr. 18:17-20:13.) Instead, Sicher simply criticizes the underlying test protocols, without offering any opinion on what those protocols should have been. Consumers do not see these protocols as they are not publicly

available.  Interpretation of these protocols is ultimately irrelevant to the issues in this case, making Sicher's interpretation of them of limited, if any, probative value.

Whatever the probative value of Sicher's opinions is, it is outweighed by the significant prejudice Graco will face if his testimony is not excluded.  Sicher opines that Graco's side-impact testing protocols did not determine whether the Booster Seats were "safe" in a side-impact collision without ever defining what "safe" means.  No booster seat can guarantee safety for every collision, just like no helmet can guarantee safety in every bike crash.  As Sicher himself admitted, the purpose of a belt-positioning booster seat is to reduce the risk of injury during a collision by "boosting" the child so that the vehicle belt system is positioned correctly to reduce the likelihood of injury.  (Ex. 4, Sicher Tr. 78:10-79:6.)  In Sicher's own words, "when you reduce the likelihood of an injury, you are improving safety." (*Id*.)  Graco explicitly represented that "side-impact tested" referred solely to testing for occupant retention with a vehicle belt system—a fact Sicher himself acknowledges.  (Ex. 5, Sicher Rep., p. 20.)  Sicher never disputes that the Booster Seats reduce the risk of injury by retaining an occupant with the vehicle belt, exactly as Graco advertised.   In fact, Sicher concedes that Graco's testing demonstrated occupant retention in accordance with Graco's testing protocols. (Ex. 4, Sicher Tr. 73:10-13.)  In other words, Graco's representations about its Booster Seats were fully aligned with the actual results of its testing.

Allowing Sicher's testimony would risk confusing and misleading the jury. Allowing him to testify as an expert heightens this risk substantially. His opinions, which rest on his "unsubstantiated speculation" regarding Graco's testing protocols, could lead the jury to improperly evaluate Graco's testing protocols based on criteria that are irrelevant and unsubstantiated. Such confusion would unfairly prejudice Graco. Sicher's testimony should be excluded.

## CONCLUSION

For the foregoing reasons, Graco respectfully requests that Sicher's report and opinions be stricken, and that Sicher be excluded as an expert in this matter.

Dated: January 17, 2025                    /s/ *Joseph J. Krasovec, III*

ARENTFOX SCHIFF LLP
Joseph J. Krasovec, III (pro hac vice)
Mir Y. Ali (pro hac vice)
Jeffrey Skinner (pro hac vice)
J. Maxwell Heckendorn (pro hac vice)
233 S. Wacker Drive, Suite 7100
Chicago, Illinois 60606
Telephone: (312) 258-5500
joseph.krasovec@afslaw.com
mir.ali@afslaw.com
jeffrey.skinner@afslaw.com
max.heckendorn@afslaw.com

WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC
Nicholas P. Panayotopoulos
Georgia Bar No. 560679

Jennifer A. Adler
Georgia Bar No. 585635
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Tel:  (404) 876-2700
Fax: (404) 875-9433
npanayo@wwhgd.com
jadler@wwhgd.com

*Counsel for Defendant Graco Children's Products, Inc.*

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

In compliance with Local Rule 7.1(D), the undersigned certifies that the foregoing submission to the Court is computer-processed, double-spaced between lines, and prepared with 13-point Book Antiqua font.

Respectfully submitted this 17th day of January 2025.

<div style="margin-left: 40%;">

ARENTFOX SCHIFF LLP

*/s/ Mir Y. Ali*
Mir Y Ali

</div>

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2025, I filed on the CM/ECF system the foregoing, and thereby served such filing via the Court's ECF Notification system to all attorneys of record in this matter.

<div align="right">

*/s/ J. Maxwell Heckendorn*
J. Maxwell Heckendorn
One of Graco's Attorneys

</div>