# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA

|  |  |
|---|---|
| KELLIE CARDER, et al. individually, and on behalf of all others similarly situated,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>GRACO CHILDREN'S PRODUCTS, INC.,<br><br>　　　　　　　　Defendant. | Civil Action File No.:<br><br>2:20-CV-00137-LMM |

# DEFENDANT GRACO'S OPPOSITION TO
# PLAINTIFFS' MOTION TO EXCLUDE EXPERT DR. MARK SOCHOR AND
# <u>CERTAIN OPINIONS OF EXPERT DR. STEPHANIE PLANCICH</u>

## <u>TABLE OF CONTENTS</u>

Page

INTRODUCTION .......................................................................................................... 1

BACKGROUND............................................................................................................. 2

I.     DR. SOCHOR'S RELEVANT EXPERIENCE AND OPINIONS ................... 2

II.    DR. PLANCICH'S RELEVANT EXPERIENCE AND OPINIONS............... 5

ARGUMENT .................................................................................................................. 8

I.     DR. SOCHOR'S OPINIONS WILL ASSIST THE JURY IN
UNDERSTANDING HOW THE BOOSTER SEATS REDUCE THE
RISK OF INJURY IN A SIDE-IMPACT COLLISION ..................................... 8

II.    DR. PLANCICH'S OPINIONS ON SUPPLY-SIDE FACTORS
DIRECTLY REBUT CLAIMS MADE BY PLAINTIFFS' EXPERTS ............ 13

III.   DR. PLANCICH IS QUALIFIED TO CRITIQUE MR. GASKIN'S
OPINIONS ........................................................................................................ 15

CONCLUSION............................................................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Daubert v. Merrell Dow Pharms., Inc.,*
509 U.S. 579 (1993) ................................................................................ 12, 18

*In re FCA US LLC Monostable Electronic Gearshift Litigation,*
382 F.Supp.3d 687 (E.D. Mich. 2019) ...................................................... 17

*Hendrix v. Evenflo Co., Inc.,*
255 F.R.D. 568 (N.D. Fla. 2009) ................................................................ 16

*Plantation Pipe Line Co. v. Assoc. Electric & Gas Insurance Services Ltd.,*
2011 WL 13143562 (N.D. Ga. 2011) ......................................................... 14

**Other Authorities**

Fed. R. Civ. P. 26(a)(2)(D)(ii) ......................................................................... 14

Fed. R. Evid. 702............................................................................................... 15

Fed. R. Evid. 703............................................................................................... 16

## **INTRODUCTION**

Plaintiffs entire case depends on first establishing that reasonable consumers were deceived by the "side impact tested" label on Defendant Graco Children's Products, Inc.'s ("Graco") Booster Seats[1]. Plaintiffs now admit that Graco *did* conduct side-impact testing and that the label "technically speaking was true." (ECF No. 180-4 at 1-2.) Yet, Plaintiffs have offered zero evidence to show that this admittedly true "side impact tested" label was misleading to reasonable consumers. This fundamental failure of proof is the simplest basis on which the Court should grant Graco summary judgment without delving into the expert opinions proffered by either party. (*See* ECF No. 177-1 at 20-25.) But having skipped over this threshold evidentiary requirement, Plaintiffs now seek to exclude opinions from Graco's experts Drs. Mark Sochor and Stephanie Plancich.

Plaintiffs' Motion should be denied because these experts will help the jury understand two key parts of this case. First, Dr. Sochor will explain three safety benefits of the Booster Seats and how Graco's side-impact testing confirmed that these benefits decrease the risk of injury (*i.e.*, improve safety) for child passengers during a side-impact collision. Dr. Sochor is both a biomechanical engineer and an emergency medicine physician and is an internationally recognized expert on

---

[1] "Booster Seats" refers to Graco's TurboBooster and Affix highback belt-positioning booster seats, which are the two booster seat product lines at issue in this case.

pediatric injury mechanisms in vehicle accidents. Second, Dr. Plancich will explain to the jury how Plaintiffs' experts' damages calculation, which uses a whopping 44.4% market value attributable to the "side impact tested" label and multiplies it by every Booster Seat sale from 2015-2021, is flawed, oversimplified, and unrealistic. Dr. Plancich has a PhD in economics from the Massachusetts Institute of Technology and has been analyzing and critiquing damages models for decades. Both Dr. Sochor's and Dr. Plancich's testimony will be helpful to explain the defects in Plaintiffs' liability and damages theories to the jury. Plaintiffs' Motion should be denied.

## BACKGROUND

### I.    Dr. Sochor's Relevant Experience and Opinions

Dr. Sochor is a medical doctor and tenured faculty member at the University of Virginia's Department of Emergency Medicine and a professor of biomechanics who has been teaching and researching pediatric injury biomechanics and kinematics for decades. (Ex. 1, Report of Graco's Expert Mark Sochor at 1-2.) Dr. Sochor received two years of fellowship training at the National Highway Traffic and Safety Administration (NHTSA) and has conducted over 1000 hours of vehicle accident testing and injury causation investigation. (*Id*.) For decades, he has been studying the biomechanics of traumatic injuries in depth as part of the Association for the Advancement of Automotive Medicine. (*Id*.) As an expert in injury

biomechanics and the performance of vehicle restraint systems, he has lectured both nationally and internationally and authored over 120 medical and technical publications. (*Id.*)

Graco has proffered Dr. Sochor in this case to offer his opinions regarding the safety benefits of the Booster Seats generally and specifically in a side-impact collision. Dr. Sochor reviewed the expert report of Plaintiffs' engineering expert Larry Sicher, the side-impact testing conducted by Graco, and the deposition transcripts of Graco representatives who were knowledgeable about the testing. Based on his analysis of Graco's side-impact testing and his decades of education, experience, and expertise in pediatric injury mechanisms in motor vehicle crashes, Dr. Sochor concluded that the Booster Seats are effective in mitigating injuries during a side-impact collision and were therefore appropriately labeled as "side-impact tested."

Specifically, Dr. Sochor explained that the Booster Seats provide three important safety benefits that reduce the risk of injury to children during side-impact collisions. First, the fundamental purpose and safety benefit of the Booster Seats is to allow for proper utilization of a vehicle's lap and shoulder belt system to prevent a child from being ejected from the Booster Seats, and to prevent the Booster Seats from being ejected from the vehicle seat, during a collision. (*Id.*, p. 5; Ex. 2., Sochor Tr. at 122:10-123:9.) By ensuring that the child stays in the Booster

Seat, and the Booster Seat stays connected to the vehicle seat, the child will not strike surfaces within the vehicle in ways that could result in serious injury and will not be ejected from the vehicle.

Second, Booster Seats raise a child up so that the vehicle lap and shoulder belt will fit properly across the "hard points" (*i.e.*, chest and pelvis) to properly restrain a child and protect the child's vital organs and soft tissues during a crash. (Ex. 1, Sochor Rep. at 5-6; Ex. 2., Sochor Tr. at 13:8-16:22.)  These "hard points" serve as "reaction surfaces as the child is being decelerated" during a crash. (*Id.*) Because the chest is like a protective cage and the pelvis is an ideal body part to restrain a person, these "hard points" of contact for the seat belt are much better at protecting and dissipating energy than soft tissue parts like the neck or abdomen, which would be the points of contact if the child was not "boosted up." (Ex. 2., Sochor Tr. at 13:19-16:22.)

Third, the Booster Seats' side wings next to the child's head function to help slow down the head without bringing it to an abrupt halt during a side-impact collision. By interacting with the child's head, the padding in the Booster Seats' side wings decelerates the head in a controlled manner, known as "ride down," leading to a lower likelihood of injury.  (Ex. 1, Sochor Rep. at 9.)  Dr. Sochor used the analogy of a child falling from a window directly onto pavement versus falling

from the same window but through an awning to "ride down" or slow down before the impact with the pavement.  (*Id.*)

Additionally, Dr. Sochor explained that before 2022 (and not effective until June 2025), there were no side-impact regulations in the United States, so it was up to manufacturers to develop their own internal side-impact testing, and Graco did in fact test, validate, redesign, and retest the Booster Seats using its own reasonable side-impact testing protocols.  Without conducting the side-impact testing, it would not be confirmed that the aforementioned safety benefits exist during a side-impact collision, but Graco's side-impact testing demonstrated all three benefits.  (*Id.* at 9-10, 13.)  Based on the confirmation of these safety benefits during the side-impact testing, Graco added the "side impact tested" label to the Booster Seats.

## II.    **Dr. Plancich's Relevant Experience and Opinions**

Dr. Plancich has been studying and teaching microeconomics and macroeconomics for over two decades.  She graduated with honors when she earned her B.Sc. in economics from the London School of Economics and subsequently earned her Ph.D. in economics from the Massachusetts Institute of Technology ("MIT").  (Ex. 3, Report of Graco's Expert Stephanie Plancich at Ex. A.)  As a managing director at NERA Economic Consulting, Dr. Plancich frequently analyzes damages models at the class certification stage, and has specific expertise

and experience in determining whether a proposed formula based on price and sales data is appropriate to estimate damages on a class-wide basis. (*Id.* at ¶¶ 7-8.)

Graco has proffered Dr. Plancich in this case to offer her opinions regarding Plaintiffs' experts' damages model. Dr. Plancich reviewed the expert reports of Plaintiffs' conjoint survey expert Stephen Gaskin and Plaintiffs' damages expert Colin Weir. She also reviewed various documents related to Graco's Booster Seat labeling and pricing, including, but not limited to, Graco deposition testimony regarding Graco's complex pricing model, documents reflecting Booster Seat labeling and pricing during various periods of time, competitor booster seat labeling and pricing, and retail and wholesale Booster Seat data. Finally, Dr. Plancich reviewed and relied upon the report of Graco's survey expert Dr. Melissa Pittaoulis, who critiqued the conjoint survey conducted by Plaintiffs' expert Gaskin. (*Id.* at Ex. B.) Based on her analysis of the Booster Seat labeling, pricing, and sales information, the other expert reports in this case, and her decades of experience evaluating damages models, Dr. Plancich concluded that Plaintiffs' damages model, which simply multiplied an alleged 44.4% market value by the total sales of every Booster Seat from 2021-2025, was fundamentally flawed and unrealistic. (*Id.* at ¶¶ 3-5.)

Dr. Plancich explained several different specific flaws with Gaskin's and Weir's opinions. First, Gaskin's conjoint survey used biased language, failed to determine what "side impact tested" meant to his survey respondents, and failed to include booster seat features that are important to consumers. (*Id.* at ¶ 3.) Therefore, Dr. Plancich concluded that Gaskin's calculation of a 44.4% price premium (almost *half* the retail value) attributable solely to the "side impact tested" label on the Booster Seats was unhinged from any realistic purchasing decisions made by actual consumers of this product. Additionally, Dr. Plancich noted that under Gaskin's theory, in a but-for world (i.e. with the "side impact tested" label removed), the market price for the Booster Seats would be *lower* than Graco's wholesale price, meaning profit margins for Graco would be non-existent. Of course, this theory is completely divorced from reality, because Graco continued to sell the Booster Seats after the "side impact tested" label was removed in 2022 at the same prices charged for Booster Seats with the label, with no detectable reduction in demand. Neither Gaskin nor Weir addressed this issue in their analysis. (*Id.* at ¶ 55.) Second, Gaskin and Weir ignored critical factors present in the real-world retail market for booster seats including the facts that purchasing a car seat was mandated by law, Graco's competitors made similar claims about side-impact testing, there was no regulated standard for side-impact testing, and market prices are determined by both supply and demand. (*Id.* at ¶

4.)  Third, Dr. Plancich explained how Weir ignored all the real-world supply and demand factors and simply multiplied Gaskin's 44.4% market value times Booster Seat sales over a five-year period and claimed the result represented economic damages.  (*Id.* at ¶¶ 5-6.)

## ARGUMENT

**I.**    **Dr. Sochor's Opinions Will Assist the Jury in Understanding How the Booster Seats Reduce the Risk of Injury in a Side-Impact Collision.**

Setting aside Plaintiffs' failure to address the threshold evidentiary requirement of establishing deception under the reasonable consumer standard, imagine a scenario in which a group of plaintiffs allege that the Booster Seats "would not provide any appreciable safety to their child occupants in the event of a side-impact crash" (ECF No. 87, Second Am. Compl. at ¶4), but then argue that the testimony of an expert on pediatric injury mechanisms, who explains exactly how the Booster Seats reduce the risk of injury in a side impact crash, is irrelevant. Of course, the Court does not need to imagine it, because that is exactly what Plaintiffs argue here.

Unsurprisingly, Plaintiffs take no issue with Dr. Sochor's qualifications as a medical and biomechanical expert on car restraint systems and pediatric injuries during motor vehicle accidents.  Nor do they take issue with his methodology in evaluating Graco's side-impact testing and opining on the safety benefits of the Booster Seats during a side-impact collision.  Instead, Plaintiffs' Motion challenges

8

Dr. Sochor's opinions on the sole basis of relevancy. Plaintiffs make a series of contradictory arguments regarding relevancy, and the Court should reject all of them.

Plaintiffs start by trying to reframe the issues in this case by focusing on their belatedly disclosed omissions theory, which Plaintiffs' counsel created for this litigation. This new theory alleges that Graco had an obligation to include on its Booster Seat packaging a disclosure that the Booster Seats were tested for occupant retention but not "for child safety in all types of side-impact collisions." Unfortunately for Plaintiffs, they cannot change the issues and applicable legal standard for their false advertising claims through constantly evolving theories of liability. The relevant issues and legal standard are established by the reasonable consumer standard, which Graco has briefed in detail in support of its summary judgment motion. (ECF No. 177-1.) Instead of focusing on the actual applicable standard, Plaintiffs now make the bizarre claim that "what [the Booster Seats] may or may not do—is not the issue in this case." (Motion at 5.) Even under Plaintiffs' new omissions theory, which uses the vague, ambiguous, and undefined terms "safety of children" and "all types of side-impact collisions," what the Booster Seats do in car accidents is precisely the relevant inquiry. And what could be more relevant in addressing what the Booster Seats do than an undisputed expert on the

topic testifying to exactly what the Booster Seats do for child safety in a side-impact collision?

Dr. Sochor's expert opinions address directly how the Booster Seats improve child safety during a side-impact collision in three ways: (1) the Booster Seats work properly in tandem with the vehicle seat belt to ensure the child and/or Booster Seat is not ejected; (2) the Booster Seats lift a child up so that the vehicle lap and shoulder belt fits properly over the child's bony structures, which are able to carry the dynamic load present in vehicle collisions, to protect the child's vital organs and soft tissue; and (3) the Booster Seats' side wings decelerate the head in a controlled manner, leading to a lower likelihood of injury.  All three of these benefits improve child safety in a side-impact collision by reducing the likelihood of injury.

Plaintiffs' argument that Dr. Sochor does not tie his first and third main conclusions regarding the safety benefit of "ride down" and the Booster Seats' side wings to Graco's side-impact testing is demonstrably wrong.  Dr. Sochor dedicated a section of his expert report to the "GRACO INTERNAL SIDE IMPACT TESTING PROGRAM," in which he specifically explains that the "Graco side impact testing demonstrates side wings on a high back booster seat will provide an interaction between the [Anthropomorphic Test Device dummy] head and the deformable side wing."  (Ex. 1, Sochor Rep. at 9.)  He then explains how this slowing of the

10

head, or "ride down," helps to create a controlled stop, and he includes the following pictures *from Graco's side-impact testing*, which demonstrate the "ride down":

 

(*Id.*, Figure 5.)

The picture on the left shows the head just prior to the side impact collision, and the picture on the right shows the head contacting the cushioned side wings during the collision. In the caption of his Figure 5, Dr. Sochor explains that Graco's side-impact testing shows that the "head interacts with the side padding and structure of the" Booster Seats and is "being slowed down as it interacts with the side wing structure." (*Id.*) By directly explaining how the Booster Seats improve child safety during a side-impact collision by reducing the risk of injury *and* explaining how Graco's side-impact testing specifically demonstrates this safety benefit, Dr. Sochor has sufficiently tied his testimony "to the facts of the case that it will aid the jury in resolving any factual dispute" regarding the child safety

benefits of the Booster Seats.  *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993) (citation and internal quotation marks omitted).

Plaintiffs are equally wrong when they argue that Dr. Sochor's second main conclusion on Graco's development and implementation of its side-impact testing is irrelevant.  Plaintiffs admit that the crux of their case is their claim that the "side impact tested" label on the Booster Seats was misleading.  Dr. Sochor's second conclusion is that despite the absence of any NHTSA regulation for side impact protection, "Graco developed reasonable side impact testing standards, and did in fact test, validate, redesign, and test again" the Booster Seats to those standards. (Ex. 1, Sochor Rep. at 13.)  This opinion will help the jury understand why Graco's "side impact tested" label was not misleading, but rather true and supported by Graco's testing.

Finally, the Court should ignore Plaintiffs' comment that Dr. Sochor's list of refenced publications includes two references, which appear to cover topics broader than his opinions in this case.  So what?  Dr. Sochor listed *128* different references, the overwhelming majority of which directly relate to injuries or restraints in motor vehicle crashes.  (*See id.* at App. A.)  Plaintiffs' attempt to devalue the entire testimony of one of the top experts in the field by cherry-picking two out of 128 different references falls flat.

II.     **Dr. Plancich's Opinions on Supply-Side Factors Directly Rebut Claims Made by Plaintiffs' Experts.**

Plaintiffs' sole basis for objecting to the admissibility of Dr. Plancich's opinions on supply-side factors is their generic reference to Graco's objections and responses to 13 different requests for production from Plaintiffs. These requests were incredibly broad, and Graco appropriately objected on multiple grounds, including burden, proportionality, and relevance. Plaintiffs never moved to compel the production of documents responsive to these requests or otherwise raised this issue with the Court. Further, Plaintiffs provide no explanation or authority to support their argument that objections to discovery requests somehow preclude an expert from testifying on a subject matter. They do not.

More importantly, Graco's discovery objections and responses had no bearing whatsoever on the opinions from Plaintiffs' experts Gaskin or Weir or Graco's expert Plancich.  Plaintiffs' experts Gaskin and Weir never claimed they were missing supply-side information from Graco that they needed to form their opinions.  Rather, Gaskin affirmatively stated that "[i]t is [his] opinion, based on [his] experience and conversations with Plaintiffs' economics expert, Mr. Colin Weir, that the conjoint methodology described in this Report accounts for appropriate supply-side factors, including" actual market prices and actual quantity of Booster Seats sold.  (Ex. 4, Report of Plaintiffs' Expert Gaskin at ¶ 22.) Similarly, Weir affirmatively stated that he "understand[s] that Mr. Gaskin has

considered and accounted for supply-side factors in his conjoint design," and that Weir himself had "also considered supply-side factors in [his] damages framework." (Ex. 5, Report of Plaintiffs' Expert Weir at ¶¶ 45-46.) Dr. Plancich's opinions are relevant because they respond directly to these claims.

"[R]ebuttal experts may be permitted to present evidence that is intended solely to contradict or rebut evidence on the same subject matter identified by another party." *Plantation Pipe Line Co. v. Assoc. Electric & Gas Insurance Services Ltd.*, 2011 WL 13143562, at *2 (N.D. Ga. 2011) (citing Fed. R. Civ. P. 26(a)(2)(D)(ii) and denying motion to exclude rebuttal expert opinion). Here, in accordance with Rule 26 and this Court's order permitting rebuttal experts, Dr. Plancich issued opinions on supply-side factors in direct response to the claims about supply-side factors that Gaskin and Weir made in their reports. As Dr. Plancich explained in her report, Gaskin's conjoint analysis and Weir's damages calculation are flawed because they did not incorporate or consider any supply-side factors such as production costs, drivers of pricing, competitive behavior, or the government mandate for children of certain ages/weights to be secured in a car seat. (Ex. 3, Plancich Rep. at ¶¶ 4-5, 44, 45-50.) Dr. Plancich relied on the testimony of Graco's witness Monica Corbett for many of these supply-side critiques of Plaintiffs' experts' opinions. (*See e.g., id.* at ¶¶ 4, 47.) Ms. Corbett explained during deposition that the MSRP of the Booster Seats was influenced by a number of

factors. For example, inflation and the addition of product features could both increase production costs. (Ex. 7, Corbett Tr. at 18:23-19:10, 34:4-35:35.) Additionally, Corbett testified that MSRP could also be adjusted based on negotiations with retailers. (*Id*. at 35:25-36:5.) Although Plaintiffs took the deposition of Ms. Corbett, and the transcript was readily available for Plaintiffs' experts to review and address, they ignored her testimony and did not account for any of these factors.

Plaintiffs do not claim that Dr. Plancich's opinions regarding supply-side factors are unreliable under Fed. R. Evid. 702, and it is curious why they would contend that these opinions are irrelevant when their own experts claim—without any support—that they accounted for supply-side factors when issuing *their* opinions. The jury should be allowed to hear Dr. Plancich's testimony, which will explain why Plaintiffs' experts' claims ring hollow and why their damages methodology is unreliable under Rule 702.

## III.    Dr. Plancich is Qualified to Critique Mr. Gaskin's Opinions.

Plaintiffs' contention that Dr. Plancich is unqualified to critique any of Mr. Gaskin's opinions fails for two independent reasons. First, Plaintiffs misrepresent Dr. Plancich's opinions with regard to her critique of Gaskin's conjoint survey *design*. Dr. Plancich did not form her own opinions regarding the design issues of Gaskin's conjoint survey. Instead, as she stated repeatedly in her report and at

15

deposition, when Dr. Plancich was noting survey design issues, she relied on the opinions of Dr. Melissa Pittaoulis, Graco's conjoint survey expert. (Ex. 3, Plancich Rep. at footnotes 12, 14, 39, 41, 45; Ex. 6., Plancich Tr. at 8:11-13, 54:13-16, 58:4-19, 71:11-72:22.) "An expert may properly rely on the opinion of another expert" as long as "the first expert's opinion is "of a type reasonably relied upon by experts in the particular field." *Hendrix v. Evenflo Co., Inc.*, 255 F.R.D. 568, 607 (N.D. Fla. 2009) (citing Fed. R. Evid. 703 and denying motion to exclude expert testimony that relied on another expert). Plaintiffs are not challenging the opinions offered by Dr. Pittaoulis in this case. Here, there is no dispute that Dr. Pittaoulis is an expert on conjoint survey design or that her opinions are admissible, and therefore, Dr. Plancich appropriately relied on them.

Second, the other portions of Dr. Plancich's opinions attack the utility of the Gaskin's conjoint analysis, not the design of his conjoint survey. As she explained during deposition, Dr. Plancich "certainly use[s] and rel[ies] on conjoint survey outputs as part of [her] analyses frequently" and so she is "familiar with using the output of the conjoint surveys, but she does not run or design them herself. (Ex. 6, Plancich Tr. at 38:19-39:4.) Specifically, here, Dr. Plancich used her expertise as an economist to show how Gaskin's analysis does not reflect the real-world marketplace and what is likely to impact demand for the Booster Seats. As she explains in her report, "[i]t is a fundamental economic principle that market prices

are determined by supply and demand," and without incorporating factors such as production costs or competitive behavior, which Gaskin failed to consider, the results of his conjoint analysis "cannot be used be used to determine whether the inclusion or removal of any disclosure would have an impact on market price." (Ex. 3, Plancich Rep. at ¶ 4.)  Dr. Plancich also explains, using economic principles, how it is entirely unrealistic for an alleged omission to account for over 44% of the market value of the Booster Seats, especially when booster seats are required for certain children and competitors advertised the same "side impact tested" claim. (*Id.* at ¶ 5.)  These opinions are based on fundamental economic principles of supply and demand and do not require any expertise in conjoint survey design.

*In re FCA US LLC Monostable Electronic Gearshift Litigation*, which is the main case Plaintiffs cite to support their motion to exclude Dr. Plancich's critiques of Mr. Gaskin's opinions, differs from this case in two material ways.  382 F.Supp.3d 687 (E.D. Mich. 2019).  First, unlike Dr. Plancich's reliance on the expert opinions of Dr. Pittaoulis here, nothing in *In re FCA* suggests that the economist in that case relied on the opinions of the conjoint expert in that case.  Second, the economist in *In re FCA* opined "that conjoint analysis is never useful for assessing damages in a consumer class action," and he intended to testify about how damages should be quantified in that case.  *Id.* at 693.  Here, Dr. Plancich never asserts that conjoint analyses are wholly unhelpful in calculating damages.  Rather, she specifically

explains how pairing an estimate of the demand side of the market, using a well-designed conjoint survey, with an analysis of the supply-side *could* be used to estimate market price, but that Gaskin and Weir failed to do that in this case.  (Ex. 6, Plancich Tr. at 34:5-21.)  And Dr. Plancich is not offering an alternative conjoint-based analysis of Plaintiffs' damages.  Instead, she simply explains why Plaintiffs' experts' damages model fails to consider basic principles of economics.

## CONCLUSION

For the foregoing reasons, Graco respectfully requests that Plaintiffs' Motion to Exclude and *Daubert* Motion be denied.


Dated: February 21, 2025            /s/ *Joseph J. Krasovec, III*

ARENTFOX SCHIFF LLP
Joseph J. Krasovec, III (pro hac vice)
Mir Y. Ali (pro hac vice)
Jeffrey Skinner (pro hac vice)
J. Maxwell Heckendorn (pro hac vice)
233 S. Wacker Drive, Suite 7100
Chicago, Illinois 60606
Telephone: (312) 258-5500
joseph.krasovec@afslaw.com
mir.ali@afslaw.com
jeffrey.skinner@afslaw.com
max.heckendorn@afslaw.com


WEINBERG, WHEELER,
HUDGINS, GUNN & DIAL, LLC
Nicholas P. Panayotopoulos
Georgia Bar No. 560679

Jennifer A. Adler
Georgia Bar No. 585635
3344 Peachtree Road, NE, Suite 2400
Atlanta, Georgia 30326
Tel:  (404) 876-2700
Fax: (404) 875-9433
npanayo@wwhgd.com
jadler@wwhgd.com

*Counsel for Defendant Graco Children's Products, Inc.*

## <u>LOCAL RULE 7.1(D) CERTIFICATION</u>

In compliance with Local Rule 7.1(D), the undersigned certifies that the foregoing submission to the Court is computer-processed, double-spaced between lines, and prepared with 13-point Book Antiqua font.

Respectfully submitted this 21st day of February 2025.

ARENTFOX SCHIFF LLP

*/s/ Mir Y. Ali*
Mir Y Ali

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 21, 2025, I filed on the CM/ECF system the foregoing, and thereby served such filing via the Court's ECF Notification system to all attorneys of record in this matter.

*/s/ J. Maxwell Heckendorn*
J. Maxwell Heckendorn
One of Graco's Attorneys
